UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIOVANI DEPIANTI, HYUN KI KIM, KYU JIN ROH and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.,<br><br>Defendant. | JURY DEMANDED<br><br>Civil Action No. |

## COMPLAINT

### I. INTRODUCTION

1. This is a national class action brought on behalf of workers who have performed cleaning services for Defendant Jan-Pro Franchising International, Inc. ("Jan-Pro"). The above-named plaintiffs and other similarly situated individuals have been subjected to systemic misrepresentations and breaches of contract in their relations with Jan-Pro as described below. Most notably, Jan-Pro purports to sell cleaning "franchises," knowing it does not have sufficient business to satisfy its obligations under its franchise agreements. Individuals purchase these "franchises" for substantial sums of money, based on Jan-Pro's misrepresentations about the guaranteed amount of monthly income the franchises will provide. In addition, Jan-Pro has also improperly misclassified these workers as independent contractors and thereby denied them various benefits to which they are entitled as employees under the wage laws of various

states, including guaranteed minimum wage, overtime pay, other wage protections, and other benefits of employment, such as eligibility for unemployment and workers' compensation. In this action, the above-named plaintiffs seek to recover, on their own behalves and on behalf of all similarly situated individuals, compensation for these violations, statutory enhancement of damages as allowed by law, and attorneys' fees and costs.

## II.  PARTIES

2.  Plaintiff Giovani Depianti is an adult resident of Somerville, Massachusetts, who performed cleaning services for Jan-Pro in Massachusetts from approximately June 2003 to December 2006.

3.  Plaintiff Hyun Ki Kim is an adult resident of Philadelphia, Pennsylvania, who performed cleaning services for Jan-Pro in New Jersey and Pennsylvania from approximately November 1997 to May 2005.

4.  Plaintiff Kyu Jin Roh is an adult resident of Philadelphia Pennsylvania, who performed cleaning services for Jan-Pro in Pennsylvania from approximately December 2003 to December 2004.

5.  This is a class action that the above-named plaintiffs bring on their own behalves and on behalf of all others similarly situated, namely all other individuals who have performed cleaning services for Jan-Pro within the United States and have been subjected to the legal violations described in this complaint. The class (and any subclasses that may be appropriate) meets all of the requirements of Rule 23 of the Federal Rule of Civil Procedure.

6. Defendant Jan-Pro Franchising International, Inc. is a domestic corporation with its principal place of business in Alpharetta, Georgia.

7. Upon information and belief, Jan-Pro works closely with regional corporate affiliates, all of which do business under the name "Jan-Pro," in order to sell cleaning "franchises" to individuals. Jan-Pro requires all individuals (including the named plaintiffs) to sign the same standard-form contracts, to adhere to the same standards and methods in providing cleaning services, and to operate under the name "Jan-Pro."

### III. JURISDICTION AND VENUE

8. Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1332(d)(2).

### IV. STATEMENT OF FACTS

#### A. Jan-Pro's Misrepresentations and Breaches of Contract

9. Jan-Pro employs cleaning workers across the United States to perform cleaning work for customers who negotiate cleaning services accounts with Jan-Pro. These workers have included the above-named plaintiffs.

10. Jan-Pro requires its cleaning workers to sign "franchise agreements" with its regional affiliates in order to obtain work, and it labels its cleaning workers as "franchisees."

11. In order to induce workers to sign these franchise agreements, Jan-Pro (through its agents) negligently and/or intentionally misrepresents that it has sufficient business to provide the monthly income it promises the workers in their

3

agreements. In fact, Jan-Pro does not have enough accounts to offer to workers who have signed franchise agreements.

12. Thus, Jan-Pro knows it does not have sufficient business to satisfy the terms of the franchise agreements when it advertises franchises, solicits franchisees, and enters into franchise contracts. Jan-Pro (through its agents) knowingly and willfully solicit and enters into agreements which it knows it cannot perform.

13. Jan-Pro also misrepresents that workers will receive a higher hourly rate of pay for their work than Jan-Pro knows they will be able to earn.

14. Jan-Pro's franchise agreement is a form contract of adhesion establishing the terms and conditions of employment of Jan-Pro cleaning workers.

15. None of the Jan-Pro cleaning workers is able to negotiate for different terms and conditions from those appearing in the form franchise agreement.

16. The form franchise agreement is written exclusively in English, in highly technical and confusing language, with misleading section headings and provisions regarding waivers of important rights buried within the agreement.

17. The form franchise agreement is not available in other languages, although many of the workers who sign these form franchise agreements have little to no fluency in English.

18. Consequently, as Jan-Pro knows, the workers do not understand the terms of the agreement, whether or not they speak English.

19. Jan-Pro targets immigrants in particular because they are easily victimized by Jan-Pro's misrepresentations and other systemic legal violations, as described herein.

20. Pursuant to these form franchise contracts, individuals pay substantial sums of money as franchise fees in order to obtain cleaning accounts. For example, Mr. Depianti paid Jan-Pro an initial fee of $23,400, and Mr. Kim paid Jan-Pro an initial fee of $14,400.

21. In exchange for these large franchise fees, Jan-Pro guarantees a certain level of monthly income beginning after the workers have made down payments to purchase their franchise and completed their training period.

22. However, Jan-Pro systemically breaches its written agreements by not providing or offering sufficient or adequate work as promised to produce the guaranteed level of income.

23. For example, Mr. Depianti was offered $8,333 per month in business, but he typically received less than $3,000 per month during his time working for Jan-Pro.

24. Mr. Kim was offered approximately $7,000 per month in business, but he typically received less than $4,000 per month during his time working for Jan-Pro.

25. Through a variety of means involving misrepresentation, Jan-Pro purports to satisfy its obligations under the form franchise agreements when it has come nowhere near satisfying those obligations. Through these means, Jan-Pro attempts to make it appear that it is the workers' fault, rather than Jan-

Pro's, that they do not have sufficient accounts to satisfy their monthly income guarantee.

26. For example, Jan-Pro negligently and/or intentionally misrepresents the number of hours per week that will be required to service the accounts offered. These misrepresentations are used to induce workers to accept the accounts toward their guaranteed level of income. The accounts typically require substantially more hours of work than Jan-Pro represents.

27. In addition, Jan-Pro promises cleaning accounts that are geographically convenient to one another and convenient to the workers' homes. However, the accounts are typically spread very far apart, making it very inconvenient, if not impossible, to accept or perform the work for these accounts.

28. Jan-Pro typically contends that it has fulfilled its obligations under the franchise contract by offering accounts, knowing that accounts offered could not be accepted due to geographic inconvenience, sheer impossibility of performing the number of hours of work required to service the accounts, or rates of pay well below what was promised.

29. Jan-Pro also frequently violates the form franchise agreement by taking accounts away without warning and for no justifiable reason. Also in violation of the agreement, Jan-Pro gives no opportunity to correct or challenge alleged deficiencies in workers' performance.

30. When doing so, Jan-Pro frequently tells the workers performing the cleaning services that the customers were dissatisfied with their work, when in fact the customers were satisfied with their work.

31. After taking an account away from a worker, Jan-Pro then can offer the account to another worker who has signed a franchise agreement to count toward that person's monthly guarantee. In this way, Jan-Pro churns the accounts it has, in order to make it appear that it has satisfied its franchise agreements.

32. When Jan-Pro does not satisfy the terms of the workers' franchise agreements by not offering sufficient accounts (that are free from misrepresentations) or by taking away accounts without justification or warning, it does not refund the franchise fees that the workers have already paid.

33. Indeed, Jan-Pro requires workers to continue making payments on their franchise fees, billing them for these payments, even when they have no further work from Jan-Pro.

34. In addition, Jan-Pro deducts excessive fees from the payments it makes to the workers under the franchise agreements.

35. Jan-Pro significantly underbids cleaning contracts with its clients. As a result of this underbidding and the deduction of excessive fees from their pay, the workers who have contracted with Jan-Pro receive far less pay for their work than the fair value of their services and far less pay than they were promised on an hourly and monthly basis.

### B.  Jan-Pro's Misclassification of Its Cleaning Workers as Independent Contractors

36.  Jan-Pro purports to classify its cleaning workers as independent contractors. However, these workers are in fact employees under the statutes and common law of various states.

37.  The behavioral and financial control manifested over these workers by Jan-Pro demonstrates that the workers are employees rather than independent contractors.

38.  The cleaning workers perform services within Jan-Pro's usual course of business, which is to provide cleaning services to customers.

39.  Also, Jan-Pro instructs the cleaning workers in how to do their work and dictates their performance of the details of their jobs.

40.  The cleaning workers generally do not work in an independently established trade, occupation, profession, or business. Instead, as required by their contracts, the cleaning workers perform cleaning services exclusively for Jan-Pro's clients.

41.  Also, the cleaning workers do not represent themselves to the public as being in an independent business to provide cleaning services, and they typically have not invested in an independent business apart from their payment of "franchise" fees to Jan-Pro.

42.  Because of their misclassification by Jan-Pro as independent contractors, these cleaning workers have not received the benefits that inure from the employment relationship under law.

8

43. For example, Jan-Pro's cleaning workers frequently do not receive the minimum wage for the work they perform.

44. Although many of them work more than 40 hours per week, they do not receive one and one-half times their regular rate for hours worked in excess of 40 hours per week.

45. Numerous deductions are made from their pay, which constitute improper deductions from wages. For example, Jan-Pro deducts payments towards "franchise fees," interest payments, payments for Jan-Pro to manage the workers' cleaning accounts, and other payments. It also withholds workers' pay when it contends that Jan-Pro clients have not paid their bills.

46. These cleaning workers do not receive pay for their time spent traveling between different accounts during the work day.

47. Jan-Pro denies that these workers are eligible for unemployment payments when they lose their jobs, or when they are constructively discharged by having their cleaning accounts taken away and not replaced.

48. Also, because of the misclassification, Jan-Pro's cleaning workers are not covered by workers' compensation when they are injured on the job.

## COUNT I

### (Unfair and Deceptive Business Practices)

Defendant's conduct in inducing the plaintiffs and class members to purchase purported cleaning "franchises" and its conduct with respect to the plaintiffs and class members in the course of, and following, their performing cleaning services as described above constitutes unfair and deceptive practices

9

in violation of the statutory and common law of the several states, including Massachusetts Gen. L. c. 93A, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.*

## COUNT II

### (Misclassification as Independent Contractors)

Defendant has knowingly and willfully misclassified plaintiffs and class members as independent contractors instead of employees, in violation of the statutory and common law of the several states, including Mass. Gen. Laws c. 149 § 148B.

## COUNT III

### (Wage Law Violations)

Defendant's misclassification of its cleaning workers as independent contractors has deprived them of the protections of the wage laws of the several states, including guaranteed minimum wage, overtime pay, and timely payments of all wages owed without improper deductions from pay, in violation of the wage laws of the several states, including Mass. Gen. L. c. 151 §§ 1, 1A, and 1B, and Mass. Gen. L. c. 149 § 148, 43 P.S. § 260.1 *et seq.*, 43 P.S. § 333.104, and N.J. St. 34.11-56a4.

## COUNT IV

### (Misrepresentation)

Defendant has committed intentional and/or negligent misrepresentation in its representations to the plaintiffs and class members, as described above, in violation of the common law of the several states.

## COUNT V

### (Quantum Meruit)

The plaintiffs and class members have been deprived by Defendant of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of the several states.

## COUNT VI

### (Unjust Enrichment)

Through the conduct described above, Defendant has been unjustly enriched under the common law of the several states.

### JURY DEMAND

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1. Certification of this case as a national class action;
2. Certification of subclasses of Jan-Pro workers who performed work in states with particular statutory claims described in this complaint (or other claims for which subclasses may contribute to the

manageability of this litigation), including Massachusetts, Pennsylvania, and New Jersey;

3. Damages attributable to Jan-Pro's statutory and common law violations;

4. Statutory enhancement of damages as allowed by law;

5. Declaratory and injunctive relief, requiring Jan-Pro to cease its illegal practices;

6. Any other relief to which the plaintiffs and class members may be entitled.

Respectfully submitted,

GIOVANI DEPIANTI, HYUN KI KIM, KYU JIN ROH, and all others similarly situated,

By their attorneys,

Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
   & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200

Dated:    April 18, 2008