IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GLORIA ROMAN, GERARDO VAZQUEZ,
JUAN AGUILAR,

    Plaintiffs,

  v.

JAN-PRO FRANCHISING
INTERNATIONAL, INC,

    Defendant.

No. C 16-05961 WHA

**ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this wage-and-hour putative class action alleging misclassification of franchisees of cleaning businesses as independent contractors, rather than as employees, defendant moves for summary judgment. To the extent stated below, the motion is **GRANTED**.

**STATEMENT**

At all relevant times, defendant Jan-Pro Franchising International, Inc., operated a three-tiered franchising structure that offered cleaning and janitorial services. Jan-Pro sold exclusive rights to use its trademark in the name "Jan-Pro" to entities known as regional master franchisees that became responsible for the Jan-Pro business in a defined geographic territory and gained the exclusive right to sell cleaning franchises in that territory. In turn, regional master franchisees sold "unit franchises," pursuant to which the purchasers gained the exclusive right to service certain accounts provided to them by their regional master franchisees.

Unit franchisees could purchase franchises in their individual capacities, operate under fictitious names, or form partnerships or corporations with employees to service the accounts assigned by the respective regional master franchisees. Regional master franchisees provided unit franchisees with some initial training and then continued to provide business development, billing and collection, and revenue disbursement services.

Our plaintiffs each purchased unit franchises from regional master franchisees. (The regional master franchisees in question are *not* parties herein.) Plaintiff Gerardo Vazquez purchased a unit franchise from New Venture of San Bernardino, LLC, for $2800. Plaintiff Gloria Roman purchased a unit franchise from Connor-Nolan, Inc., for $2800. Plaintiff Juan Aguilar, with a business partner, also purchased a unit franchise from Connor-Nolan and paid $9000 for it.

Plaintiff unit franchisees contend that they have been improperly classified as independent contractors, rather than as employees of Jan-Pro, and seek minimum wages and overtime premiums accordingly.

This case began in 2008 in the District of Massachusetts (where Jan-Pro is incorporated) with three plaintiffs who were unit franchisees from three different states (none of which included our plaintiff unit franchisees). An amended complaint added unit franchisees from four more states including our plaintiff unit franchisees. The parties agreed to a summary-judgment procedure that would precede class certification, with Jan-Pro agreeing to waive one-way intervention.

At summary judgment, the judge in Massachusetts decided to focus only on the claims of the Massachusetts plaintiff, Giovani Depianti, as a test case. He denied that plaintiff's motion for partial summary judgment and granted summary judgment for Jan-Pro on all but two claims. Depianti dismissed those remaining two claims, preserving his right to appeal on two others. Our plaintiff unit franchisees, all residents of California, moved to sever and transfer the action here, which motion was granted over Jan-Pro's objection.

The severed case arrived here in San Francisco in November 2016, where it was assigned to the undersigned judge. Plaintiff unit franchisees were allowed to file an amended

complaint to streamline the issues (paring away the allegations relating to the larger case in Massachusetts), and the parties agreed to an extended schedule for briefing Jan-Pro's instant motion for summary judgment, which included a surreply by plaintiff unit franchisees. This order follows full briefing and oral argument.

**ANALYSIS**

The parties do not dispute the structure of Jan-Pro's three-tiered franchising business. The central dispute is whether, notwithstanding their classification as independent contractors by the regional master franchisees, our plaintiff unit franchisees are nevertheless employees of Jan-Pro. To be clear, this action does *not* address whether Connor-Nolan and New Venture employed our plaintiff unit franchisees.[1]

**1. EMPLOYEE STATUS.**

Both sides agree California law applies to the question of whether our plaintiff unit franchisees should have been classified as employees of Jan-Pro and paid minimum wages and overtime premiums accordingly. They disagree about the standard that applies under California law.

Jan-Pro contends *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474 (2014), supplies the relevant standard. There, the plaintiff was an employee of a franchisee and alleged she had been subject to sexual harassment by a supervisor, also an employee of the franchisee, but sought to hold the *franchisor* vicariously liable under California's Fair Employment and Housing Act. *Patterson* noted that "traditional common law principles of agency and respondeat superior supply the proper analytical framework under FEHA, as they do for franchising generally." *Id.* at 499. It rejected as obsolete decades of prior decisions that focused on "the degree to which a particular franchisor exercised general 'control' over the 'means and manner' of the franchisee's operations," to determine whether vicarious liability should apply. *Id.* at 478. Specifically, because franchises had grown to include thousands of stores, a franchisor needed the freedom to impose "comprehensive and meticulous standards for

---

[1] It is unclear why our plaintiff unit franchisees have sued only Jan-Pro, not the parties they contracted with directly. One explanation is that their agreements with their regional master franchisees included mandatory arbitration provisions.

3

marketing its trademarked brand and operating its franchises in a uniform way," while leaving "day-to-day decisions involving the hiring, supervision, and disciplining of [the franchise's] employees" to the franchisee. *Ibid.*

Accordingly, *Patterson* held it was not enough for a franchisor to control the "means and manner" of the franchisee's operations to be that franchisee's employer. Instead, that decision held that a franchisor could become "potentially liable for actions of the franchisee's employees[] only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees. Any other guiding principle would disrupt the franchise relationship." *Id.* 498. That is, under *Patterson* a franchisor could not be held vicariously liable vis a vis its franchisee unless it "enter[ed] the arena" of overseeing the day-to-day operations of the franchise. *Ibid.*

Plaintiff unit franchisees respond that *Martinez v. Combs*, 49 Cal. 4th 35 (2010), applies. That decision set forth three alternative definitions of "to employ" under California labor law. "It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Id.* at 64. Plaintiff unit franchisees contend Jan-Pro is their employer under any of the three definitions under *Martinez*.

Judge Richard Seeborg considered the same question before us now — when does a franchisor become liable for overtime premiums and minimum wages as an employer — in *Salazar v. McDonald's Corp.*, No. 14-02096, 2016 WL 4394165 (N.D. Cal. Aug. 16, 2016). There, *both* sides agreed that *Martinez* applied to the wage-and-hour claims therein, but disagreed about whether *Patterson* had any role in the analysis. Noting that *Patterson* was decided four years *after Martinez*, Judge Seeborg held that application of *Martinez* while ignoring *Patterson* would yield "a distorted view of operative law," inasmuch as *Patterson* "denigrate[d] reliance on [the California Supreme Court's] older decisions" and applied its new standard where the "traditional common law principles of agency" would otherwise apply. *Id.* at *4. Thus, Judge Seeborg held *Patterson* supplied the analytical framework for the common-

4

law definition of employment — the third prong under *Martinez*. *Ibid.*; *see also Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1239 (N.D. Cal. 2015) (Judge James Donato).

Both sides agree no binding decision has addressed the standard applicable to determining whether a franchisor is an employer of a franchisee. In the absence of controlling authority, and with the benefit of Judge Seeborg's carefully reasoned decision in *Salazar*, this order applies the *Martinez* standard, with the gloss of *Patterson* when considering the common-law definition of employment, and finds that plaintiff unit franchisees have not raised a genuine dispute of material fact preventing the award of summary judgment for Jan-Pro, as now discussed.

**A. Control.**

Under the first prong of *Martinez*, Jan-Pro is plaintiff unit franchisees' employer if it "exercises control over the[ir] wages, hours, or working conditions." *Martinez*, 49 Cal. 4th at 64. Plaintiff unit franchisees cite *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 522 (2014), for the proposition that the first prong of *Martinez* focuses on the alleged employer's "right" to control the alleged employee. This is incorrect. *Ayala* discussed the right to control in the context of the common-law definition of employment, which is the third prong of *Martinez*. The decision in *Martinez* plainly considered the "exercise" of control as part of its first prong. Nevertheless, because the applicable standard in *Patterson* considers the "right" to control the alleged employee's day-to-day activities, this order considers both in conjunction. Plaintiff unit franchisees have failed to raise a genuine dispute of fact about whether Jan-Pro directly or indirectly exercised control over their activities or whether it had the right to control their day-to-day activities, as now discussed.

Plaintiff unit franchisees contend that Jan-Pro's contracts with its master franchisees gave it the absolute right to control the business of any regional master franchisee as well as the unit franchisees, such as our plaintiffs, by promulgating policies and procedures. Indeed, Section 4.28 of the agreements between Jan-Pro and the regional master franchisees that contracted with our plaintiff unit franchisees provides, in pertinent part (Connor Aff., Exh. A § 4.28; Garcia Aff., Exh. A § 4.28):

5

> Franchisor reserves the right to establish company policies and/or procedures pertaining to the operation of Regional Franchisee's franchised business, the terms of this Agreement, or the business of any unit franchisee subject to the license granted under this Agreement, or the business of any unit franchisee subject to the license granted under this Agreement. Regional Franchisee agrees that it will be bound by said policies and/or procedures upon receipt of same by Regional Franchisee.

Similarly, Section 4.29 reserved to Jan-Pro the right to "inspect any premises serviced by Regional Franchisee or its Franchisees at any time to ensure that the quality of service being performed is in accordance with JAN-PRO standards" (Connor Aff., Exh. A § 4.29; Garcia Aff., Exh. A § 4.29).

The agreements also set forth several specific provisions regarding the sale of unit franchises. Section 14.1 provided, in pertinent part (Connor Aff., Exh. A § 14.1; Garcia Aff., Exh. A § 14.1):

> All franchise agreements utilized by Regional Franchisee shall be the unit franchise agreement currently used by Franchisor of the agreements which are prepared by Regional Franchisee and approved by Franchisor. Regional Franchisee and Franchisor agree that Franchisor shall have the right to assume any of the responsibilities, duties or functions of Regional Franchisee in the event that this agreement is not renewed or is terminated for any reason. Regional Franchisee shall include in the standard franchise agreement used, a provision which states that Franchisor is a third-party beneficiary to the franchise agreement and is entitled to the rights granted in this section.

The agreements all included non-compete provisions, prohibiting our plaintiff unit franchisees from "engag[ing] in" or "hav[ing] any financial interest in" any business that offers "janitorial or janitorial management services, franchising, sales or contracting or any related business anywhere" other than the regional master franchisee with which they contracted (Rosin Decl., Exh. 16 § 19, Exh. 17 § 19, Exh. 18 § 19).

Critically, however, our plaintiff unit franchisees' agreements with their respective regional master franchisees did *not* set out any rights for Jan-Pro or otherwise indicate that Jan-Pro would be a third-party beneficiary under those agreements. In fact, the only substantive references to our defendant in our plaintiff unit franchisees' agreements with their respective regional master franchisees identified it as the owner of the trademarks licensed to our plaintiff unit franchisees (Rosin Decl., Exh. 16 § 4C, Exh. 17 § 4C, Exh. 18 § 4C). (An additional

6

immaterial reference was made in the prefatory language of Vazquez's agreement with New Venture.) Those provisions did not incorporate Jan-Pro's agreements with the respective regional master franchisees. Notably, references to "Jan-Pro" in all three agreements were defined to relate to the regional master franchisees *not to our defendant.*

Our plaintiff unit franchisees were subject to several measures of control by their respective regional master franchisees. For example, they are subject to the policies and practices established by their regional master franchisees. Connor-Nolan could terminate Roman and Aguilar for, *inter alia*, "failure to comply with the provisions of [their agreements with Connor-Nolan] or any other agreement" (Rosin Decl., Exh. 16 § 15G, Exh. 17 § 15G). New Venture could terminate Vazquez for failing "to meet obligations provided for in [his agreement with New Venture] or any other breach of [that] Agreement or any other agreement between [New Venture] and [Vazquez]," provided New Venture gave Vazquez notice and ten days to cure any breach (Rosin Decl., Exh. 15 § 15A). Plaintiff unit franchisees make hay over the possibility that they could be terminated for breaching "any other agreement," but they fail to address two critical facts: (1) these provisions conferred *no* rights upon Jan-Pro, and (2) our plaintiff unit franchisees *never entered any "other agreements" with Jan-Pro*.

Plaintiff unit franchisees insist that Jan-Pro could terminate them at will, but the foregoing demonstrates that was not the case. The provisions described above did not even give the regional master franchises the right to terminate our plaintiff unit franchisees *at will*, any termination must have been grounded in some violation of a policy. But the agreements never granted that right, such as it is, to Jan-Pro anyway.

Ultimately, plaintiff unit franchisees fail to offer any evidence of Jan-Pro's right to control their day-to-day activities or its exercise of such control, beyond its right to modify the policies that applied to the regional master franchisees and to terminate the regional master franchisees.

An analogous failure was fatal to the plaintiffs' claims in *Martinez.* There, the alleged employers were distributors of strawberries, and the alleged employees were seasonal workers working for a strawberry farmer. The distributors contracted with the farmer, and

7

representatives of the distributors communicated with the seasonal workers about the proper procedure for packing the strawberries. But the distributors' contracts with the farmer did not give them the right to *control* the franchisee's employees (even if it could establish specific procedures), and there was no evidence that the workers viewed their contacts with the alleged employer as an exercise of control. *Martinez*, 49 Cal. 4th at 76–77. Indeed, in *Patterson* further held that the mere fact that a franchisor reserved the right to set certain workplace standards was insufficient to establish its liability as an employer. *Patterson*, 60 Cal. 4th at 490. Similarly, in *Salazar*, Judge Seeborg held "even if [the franchisor] retain[ed] the right to update its business manuals, the agreement [between the franchisor and fanchisee] still lack[ed] any contractual right authorizing [the francisor] to direct the [franchisee's] employees in their work." *Salazar*, 2016 WL 4394165, at *6. So too here.

Plaintiff unit franchisees also contend that Jan-Pro indirectly controlled their wages. They contend that Jan-Pro "created a uniform methodology of pricing to be used by the regional master franchisees" (Pls.' Opp. at 14). Not so. The deposition testimony they cite reveals that Jan-Pro provided its regional master franchisees with a template for calculating the appropriate amount to charge a customer for a job, but that template left significant discretion to the regional master franchisees (Thompson Dep. at 24–25). Most critically, however, our plaintiff unit franchisees' respective regional master franchisees *did not use the EZ Bid system* (Connor Aff. ¶ 10; Garcia Aff. ¶ 5). Our plaintiff unit franchisees acknowledge they remained free to accept or reject an account offered to them by their regional master franchisees based on the pricing (Aguilar Dep. at 65–66; Roman Dep. at 46–48, 104–05; Vazquez Dep. at 45, 167–72). Jan-Pro simply retained no right to control our plaintiff unit franchisees' wages, and it exercised no such control.

Plaintiff unit franchisees contend Jan-Pro exercises control by establishing training regimens, but the evidence they cite shows that Jan-Pro "train[ed] masters only" (Thompson Dep. at 32).

Plaintiff unit franchisees rattle off several other examples of Jan-Pro's purported right to control them, but each example fails for the same reasons discussed above — any right to

8

1 control that Jan-Pro intended to reserve for itself in its agreements with the regional master
2 franchisees failed to carry over to the agreements out plaintiff unit franchisees entered into.
3 Accordingly, plaintiff unit franchisees have failed to establish an employment relationship
4 under either the first or third prongs of *Martinez* (especially once the gloss of *Patterson* is
5 applied to the third prong).

### B. Suffer or Permit.

Under the second prong in *Martinez*, Jan-Pro may be our plaintiff unit franchisees' employer if it "suffer[s] or permit[s]" them work. *Martinez*, 49 Cal. 4th at 64. That phrase imposes liability based on the defendant's "knowledge of and failure to prevent the work from occurring." *Id.* at 70. In *Martinez*, the defendants therein did not suffer or permit the plaintiff unit franchisees to work, despite indirectly benefitting from their work, because the alleged employer lacked "the power to prevent [the] plaintiffs from working . . . ." *Id.* at 69.

So too here. For the reasons stated above, Jan-Pro lacked the authority to stop our plaintiff unit franchisees from working. Its agreements with the regional master franchisees purported to confer that authority, but our plaintiff unit franchisees' agreements with those master owners did not extend Jan-Pro's authority to our plaintiff unit franchisees. Accordingly, plaintiff unit franchisees have failed to establish an employment relationship under the second prong of *Martinez*.

### 2. OSTENSIBLE AGENCY.

Plaintiff unit franchisees also advance a theory that Jan-Pro became their employer because the regional master franchisees became ostensible agents of Jan-Pro, and so Jan-Pro must answer for the liabilities, if any of the regional master franchisees. "Ostensible agency exists where (1) "the person dealing with the agent does so with reasonable belief in the agent's authority;" (2) that belief is "generated by some act or neglect of the principal sought to be charged," and (3) "the relying party is not negligent." *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 747 (1997).

In their opposition brief, plaintiff unit franchisees state they "believed they worked for a single, integrated entity called Jan-Pro" (Pls.' Opp. at 15 n. 11). They do not directly cite to

9

anything in the sworn record in their brief. Rather, they cite their separately-filed statement of facts, which states "Vazquez and Roman did not understand any distinction between Jan-Pro and their respective regional master franchisees" (Dkt. No. 252 ¶ 64). That allegation, in turn, cites the deposition testimony of Roman and Vasquez. Vasquez testified he knew his master regional franchisor as "just Jan-Pro" and he knew nothing of Jan-Pro International (Vasquez Dep. at 46, 137–39). Roman similarly testified she only knew "Jan-Pro in San Jose" and didn't know "whether they belong to the other place [Jan-Pro International]" (Roman Dep. at 52). Plaintiff unit franchisees admit they had no knowledge that the local companies they contracted with answered to a higher power.

They also had no knowledge of Jan-Pro Franchising International, Inc., (our defendant) until this lawsuit (Aguilar Dep. 104–05; Roman Dep. at 51–52; Vazquez Dep. at 138–39). It is of no moment that they believed the companies they contracted with were called "Jan-Pro."

There is simply no evidence that they formed a belief, reasonable or otherwise, that their respective regional master franchisees acted as agents of any other principal.

Nor do plaintiff unit franchisees offer any argument suggesting that our defendant through affirmative action or neglect allowed such a belief to be formed. Plaintiffs cannot survive summary judgment on this theory. *Cf. Salazar v. McDonald's Corp.*, No. 14-02096, 2017 WL 950986, at *2–*3 (N.D. Cal. Mar. 10, 2017) (Judge Richard Seeborg) (holding an employment relationship cannot be created through ostensible agency without control over the workplace environment).

### 3. OTHER CLAIMS.

Plaintiff unit franchisees also assert claims for unjust enrichment, quantum meruit, and violation of Section 17200, which claims do not rely on violations of California Labor Code or a finding of an employment or agency relationship. These claims are premised on the theory that Jan-Pro's three-tiered franchise system is unfair to our plaintiff unit franchisees inasmuch as it is billed as an investment in a business but proves to be merely the rights to clean an account at low wages.

Jan-Pro moves for summary judgment, contending that plaintiff unit franchisees have no evidence of any wrongdoing warranting recovery under these theories. Plaintiff unit franchisees offer less than one page of argument to support their claims, and critically, the only evidence they cite in support of those claims is the report of their purported expert in janitorial franchising, Steve Cumbow. But Cumbow's report, to the extent he qualifies as an expert at all, is not evidence of plaintiff unit franchisees' claims. He conducted no analysis whatsoever of *our plaintiff unit franchisees' circumstances*. His report is merely a review of certain general Jan-Pro practices that he contends are unfair in light of certain factual assumptions with no relationship to our case. He expressly admitted he never reviewed any information about our plaintiff unit franchisees at his deposition (Cumbow Dep. at 100–03). This is inadmissible under Rule 702, which requires, *inter alia* an expert witness to "appl[y] the principles and methods reliably to the facts of the case."

Jan-Pro moved to strike this report before the case was severed and reassigned here, but the motion was not substantively addressed in Massachusetts, although it had been fully briefed. This order **GRANTS** that motion.

Plaintiff unit franchisees offer no further argument or evidence to support their non-Labor-Code claims. Accordingly, those claims fail.

### 4. EVIDENTIARY AND PROCEDURAL ISSUES.

Although neither side sought leave to do so, both sides submitted separate statements of fact that exceeded their respective page limits for their briefs. Each brief cited the respective statement of facts, and the statement of facts, in turn, cited the sworn record. Both sides take issue with the other's extraneous materials, but neither acknowledges the impropriety of their own submissions. *See* Civil L.R. 7-2(b), 7-4(a)(3), 56-2. (Notably, plaintiff unit franchisees contend their excess submission was permissible simply because it was not styled as a statement of "undisputed" facts.) Both argue the other's submission included impermissible argument.

This order reviewed the cited sworn evidence directly to determine which facts were, indeed, undisputed, it treated legal conclusions or argument dressed up as "facts" as simply argument, and it found facts undisputed only when they were, based upon that review,

undisputed. Because the parties' lengthy and complex briefs were built on their improper statements of fact, this order considered the statements and arguments therein. These procedural objections are therefore **OVERRULED AS MOOT**.

As discussed above, this order holds the Cumbow report is inadmissible. It considered Jan-Pro's prior motion to strike (which was denied as moot in Massachusetts) as well as plaintiff unit franchisees' response thereto.

All other evidentiary objections pertained to documents or statements that were not necessary to this order and are therefore **OVERRULED AS MOOT**.

Both sides requested judicial notice of numerous documents, such as decisions from other courts and arbitration decisions. Except to the extent discussed above, the cited documents were unnecessary to this order, and so the requests for judicial notice are **DENIED AS MOOT**.

## CONCLUSION

To the extent stated above, defendant's motion for summary judgment is **GRANTED**. Judgment will follow.

**IT IS SO ORDERED.**

Dated: May 24, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE