IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GLORIA ROMAN, GERARDO VAZQUEZ, JUAN AGUILAR,

    Plaintiffs,

  v.

JAN-PRO FRANCHISING INTERNATIONAL, INC.,

    Defendant.

No. C 16-05961 WHA

**ORDER RE OBJECTION TO BILL OF COSTS**

## INTRODUCTION

In this wage-and-hour putative class action, defendant moves for costs after prevailing at summary judgment. Plaintiffs object. For the reasons stated below, plaintiffs' request to be relieved from cost obligations is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Defendant Jan-Pro Franchising International, Inc. operates a three-tiered franchising structure that offers cleaning and janitorial services. Jan-Pro sold the rights to use its name to regional franchisees, who in turn sold "unit franchises" within that region. Plaintiffs Gerardo Vazquez, Juan Aguilar, and Gloria Roman were unit franchisees who sued Jan-Pro for minimum wages and overtime pay, claiming that they were improperly classified as independent contractors, rather than employees.

In May 2017, an order granted Jan-Pro's motion for summary judgment as to all claims (Dkt. No. 265). A subsequent order entered judgment in favor of Jan-Pro, and plaintiffs have since appealed (Dkt. Nos. 266, 267).

Jan-Pro, as the prevailing party, moved for costs related to deposing the three named plaintiffs and their expert, Steven Cumbow. In total, Jan-Pro seeks $3,535.40 — approximately $1,200 per plaintiff (Dkt. No. 270). Plaintiffs filed an objection to the costs. The objection did not challenge any individual cost, but rather opposed an award of costs altogether on the grounds that paying these costs would be a hardship for plaintiffs due to their limited financial resources, and awarding costs would discourage future meritorious wage-and-hour suits (Dkt. No. 271). Plaintiffs have each submitted a declaration showing that they are under financial strain, and paying the costs sought by Jan-Pro would cause them hardship.

Vazquez's declaration states that after he stopped working as a janitor for a unit franchise in October 2008, he performed part-time work through a temp agency, mostly loading and unloading trucks at a warehouse. He now provides full-time care to his elderly mother who is in bad health, and he has not been employed "in some time." He has approximately $25,000 in a retirement account, but is approximately $30,000 in debt (Dkt. No. 271-1). Roman ceased working as a janitor in January 2017. She now works as a hair styling instructor making approximately $2,000 per month, and receives an additional $400 per month in child support. She pays approximately $2,043 between her rent and car payments, and carries approximately $2,000 in credit card debt. She supports her two children (Dkt. No. 271-2). Aguilar worked as a janitor for a unit franchise "for several years beginning in approximately November 2003." He continues to work as a janitor and makes approximately $4,000 per month. He pays $2,800 per month in rent and utilities, $309 in car payments, $250 for car insurance, and $250 for health insurance. He supports three children and his wife (Dkt. No. 271-3).

An order granted Jan-Pro an opportunity to respond to plaintiffs' objections (Dkt. No. 274). In its response, Jan-Pro argues that despite plaintiffs' precarious financial circumstances, they should nevertheless be required to pay costs.

**ANALYSIS**

"Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." FRCP 54(d)(1). A losing party bears the burden to overcome this presumption, and a district court "generally must award costs unless the

prevailing party is guilty of some fault, misconduct, or default worthy of punishment." *Dawson v. City of Seattle*, 435 F.3d 1054, 1071 (9th Cir. 2006).

There are, however, equitable exceptions to this rule, and it is within the district court's discretion to deny, or reduce costs. Appropriate reasons for doing so include:

> (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. This is not an exhaustive list of 'good reasons' for declining to award costs, but rather a starting point for analysis.

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014). There are no strict limitations on the amount of costs a district court may allow or deny so long as it exercises reasoned discretion. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 946 (9th Cir. 2003).

Plaintiffs argue that given their limited means, and the substantial resources of the corporate defendant, it would be unjust to require them to pay the costs Jan-Pro is seeking. They further observe that this was a vigorously litigated action in an unsettled area of law, and that imposing costs would chill future litigation aimed at vindicating the rights of wage laborers.

Jan-Pro responds that because it is not guilty of any misconduct, and the costs are relatively modest (approximately $1,200 per plaintiff), plaintiffs should be required to pay them. Jan-Pro observes that it has defended this action at substantial expense for over eight years, including having to go to plaintiffs' belatedly-chosen California forum after six years of litigation in Massachusetts. It further argues that these modest costs will not chill future wage-and-hour litigation.[1]

---

[1] Jan-Pro makes one additional argument that plaintiffs' objection should be denied because plaintiffs never contacted Jan-Pro's counsel or requested to meet and confer, as required by Civil Local Rule 54-2(b), prior to filing their objection. True, the better course of action would have been for plaintiffs' counsel to contact Jan-Pro and attempt to avoid the need for judicial intervention. That plaintiffs failed to do so, however, should not preclude them from asking for relief from costs due to indigence. *See, e.g., CRS Recovery, Inc. v. Laxton*, No. C 06-7093 CW, 2013 WL 140092, at *2 n.2 (N.D. Cal. Jan. 10, 2013) (Chief Judge Claudia Wilken) (excusing failure to strictly comply with Civil Local Rule 54, and reaching merits of dispute); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2010 WL 5025663, at *1 (N.D. Cal. Dec. 3, 2010) (same).

3

While the costs at issue are not exorbitant, they pose significant financial hurdles for our plaintiffs. Two plaintiffs support their children, and the third cares for his elderly mother. Not one of the plaintiffs has any surplus income after accounting for basic living expenses. To give just one example, Roman, who supports two children, receives a total of $2,400 per month between her income and child support payments. She spends $2,043 on housing rental and car payments. That leaves her with $357 per month to take care of all other needs (Dkt. No. 271-2). For her, as for each of these plaintiffs, $1,200 is no small sum.

Moreover, there is a vast disparity in resources between Jan-Pro and our plaintiffs, which likewise counsels against taxing costs.[2] Though plaintiffs did not prevail, their arguments were not meritless, and their belief that they could prevail was not unreasonable. Taxing plaintiffs $1,200 each could chill future wage-and-hour litigation, especially, in circumstances like these where plaintiffs challenge violations of minimum wage law. These equitable factors all weigh in favor of relieving plaintiffs of at least some portion of the requested costs. Nevertheless, plaintiffs should not be relieved entirely of their obligation as each has at least some ability to pay. The bill of costs is therefore reduced to $300. Each plaintiff shall pay $100 in costs to Jan-Pro.

## CONCLUSION

Plaintiffs have shown that they will suffer disproportionate financial harm if full costs are taxed against them, and such costs may discourage other meritorious wage-and-hour litigation. Accordingly, plaintiffs' request to be relieved from cost obligations is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are hereby **ORDERED** to pay costs of $100 each — $300 in total — to Jan-Pro.

**IT IS SO ORDERED.**

Dated: July 20, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] Though Jan-Pro disputes that it makes $250 million in revenue, as the plaintiffs indicate, there is no doubt that Jan-Pro has vastly greater assets than the plaintiffs. The exact revenue figure is not critical to this analysis.

4