1  Shannon Liss-Riordan (SBN 310719)
   (sliss@llrlaw.com)
2  LICHTEN & LISS-RIORDAN, P.C.
   729 Boylston Street, Suite 2000
3  Boston, MA 02116
   (617) 994-5800
4

5  Attorneys for Plaintiffs and the Putative Class

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  GLORIA ROMAN, GERARDO                    Case No.:  3:16-cv-05961-WHA
   VAZQUEZ, JUAN AGUILAR, and all
10 others similarly situated,

11          Plaintiffs,                      **PLAINTIFFS' NOTICE OF MOTION
                                            AND MOTION FOR CLASS
12 v.                                       CERTIFICATION AND MEMORANDUM
                                            IN SUPPORT THEREOF**
13 JAN-PRO FRANCHISING
   INTERNATIONAL, INC.                      Date:        March 24, 2022
14                                          Time:        8:00 am
            Defendant.                      Courtroom:   12, 19th Floor
15
                                            Hon. William Alsup
16

17

18

19

20

21

22

23

24

25

26

27

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 24, 2022, at 8:00 a.m., in Courtroom 12 of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Gerardo Vazquez, Gloria Roman, and Juan Aguilar, individually and on behalf of all others similarly situated, will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23 for class certification of Plaintiffs' claims against Defendant.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure on the ground that the Plaintiffs and class members, who are cleaning workers, have been misclassified as independent contractors rather than employees and, as a result, have suffered violations of various provisions of the Wage Order and the Labor Code. For instance, Plaintiffs and class members have had unlawful deductions taken from their wages in the form of excessive and unfair fees and charge backs in violation of California Labor Code §§ 218.5, 221. Plaintiffs and class members have also not been paid the applicable minimum wage for all hours worked in violation of Cal. Lab. Code §§ 1182.11-1182.13, 1194(a), 1194.2, 1197, and have not been paid overtime for hours worked beyond eight per day or forty per week in violation of Cal. Lab. Code §§ 510, 1194, 1198.  Nor have class members been reimbursed for necessary business expenses such as cleaning supplies and equipment and the cost of their own insurance in violation of Cal. Lab. Code § 2802.

The evidence submitted demonstrates that Plaintiffs have satisfied the requirements of Rule 23(a) and 23(b)(3) and that class certification is appropriate. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities included herein, the Declaration of Shannon Liss-Riordan, filed herewith, all pleadings and papers on file in this action, any matters of which the Court may or must take judicial notice, and such additional evidence or argument as may be presented at or prior to the time of the hearing.

Date: January 21, 2022                    Respectfully submitted,

                                          _/s/ Shannon Liss-Riordan_
                                          Shannon Liss-Riordan
                                          Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................6

    A.    JAN-PRO PROVIDES COMMERCIAL CLEANING SERVICES. .....................6

    B.    JAN-PRO IMPLEMENTS UNIFORM POLICIES AND PROCEDURES
        REGARDING ITS CLEANING WORKERS ........................................7

    C.    JAN-PRO HAS A UNIFORM RIGHT OF CONTROL OVER CLEANING
        WORKERS ........................................................................8

    D.    CLEANING WORKERS WORK UNIFORMLY UNDER THE AUSPICES OF
        JAN-PRO AND DO NOT HAVE  INDEPENDENTLY ESTABLISHED
        BUSINESSES. ....................................................................8

III.  ARGUMENT ........................................................................................................9

    A.    THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A) ..................9

        1.    The members of the class are so numerous that joinder is
            impracticable ........................................................................9

        1.    The claims satisfy the commonality requirement ......................................10

        2.    Expense Reimbursement and Unlawful Deductions...............................13

        3.    Minimum Wage and Overtime ................................................15

        4.    Plaintiffs satisfy the typicality requirement ...............................17

        5.    Plaintiffs and their counsel adequately represent the interests
            of the class........................................................................18

    B.    THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B) .................19

        1.    Common questions predominate over questions affecting
            individual class members ........................................................19

        2.    A class action is the superior mechanism for addressing
            the cleaning workers' claims ..................................................21

IV.   CONCLUSION....................................................................................................23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
<u>Aeliton de Souza et al. and The Solomon Partnership, Inc. d/b/a All-Pro Cleaning Systems et al.,</u>

4       AAA No. 11-523-01574-11 (Aug. 10, 2012) ................................................................19

5
<u>Alfred v. Pepperidge Farm, Inc.</u>

6       322 F.R.D. 519 (C.D. Cal. April 11, 2017) ..................................................................13

7
<u>Anchem Prods., Inc. v. Windsor</u>

        512 U.S. 591 (1997)........................................................................................................21

8
<u>Anderson v. Mt. Clemens Pottery</u>

9       328 U.S. 680 (1946).......................................................................................................23

10
<u>Ansari v. New York Univ.,</u>

11       179 F.R.D. 112 (S.D.N.Y.1998) ...................................................................................10

12
<u>Athol Daily News v. Board of Review of Div. of Employment & Training,</u>

        439 Mass. 171 (2003) ......................................................................................................2

13
<u>Awuah v. Coverall N. Am., Inc.</u>

14       460 Mass. 484, 952 N.E.2d 890 (2011) ..................................................................14, 19

15
<u>Awuah v. Coverall North America, Inc.,</u>

16       707 F. Supp. 2d 80 (D. Mass. 2010) ...............................................................................2

17
<u>Awuah v. Coverall North America, Inc.,</u>

        C.A. No. 07-10287 (D. Mass. Sept. 22, 2011).......................................................2, 4, 11

18
<u>Bell v. Farmers Insurance Exchange</u>

19       115 Cal. App. 4th 715 (2004) .......................................................................................23

20
<u>Berry v. Baca,</u>

        2005 WL 1030248 (C.D. Cal. May 2, 2005) ................................................................10

21
<u>Blackie v. Barrack,</u>

22       524 F.2d 891 (9th Cir. 1975) ..........................................................................................9

23
<u>Boston Bicycle Couriers, Inc. v. Deputy Dir. Of the Div. of Employment & Training</u>

        56 Mass. App. Ct. 473 (2002)........................................................................................13

24
<u>Bowerman v. Field Asset Services, Inc.,</u>

25       242 F. Supp. 3d 910 (N.D. Cal. 2017) ..........................................................................20

26
<u>Breeden v. Benchmark Lending Group, Inc.,</u>

27       229 F.R.D. 623 (N.D. Cal. 2005)..................................................................................10

28
<u>Chun-Hoon v. McKee Foods Corp.,</u>

        2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) ...........................................................9, 19

ii

Costello v. BeavEx, Inc.,
    810 F.3d 1045 (7th Cir. 2016) ..................................................................................5, 20

Coverall N. America v. Div. of Unemployment,
    857 N.E.2d 1083 (2006) .........................................................................................2

Cruz v. Dollar Tree Stores, Inc.,
    2009 WL 1458032 (N.D. Cal. May 26, 2009) ...................................................6, 16

Culley v. Lincare Inc.,
    2016 WL 4208567 (E.D. Cal. Aug. 10, 2016) ......................................................16

D'Italia v. Lowe's Home Centers, Inc.,
    Civ. No. 11-4758-BLS1 (Suffolk Super. Ct. December 12, 2012)...........................4

D'Italia v. Lowe's Home Centers, Inc.
    Civ. No. 11-4758-BLS1 (Suffolk Super. Ct. December 12, 2012)..........................12

Da Costa v. Vanguard Cleaning Sys., Inc.,
    No. CV 15-04743, 2017 WL 4817349 (Mass. Super. Sept. 29, 2017)............4, 12, 19

DaSilva v Border Transfer of MA, Inc.
    296 F. Supp. 3d 389 (D. Mass. 2017) ....................................................................5

DaSilva v. Border Transfer of MA, Inc.
    377 F. Supp. 3d 74 (D. Mass. 2019) ......................................................................5

Davis v. Farmers Ins. Exchange
    245 Cal. App. 4th 1302 (Cal. Ct. App. 2016) .......................................................14

De Giovanni v. Jani-King Int'l, Inc.,
    262 F.R.D. 71 (D. Mass. 2009)....................................................................... passim

DeGiovanni v. Jani-King Int'l, Inc.
    Civ. A. No. 07-10066-MLW (D. Mass. June 6, 2012) ........................................4, 19

Dilts v. Penske Logistics, LLC,
    2010 WL 1709807 (S.D. Cal. Apr. 26, 2010)....................................................6, 16

Dynamex Operations West, Inc. v. Superior Court,
    4 Cal. 5th 903 (2018) ..................................................................................1, 2, 4, 11

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974)................................................................................................9

Ellis v. Costco Wholesale Corp.
    285 F.R.D. 492 (N.D. Cal. 2012) ..........................................................................23

Estrada v. FedEx Ground Package Sys., Inc.,
    154 Cal. App. 4th 1 (2007) ..............................................................................6, 13

iii

Gallano v. Burlington Coat Factory of California, LLC
    67 Cal. App. 5th 953 (Cal. Ct. App. 2021) ...............................................................................14

Gentry v. Sup. Ct.
    42 Cal.4th 443 (2007) ...............................................................................21

Guifu Li v. A Perfect Franchise, Inc.
    No. 10–CV–01189–LHK, 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) ...............11

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir.1998) .................................................................. passim

Hanon v. Dataproducts Corp.
    976 F.2d 497 (9th Cir. 1992) ...............................................................................17

Hart v. Rick's Cabaret Int'l Inc.,
    2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010) ...............................................................................20

Hoffman v. Blattner Energy, Inc.,
    315 F.R.D. 324 (C.D. Cal. June 15, 2016) ...............................................................................16

James v. Uber Technologies, Inc.
    338 F.R.D. 123 (N.D. Cal. 2021) .............................................................................5, 15

James v. Uber Techs. Inc.,
    No. 19-CV-06462-EMC, 2021 WL 254303 (N.D. Cal. Jan. 26, 2021) .....................5

Kamm v. Cal. City Dev. Co.
    509 F.2d 205 (9th Cir. 1975) ...............................................................................21

Madrigal v. Tommy Bahama Grp., Inc.,
    2011 WL 10511339 (C.D. Cal. June 27, 2011) ...............................................................................9

Magadia v. Wal-Mart Assocs., Inc.,
    324 F.R.D. 213 (N.D. Cal. 2018) ...............................................................................19

Martins v. 3PD, Inc.,
    2013 WL 1320454 (D. Mass. Mar. 28, 2013) .............................................................................3, 5

Moreno v. JCT Logistics, Inc.
    2019 WL 3858999 (C.D. Cal. May 29, 2019) .............................................................................5, 20

Morillion v. Royal Packing Co.,
    22 Cal. 4th 575 (2000) ...............................................................................15

Mujo v. Jani-King Int'l, Inc.,
    No. 3:16-CV-1990 (VAB), 2019 WL 145524 (D. Conn. Jan. 9, 2019) .....................2

Myers v. Jani-King of Philadelphia, Inc. et al.,
    2015 WL 1055700 (E.D. Pa. Mar. 11, 2015) .............................................................................2, 18

Nationwide Mut. Ins. Co. v. Darden,
  503 U.S. 318 (1992) ...........................................................................................21

Norris-Wilson v. Delta-T Group, Inc.
  270 F.R.D. 596 (S.D. Cal. 2010) ..................................................................11, 17

Nunez v. Jan-Pro Franchising Int'l Inc.,
  20-CIV-02595 (San Mateo Cty.) ......................................................................21

O'Connor v. Uber Techs., Inc.,
  311 F.R.D. 547 (N.D. Cal. 2015)........................................................................15

O'Brien v. Encotech Const. Servs., Inc.,
  203 F.R.D. 346  (N.D. Ill. 2001).........................................................................22

Perez v. Safety-Kleen Systems,Inc.,
  253 F.R.D. 508 (N.D. Cal. 2008)........................................................................22

Prince v. CLS Transp., Inc.,
  118 Cal. App. 4th 1320 (2004) ........................................................................6, 16

Ribeiro v. System4LLC
  AAA No. 01 15 0003 8637 (Aug. 23, 2016), aff'd System4 LLC v. Ribeiro, 75 F. Supp. 3d 297 (D.
  Mass. 2017)........................................................................................................19

Richie v. Blue Shield of California
  2014 WL 6982943 (N.D. Cal. Dec. 9, 2014).................................................6, 13, 21

Romero v. Producers Dairy Foods, Inc.
  235 F.R.D. 474 (E.D. Cal. 2006) ..................................................................17, 22

Sav-On Drug Stores, Inc. v. Superior Court
  34 Cal. 5th 319 (Cal. 2004).................................................................................17

Shaw v. AMN Healthcare, Inc.,
  326 F.R.D. 247 (N.D. Cal. 2018).........................................................................16

Smith v. Cardinal Logistics Mgmt. Corp.
  No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008).........................10, 17

Soto v. Diakon Logistics (Delaware), Inc.,
  2013 WL 4500693 (S.D. Cal. Aug. 21, 2013) .....................................................10

Torres v. Mercer Canyons Inc.,
  835 F.3d 1125 (9th Cir. 2016) ............................................................................16

Trosper v. Styker Corp.,
  2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ....................................................5, 13

Tyson Foods, Inc. v. Bouphakeo,
  136 S. Ct. 1036 (2016).......................................................................................16

v

Uschold v. NSMG Shared Services, LLC
    333 F.R.D. 157 (N.D. Cal. 2019)...................................................................13

Vaquero v. Ashley Furniture Industries, Inc.,
    824 F.3d 1150 (9th Cir. 2016) .........................................................6, 16, 20

Vazquez v. Jan-Pro Franchising Int'l, Inc.
    10 Cal. 5th 944, 478 P.3d 1207 (2021)......................................................18

Vazquez v. Jan-Pro Franchising Int'l, Inc.
    986 F.3d 1106 (9th Cir. 2021) ....................................................2, 5, 12, 18

Wells Fargo Home Mortgage Overtime Pay Litig.,
    571 F.3d 953 (9th Cir. 2009) .....................................................................11

Williams v. Jani-King of Philadelphia, Inc. et al.,
    837 F.3d 314 (3d Cir. 2016) ...........................................................2, 12, 19

Wilson v. Kiewit Pac. Co.
    C 09-03630 SI, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) ...................23

Wixon v. Wyndham Resort Dev. Corp.
    2009 WL 3353445 (N.D. Cal. Oct. 19, 2009) ...........................................17

**Statutes**

Cal. Bus. & Prof. Code §17200 *et seq.* .............................................................3

Cal. Lab. Code § 1182.11 ...............................................................................15

Cal. Lab. Code § 221 ......................................................................................15

Cal. Lab. Code § 2802(a)................................................................................14

**Other Authorities**

7A Charles Alan Wright, Arthur R. Miller, *et al*.
    Federal Practice and Procedure, § 1768 (3d ed. 1986) ............................17

**Rules**

Fed. R. Civ. P. 23 ................................................................................17, 19, 20

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.      INTRODUCTION

Plaintiffs Gloria Roman, Juan Aguilar, and Gerardo Vazquez bring this case against Defendant Jan-Pro Franchising International, Inc. ("Jan-Pro") on behalf of mostly immigrant cleaning workers to challenge what they contend are illegal employment practices by a large national cleaning company that sells low-paying janitorial jobs under the guise that the workers are buying their own businesses. In order to perform cleaning work, Jan-Pro cleaning workers such as Plaintiffs must pay large sums of money up front to become Jan-Pro "franchisees" and are further required to pay numerous other fees on an ongoing basis for the right to continue working for Jan-Pro, including franchise fees, finder's fees, workers' compensation insurance, liability insurance, and assorted other fees. Plaintiffs assert that they were actually employees under California law and as a result of being misclassified as independent contractors, have suffered numerous violations of the California Labor Code and the applicable IWC wage order, by having the above-mentioned fees deducted from their wages; being deprived of minimum wage and overtime; and being required to pay their own expenses necessary to do their jobs.

Plaintiffs now move for class certification on their misclassification claim and related claims for California Labor Code violations. Other courts have consistently certified classes of cleaning workers like the plaintiffs in this case, who were classified as franchisee independent contractors and contend that they were actually employees under the "ABC test", which the California Supreme Court adopted in <u>Dynamex Operations West, Inc. v. Superior Court</u>, 4 Cal. 5th 903 (2018),[1] and which the Ninth Circuit has confirmed applies in this case, <u>Vazquez v. Jan-Pro Franchising Int'l, Inc.</u>, 986 F.3d 1106, 1122 (9th

---

[1]     Specifically, under the ABC test, the worker is presumed to be an employee, and in order to overcome that presumption*, the employer* must prove **all three prongs**:

(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

1   Cir. 2021),[2] rejecting Jan-Pro's vociferous arguments to the contrary.[3] See De Giovanni v. Jani-King,

2   262 F.R.D. 71, 84-86 (D. Mass. 2009) (certifying Jani-King franchisees' misclassification claims under

3   all three prongs of the "ABC" test); Awuah v. Coverall North America, Inc., C.A. No. 07-10287, Dkt.

4   No. 365 (D. Mass. Sept. 27, 2011) (certifying franchisees' misclassification claims against another

5   cleaning franchise company under Massachusetts ABC test); Mujo v. Jani-King Int'l, Inc., No. 3:16-CV-

6   1990 (VAB), 2019 WL 145524, at *1 (D. Conn. Jan. 9, 2019) (certifying Jani-King franchisees'

7   misclassification claims under Connecticut's ABC test); see also Myers v. Jani-King of Philadelphia,

8   Inc. et al., 2015 WL 1055700 (E.D. Pa. Mar. 11, 2015) (certifying Jani-King franchisees'

9   misclassification claims under common law multi-factor "right to control" test), aff'd sub nom, Williams

10  v. Jani-King of Philadelphia, Inc. et al., 837 F.3d 314 (3d Cir. 2016).

11         Massachusetts courts applying the exact same "ABC" test for employee status have consistently

12  recognized that it makes little sense to determine classification of a given position based on an

13  individualized analysis as it would make it virtually impossible to challenge a company's systemic

14  decision to misclassify a group of workers. See Athol Daily News v. Board of Review of Div. of

15  Employment & Training, 439 Mass. 171, 181 n.14 (2003) ("criteria based on the factual circumstances

16  of each individual worker, rather than on the nature of the services performed, would have the

17  anomalous result of inconsistent status determinations with respect to workers performing identical

18  services for the same company"); Martins v. 3PD, Inc., 2013 WL 1320454, at *8-9 (D. Mass. Mar. 28,

19       [2]    Indeed, in announcing the ABC test, the Dynamex Court expressly adopted the Massachusetts

20  version of an "ABC" test and specifically cited with approval two Massachusetts cases which, applying
the same test, held that a cleaning "franchisee" was an employee of a cleaning "franchisor" under

21  Prongs B and C of the test respectively.   See Dynamex, 4 Cal.5th at 963 (citing Awuah v. Coverall
North America, Inc., 707 F. Supp. 2d 80, 82–84 (D. Mass. 2010) (rejecting defendant's argument that it

22  was in the business of "franchising," rather than commercial cleaning and granting plaintiff franchisees'
motion for summary judgment on liability); Coverall N. America v. Div. of Unemployment, 857 N.E.2d

23  1083, 1087 (2006) (considering only part C of the ABC standard and holding that franchisee was an
employee); see also Vazquez, 986 F.3d at 1123 (noting that "Dynamex favorably cited two

24  Massachusetts decisions that applied the ABC test in the franchise context" as evidence that "the
franchise context does not alter the Dynamex analysis…").

25       [3]    Any argument by Jan-Pro that the ABC test must be applied differently in the franchise context
has been foreclosed by the Ninth Circuit's decision in this case. Vazquez v. Jan-Pro Franchising Int'l,

26  Inc., 986 F.3d 1106, 1124 (9th Cir. 2021) (holding that "the franchise context does not alter the
Dynamex analysis…") (emphasis added).  Likewise, any argument by Jan-Pro that Dynamex does not

27  apply in this case, where the cleaning workers did not have direct contracts with Jan-Pro Franchising
International and instead contracted with intermediary "master franchisees," has been foreclosed by the

28  Ninth Circuit's decision, which affirmed that it is the proper test to apply to Plaintiffs' claims in this
case.  Id. at 1119-22.

2

2013) ("3PD I") (noting that "[c]lass actions are [] the preferred vehicle for adjudicating employment classification claims" because "[o]f necessity, a company's employee-classification scheme applies to all individuals classified under it"); De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 85 (D. Mass. 2009) ("Both the United States Supreme Court and the Massachusetts Supreme Judicial Court have expressed a strong preference for rendering decisions on the classification of employees on class wide basis").

As recognized in these cases, the issues raised here present common questions of law that can easily be resolved based on common facts for all class members. In this case, just like the above-cited cases, Plaintiffs allege that they were misclassified as independent contractors pursuant to identical franchise agreements and uniform policy manuals. Plaintiffs seek to certify a class consisting of all individuals who signed franchise agreements with Jan-Pro master franchises in the state of California and performed cleaning services for Jan-Pro since December 12, 2004[4], all of whom have been subject to Jan-Pro's uniform practice of classifying cleaning workers as independent contractors and requiring these workers to pay for the right to work. Plaintiffs' claims therefore present a single underlying legal question, common to every proposed class member regarding whether these individuals, who performed cleaning services pursuant to a Jan-Pro franchise agreement, were misclassified as independent contractors. This question can be answered by examining common, class-wide evidence, including Jan-Pro's self-descriptions and advertising, its standard "Franchise Agreement," and incorporated manuals, and Jan-Pro's own testimony regarding its uniform policies and practices that apply to all class members. The Court should therefore grant this motion and certify Plaintiffs' claims against Jan-Pro.

Indeed, the Ninth Circuit in this very case observed that "Prong B may be the most susceptible to summary judgment on the record already developed", as courts look at whether the putative employee were "necessary" to the hiring entity's business and whether "the services of the putative employee are continuously used by the hiring entity." Id. at 1126-27. The Ninth Circuit further recognized that:

> Jan-Pro's business ultimately depends on someone performing the cleaning. That work is performed solely by the unit franchisees. Thus, Jan-Pro fundamentally depends on a supply of

---

[4]     The proposed class period runs from four years prior to the filing of the Amended Complaint that added these California plaintiffs and claims on December 12, 2008. See Dkt. No. 29.  Plaintiffs' claims under the UCL, Cal. Bus. & Prof. Code §17200 et seq., which has a statute of limitations of four years, date back to December 2004.

> unit franchisees for its business (and, accordingly, requires its regional master franchisees to sell a minimum number of unit franchises). Second, Jan-Pro earns a percentage of the payments that customers pay for cleaning services. Thus, unlike the medallion owners in <u>Parks Cab</u>, Jan-Pro is not indifferent to how much work unit franchisees do or how well they perform that work. It is not simply renting out its trademark and goodwill to independent entities that could use it to perform cleaning services. Rather, Jan-Pro is actively and continuously profiting from the performance of those cleaning services as they are being performed.

<u>Id.</u> at 1126. Further, in assessing under Prong B whether Jan-Pro holds itself out as a cleaning business, the Ninth Circuit again described evidence that is common to the entire class, such as how:

> Jan-Pro's websites and advertisements likewise promote Jan-Pro as being in the business of cleaning. For example, the website describes Jan-Pro as an "environmentally responsible commercial cleaning company" and explains that Jan-Pro provides "cleaning services."

<u>Id.</u> at 1127-28.

The Ninth Circuit's analysis unequivocally indicates that adjudication of Plaintiffs' claims now hinges on analysis of the same legal question, common to every member of the proposed class – whether Jan-Pro cleaning franchisees such as Plaintiffs perform services in Jan-Pro's usual course of business (Prong B of the test). <u>Dynamex</u>, 4 Cal. 5th at 963.[5] Indeed, the Ninth Circuit's analysis indicates that it is virtually a foregone conclusion that this Court find that Jan-Pro cannot satisfy Prong B with regard to all of its cleaning workers as a class.[6] As such, class treatment is particularly appropriate here.

The Ninth Circuit further recognized that "the ABC test is conjunctive, so a finding of any prong against the hiring entity directs a finding of an employer-employee relationship." <u>Vazquez</u>, 986 F.3d at

---

[5]    <u>See</u> <u>D'Italia v. Lowe's Home Centers, Inc.</u>, Civ. No. 11-4758-BLS1 (Suffolk Super. Ct. December 12, 2012) (Billings, J.) (Ex. B to the Liss-Riordan Decl.) at *13 ("Lowe's either is in the businesses of kitchen and bath remodeling, or it isn't."); <u>De Giovanni</u>, 262 F.R.D. at 85 ("common issues will predominate to determine whether the services performed by the class fall outside of Jani– King's usual course of business" because there are no individualized inquiries regarding "the type of business operated by Jani–King").

[6]    Because the Parties had not moved for summary judgment at that time, the Ninth Circuit could not hold for the Plaintiffs outright. Plaintiffs have now concurrently moved for summary judgment. Indeed, courts in Massachusetts have granted summary judgment to cleaning franchisees for Jan-Pro's principal competitors under Prong B of the identically-worded Massachusetts test. <u>See, e.g.</u>, <u>Awuah v. Coverall North America, Inc.</u>, C.A. No. 07-10287 (D. Mass. Sept. 22, 2011) (granting summary judgment to franchisee cleaning workers on their claim of misclassification, also under prong B); <u>Da Costa v. Vanguard Cleaning Sys., Inc.</u>, No. CV 15-04743, 2017 WL 4817349, at *1 (Mass. Super. Sept. 29, 2017) (granting summary judgment to franchisee cleaning workers, holding that defendant failed to meet its burden of establishing both Prong A and B of the Connecticut and Massachusetts ABC tests); <u>DeGiovanni v. Jani-King Int'l, Inc.</u>, Civ. A. No. 07-10066-MLW (D. Mass. June 6, 2012) (Wolf, J.) (Ex. A to Liss-Riordan Decl.).

1125. Therefore, this Court may certify a class solely on Prong B of the ABC test.[7] Id.; see also Costello

v. Beavex, 810 F.3d 1045, 1060-61 (7th Cir. 2016) (reversing order denying class certification, where

court concluded that commonality existed on the dispositive second prong of the ABC test; also

reversing district court's holding that the first prong could not be resolved on common evidence); James

v. Uber Techs. Inc., No. 19-CV-06462-EMC, 2021 WL 254303, at *11 (N.D. Cal. Jan. 26, 2021)

(certifying class under Prongs A and B of the Dynamex ABC test); Moreno v. JCT Logistics, Inc., 2019

WL 3858999, at *13 (C.D. Cal. May 29, 2019) (certifying class on Prong B alone; "Because the type of

work performed by the putative class members and the scope of Defendants' business are capable of

determination on a classwide basis, the Court finds that common issues predominate under the ABC

test."). Thus, this Court should certify a class based on Prong B of the ABC test alone.

As such, Plaintiffs' motion for class certification should be granted, without need for the Court to

conduct a Rule 23 analysis for each of the underlying wage claims. However, should this Court believe

it were necessary to address each of the claims Plaintiffs have asserted, courts also routinely certify

classes of employees alleging claims for expense reimbursement and unlawful deductions;[8] as well as

---

[7]     While it is not necessary for Plaintiffs to establish commonality under Prongs A and C, adjudication of these prongs would likewise turn on common evidence and a common legal question. See DaSilva v Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 400 (D. Mass. 2017) (certifying class under prongs A and C); Martins v. 3PD, Inc., 2013 WL 1320454 *6 (D. Mass. Mar. 28, 2013) (certifying class under Prongs A and B); see also De Giovanni v. Jani-King Intern., Inc., 262 F.R.D. 71, 86 (D. Mass. 2009) ("Common questions will predominate for the plaintiffs employment classification class under all three prongs of the Massachusetts' test."). Under Prong A, the issue is whether the alleged employer has the right to exercise control over the worker's performance. James v. Uber Technologies, Inc., 338 F.R.D. 123, 136 (N.D. Cal. 2021) ("The issue under prong A is Uber's right to control whether drivers use the application or not (and conversely, drivers' right to choose among options made available by Uber); the same questions apply to all drivers and are thus commonly shared."). Here, common documents such as Jan-Pro's franchise agreement and overarching policies will be determinative of Jan-Pro's right to exercise control. Therefore, the Prong A inquiry is also suitable for class certification. Infra, at pp. 12.
        Under Prong C, the issue is whether the worker is "customarily engaged in an independently established" business of the same nature as the work performed for the putative employer. The relevant examination under Prong C of the "ABC" test is whether the individual performs the services under his or her own "hat", reflecting an independently established business, or wears the hat of the employer. See DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, 97 (D. Mass. 2019). Here, Plaintiffs will argue that Jan-Pro cleaning workers as a class "wear the hat" of Jan-Pro when they are completing cleaning accounts. Thus, Prong C will also be resolved according to common evidence and is suitable for class certification. Infra, at pp. 12.

[8]     See, e.g., Trosper v. Styker Corp., 2014 WL 4145448, at *9 (N.D. Cal. Aug. 21, 2014) ("This Court and others in this Circuit have found that commonality is met when, as here, the proposed class asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses (continued on next page)

minimum wage and overtime violations.[9] Most plainly, Plaintiffs' claims for business expenses and

wage deductions will be resolved based on evidence and legal questions that are common to the class, as

it is Jan-Pro's standard form franchise agreements that set forth the various fee amounts that Plaintiffs

and other cleaning workers are required to pay for their jobs up front and on an ongoing basis. For these

reasons, this Court may also certify classes for each of the alleged California Labor Code violations.

## II.    FACTUAL BACKGROUND

### A.    Jan-Pro Provides Commercial Cleaning Services.

Jan-Pro Franchising International Inc. (hereinafter "Jan-Pro) is a national commercial cleaning

company. Jan-Pro's contracts note that it "is in the business of operating and franchising comprehensive

cleaning and maintenance businesses which engage in the performance of complete cleaning and/or

maintenance related services, including, but not limited to, commercial, industrial, institutional and

residential cleaning or maintenance services under the name JAN-PRO…" (Jan-Pro Regional Master

Franchise Agreement, § 1.1, attached as Exhibit 2 to Liss-Riordan Decl.).[10] Jan-Pro has held itself out to

the public on its website as being in the business of "Cleaning & Disinfecting", with numerous web

pages addressing "Who We Clean" and "Why JAN-PRO Cleaning"; and further, advertising that "Jan-

Pro Cleaning & Disinfecting Means Clean" and "Jan-Pro Cleaning & Disinfecting is the best in the

commercial cleaning business for a reason". See Ex. 3. Indeed, the Frequently Asked Questions page

answers numerous questions relating to cleaning, such as "Does Jan-Pro Cleaning & Disinfecting clean

---

in violation of Section 2802."); Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1 (Cal. Ct. App. 2007) (recognizing claims for failure to reimburse expenses arising from misclassification as independent contractors and finding claims suitable for class treatment); Richie v. Blue Shield of California, 2014 WL 6982943 *15 (N.D. Cal. Dec. 9, 2014) (finding that the requirements of Rule 23 were met with regard to certain business expenses claims).

[9]     See, e.g., Vaquero v. Ashley Furniture Industries, Inc., 824 F.3d 1150, 1155 (9th Cir. 2016) (finding that the plaintiffs had satisfied commonality and predominance because "Defendants' consciously chosen compensation policy deprived the class members of earnings in violation of California's minimum wage laws. In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions *necessarily* caused the class members' injury. Defendants either paid or did not pay their sales associates for work performed. No other factor could have contributed to the alleged injury"); see also Cruz v. Dollar Tree Stores, Inc., 2009 WL 1458032, at *9 (N.D. Cal. May 26, 2009) (overtime claims); Dilts v. Penske Logistics, LLC, 2010 WL 1709807, at *11 (S.D. Cal. Apr. 26, 2010) (claims for meal and rest breaks, overtime compensation, business expenses, unlawful deductions, and timely payment of wages); see also Prince v. CLS Transp., Inc., 118 Cal. App. 4th 1320, 1328 (Cal. Ct. App. 2004) ("wage and hour disputes routinely proceed as class actions").

[10]     All exhibits cited herein are attached to the Declaration of Shannon Liss-Riordan ("Liss-Riordan Decl.") filed herewith unless otherwise indicated.

6

during or after business hours?"; "Do you clean up biohazards?"; and "Do you do terminal cleaning? <u>Id.</u> During COVID-19, Jan-Pro's website has touted its cleaning services as "Helping you combat the Covid-19 Pandemic" and outlined the relevant, specific features of Jan-Pro's cleaning services, such as "Eliminate 99.9% of viruses and bacteria with EnviroShield® disinfecting system". <u>See</u> Ex. 4.

**B.      Jan-Pro Implements Uniform Policies and Procedures Regarding Its Cleaning Workers**

Jan-Pro has created a uniform system in which all processes, policies and procedures are provided by Jan-Pro International, Inc. through its manuals and template contracts, and they are implemented, as instructed, by its master franchisees with whom Jan-Pro contracts. <u>See</u> Ex. 1 Kissane Dep., at 25; 76-77; Ex. 15 (P&PM); Ex. 16, Safety Manual. Jan-Pro also drafts and provides training manuals on how to perform commercial cleaning, which are used to train Plaintiffs and other cleaning workers. <u>See</u> Ex. 1, Kissane Dep., at 77. Jan-Pro prepares template Uniform Franchise Offering Circulars ("UFOC"), which are now called the Federal Disclosure Documents ("FDDs")), for its master franchisees' use. Ex. 7, Thompson Dep., at 17. Jan-Pro requires its regional masters to submit all FDD's to it for approval before use. <u>See</u> Ex. 2, Regional Master Franchise Agreement, at § 4.24. Jan-Pro drafts template franchise agreements, which have remained largely identical during the class period. <u>See</u> Ex. 1, Kissane Dep., at 25. Through these template franchise agreements, Jan-Pro uniformly classifies its cleaning worker "unit franchisees" as independent contractors. <u>See, e.g.</u>, Ex. 13, Vazquez FA, at § 11 ("Franchisee is and shall remain at all times a completely independent contractor in business for itself"); Ex. 12, Roman FA, at § 11; Ex. 11, Aguilar FA, § 11.

The franchise agreements also set forth the franchise fee that cleaning workers must pay in order to work on cleaning accounts for Jan-Pro. <u>See, e.g.</u>, Ex. 11, Aguilar FA, §7(A) (requiring up front franchise fee of $950.00 and for the balance of $1850.00 to be paid in monthly installments with a 10% interest rate); Ex. 12, Roman FA, at § 7(A) (same); Ex. 13, Vazquez FA, at § 7 (requiring up front franchise fee of $5000.00 and for the balance of $4000.00 to be paid in monthly installments with a 10% interest rate). Pursuant to the uniform franchise agreement, Jan-Pro also requires cleaning workers such as Plaintiffs to pay numerous other fees on an ongoing basis, such as 5% of all cleaning revenue from the accounts they clean as a Management Fee; a Sales and Marketing Fee; an Isolated Cleaning Service Fee; and a Bid and Negotiation Fee. <u>See</u> Ex. 1, Kissane dep., at 33; Ex. 11, Aguilar FA, § 7; Ex. 12,

Roman FA, at § 7; Ex. 13, Vazquez FA, § 8. Jan-Pro receives 10% of all franchise fees paid by the franchisees and 4% of all cleaning revenue. See Ex. 1, Kissane dep., 33, 63-64, 83, 130-131; see also Ex. 2, Regional Master Franchise Agreement, § 4.7(b). Significantly, Jan-Pro lists as its own revenue all the revenue received from the cleaning services performed by franchisees such as Plaintiffs. Ex. 1, Kissane Dep., at 63.

As set forth in the standard form franchise agreement, apart from an initial starter kit, Jan-Pro does not provide its unit franchisees with cleaning supplies and equipment necessary to perform their work, and it does not reimburse cleaning worker franchisees for their necessary business expenses as a matter of policy. See Ex. 1 (Kissane Dep.) at 157-158; 91-93; Ex. 11, Aguilar FA, § 6(A); Ex. 12, Roman FA, at § 6(A); Ex. 13, Vazquez FA, § 6(A).

**C.      Jan-Pro Has a Uniform Right of Control Over Cleaning Workers**

Jan-Pro reserves the absolute right to control the business of any Jan-Pro "master franchisee" or "**unit franchisee**" like the Plaintiffs in this case. See Ex. 2 to Liss-Riordan Decl. (Master Franchise Agreement) at § 4.28 ("Franchisor reserves the right to establish company policies and/or procedures pertaining to the operation of Regional Master Franchisee's franchised business, the terms of this Agreement, **or the business of any unit franchisee** subject to the licenses granted under this Agreement"). Jan-Pro controls its master franchisees by requiring that they "follow current established JAN-PRO policies, practice and procedures, and as they may be amended from time to time, and agrees not to deviate from them without prior written approval." Id., § 4.2. In turn, Jan-Pro requires that its master franchisees exercise control over all unit franchisees. Specifically, "all work and services performed by [the] Regional Master Franchisee will be performed and/or supervised by [the] Regional Master Franchisee or its authorized agents/employees." Id. Jan-Pro is a third-party beneficiary to all agreements between master franchisees and unit franchisees like the Plaintiffs. Id. § 14.1.

**D.      Cleaning Workers Work Uniformly Under the Auspices of Jan-Pro and Do Not Have Independently Established Businesses.**

For the majority of the class period,[11] the standard franchise agreements drafted by Jan-Pro included non-compete clauses preventing franchisees from performing any other commercial cleaning

---

[11]      Jan-Pro removed this clause in approximately 2013.

services while working pursuant to the franchise agreement, such that the cleaning workers are necessarily dependent on Jan-Pro, and all of accounts they clean are customers of Jan-Pro. See Ex. 11, Aguilar FA, §19; Ex. 12, Roman Franchise FA, §19; Ex. 13, Vazquez FA, §19.  Further, Jan-Pro requires franchisees to wear uniforms with the Jan-Pro logo and to hold themselves out to the public as being part of "Jan-Pro."  See Ex. 1, Kissane dep., 173; see also Ex. 8, Vazquez Decl., ¶ 8; Ex. 9, Aguilar Decl., ¶ 7; Ex. 10, Roman Decl. ¶ 7.

### III.   ARGUMENT

A "district court has broad discretion to determine whether a class should be certified." Madrigal v. Tommy Bahama Grp., Inc., 2011 WL 10511339, *2 (C.D. Cal. June 27, 2011). In deciding a motion for class certification, courts focus on whether the requirements of Rule 23 have been satisfied. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). "The court is bound to take the substantive allegations of the complaint as true" in determining the appropriateness of class certification. Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir. 1975). "[T]he court must only determine if the plaintiffs have proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence." Chun-Hoon v. McKee Foods Corp., 2006 WL 3093764, at *4 (N.D. Cal. Oct. 31, 2006) (internal citation omitted). As set forth above, courts have certified virtually identical wage and misclassification claims brought by cleaning franchisees under Massachusetts and Connecticut ABC tests for employee-status.

Indeed, class certification is eminently warranted here because the Plaintiffs and all class members signed largely identical franchise agreements, performed the same cleaning services for Jan-Pro's customers, and were subject to Jan-Pro's uniform cleaning policies and procedures. The question of whether their services fell within Jan-Pro's usual course of business (prong B) will also clearly be common to all class members. Plaintiffs and all class members were also required to pay the same categories of initial and ongoing fees as a condition of employment. For all these reasons, and for the reasons set forth further below, the Court should find that all of the requirements of Rule 23 are met and that class certification is appropriate.

### A.   The Class Satisfies the Requirements of Rule 23(a)

#### 1.     The members of the class are so numerous that joinder is impracticable

A plaintiff will satisfy the numerosity requirement if "the class is so large that joinder of all

members is impracticable." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir.1998). "There is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable." <u>Breeden v. Benchmark Lending Group, Inc.</u>, 229 F.R.D. 623, 628 (N.D. Cal. 2005). "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." <u>Villalpando</u>, 303 F.R.D. at 605-06; <u>see also</u> <u>Berry v. Baca</u>, 2005 WL 1030248, *3 (C.D. Cal. May 2, 2005); <u>Ansari v. New York Univ.</u>, 179 F.R.D. 112, 114 (S.D.N.Y.1998). Here, there can be no question that the class satisfies the numerosity requirement. Indeed, just one of the California master franchises had more than this number during the class period. <u>See</u> Ex. 17, Connor-Nolan FDD, 2014, at 264.

### 1. The claims satisfy the commonality requirement

"Rule 23(a)(2) has been construed permissively" such that "[a]ll questions of fact and law need not be common to satisfy the rule." <u>Hanlon</u>, 150 F.3d at 1019. Instead, courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Smith v. Cardinal Logistics Mgmt. Corp.</u>, No. 07-2104 SC, 2008 WL 4156364, at *5 (N.D. Cal. Sept. 5, 2008). Courts throughout the Ninth Circuit "have found that commonality is met when the proposed class of plaintiffs asserts that class members were improperly classified as independent contractors instead of employees." <u>Soto v. Diakon Logistics (Delaware), Inc.</u>, 2013 WL 4500693, *4 (S.D. Cal. Aug. 21, 2013), <u>clarified on denial of reconsideration</u>, 2013 WL 5939787 (S.D. Cal. Nov. 5, 2013) (collecting cases).

Here, Plaintiffs challenge a common practice – Jan-Pro's misclassification of its cleaning workers as independent contractors. Under the standard franchise agreements that Jan-Pro drafted, Jan-Pro classifies all of its cleaning "franchisees" who perform the cleaning work as independent contractors, not employees. Ex. 13, Vazquez FA, at § 11 ("Franchisee is and shall remain at all times a completely independent contractor in business for itself"); Ex. 12, Roman FA, at § 11; Ex. 11, Aguilar FA, § 11. Thus, Plaintiffs seek the certification of a class of all individuals who signed franchise agreements with Jan-Pro master franchises in the state of California and performed cleaning services for Jan-Pro since December 12, 2004 (four years before the filing of the Complaint).

"District Courts throughout this circuit have found that commonality is met when the proposed class of plaintiffs asserts that class members were improperly classified as independent contractors instead of employees." Guifu Li v. A Perfect Franchise, Inc., No. 10–CV–01189–LHK, 2011 WL 4635198, at *7 (N.D. Cal. Oct. 5, 2011); see also Norris-Wilson v. Delta-T Group, Inc., 270 F.R.D. 596, 604 (S.D. Cal. 2010) (misclassification is, "by itself, a factual and legal issue that satisfies Rule 23(a)."). Indeed, courts considering certification of claims involving cleaning franchisees under the identical Massachusetts ABC test have consistently certified such claims. See De Giovanni, 262 F.R.D. at 84-86; Coverall, C.A. No. 07-10287, Dkt. 365 (D. Mass. Sept. 27, 2011).

Jan-Pro may attempt to argue that whether each cleaning worker is properly classified as an independent contractor or employee must be determined individually. But, as the O'Connor v. Uber Technologies, Inc. court recognized when granting class certification on the issue of independent contractor misclassification, any such position by an employer would be utterly inconsistent:

> As other courts weighing certification of employment misclassification claims have recognized, however, there is inherent tension between this argument and Uber's position on the merits: on one hand, Uber argues that it has properly classified *every single driver* as an independent contractor; on the other, Uber argues that individual issues with respect to each driver's "unique" relationship with Uber so predominate that this Court (unlike, apparently, Uber itself) cannot make a classwide determination of its drivers' proper job classification. See In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (holding that "[a]n internal policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees. This undercuts later arguments that the employees are too diverse for uniform treatment"); see also Norris–Wilson v. Delta–T Group, Inc., 270 F.R.D. 596, 602 (S.D. Cal. 2010) (explaining that "it may be that [Defendant] believes its workers are in fact independent contractors for reasons unique to each individual, but it's more likely the case [Defendant] believes the independent contractor classification is universally appropriate. That runs at cross-purposes with the reason for objecting to class certification, which is that it's impossible to reach general conclusions about the putative class as a whole") (emphasis omitted). It appears that at least one of these arguments cannot be entirely accurate, and for the purposes of resolving this motion the Court concludes that a number of Uber's class certification arguments are problematic.

2015 WL 5138097 *2 (N.D. Cal. Sept. 1, 2015).

Here, commonality is particularly clear under Prong B because all class members perform the same work (commercial cleaning) and whether that work is within Jan-Pro's usual course of business will necessarily be determined on a common basis for the entire class. Prong B provides that an individual is an employee unless his or her services are performed "outside the usual course of the hiring entity's business." Dynamex, 4 Cal.5th at 959. As the Ninth Circuit has set forth in detail in this case,

whether Jan-Pro can satisfy the requirements of Prong B will be resolved based on common evidence *about Jan-Pro's business*. See Vazquez, 986 F.3d at 1125-28; see also De Giovanni, 262 F.R.D. at 85 ("common issues will predominate to determine whether the services performed by the class fall outside of Jani–King's usual course of business" because there are no individualized inquiries regarding "the type of business operated by Jani–King."); D'Italia v. Lowe's Home Centers, Inc., Civ. No. 11-4758-BLS1 (Suffolk Super. Ct. December 12, 2012) (Ex. B to Liss-Riordan Decl.) at p.13 ("Lowe's either is in the businesses of kitchen and bath remodeling, or it isn't.").

Prong A of the "ABC" test can also be resolved on a common basis for the class. Indeed, the Third Circuit upheld the certification of wage claims brought by a class of Pennsylvania cleaning franchisees under a multi-factor "right of control" test (similar to Prong A of the "ABC" test), finding that "[t]he Jani-King franchise agreement, policies manual, and training manual are common to the class." Williams v. Jani-King of Philadelphia, Inc., 837 F.3d at 321-22.  And in Vanguard, the court applied the "ABC" tests of Connecticut and Massachusetts to find that cleaning franchise workers in both states were actually the defendant franchisor company's employees under Prong A (the right to control prong) based on evidence including the defendant's "operations manual, franchise agreement, and other training, policies, and procedures", Vanguard, 2017 WL 4817349 at *6, as well as under Prong B, based on its finding that the workers' cleaning services were performed within the usual course of the defendant cleaning company's business. Id. ("Vanguard cannot reasonably maintain that commercial cleaning is not part of its ordinary course of business to avoid classifying its workers as employees while simultaneously touting that it is 'a leader in the commercial cleaning industry.'").

Commonality also exists under Prong C (as the Court found in DeGiovanni, 262 F.R.D. at 85) because the standard franchise agreements that Plaintiffs and many class members were required to sign contain a non-competition agreement that prohibited them from performing commercial cleaning services for anyone else, and therefore the question of whether Jan-Pro's cleaning workers were "customarily engaged in an independently established trade, occupation, profession or business" will be identical for Plaintiffs and all class members. See, e.g., Ex. 12, Roman FA, at § 19 ("Franchisee agrees during the Term of this Agreement not to engage in or have any financial interest in, either as an officer, agent, stockholder, employee, director, owner or partner, any business (other than the franchise granted

hereunder) which performs janitorial or janitorial management services, franchising, sales or contracting or any related business anywhere."); Ex. 13, Vazquez FA, at § 19; Ex. 11, Aguilar FA, § 19. Further, all class members performed work under the same conditions insofar as they were required to wear and utilize Jan-Pro branding and hold themselves out as part of the Jan-Pro system, and therefore, they performed their work while "wearing the hat" of Jan-Pro, and not of their own independent business. Boston Bicycle Couriers, Inc. v. Deputy Dir. Of the Div. of Employment & Training, 56 Mass. App. Ct. 473, 480 (2002) (cited by Dynamex, 4 Cal.5th at 963).

Therefore, the Plaintiffs' and all class members' employment status present common questions that can be determined based on common evidence.[12] Because the overarching question of whether franchisees were misclassified as independent contractors will predominate, the Court need not engage in a claim-by-claim analysis of the underlying wage claims (and indeed, the courts in other similar cases like DeGiovanni and Williams did not do so). However, in any case, Plaintiffs' claims under the Labor Code are all susceptible to common proof.

### 2.    Expense Reimbursement and Unlawful Deductions

Plaintiffs' claim under Labor Code § 2802 also presents common questions. Such claims are commonly certified where the employer has a uniform policy of failing to reimburse for certain necessary business expenses. Trosper, 2014 WL 4145448, at *9 (N.D. Cal. Aug. 21, 2014) ("This Court and others in this Circuit have found that commonality is met when, as here, the proposed class asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses in violation of Section 2802."); Estrada, 154 Cal. App. 4th 1 (recognizing claims for failure to reimburse expenses arising from misclassification as independent contractors and finding claims suitable for class treatment); Richie, 2014 WL 6982943 *15 (finding that the requirements of Rule 23 were met with regard to certain business expenses claims); Alfred v. Pepperidge Farm, Inc., 322 F.R.D. 519, 548 (C.D. Cal. April 11, 2017) ("Plaintiffs' expense reimbursement claims will arise if it is determined that they are employees. Whether such expenses were incurred can also be determined on a classwide basis with common proof."); Uschold v. NSMG Shared Services, LLC, 333 F.R.D. 157, 167 (N.D. Cal. 2019) ("the

---

[12]     As noted above, it is not necessary for the Court to find commonality on all three prongs, see Beavex, 810 F.3d at 1060-61, although the court in DeGiovanni did find commonality on all three prongs, see De Giovanni, 262 F.R.D. at 84-86.

1   commonality requirement is satisfied because there are common questions of law and fact arising out of

2   the allegedly unlawful commission payment system Defendant used to compensate all putative class

3   members and Defendant's alleged failure to reimburse its employees for reasonable and necessary

4   business expenditures.").

5          Here, Plaintiffs contend that, pursuant to Jan-Pro's uniform policies regarding its cleaning

6   worker franchisees, they and other similarly situated cleaning workers were improperly charged for a

7   job, through the thousands of dollars in fees that Plaintiffs and similarly situated workers are required to

8   pay to obtain their cleaning work, pursuant to Jan-Pro's standard franchise agreements. See, e.g., Ex. 11,

9   Aguilar FA, §7(A) (requiring up front franchise fee of $950.00 and for the balance of $1850.00 to be

10  paid in monthly installments with a 10% interest rate); Ex. 12, Roman FA, at § 7(A) (same); Ex. 13,

11  Vazquez FA, at § 7 (requiring up front franchise fee of $5000.00 and for the balance of $4000.00 to be

12  paid in monthly installments with a 10% interest rate). These franchise fees constitute unlawful business

13  expenses or losses that Jan-Pro requires its employee cleaning workers to incur in violation of the

14  California Labor Code.[13] See Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 498, 952 N.E.2d 890, 900

15  (2011) (in case involving cleaning franchisor and direct competitor of Coverall, holding that "[i]n

16  substance, [the franchise fees] operate to require employees to buy their jobs from employers" and

17  finding that these charges are contrary to public policy and may be recovered by the cleaning workers

18  from the master franchisor under the Massachusetts wage laws); Davis v. Farmers Ins. Exchange, 245

19  Cal. App. 4th 1302, 1336 (Cal. Ct. App. 2016) ("As is clear from the [Labor Code], under the California

20  law, an employer may not 'pass through' the normal costs of operating a business to the employee he

21  hires."); Gallano v. Burlingston Coat Factory of California, LLC, 67 Cal. App. 5th 953, 755-756 (Cal.

22  Ct. App. 2021) (noting that "Section 2802 requires employer indemnification for 'all necessary

23  expenditures or losses incurred by the employee' . . . an economic loss may be incurred by the creation

24  of a liability or debt . . ." and finding that when the plaintiff employee "executed the promissory note at

25  the direction and for the benefit of her employer, she incurred an economic loss.").

26

27

28  [13]      In any event, whether these franchise fees are recoverable under Cal. Lab. Code Labor § 2802 is
    itself a legal question that is common to the entire class.

Plaintiffs' work for Jan-Pro also required them to regularly incur a common set of expenses such as cleaning supplies and equipment, uniforms, and insurance. See Ex. 1, Kissane Dep., at 157-158; 91-93; Ex. 13, Vazquez FA, at §§ 6(A), 12; Ex. 12, Roman FA, at §§ 6 (A), 12; Ex. 11, Aguilar FA, §§ 6(A), 12. Section 2802 requires that an employer "indemnify his or her employee[s] for all necessary expenditures or losses incurred by the employee[s] in direct consequence of the discharge of [their] duties." Cal. Lab. Code § 2802(a). Jan-Pro's policy is that franchisees are not reimbursed for any of these expenses; with the exception of an initial set of cleaning supplies that are provided upfront, Plaintiffs must purchase supplies themselves, either directly from the master franchisee or on their own. See Ex. 1, Kissane Dep., at 157-158; 91-93; Ex. 13, Vazquez FA, at § 6(A); Ex. 12, Roman FA, at § 6(A); Ex. 11, Aguilar FA, § 6(A). Thus, whether Jan-Pro's uniform policies of charging for a job by requiring workers to pay franchise fees and of requiring workers to pay for their own job-related expenses violates § 2802, is a question common to the class. See James, 338 F.R.D. at 139, quoting O'Connor v. Uber Techs., Inc., 311 F.R.D. 547, 567 (N.D. Cal. 2015), rev'd on other grounds, 904 F.3d 1087 (9th Cir. 2018) ("The Court finds that certifying vehicle-related and phone expenses will not cause individualized issues to predominate.").

Similarly, under Labor Code § 221, it is unlawful "for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Lab. Code § 221. It is undisputed that, pursuant to Jan-Pro's standardized franchise agreements, numerous deductions are routinely made from class members' monthly pay, pursuant to standard formulas that are also set forth in Jan-Pro's standard form franchise agreements (e.g. Jan-Pro deducts a certain percentage of each class member's gross monthly income.) See Ex. 1, Kissane dep., at 33; Ex. 11, Aguilar FA, § 7; Ex. 12, Roman FA, at § 7; Ex. 13, Vazquez FA, § 8. Thus, there is a common legal question as to whether any or all of these deductions constitute a forfeiture of earned wages, and thereby violate this statutory provision.

### 3.   Minimum Wage and Overtime

If the members of the proposed class are deemed employees, the employer must have a policy in place to ensure that these employees are compensated for all "hours worked." Labor Code §§ 1182.11-1182.13, 1197; see also Wage Order 5-2001 (Cal. Code Regs. tit. 8, § 11050), subd. 2(K) & Morillion v. Royal Packing Co., 22 Cal. 4th 575 (2000) (discussing definition of "hours worked"). Because Plaintiffs

15

have been misclassified as independent contractors rather than employees, there is no policy in place to ensure that Plaintiffs and other similarly situated cleaning workers receive minimum wage for all hours worked and overtime pay for hours worked in excess of forty per week or eight per day. See, e.g., Ex. 2 (Vazquez FA) at § 11 ("Franchisee is and shall remain at all times a completely independent contractor in business for itself"); Ex. 12, Roman FA, at §§ 11, 3(B)(3); Ex. 11, Aguilar FA, § 11. At times, Plaintiffs have made less than minimum wage; have not been paid to attend mandatory training; and have not been paid overtime. See Ex. 9, Aguilar Decl.; Ex. 8, Vazquez Decl.; Ex. 10, Roman Decl..

Thus, the common question of whether Jan-Pro has implemented policies to ensure that its cleaning workers are paid in accordance with the minimum wage and overtime requirements of California law will govern these claims, and class certification is appropriate. See Vaquero, 824 F.3d at 1155 (finding that the plaintiffs had satisfied commonality and predominance because "Defendants' consciously chosen compensation policy deprived the class members of earnings in violation of California's minimum wage laws. In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions *necessarily* caused the class members' injury. Defendants either paid or did not pay their sales associates for work performed. No other factor could have contributed to the alleged injury"); see also Cruz, 2009 WL 1458032, at *9 (overtime claims); Dilts, 2010 WL 1709807, at *11 (claims for meal and rest breaks, overtime compensation, business expenses, unlawful deductions, and timely payment of wages); see also Prince, 118 Cal. App. 4th at 1328 ("wage and hour disputes routinely proceed as class actions"); Culley v. Lincare Inc., 2016 WL 4208567, at *5 (E.D. Cal. Aug. 10, 2016); Hoffman v. Blattner Energy, Inc., 315 F.R.D. 324, 343 (C.D. Cal. June 15, 2016). The court may certify a class action alleging overtime violations even when not all class members have suffered these violations.[14]

---

[14]     See Tyson Foods, Inc. v. Bouphakeo, 136 S. Ct. 1036, 1044, 1049-50 (2016) (affirming class action trial verdict and rejecting defendant's argument that class should not have been certified in light of the fact that a number of the class members did not appear to work more than forty hours a week, noting that bifurcating liability and damages solves this problem); Shaw v. AMN Healthcare, Inc., 326 F.R.D. 247, 269 (N.D. Cal. 2018) (certifying class alleging overtime violations despite evidence that some members of the class may have received overtime and quoting Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1136 (9th Cir. 2016) ("[A] well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." (citing Newberg on Class Actions § 2:3)); Dilts, 2010 WL 1709807, at *8; see also  Kamar, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("'the necessity for class members to individually establish eligibility and damages does not mean individual (continued on next page)

Thus, all of Plaintiffs' claims are susceptible to common proof, and the commonality requirement is satisfied.

**4.      Plaintiffs satisfy the typicality requirement**

"[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020 (citation omitted). The typicality inquiry focuses on "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 507 (9th Cir. 1992); <u>Wixon v. Wyndham Resort Dev. Corp.</u>, 2009 WL 3353445, at *3 (N.D. Cal. Oct. 19, 2009) (typicality should focus on defendant's conduct). Typicality is a permissive standard, and only requires that the named plaintiffs claims' are 'reasonably coextensive' with those of the class." <u>Dalton</u>, 270 F.R.D. at 560.  "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." <u>Smith</u>, 2008 WL 4156364, *5. Thus, "[i]n examining this condition, courts consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice." <u>Id.</u> (internal quotation omitted).

Here, Plaintiffs' claims are typical of the claims of the class because they all arise out of Jan-Pro's uniform conduct toward Plaintiffs and the class—namely, Jan-Pro's misclassification of unit franchisees as independent contractors and its resulting violations of the Labor Code. Plaintiffs and the class are thus in a materially identical position vis-à-vis Jan-Pro with respect to these practices. Plaintiffs' claims are, therefore, typical. <u>See e.g.</u>, <u>Norris-Wilson</u>, 270 F.R.D. at 605 (noting that "[t]he injuries alleged—a denial of various benefits—and the alleged source of those injuries—a sinister classification by an employer attempting to evade its obligations under labor laws—are the same for all members of the putative class" and "[t]he typicality requirement is therefore satisfied"); <u>Romero v. Producers Dairy Foods, Inc.</u>, 235 F.R.D. 474, 489 (E.D. Cal. 2006).

---

fact questions predominate.' Individual issues do not render class certification inappropriate so long as such issues may effectively be managed.") (quoting <u>Sav-On Drug Stores, Inc. v. Superior Court</u> 34 Cal. 5th 319, 334-35 (Cal. 2004) (certifying class alleging overtime violations despite potential variations in overtime damage because "the need for individualized proof of damages is not per se an obstacle to class treatment")).

**5.    Plaintiffs and their counsel adequately represent the interests of the class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy has two elements: (1) that the proposed representatives do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. See, e.g., Hanlon, 150 F.3d at 1020. The law governing adequacy is well-settled that "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7A Charles Alan Wright, Arthur R. Miller, *et al*., Federal Practice and Procedure, § 1768 (3d ed. 1986).

Here, the Plaintiffs satisfy both factors. First, there is no conflict between the named Plaintiffs and other Jan-Pro franchisees. See Exhibits 8-10. Instead, Plaintiffs are trying to vindicate the rights of their fellow franchisees to recover fees that were unlawfully deducted from their pay; wages they were not paid; and business expenses that were not reimbursed. See Myers v. Jani-King of Philadelphia, Inc. et al., 2015 WL 1055700, * (E.D. Pa. Mar. 11, 2015) (finding adequacy requirement met for a class of Pennsylvania Jani-King cleaning workers and rejecting Jani-King's argument that some cleaning workers would prefer not to challenge their employment status not only because such an argument is speculative, but also because "courts have hesitated to find class representatives inadequate based on some class members preferring that an alleged illegal practice continues.") (collecting cases).

Second, Plaintiffs' counsel are particularly well-qualified and experienced in this type of litigation. Plaintiffs' counsel has litigated countless wage and hour class actions around the country,[15] and Lichten & Liss-Riordan, P.C. in particular has pioneered this exact area of class actions asserting employee misclassification claims against janitorial franchise cleaning companies on behalf of cleaning workers, including groundbreaking victories at the Ninth Circuit and California Supreme Court in this very case. See, e.g., Vazquez v. Jan-Pro Franchising Int'l, Inc., 986 F.3d 1106, 1124 (9th Cir. 2021) (prevailing on appeal and securing ruling that Dynamex applies to cleaning franchisees' misclassification and wage claims); Vazquez v. Jan-Pro Franchising Int'l, Inc., 10 Cal. 5th 944, 478 P.3d 1207 (2021) (answering certified question; holding Dynamex applies retroactively); Mujo, 2019 WL 145524, at *1 (certifying misclassification claims for Jani-King workers under Connecticut law); De

---

[15]    See Plaintiffs' counsel's website is available at: http://llrlaw.com/independent-contractor

Giovanni, C.A. No. 07-10066 (Ex. A to Liss-Riordan Decl.) (awarding summary judgment to Massachusetts Jani-King franchisees); De Giovanni, 262 F.R.D. 71 (certifying wage and misclassification claims for Jani-King workers under Massachusetts law); Williams, 837 F.3d 314 (3d Cir. 2016) (certifying class of Pennsylvania franchisees on misclassification claims); Vanguard, 2017 WL 4817349, at *6 (awarding summary judgment to Massachusetts and Connecticut cleaning franchisees); Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 498, 952 N.E.2d 890, 900 (2011) (holding that franchise cleaning workers could recover franchise fees and other payments made to janitorial franchising company in exchange for the right to work); Ribeiro v. System4LLC, AAA No. 01 15 0003 8637 (Aug. 23, 2016) at *24-30, (Ex. C to Liss-Riordan Decl.), aff'd System4 LLC v. Ribeiro, 75 F. Supp. 3d 297 (D. Mass. 2017) (awarding summary judgment to Massachusetts cleaning franchisees); De Souza et al. and The Solomon Partnership, Inc. d/b/a All-Pro Cleaning Systems et al., AAA No. 11-523-01574-11 (Aug. 10, 2012) (Ex. D to Liss-Riordan Decl.) (holding that cleaning franchise workers were employees of the cleaning franchisor under the Massachusetts "ABC" employment test). Counsel has pursued this case doggedly for many years, securing landmark rulings from the Ninth Circuit and California Supreme Court in this very case, such that it is clear that counsel is well-qualified to represent the class.

## B. The Class Satisfies The Requirements of Rule 23(b)

### 1. Common questions predominate over questions affecting individual class members

Under Rule 23(b)(3), plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Ninth Circuit has held that 'there is clear justification for handling the dispute on a representative rather than an individual basis' if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" Magadia v. Wal-Mart Assocs., Inc., 324 F.R.D. 213, 220–21 (N.D. Cal. 2018) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998)). "Because no precise test can determine whether common issues predominate, the court must pragmatically assess the entire action and the issues involved." Chun-Hoon, 2006 WL 3093764, *2. "A court evaluating predominance must determine whether the elements necessary to establish liability [here, any of the § 148B's three prongs] are susceptible to common proof or, if not, whether

there are ways to manage effectively proof of any element that may require individualized evidence."

Villalpando, 303 F.R.D. at 608.

Here, common questions of law and fact plainly predominate because the Plaintiffs and all class members performed the same work (commercial cleaning) for Jan-Pro pursuant to materially identical franchise agreements under the same blanket categorization as "independent contractors," and were required to adhere to the same policies and procedures set forth in these agreements and incorporated manuals, and were further required to pay upfront fees (franchise fees) as well as ongoing fees (including liability insurance, "sales and marketing fees", and additional deductions and expenses) as a prerequisite to obtaining and maintaining employment. The ultimate questions of whether these cleaning workers were misclassified; whether these cleaning workers were required to pay these fees and expenses; and whether these cleaning workers were denied minimum wage and overtime predominates for the Plaintiffs' and all class members' claims. See Hart v. Rick's Cabaret Int'l Inc., 2010 WL 5297221, *7 (S.D.N.Y. Dec. 20, 2010) ("As other courts have previously found, the propriety of the defendants' blanket categorization of the plaintiffs as independent contractors, and, if improper, the legal consequences of that categorization, by their nature tend to predominate over any individual issues.") (collecting cases).[16] As set forth supra, each of the three prongs of the ABC test is capable of class-wide determination, and commonality on *just one* of these three prongs is sufficient grounds to certify the class. See Costello v. Beavex, 810 F.3d 1045, 1060-61 (7th Cir. 2016); James, 2021 WL 254303, at *11; Moreno, 2019 WL 3858999, at *13.

---

[16] The Court may focus its commonality analysis on the misclassification question. See Bowerman v. Field Asset Services, Inc., 242 F. Supp. 3d 910, 946 (N.D. Cal. 2017) (granting summary judgment on employee status under Borello, including as to overtime and expense reimbursement claims: "because employees are entitled to overtime and payment of expenses as a matter of law, summary judgment with respect to liability to the class is appropriate. Whether and to what amount an individual class member should be compensated for working overtime or being reimbursed for expenses will be determined in the damages or claims phase of the case."). Even if some of Plaintiffs' Labor Code claims raise some individualized issues, the common issues predominate over the individualized issues. See Leyva v. Medline Indus. Inc., 716 F. 3d 510, 513-14 (9th Cir. 2013) (explaining that even highly individualized damages inquiries do not undermine predominance when "damages [may] be feasibly and efficiently [] calculated once the common liability questions are adjudicated."). Any individualized questions (determining which class members are entitled to damages for which claims and the amounts of damages) are secondary to the predominant questions of whether unit franchisees are Jan-Pro's employees. Moreover, "damage calculations alone cannot defeat class certification." Vaquero, 824 F.3d at 1155.

**2.   A class action is the superior mechanism for addressing the cleaning workers' claims**

Class treatment is superior "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (quotation omitted); Shepard, 2013 WL 4488802, *4-6. In evaluating superiority, courts consider: (a) the class members' interests in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). The superiority requirement is designed to ensure the "'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all.'" Anchem Prods., Inc. v. Windsor, 512 U.S. 591, 617 (1997). A district court has "broad discretion" in determining whether class treatment is superior. Kamm v. Cal. City Dev. Co., 509 F.2d 205, 210 (9th Cir. 1975).

Here, this case challenges common practice of misclassification that similarly affected hundreds of individuals who have performed cleaning services for Jan-Pro in California since 2004. De Giovanni, 262 F.R.D. at 85-86 (holding that a class action is "superior" to adjudicate claims of Massachusetts Jani-King workers, noting that the Supreme Court has "express a strong preference for rendering decisions on the classification of employees on a class wide basis") (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 327 (1992)). It would be grossly inefficient to require each of these class members to bring a separate case challenging these practices. The issues in this case are best resolved on a class-wide basis, which also serves the important public policies at stake in this action. See Gentry v. Sup. Ct., 42 Cal.4th 443, 462 (2007) (class actions guard against the prospect of "random and fragmentary enforcement" of the employer's legal obligations under California wage laws); Richie, 2014 WL 6982943, at *22 ("classwide treatment of these claims is a more efficient use of judicial and party resources than several individual actions.").[17]

---

[17]   There are no other cases by proposed class members against Jan-Pro regarding the claims in this case.  Plaintiffs are aware of just one other case against Jan-Pro based on similar allegations, which was recently filed in San Mateo County court and does not include class allegations. See Nunez v. Jan-Pro Franchising Int'l Inc., 20-CIV-02595 (San Mateo Cty.).  In sum, there is no indication that class members have an interest in individually controlling the prosecution of this action. In addition, the opt-out nature of a (b)(3) class protects the interests of class members who do not wish to participate. (continued on next page)

1   Moreover, given these individuals' reliance upon Jan-Pro for their livelihoods, "a class action is
2   the superior method for adjudication of the controversy because … class members may fear reprisal and
3   would not be inclined to pursue individual claims…." N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 268
4   (E.D.N.Y. 2002).  "[C]lass adjudication is superior in the employment context because fear of employer
5   retaliation may have a chilling effect on employees bringing claims on an individual basis." Overka, 265
6   F.R.D. at 24.  Indeed, numerous courts have held that class actions are superior in wage cases because of
7   the prospect of retaliation. See e.g., Perez v. Safety-Kleen Systems,Inc., 253 F.R.D. 508, 520 (N.D. Cal.
8   2008);  O'Brien v. Encotech Const. Servs., Inc., 203 F.R.D. 346, 350 (N.D. Ill. 2001) (noting that
9   workers' fear of employer retaliation is "a very important concern" because the "nature of the economic
10  dependency involved in the employment relationship is inherently inhibiting."). Further, Jan-Pro is a
11  large international corporation, and the cleaning workers are primarily immigrant workers (many of
12  whom do not speak English as their first language). It would be particularly difficult for this group of
13  workers to vindicate their rights on an individual basis. Permitting Plaintiffs to prosecute their claims on
14  behalf of the proposed class meets these challenges and provides a superior method of resolving the
15  claims of the putative class members. Lastly, "a class action would eliminate the risk that the question of
16  law common to the class will be decided differently in each lawsuit." Id. For all of these reasons, a class
17  action is superior in this case.

18  Additionally, a class proceeding can be effectively managed. Plaintiffs propose a phased
19  proceeding in which Jan-Pro's liability for misclassification and expense reimbursement, unlawful
20  deductions, and minimum wage and overtime would be determined (at summary judgment and/or at
21  trial), with the burden of proof on Jan-Pro, as all class members are presumed to be employees under
22  Dynamex. Unless Jan-Pro is able to prove all three prongs of the ABC test, liability would be
23  established as to the class. Phase II of the proceeding would then focus on damages. Plaintiffs would
24  present representative testimony as well as an analysis of the amount of overtime worked, the amount of
25  unlawful deductions taken, and the amount of business expenses accrued. Representative testimony is

26

27  Certification here, therefore, provides a single forum to protect the rights of Jan-Pro's workers. See, e.g.,
    Romero, 235 F.R.D. at 491. Jan-Pro did not treat class members individually in deciding to treat them all
28  as independent contractors, and it does not make sense to adjudicate the legality of that decision
    individually, especially given the inefficiencies of doing so.

1  appropriate in these circumstances where the employer has failed in its obligation to maintain records.

2  Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 687-88 (1946); Bell v. Farmers Insurance Exchange,

3  115 Cal. App. 4th 715, 750 (2004). The Court can manage any individual issues on its own, or through a

4  special master. This type of phased proceeding has been found appropriate for purposes of

5  manageability. See Ellis v. Costco Wholesale Corp., 285 F.R.D. 492, 539 (N.D. Cal. 2012); Wilson v.

6  Kiewit Pac. Co., C 09-03630 SI, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010).

7  **IV.   CONCLUSION**

8      For the foregoing reasons, the Court should grant Plaintiffs' Motion for Class Certification.  The

9  Court should certify a class of all individuals who signed franchise agreements with Jan-Pro master

10  franchises in the state of California and performed cleaning services for Jan-Pro since December 12,

11  2004.

12  Date: on January 21, 2022

13

14                               Respectfully submitted,

15                               LICHTEN & LISS-RIORDAN, P.C.

16                               */s/ Shannon Liss-Riordan*

17                               Shannon Liss-Riordan
                             Attorneys for Plaintiffs

18

19

20                    **CERTIFICATE OF SERVICE**

21

22      I hereby certify that a copy of the foregoing document was served by electronic filing on January

23  21, 2022, on all counsel of record.

24

25                     /s/ Shannon Liss-Riordan
                   Shannon Liss-Riordan Esq.

26

27

28