RICHARD H. RAHM (SBN 130728)
richard.rahm@us.dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

NORMAN M. LEON (IL SBN 6239480) (*pro hac vice* motion forthcoming)
norman.leon@us.dlapiper.con
DLA PIPER LLP (US)
444 W. Lake Street, Suite 900
Chicago, IL  60606

JEFFREY M. ROSIN (MA SBN 629216) (admitted *pro hac vice*)
jrosin@ohaganmeyer.com
O'HAGAN MEYER
111 Huntington Avenue, Suite 719
Boston, MA 02199
Telephone: 617.843.6800
Facsimile: 617.843.6810

Attorneys for Defendant
JAN-PRO FRANCHISING INTERNATIONAL, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA ROMAN, GERARDO VASQUEZ, JUAN AGUILAR,<br><br>Plaintiffs,<br><br>vs.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.<br><br>Defendant. | Case No.  3:16-cv-05961-WHA<br><br>**DEFENDANT JAN-PRO FRANCHISING, INTERNATIONAL, INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>The Honorable William H. Alsup<br><br>Date:  April 28, 2022<br>Time:  8:00 a.m.<br>Location: Courtroom 12, 19th Floor |

1

2

## **NOTICE OF MOTION**

3  **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

4         PLEASE TAKE NOTICE that, on April 28, 2022, or as soon thereafter as this matter may

5  be heard, in Courtroom 12 of the United States District Court, Northern District of California,

6  Defendant Jan-Pro Franchising, International Inc. will and hereby does move this Court to grant

7  its Motion For Summary Judgment on all claims in Plaintiffs' Second Amended Complaint.

8         Defendant Jan-Pro Franchising, International Inc.'s Motion for Summary Judgment is

9  based upon this Notice of Motion, all pleadings and papers on file with the Court in this action,

10  and upon such oral and written evidence as may be presented at the hearing on this Motion.

11

12  Dated: March 4, 2022                        DLA PIPER LLP (US)

13                                              By:   /s/ Richard H. Rahm
                                                      Richard Rahm
14                                                    Attorneys for Defendant
15                                                    Jan-Pro Franchising, International Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ............................................................................1

II. UNDISPUTED FACTS ....................................................................................3

    A. JPI And Its Course Of Business.............................................................3

    B. JPI Had No Relationship Or Interactions With Any Plaintiff...............4

    C. Plaintiffs Ran Independent Businesses ..................................................4

    D. Plaintiffs' Claims ...................................................................................5

III. PLAINTIFFS' MOTION RELIES ON THE WRONG TEST AND IGNORES THE PLAIN TERMS OF THE CASES ON WHICH IT RELIES ...............................6

    A. JPI May Not Be Held Liable for Misclassification Unless Plaintiffs Show That (i) The Regional Master Franchisees Were JPI's Alter Ego, or (ii) JPI's Structure Was Set Up To Do An "End Run" Around the Wage Laws..................6

    B. Plaintiffs Have Not Shown, And Cannot Show, That Any Regional Master Franchisee Was JPI's Alter Ego or That JPI's Franchise System Was Set Up To Do An "End Run" Around the Wage Laws....................................8

    C. Because Plaintiffs Cannot Satisfy Either Of The Two Exceptions, The Joint Employer Test—Not the ABC Test—Is The Governing Standard ........................9

IV. EVEN IF THIS WAS NOT A JOINT EMPLOYER CASE, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THEIR INDIVIDUAL CLAIMS MUST BE DENIED ....................................................................................11

    A. Plaintiffs Apply The Wrong Test To Some Of Their Claims And Purport To Assert Claims That Were Not Pled ................................................11

    B. Plaintiffs Proffer No Viable Basis For Summary Judgment On Their Remaining Claims....................................................................................12

V. THE ABC TEST DOES NOT APPLY TO JPI BY ITS TERMS, BUT TO THE EXTENT IT DOES, ISSUES OF FACT PRECLUDE THE ENTRY OF SUMMARY JUDGMENT ...................................................................................13

    A. Plaintiffs Cannot Satisfy The Predicate Requirement For the ABC Test To Apply......................................................................................................13

    B. Material Disputes of Fact Exist As To Who Can Be Deemed An Employee........14

    C. Material Disputes of Fact Exist As To The Three Prongs Of The ABC Test....................................................................................................15

        1. Prong A ........................................................................................15

        2. Prong B ........................................................................................16

a.    The Only Cases To Address This Issue On The Merits Have Concluded That JPI Is Not In The Same Course Of Business As Unit Franchisees ....................................................17

b.    Plaintiffs' Counter-Arguments Conflict With The Case-Law and Common Sense..........................................................19

c.    Treating Unit Franchisees as Employees Would Be Inconsistent With The Regulatory Framework That Governs Franchised Relationships .............................................20

3.    Prong C .............................................................................................23

VI.    CONCLUSION.................................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946)..................................................................................................13

*Arroyo v. Int'l Paper Co.*,
   No. 17-CV-06211-BLF, 2020 WL 887771 (N.D. Cal. Feb. 24, 2020)...................................11

*Beckwith v. Pool*,
   No. 2:13-cv-125 JCM NJK, 2015 WL 1988788 (D. Nev. May 1, 2015), *aff'd
   sub nom. Beckwith v. City of Henderson*, 687 Fed. Appx. 665 (9th Cir. 2017)......................11

*Bowman v. CMG Mortg. Inc.*,
   No. C 07–03140 SI, 2008 WL 3200662 (N.D. Cal. Aug. 4, 2008) ...............................14

*Butler v. HomeServices Lending LLC*,
   No. 11-cv-2313-L(MDD), 2013 WL 1285567 (S.D. Cal. Mar. 26, 2013) ............................13

*Chebotnikov v. LimoLink, Inc.*,
   No. 14 Civ. 13475 (FDS), 2017 WL 2909808 (D. Mass. July 6, 2017)...............................14

*Comm'r of Div. of Unemployment Assistance v. Town Taxi of Cape Cod, Inc*,
   862 N.E.2d 430 (Mass. App. Ct. 2007) ...............................................................24

*Coverall N. Am., Inc. v. Comm'r of the Div. of Unemployment Assist.*,
   857 N.E.2d 1083 (Mass. 2006) ...........................................................................24

*Curry v. Equilon Enters.*,
   LLC, 23 Cal. App. 5th 289 (2018)..............................................................9, 10, 18

*Da Costa v. Vanguard Cleaning Sys., Inc.*,
   No. 15-04743, 2017 WL 4817349 (Mass. Super. Ct. Sept. 29, 2017).....................................7

*Davis v. Food Lion*,
   792 F.2d 1274 (4th Cir. 1986) ...............................................................................13

*Depianti v. Jan-Pro Franchising Int'l, Inc.*,
   39 F. Supp. 3d 112 (D. Mass. 2014), *aff'd*, 873 F.3d 21 (1st Cir. 2017)...............................17

*Depianti v. Jan-Pro Franchising Int'l, Inc.*,
   990 N.E.2d 1054 (Mass. 2013) ........................................................................... *passim*

*Desimone v. Allstate Ins. Co.*,
   No. C 96–03606 CW, C 99-02074 CW, 2000 WL 1811385 (N.D. Cal. Nov. 7,
   2000) ..................................................................................................................24

*Dynamex Operations W., Inc. v. Sup. Ct.*,
  4 Cal. 5th 903 (2018) ................................................................ *passim*

*Estrada v. FedEx Ground Package Sys.*,
  154 Cal. App. 4th 1 (2007) ........................................................ 15

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (9th Cir. 1981) ..................................................... 12

*Gallagher v. Cerebral Palsy of Massachusetts, Inc.*,
  86 N.E.3d 496 (Mass. App. Ct. 2017) ....................................... 13

*GTE Sylvania Inc. v. Cont'l T.V., Inc.*,
  537 F.2d 980 (9th Cir. 1976) ..................................................... 21

*Haitayan v. 7-Eleven, Inc.*,
  No. CV 17-7454 DSF (ASx), 2020 WL 1290613 (C.D. Cal. Feb. 19, 2020) ............. 17, 18, 20

*Henderson v. Equilon Enters., LLC*,
  40 Cal. App. 5th 1111 (2019) ...................................................... 9

*Jan-Pro Franchising Int'l, Inc. v. Depianti*,
  310 Ga. App. 265 (2011) ............................................................ 17

*Jinks v. Credico (USA), LLC*,
  117 N.E.3d 509 (Mass. 2021) .................................................. *passim*

*Jong v. Kaiser Foundation Health Plan, Inc.*,
  226 Cal. App. 4th 391 (2014) ..................................................... 12

*Kubinex v. Top Cab Dispatch, Inc.*,
  2014 WL 3817016 (Mass. Sup. Ct. June 25, 2014) ..................... 23, 24

*Lara v. Workers' Comp. Appeals Bd.*,
  182 Cal. App. 4th 393 (2010) ..................................................... 15

*1-800-Got Junk? LLC v. Sup. Ct.*,
  189 Cal. App. 4th 500 (2010) ..................................................... 20

*Martinez v. Combs*,
  49 Cal. 4th 35 (2010) ............................................................... 2, 9

*McLeod v. Michael's Stores, Inc.*,
  Case No. CV 09-3491-GHK, 2009 WL 10674458 (C.D. Cal. Dec. 15, 2009) ............ 12

*Millsap v. Fed. Express*,
  227 Cal. App. 3d 425 (1991) ...................................................... 15

*Moreno v. JCT Logistics, Inc.*,
  Case No. EDCV 17-2489 JGB, 2019 WL 3858999 (C.D. Cal. May 29, 2019) ............ 11

*Morillion v. Royal Packing Co.*,
    22 Cal. 4th 575 (2000) ..............................................................................12

*Okeke v Dynamex Ops. East, Inc.*,
    No. 201002017, 2013 WL 7085617 (Mass. Super. Dec. 03, 2013)...........................................6

*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*,
    55 Cal. 4th 783 (2012) ..............................................................................21

*Patterson v. Domino's Pizza, LLC*,
    333 P.3d 723 (Cal. 2014) ............................................................................22

*People v. Uber Techs., Inc.*,
    56 Cal. App. 5th 266 (2020) .........................................................................14

*Saladworks, LLC v. Worker's Comp. Appeal Bd.*,
    No. 1789, 124 A.3d 790 (Pa. Commw. Ct. Oct. 6, 2015) ..............................................18

*Salazar v. McDonald's Corp.*,
    944 F.3d 1024 (9th Cir. 2019) ................................................................9, 10, 15

*Sebago v. Boston Cab Dispatch, Inc.*,
    471 Mass. 321, 28 N.E.2d 1139 (2015) ........................................................ *passim*

*Shuster v. BAC Home Loans Servicing, LP*,
    211 Cal. App. 4th 505 (2012) .........................................................................6

*Sportsman v. A Place for Rover, Inc.*,
    537 F. Supp. 3d 1081 (N.D. Cal. 2021) ...............................................................23

*Uninsured Employer's Fund v. Crowder*,
    No. 2015-SC-000362-WC, 2016 WL 2605624 (Ky. May 5, 2016) .........................................18

*Valle v. Powertech Industrial Co. Ltd.*,
    381 F. Supp. 3d 151 (D. Mass. 2019) ................................................................13

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
    10 Cal. 5th 944 (2021) .........................................................................5, 6, 9

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
    923 F.3d 575 (9th Cir. 2020) ................................................................5, 6, 7, 16

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
    986 F.3d 1106 (9th Cir. 2021) ...............................................................5, 6, 8

*Wasco Prods. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) ........................................................................11

*Wright v. Mountain View Lawn Care, LLC*,
    No. 7:15-cv-0224, 2016 WL 1072506 (W.D. Vir. 2016) ...............................................18

JPI'S MEMO IN SUPPORT OF ITS MSJ AND IN OPP. TO PLAINTIFFS' MSJ

1

**Statutes**

2   Cal. Bus. & Prof. Code §§20000 *et seq.* ................................................................21

3   Cal. Corp. Code §§31000 *et seq.* .........................................................................20

4   Cal. Corp. Code §31001 ........................................................................................21

5   Cal. Corp. Code §31005(a)(1) ...............................................................................15

6   California Franchise Investment Law .....................................................................20

7   California Franchise Relations Act .........................................................................20

8   16 C.F.R. § 436.1(h)(1) ..........................................................................................21

9   16 C.F.R. §436.1(h)(3) ...........................................................................................22

10  16 C.F.R. § 436.1(k) ............................................................................................3, 8

11  16 C.F.R. §436.5(k)(4) ...........................................................................................22

12  Labor Code Section 226 .........................................................................................11

13  Labor Code § 2775(b)(1) ........................................................................................13

14  Labor Code Section 2802 .......................................................................................10

15  Labor Code § 2802(a) .............................................................................................14

16  Massachusetts Independent Contractor Law ..........................................................21

17  **Other Authorities**

18  "Franchise" ¶2(b) .......................................................................................15, 22, 25

19  American Bar Association 40th Annual Forum on Franchising (Oct. 18-20, 2017) ......................8

20

21

22

23

24

25

26

27

28

## I.      PRELIMINARY STATEMENT

By Order dated May 24, 2017, this Court concluded—based largely on the more than 200 undisputed facts which show it had no relationship with or control over Plaintiffs' franchises— that Jan-Pro Franchising International, Inc. ("JPI") was entitled to judgment as a matter of law on Plaintiffs' claims that JPI "misclassified" them and violated several provisions of the California Labor Code. (*See* May 24, 2017 Order Granting Defendant's Motion for Summary Judgment ["Order"], Doc. 265.) Notwithstanding the circuitous journey this case has taken since that time, not one of those facts—which the parties stipulated govern this Motion (*see* Docs. 296, 297)—has changed. Neither, as a result, has JPI's right to judgment as a matter of law.

Plaintiffs claim they are entitled to judgment on their California Labor Code claims because JPI cannot establish any prongs of the ABC test. But that argument simply ignores the plain terms of the Ninth Circuit's opinion, the Massachusetts Supreme Court opinion it relied on, and a recent opinion of that same Supreme Court (in a case handled by Plaintiffs' counsel) which clarifies what standard applies where, as here, the party sued for misclassification is not the entity with which the allegedly misclassified employee contracted. In *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 990 N.E.2d 1054 (Mass. 2013)—the case the Ninth Circuit relied—the Massachusetts Supreme Judicial Court made clear that before the ABC test could be applied to an "indirect" party like JPI, the party claiming misclassification had to show that the indirect party was the "agent" of misclassification. Just a few months ago, in *Jinks v. Credico (USA), LLC*, 117 N.E.3d 509 (Mass. 2021), the same Massachusetts Supreme Judicial Court further refined this principle. Recognizing that "the entity for whom [an] individual directly performs services is ordinarily the individual's employer responsible for compliance with wage laws," the Massachusetts Supreme Judicial Court held that this principle could only be circumvented where the "direct" employer was the alter ego of the "indirect" alleged employer or where the indirect party set up the relationship to do "an 'end run' around its wage law obligations." *Id.* at 516.

There is not a shred of evidence in this record supporting either exception. In fact, all the undisputed facts prove otherwise. While Plaintiffs' Complaint contains allegations of an alleged "agency" relationship between JPI and its regional master franchisees (*see* Compl. at ¶¶ 8-16, 25-

28, 30-46, 48-49, 51, 55), Plaintiffs have not proffered any facts which show such a relationship.

In *Jinks*, the Massachusetts Supreme Judicial Court made clear that where neither exception is shown, the test that governs an indirect entity's liability for wage and hour violations is the joint employer standard, *not* the ABC test. Several California appellate decisions have come to the same conclusion, including one which was cited with approval by *Jinks*. That joint employer standard, as set forth in *Martinez v. Combs*, 49 Cal. 4th 35 (2010), is the exact same standard this Court applied when it concluded—based on these exact same facts—that JPI was entitled to judgment as a matter of law. The same result should ensue now. As this Court already recognized (and as the undisputed facts make clear), JPI exercised no control whatsoever over Plaintiffs' operations and did not "suffer or permit" them to work. Indeed, it is undisputed on this Motion that Plaintiffs never had *any* interactions with JPI. Summary judgment should enter.

But even if Plaintiffs had presented proof sufficient to forestall the entry of judgment, their Motion still fails. First, assuming *arguendo* JPI was Plaintiffs' employer, settled law makes clear that the test that would govern Plaintiffs' claim for expense reimbursement (at least through January 1, 2020) is the *Borello* test, not the ABC test. Plaintiffs never address that test. Second, it is difficult to understand how Plaintiffs can claim an entitlement to judgment as a matter of law on their remaining claims (for overtime and minimum wage) when some Plaintiffs do not even contend they were denied those wages and the claims of those that do are hotly contested.

Finally, Plaintiffs' claim that JPI fails each Prong of the ABC test struggles with their own admissions, this Court's prior ruling, and the law. Not only have Plaintiffs failed to show that JPI was their "hiring entity" as required by the ABC test (it clearly was not), but: (i) this Court already concluded that Plaintiffs failed to raise a genuine issue of fact as to JPI's control over their operations (Prong A); (ii) the cases which have addressed the ABC test have concluded as a matter of law—*and Plaintiffs have conceded*—that JPI's business is the sale of licenses to regional master franchisees, *not* the operation of commercial cleaning businesses (Prong B); and (iii) it is undisputed on this Motion that Plaintiffs set their own hours, control their employment relations, choose which accounts they want and those they do not and, most importantly, own and operate other cleaning businesses (Prong C). For these and the additional reasons set forth below,

1    Plaintiffs' Motion should be denied, and judgment should be entered in JPI's favor.

2    **II.    UNDISPUTED FACTS**

3        **A.    JPI And Its Course Of Business**

4            As this Court previously observed, and as numerous undisputed facts make clear, JPI is

5    engaged in the business of selling the right to use its logo and "the exclusive right to sell cleaning

6    franchises" —called "unit franchises" —to entities known as regional master franchisees. (Order

7    at 1.)[1] This structure, under which a franchisor licenses another entity to sell and oversee the

8    operation of unit franchises, is both commonplace in franchising and well-established. In fact, both

9    the Federal Trade Commission ("FTC") and the State of California recognize and regulate the use

10   of this business model. *See* 16 C.F.R. § 436.1(k) (defining "Franchisor" to include sub-franchisors,

11   which the rule defines as "a person who functions as a franchisor by engaging in both pre-sale

12   activities and post-sale performance."); Cal. Corp. Code § 31008.5 (defining a sub-franchise as a

13   contract between a franchisor and a sub-franchisor whereby the sub-franchisor is granted the right

14   to sell franchises).

15           JPI's regional master franchisees are neither the alter egos of nor the agents of JPI. Quite

16   to the contrary, the undisputed facts establish that they are separate corporate entities that pay

17   substantial sums for their businesses (*see* Doc. 248 ¶¶ 5-6); have their own staffs (*id*. ¶ 7); solely

18   perform all the services they provide to unit franchisees (*id*. ¶ 17); draft and decide the terms of

19   their own unit franchise agreements (*id*. ¶ 52); decide whether to use the operational materials JPI

20   makes available (*id*. ¶ 109); are solely responsible for their own books and accounting (*id*. ¶ 110);

21   do their own advertising (*id*. ¶ 111); decide which fees they are going to charge (*id*. ¶ 156); decide

22   how to bid the accounts they offer to their franchisees (Order at 8); and may sell their businesses

23   (*id*. ¶ 5).

24

25   _____

     [1]      These undisputed facts include the following: (i) that "[f]or its business, JPI sells regional
26   rights to use the "Jan-Pro" trademark to entities known as Regional Master Franchisees a/k/a
     "Master Owners" (Defendant's Statement of Material Facts in Support of Motion for Summary
27   Judgment, Doc. 248, at ¶ 4), and (ii) former CEO Richard Kissane's testimony that JPI is a
     "franchise company" while, in contrast, unit franchisees do "cleaning." (*Id*. ¶ 13.) Further, dating
28   back to at least 2006, JPI's financials state that "[JPI] is engaged in the business of selling and
     supporting master cleaning service franchisees[.]" (Doc. 257 ¶ 30 [Exhibit 11 at 11].)

### B.   JPI Had No Relationship Or Interactions With Any Plaintiff

The named Plaintiffs in this case purchased unit franchises from two of JPI's regional master franchisees. (Order at 2.) JPI had nothing to do with that transaction, is not a party to or third-party beneficiary of Plaintiffs' Franchise Agreements (Order at 6-7)—it is undisputed that Plaintiffs never entered into any agreements with JPI (*id*. at 7)—and has no rights under those agreements. (*Id.*) More than that, JPI never had any connection, contractual or otherwise, with *any* of the Plaintiffs. While Plaintiffs attempt to show otherwise (by relying largely on the same factual allegations this Court already concluded were contrary to the record), it is undisputed on this Motion that JPI: had no involvement in the sale of Plaintiffs' franchises (Doc. 248 ¶ 36); provides none of the services (*i.e.*, business development, billing and collecting and revenue distribution) that the regional master franchisees provide (*id*. ¶ 16); maintains no records regarding Plaintiffs or any other unit franchisee (*id*. ¶ 36); never paid any money or had any involvement with Plaintiffs' franchises or their cleaning accounts (*id*. ¶ 164); and "never had direct oversight over any of the Plaintiffs' unit franchises (*id*. ¶ 40). In fact, it is undisputed that none of the Plaintiffs knew JPI *existed* at the time they purchased their franchises. (*Id.* ¶ 37.) That, no doubt, is why this Court previously recognized—based on these same facts—that Plaintiffs "fail to offer *any* evidence of Jan-Pro's right to control their day-to-day activities …." (Order at 7; emphasis added.)

### C.   Plaintiffs Ran Independent Businesses

In truth, *no* party exercised control over Plaintiffs' day-to-day activities. Plaintiffs' strained attempts to spin a Dickensian tale of woe notwithstanding, the undisputed facts establish that unit franchisees: purchase commercial cleaning businesses that they have the right to sell (Doc. 248 ¶ 22); have an unfettered right to accept or reject the accounts they are offered (*id*. ¶ 142); can, and do, solicit their own accounts (*id*. ¶ 12); own and operate other cleaning businesses, unrelated to their Jan-Pro franchises (*id*. ¶ 21); are not required to perform any cleaning services themselves (*see, e.g.,* Doc. 247-3, Aguilar Franchise Agreement, at ¶ 5.B (noting that services would be performed "by Franchisee or its authorized agents/employees")); can do their own billing and collecting if they so choose (Doc. 248 ¶ 163); and can "purchase franchises in their individual capacities, operate under fictitious names, or form partnerships or corporations with employees to

1     service the accounts assigned by the respective regional master franchisees." (Order at 2.)

2     **D.      Plaintiffs' Claims**

3             In 2008, Plaintiffs (along with certain other franchise owners) filed this suit in the District

4     of Massachusetts alleging that JPI committed several unfair practices and misclassified them as

5     independent contractors. *Id.* Their claims were eventually severed and, in November 2016,

6     transferred to this Court. *Id*.

7             Shortly after that, in January 2017, Plaintiffs filed a Second Amended Complaint

8     ("Complaint"). (Doc. 244.) The Complaint asserts certain "wage law" violations (minimum wage,

9     overtime and expense reimbursement) and a variety of claims—for quantum meruit, unjust

10    enrichment and violation of Section 17200—which, as this Court noted, "do not rely on violations

11    of [the] California Labor Code or finding of an employment or agency relationship." (Order at 10.)

12            By Order dated May 24, 2017, this Court entered summary judgment in JPI's favor on all

13    counts. The Ninth Circuit subsequently vacated that Order because, after this Court issued its Order

14    but before Plaintiffs' appeal was finalized, the California Supreme Court (in *Dynamex Operations*

15    *W., Inc. v. Sup. Ct.*, 4 Cal. 5th 903 (2018)) adopted a new test for misclassification (the ABC test)

16    which the Ninth Circuit concluded applied retroactively. *Vazquez v. Jan-Pro Franchising Int'l,*

17    *Inc.*, 923 F.3d 575 (9th Cir. 2020). The Ninth Circuit then certified the question of whether

18    *Dynamex* applied retroactively to the California Supreme Court, which agreed that it did. *Vazquez*

19    *v. Jan-Pro Franchising International , Inc.*, 10 Cal. 5th 944 (2021). Shortly afterwards, in February

20    of 2021, the Ninth Circuit reissued its earlier opinion. *Vazquez v. Jan-Pro Franchising*

21    *International, Inc.*, 986 F.3d 1106 (9th Cir. 2021).

22            Nearly a year later, on January 21, 2022, Plaintiffs filed this Motion for Summary Judgment

23    on their wage claims (Count III). The other claims this Court dismissed—those which the Court

24    noted do not rely on the Labor Code (Order at 10)—were not raised in Plaintiffs' appeal and are

25    not the subject of this Motion. Therefore, all that remains are the misclassification allegation and

26    the claimed damages that stem from that alleged misclassification.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   PLAINTIFFS' MOTION RELIES ON THE WRONG TEST AND IGNORES THE PLAIN TERMS OF THE CASES ON WHICH IT RELIES

### A.   JPI May Not Be Held Liable for Misclassification Unless Plaintiffs Show That (i) The Regional Master Franchisees Were JPI's Alter Ego, or (ii) JPI's Structure Was Set Up To Do An "End Run" Around the Wage Laws

Plaintiffs claim they are entitled to summary judgment on the issue of misclassification because JPI cannot establish that it satisfies all three prongs of the ABC test—the test which they assert the Ninth Circuit "confirmed … is the test for employee status … in this very case." (Pl. Motion at 1:14-17; emphasis omitted.) But just as Plaintiffs' factual contentions ignore this Court's Order, their primary legal contention ignores the plain language of the Ninth Circuit's opinion, the plain terms of the opinion on which the Ninth Circuit relied, and a recent opinion of the Massachusetts Supreme Judicial Court which clarifies when the ABC test applies (and, perhaps more importantly, when it does not.)[2]

In *Vazquez*, the Ninth Circuit observed that courts in Massachusetts had considered whether a franchisor (such as JPI) could be deemed an employer despite the fact it had no direct relationship with the unit franchisees who claimed they were misclassified. Relying entirely on the then-controlling opinion on that issue—the Massachusetts Supreme Judicial Court's opinion in *Depianti v. Jan-Pro Franchising Int'l, Inc*., 990 N.E.2d 1054 (Mass. 2013)—*Vazquez* concluded, "as a doctrinal matter," that JPI "could be Plaintiffs' employer under the ABC test even though it is not a party to any contract with Plaintiffs." *Vazquez*, 986 F.3d 1106.

That statement, however, is only the beginning of the story. In fact, while unmentioned by Plaintiffs, both *Depianti* and *Vazquez* made crystal clear that, before the ABC test applied, the party claiming misclassification had to make an additional showing: it had to show that the third-

---

[2]      The Ninth Circuit's opinion in *Vazquez* relied on, and specifically noted the propriety of relying on, Massachusetts law in interpreting the ABC test. *Vazquez*, 986 F.3d at 1122 (noting that, on remand, this court "may wish to consider authorities from other jurisdictions that apply the test"); *see also Shuster v. BAC Home Loans Servicing, LP*, 211 Cal. App. 4th 505, 507-08 (2012) (looking to "the weight of authority from other jurisdictions" for "an issue of first impression in California") (cited by *Vazquez*). It is also noteworthy that, in *Vazquez v. JPI Franchising Int'l, Inc.*, 10 Cal. 5th 944, 949 n.1 (2021), the California Supreme Court (on review of the Ninth Circuit's opinion) noted that it was not addressing the "applicability of the *Dynamex* decision to franchise agreements or arrangements."

party to the relationship (in this case JPI) was the "agent of misclassification." *Depianti*, 990 N.E.2d at 1068 n.17; *accord Vazquez*, 986 F.3d at 1124 (quoting *Depianti*).[3]

In December of 2021, ten months after the Ninth Circuit issued its decision in this case, the Massachusetts Supreme Judicial Court revisited this issue. In *Jinks v. Credico (USA), LLC*, a case handled by Plaintiffs' counsel, the Massachusetts court considered whether the ABC test applied in determining whether a broker for independent marketing companies that contracted with another entity (DFW Consultants) to provide such services was the employer of the individuals that worked for DFW. *Jinks*, 117 N.E.3d 509 (Mass. 2021). After noting that "the entity for whom [an] individual directly performs services is ordinarily the individual's employer responsible for compliance with wage laws," the Massachusetts Supreme Judicial Court noted that there were two exceptions to this rule: "first, where the law of corporate disregard is applicable and, second, where an entity has engaged in an 'end run' around its wage law obligations." *Id*. at 516.

To establish the first exception, a plaintiff would need to show that the entity for whom the services were directly provided (DFW in *Jinks* and the regional master franchisees in this case) was the "alter ego" of the other entity. *Id*. The second exception hinges on a showing that the other entity—the party that contracted with the party that directly received the services (*i.e.*, Credico in *Jinks* and JPI here)—"designed and implemented the contractual framework" under which the individual was misclassified "specifically to evade its obligations under the wage laws." *Id*. Notably, in formulating this test, the Massachusetts Supreme Judicial Court expressly rejected the notion (pressed by Plaintiffs here) that receiving an economic benefit from the work done by the persons performing the services was enough to render Credico the employer of the individuals DFW retained. *Id*. at 515-16.[4]

---

[3]      This limitation makes perfect sense, because without it, no corporation "could contract with another corporation to perform work in the same field," because even if two steps removed, "the latter corporation would be an employee of the former, because its services would be provided in the former corporation's usual course of business." *Okeke v Dynamex Ops. East, Inc.*, No. 201002017, 2013 WL 7085617, at *1 (Mass. Super. Dec. 03, 2013).

[4]      For this reason, the case on which *Vazquez* relied in support of its assertion that "[a]t least one court in Massachusetts" had concluded that "a top-level franchisor in a nearly identical business structure was the employer of bottom-level franchisees" is no longer good law. *See Da Costa v. Vanguard Cleaning Sys., Inc.*, No. 15-04743, 2017 WL 4817349, at *5 (Mass. Super. Ct.

**B.    Plaintiffs Have Not Shown, And Cannot Show, That Any Regional Master Franchisee Was JPI's Alter Ego or That JPI's Franchise System Was Set Up To Do An "End Run" Around the Wage Laws**

Plaintiffs have not proffered one fact which supports either of the two exceptions recognized in *Jinks*, and they have certainly not shown that the undisputed facts establish either proposition as a matter of law. To the contrary, it is undisputed that regional master franchisees "are separate corporate entities from JPI" that have their own staffs and "pay substantial sums for their businesses … and may also sell all or part of their businesses." (Doc. 248 ¶¶ 5, 7; *see also Vazquez*, 986 F.3d at 1111 ("master owners have their own entity names and internal business structures, and are responsible for their own marketing, accounting, and general operations") (quoting *Depianti v. Jan-Pro Franchising International, Inc.*, 873 F.3d 21, 23-4 (1st Cir. 2017)).

Nor could there be any suggestion that JPI's franchise system was designed "specifically to avoid its obligations under the wage laws." *Jinks*, 117 N.E.3d at 516. First, as noted above, JPI's "three-tier" business structure—which the Ninth Circuit oddly referred to as "sophisticated" (*Vazquez*, 986 F.3d at 1110)—is a statutorily recognized and approved form of franchising that is, in fact, commonplace.[5] *See* 16 C.F.R. § 436.1(k); Cal. Corp. Code § 31008.5.

Second, there is nothing which supports the fanciful notion that JPI's system was designed to evade any obligations it had under the wage laws. JPI's relationships with its more than 90 regional master franchisees across the country were set up in compliance with the laws that regulate the sale of franchises (Doc. 248 ¶ 430), and each regional master franchisee is a franchisor in its own right that is responsible for preparing its own disclosure document and otherwise complying with all the laws the govern the sale of franchises. (*Id*. ¶¶ 46, 48, 52.) These independent business owners are fully responsible for growing and operating their own businesses (*id*. ¶ 58),

---

Sept. 29, 2017) (concluding that unit franchisees provided a service to top-level franchisor because the franchisor's revenue was "directly dependent on the commercial cleaning work of the ... unit franchisees").

[5]    *See* https://www.global-franchise.com/master-franchises (examples of numerous master franchises)*; see also* Mayer, Pratt, Xu, International Master Franchising: The Subfranchisees Are Doing What?, American Bar Association 40th Annual Forum on Franchising (Oct. 18-20, 2017), available at https://www.americanbar.org/content/dam/aba/events/franchising/course-an17/an17-w24-paper-complete.pdf.

1   decide whether to use the materials JPI provides (*id*. ¶ 109), do their own advertising (*id*. ¶ 111),

2   handle their own books and accounting (*id*. ¶ 110), determine which accounts to bid for and how

3   to bid them (Order at 8; Doc. 248 ¶ 124), decide which fees they are going to charge (*id*. ¶ 156)

4   and choose those entities to whom they want to sell franchises. (*Id*. ¶ 119.) JPI has no involvement

5   with the day-to-day operations or their franchise sales (*id*. ¶¶ 63, 119-20) and, in fact, does not

6   even know who their franchisees are. (*Id*. ¶ 79.)

7       **C.    Because Plaintiffs Cannot Satisfy Either Of The Two Exceptions, The Joint
            Employer Test—Not the ABC Test—Is The Governing Standard**

8

9       *Jinks* makes clear that where, as here, a plaintiff cannot adduce facts showing an alter ego

10  relationship or that the relationship was set up to evade the wage laws, the standard that governs

11  is the test for joint employment—*not* the ABC test. *Jinks*, 177 N.E.3d at 517; *accord Curry v.*

12  *Equilon Enters., LLC*, 23 Cal. App. 5th 289, 311-14 (2018) (ABC test does not apply to claims of

13  joint employment); *Henderson v. Equilon Enters., LLC*, 40 Cal. App. 5th 1111, 1125-19 (2019)

14  (same); *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1032 (9th Cir. 2019) (same).

15      The concept of joint employment is premised on the notion that an individual can have

16  more than one employer. In California, determining whether an entity "employs" someone, and is

17  therefore a joint employer, is governed by the test set forth in *Martinez v. Combs*, 49 Cal. 4th 35

18  (2010); *see Vazquez v. Jan-Pro Franchising International,* 10 Cal. 5th 944, 954 (2021) (affirming

19  that *Martinez* applies in joint employment cases).

20      As this Court recognized in its Order, *Martinez* sets forth three alternative definitions of

21  "to employ" under California labor law. "It means: (a) to exercise control over the wages, hours

22  or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a

23  common law employment relationship." *Martinez*, 49 Cal. 4th at 64. And as this Court also

24  recognized, Plaintiffs cannot—*as a matter of law*—establish any of these factors.

25      *First*, for the same reasons this Court previously recognized (based on the exact same

26  undisputed facts currently before the Court), Plaintiffs cannot establish either the first or third

27  prongs of the *Martinez* test. (Order at 5-9.) Plaintiffs' arguments to the contrary have not improved

28  with age. Parroting the exact same claims they made in opposition to JPI's prior motion for

9

summary judgment, Plaintiffs contend, for example, that JPI somehow controls the unit franchisees because its agreements with the regional master franchisees allow it to establish policies and procedures pertaining to the operation of the businesses of unit franchisees. (Pl. Mot. 19:19-28.) But this Court already made clear that "any right to control that Jan-Pro intended to reserve for itself in its agreements with the regional master franchisees failed to carry over to the agreements our plaintiff unit franchisees entered into." (Order at 6.) More importantly, in *Salazar*, the Ninth Circuit confirmed that, because franchisors "need the freedom to "impose[ ] comprehensive and meticulous standards for marketing [their] trademarked brand and operating [their] franchises in a uniform way" (*Salazar*, 944 F.3d at 1030 (quoting *Patterson v. Domino's Pizza, LLC*, 333 P.3d 723, 725-26 (Cal. 2014)), a franchisor will be deemed a joint employer "'only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees.'" *Id*. (quoting *Patterson*, 333 P.3d at 739-40). Plaintiffs do not even suggest that such control took place here, and the undisputed facts prove otherwise. (*See* Doc. 248 ¶ 40, where Plaintiffs admit that "JPI never had direct oversight over any of the Plaintiffs' unit franchises.")

*Second*, Plaintiffs cannot meet the "suffer or permit" prong—again, for the same reasons this Court previously observed. In *Curry*, the Court of Appeal explained that the "suffer or permit" prong turns on "the defendant's knowledge of and failure to prevent the work from occurring." *Curry*, 23 Cal. App. 5th at 311 (internal quotations omitted). Applying that standard, *Curry* concluded that "the owner of a gas station was not an employer of the station operator's manager because the responsibility for hiring, firing, and assignment of daily tasks belonged to the lessee/operator" of that station. *Salazar*, 944 F.3d at 1030 (concluding that McDonald's was not a joint employer because it too lacked this power). As with the first and third factors, there is no suggestion that JPI had this power, and this Court (based on the same undisputed facts) has already concluded it did not. (*See* Order at 9.)

For the foregoing reasons, not only must Plaintiffs' Motion be denied, but JPI submits that, under the principles that actually govern this case, the undisputed facts warrant the entry of summary judgment in favor of JPI on all claims in Plaintiffs' Second Amended Complaint.

1

2

**IV.    EVEN IF THIS WAS NOT A JOINT EMPLOYER CASE, PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ON THEIR INDIVIDUAL CLAIMS
MUST BE DENIED**

3

4

**A.    Plaintiffs Apply The Wrong Test To Some Of Their Claims And Purport To
Assert Claims That Were Not Pled**

5

6

7

8

9

10

11

12

13

14

15

Even if the ABC test had any application here, portions of Plaintiffs' Motion assume, incorrectly, that it applies to claims to which it clearly does not apply. As discussed in JPI's Opposition to Plaintiffs' Motion for Class Certification, it is settled law that AB5 only applies prospectively and that *Dynamex* only applies to wage orders. Therefore, because Plaintiffs' expense reimbursement claims under Section 2802 of the California Labor Code do not arise under a wage order, those claims must be evaluated under the *Borello* standard (at least for the period through January 1, 2020). (*See* JPI's Opposition to Plaintiffs' Motion for Class Certification at 20-22.) Because Plaintiffs have made no effort to show why they are entitled to judgment as a matter of law under that standard, and because all the named Plaintiffs terminated their relationships with their respective regional master franchisees by 2017 at the latest, their Motion must be denied as to that claim.

16

17

18

19

20

21

22

23

24

25

26

Plaintiffs also claim (on page 24 of their Motion) that they are "entitled to judgment on their wage statement claim" under Section 226 of the Labor Code. But *Plaintiffs did not plead a claim for violation of Section 226*—it appears nowhere in their Complaint. *See Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings"); *Beckwith v. Pool*, No. 2:13-cv-125 JCM (NJK), 2015 WL 1988788, at *6 (D. Nev. May 1, 2015), *aff'd sub nom. Beckwith v. City of Henderson*, 687 Fed. Appx. 665 (9th Cir. 2017) ("Federal Rule of Civil Procedure 8(a) ... does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage"). Further, even if they had pled such a claim, it too would be governed by *Borello*. *See Moreno v. JCT Logistics, Inc.*, Case No. EDCV 17-2489 JGB (KKx), 2019 WL 3858999, at *1 (C.D. Cal. May 29, 2019) (the *Borello* test, not the ABC test, "applies to the wage statement claim" under Section 226).[6]

27

28

---

[6]    In addition, "a claim for damages under Section 226(e) requires a showing of three elements: (1) a violation of Section 226(a); (2) that is 'knowing and intentional'; and (3) a resulting

### B. Plaintiffs Proffer No Viable Basis For Summary Judgment On Their Remaining Claims

Plaintiffs' Motion for Summary Judgment on their remaining claims—for minimum wage and overtime—is similarly ill-advised. As to the former, the facts are certainly in dispute. Indeed, Plaintiff Aguilar never claims he made less than minimum wage (*see*, *generally*, Doc. 292-9), and to the extent Plaintiff Roman is making such a claim, it contradicts her own Declaration. Roman claims she worked 47-67 hours a week and made approximately $3,200/month (after the payment of any fees she owed her regional master franchisee). (Doc. 292-10 ¶ 8.) Even if that were true— and it conflicts with both the documents and her testimony at deposition—Roman's figures establish that, at worst (when she allegedly worked 67 hours/week), she always made more than the minimum wage (which increased from $6.75/hour to $11.00/hour over the term of her franchise agreement): $3200 ÷ 288.1 hours/month (67 hours/week x 4.3 weeks/month) = $11.1/hour.

With respect to the overtime claim, it is unclear how Plaintiffs can be claiming an entitlement to summary judgment when not even all the Plaintiffs claim to have worked overtime hours. Although Roman alleges she worked "47 to 67 hours per week" (Doc. 292-10 ¶ 8), Aguilar never makes such a claim. To the contrary, Aguilar admits he worked "much less than 40" hours per week on his accounts. (Doc. 248 ¶ 420.) And while Vazquez now asserts he *may* at times have worked more than 40 hours a week including travel time (*see* Doc. 292-8 ¶ 6), even that assertion is dubious, as: (i) Vazquez admitted that the number of hours he spent cleaning varied significantly depending on "how messy" the accounts were (Vazquez Dep., Doc. 247-4 Tab, at 92:9-93:2, 105:5-12) and how many days he visited the account, which varied over time (*id*. at 94:13-19); and (ii) the franchisees that took over Vazquez's accounts after he terminated his franchise stated that it took far less time to clean those accounts than Vazquez indicated. (*Cf*. Vazquez Dep. at 105:8-12, where Vazquez testified it took 3-4½ hours to clean an account, and Doc. 248 ¶ 471, where the franchisee that assumed that account said it took just 2 hours.)

Moreover, to the extent any franchisee worked overtime, JPI could not have known they

injury." *Arroyo v. International Paper Co.*, No. 17-CV-06211-BLF, 2020 WL 887771, at **6-7 (N.D. Cal. Feb. 24, 2020). Plaintiffs' Motion never addresses the latter two factors.

were doing so. "[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer ... the employer's failure to pay for the overtime hours is not a violation" of the Labor Code. *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); *accord Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal. App. 4th 391, 395-96 (2014). Therefore, to prevail on this claim, it was Plaintiffs' burden to "prove that Defendant 'suffered or permitted' [his] alleged unpaid work, *i.e.*, that Defendant had actual or constructive knowledge that Plaintiff had performed work for which [he] was not paid." *McLeod v. Michael's Stores, Inc.*, Case No. CV 09-3491-GHK (PLAx), 2009 WL 10674458, at *5 (C.D. Cal. Dec. 15, 2009); *accord Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000).[7]

Assuming *arguendo* Plaintiffs were employees (they were not) and actually worked overtime (a disputed issue), JPI cannot be charged with a violation of the Labor Code because it had neither actual nor constructive knowledge that Plaintiffs were allegedly working overtime—it did not even know who Plaintiffs were.

## V.   THE ABC TEST DOES NOT APPLY TO JPI BY ITS TERMS, BUT TO THE EXTENT IT DOES, ISSUES OF FACT PRECLUDE THE ENTRY OF SUMMARY JUDGMENT

Plaintiffs' Motion is largely devoted to their assertion that summary judgment should be granted (either to them individually or to a class that has not been—and JPI submits never should be—certified) because JPI allegedly cannot satisfy any prongs of the ABC test. Plaintiffs are wrong, for a host of reasons.

### A.   Plaintiffs Cannot Meet The ABC Test's Predicate Requirement

In Massachusetts, there is a predicate element that must be shown before that State's ABC

---

[7]   Plaintiffs may claim that, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), JPI's failure to keep records shifts the burden to it to disprove Plaintiffs' claims. But as the Fourth Circuit Court of Appeals observed in rejecting this same argument, *Anderson* dealt with an entirely different issue—namely, "what evidence an employee must introduce to establish the extent of his overtime work when his employer has kept inadequate records." *Davis v. Food Lion*, 792 F.2d 1274, 1277 (4th Cir. 1986). And, that issue only arises once a plaintiff shows that the defendant had the requisite knowledge. *Id.*; *accord Butler v. HomeServices Lending LLC*, No. 11-cv-2313-L(MDD), 2013 WL 1285567, at *6 (S.D. Cal. 2013) ("**if** it is determined that Defendants had actual or constructive knowledge of Plaintiff working uncompensated overtime, Plaintiff will be able to testify to the number of hours worked and it will be Defendants' burden [under *Anderson*] to refute that testimony") (emphasis added).

1   test will apply: the plaintiff must first show that it provided services to the defendant. *Valle v.*

2   *Powertech Industrial Co. Ltd.*, 381 F. Supp. 3d 151, 164 (D. Mass. 2019); *accord* Mass. Gen. L.

3   c. 149, § 148B(a). If this threshold is not met, the individual is not presumed to be an employee.

4   *Gallagher v. Cerebral Palsy of Massachusetts, Inc.*, 86 N.E.3d 496, 498 (Mass. App. Ct. 2017).

5       Although California did not adopt this exact same language when it adopted the

6   Massachusetts ABC test, it adopted a similar requirement: namely, the putative employer must be

7   the "hiring entity." *See* Cal. Labor Code § 2775(b)(1) ("For purposes of the provisions of this code

8   … a person providing labor or services for remuneration shall be considered an employee rather

9   than an independent contractor unless *the hiring entity* demonstrates that all of the following

10   conditions are satisfied") (emphasis added); *accord Dynamex*, 4 Cal. 5th at 917 ("a worker is

11   properly considered an independent contractor to whom a wage order does not apply only if *the*

12   *hiring entity* establishes …) (emphasis added). This provision—which the Ninth Circuit never

13   addressed—precludes the application of the ABC test here because it is undisputed that JPI did not

14   "hire" *any* unit franchisee. Specifically, it is undisputed that JPI maintains no records regarding

15   any unit franchisee (Doc. 248 ¶ 35), never had any contact with any of the Plaintiffs (*id.* ¶ 36) and

16   had absolutely no involvement in the sale of the unit franchises (*id.* ¶ 119). On these facts, there is

17   no basis for deeming JPI the "hiring entity" and, therefore, no basis for applying the ABC test.[8]

18       **B.      Material Disputes of Fact Exist As To Who Can Be Deemed An Employee**

19       As set forth in JPI's Opposition to Plaintiffs' Motion for Class Certification, the vast

20   majority of unit franchises in California are owned by entities, not individuals. To the extent

21   Plaintiffs are claiming that these entities are "employees," individual factfinding will be needed to

22   determine whether there is any basis for disregarding the corporate form. *See Bowman v. CMG*

23   *Mortg. Inc.,* No. C 07–03140 SI, 2008 WL 3200662, at *4 (N.D. Cal. Aug. 4, 2008) ("Plaintiffs

24   do not cite any authority supporting their contention that an individual who personally funds a

25

26   ───────────────
    [8]      The appellate court's decision in *People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266 (2020),
27   is not to the contrary. There, Uber contended that the "hiring entity" was the customers for whom
    the drivers received rides, not Uber. *Id.* at 287. That is not this case. In this case, that argument
28   would be tantamount to a regional master franchisee claiming that a cleaning customer was the
    hiring entity. The situation here is entirely different, as Plaintiffs provide no services to JPI.

corporation which pays expenses on behalf of the individual's employer is entitled to be reimbursed as an employee under Labor Code § 2802(a)"); *Chebotnikov v. LimoLink, Inc.*, No. 14 Civ. 13475 (FDS), 2017 WL 2909808, at *3 (D. Mass. July 6, 2017) (determining whether an individual can sue on behalf of the corporation it formed will "require[] an individualized and fact-intensive inquiry").

**C.     Plaintiffs Have Not Established A Right to Judgement Under the ABC Test**

Again ignoring this Court's prior ruling (which effectively ruled that JPI satisfied Prong A as a matter of law), Plaintiffs assert they are entitled to summary judgment because JPI cannot satisfy any Prong of the ABC test. The facts and the law show otherwise.

**1.     Prong A**

*Dynamex* made clear that Prong A—which requires that a worker be "free from the control and direction of the hiring entity in connection with the performance of the work"—mirrors the *Borello* test. *Dynamex*, 4 Cal. 5th at 957. In determining whether a worker is subject to the requisite level of control under *Borello*, courts look at whether "the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* In this regard, "[t]he essence of the [control] test is the '*control of details ....*'" *Estrada v. FedEx Ground Package Sys.*, 154 Cal. App. 4th 1, 10 (2007) (emphasis added). Where "control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established." *Millsap v. Fed. Express*, 227 Cal. App. 3d 425 (1991); *accord Lara v. Workers' Comp. Appeals Bd.*, 182 Cal. App. 4th 393, 399 (2010). This principle takes on special force in cases like this—which involve franchises—because franchisors must exercise control over their franchisees' operations. *See* Cal. Corp. Code §31005(a)(1) (defining a franchise, in part, as a contract or agreement under which "[a] franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system *prescribed in substantial part by a franchisor*.") (emphasis added); *Salazar*, 944 F.3d at 1030 (franchisors "need the freedom to "impose[] comprehensive and meticulous standards for marketing [their] trademarked brand and operating [their] franchises in a uniform way") (internal quotations omitted); *see also* California Commissioner's Release 3-F: When Does an Agreement Constitute

a "Franchise" ("Release") ¶2(b) at ¶I.B.2(a) (available at https://dbo.ca.gov/commissioners-release-3-f/)) (if there is no marketing plan "and the franchisee is left entirely free to operate the business according to the franchisee's own marketing plan or system, *the agreement is not a franchise*") (emphasis added).

In this case, this Court already concluded that "Plaintiffs failed to raise a genuine dispute of fact about whether Jan-Pro directly or indirectly exercised control over their activities …." (Order at 7.)  In fact, rejecting the very same arguments Plaintiffs recycle on this Motion, this Court previously concluded that: (i) "any right to control that Jan-Pro intended to reserve for itself in its agreements with the regional master franchisees failed to carry over to the agreements [the] plaintiff unit franchisees entered into" (*id*. at 6); (ii) the "plaintiff unit franchisees' respective regional master franchisees did not use the EZ Bid system" which Plaintiffs again allege evidences control (Motion at 20:6-9); and (iii) while Plaintiffs attended training (Motion at 20:9-11), "the evidence [Plaintiffs] cite shows that Jan-Pro 'train[ed] masters only'" (Order at 8).

Plaintiffs' other examples of control are likewise incorrect. More importantly, each allegation is belied by Plaintiffs' own admissions. For example, while Plaintiffs claim they cannot solicit their own accounts, they conceded in response to JPI's Statement of Material Facts in Support of its Motion for Summary Judgment (Doc. 248) that unit franchises "perform cleaning services for accounts they find themselves" (Doc. 248 ¶ 12). And while Plaintiffs complain about the fees they agreed to pay under their franchise agreements (Motion at 20:18-20), they also conceded that "JPI does not pay any money to unit franchisees or get involved with franchisees' businesses or cleaning accounts" (Doc. 248 ¶ 164).

None of these facts have changed, and Plaintiffs have proffered no reason for this Court to reach a different conclusion about the evidence (or lack thereof) they previously put before the Court. Plaintiffs have not shown that JPI controls them. If anything, the contrary remains true, as a matter of law.

## 2.      Prong B

"Prong B [of the Massachusetts ICL] requires the hiring entity to establish that it was not engaged in the same usual course of business as the putative employee." *Vazquez*, 923 F.3d at 593.

Relying largely on cases that involve direct (or two-tier) relationships that addressed the misclassification of newspaper delivery boys, strippers, and delivery drivers, Plaintiffs contend that JPI cannot satisfy this Prong because JPI (i) allegedly advertises itself as being in the cleaning business, which is the same business Plaintiffs are in, and (ii) earns revenue from the operations of unit franchisees. None of these assertions support the entry of summary judgment.

### a.   The Only Cases To Address This Issue On The Merits Have Concluded That JPI Is Not In The Same Course Of Business As Unit Franchisees

While Plaintiffs have attempted to flood the Court with inapt, non-binding authority addressing other types of businesses that involve direct relationships between the putative employer and the putative employee, it remains undisputed that the *only* courts to rule on the issue before this Court on the merits have concluded—*as a matter of law*—that JPI is *not* in the same regular course of business as the unit franchisees. In *Jan-Pro Franchising Int'l, Inc. v. Depianti*, 310 Ga. App. 265 (2011), the Georgia Court of Appeals reviewed the exact same issue before this Court, based on the very same unit franchise agreements, and concluded that unlike unit franchisees—whose businesses are engaged in the course of operating commercial cleaning businesses— "JPI's usual business was establishing a trademark and cleaning system that was then licensed to regional franchisees …, which then licensed rights to employ the JPI system to serve customer accounts provided by [the regional master franchisees]." *Depianti*, 310 Ga. App. at 268. And in this case, Plaintiffs have conceded that "[f]or its business, JPI sells regional rights to use the "Jan-Pro" trademark to entities knows as Regional Master Franchisees" (Doc. 248 ¶ 4).

Plaintiffs' concession and *Depianti's* conclusion accord not only with the law, but with common sense. Unlike the unit franchisees, JPI does not clean any accounts (anywhere), it has no employees who clean accounts, it does not "'invoice clients for cleaning services," and it does not "collect payment from clients for cleaning services." *Depianti v. Jan-Pro Franchising International Inc.*, 39 F. Supp. 3d 112, 124-126 (D. Mass. 2014), *aff'd*, 873 F.3d 21 (1st Cir. 2017). Its activities, instead, are strictly limited to "'creat[ing] a business model that it license[s] to regional franchisees.'" *Id*. at 129; *see also* Doc. 248 ¶ 13. That, no doubt, is why the Massachusetts district court held that the Georgia Court of Appeals' decision "represents a sound application …of

Massachusetts law, as developed by the [Massachusetts Supreme Judicial Court] and as applied in more or less comparable cases decided in this district." *Id*.; *see* also n.1, *supra* (listing further undisputed facts about the actual nature of JPI"s business).

The *Depianti* court is hardly alone in recognizing the distinction between the activities franchisees engage in and those performed by franchisors. In *Haitayan v. 7-Eleven, Inc.*, No. CV 17-7454 DSF (ASx), 2020 WL 1290613 (C.D. Cal. Feb. 19, 2020), for example, the plaintiff franchisees (represented by the same counsel here) moved for summary judgment under the ABC test. As here, the plaintiffs claimed that 7-Eleven was in the same course of business as its franchisees, and therefore failed Prong B, because it advertised itself as being in the convenience store business and its income was "dependent" on its franchisees' operations. The court denied the plaintiffs' motion because, while 7-Eleven sold franchises, leased property and equipment, and licensed franchisees to use its trademarks and operating system, the plaintiffs did "none of these things." *Id*., 2020 WL 1290613 at *8.

Similarly, in *Curry v. Equilon Enters., LLC*, 23 Cal. App. 5th 289, 307-308 (Cal. Ct. App. 2018), an employee of the lessee/operator of a Shell gas station claimed that Shell was her employer under the ABC test. Employing the same logic as the *Depianti* and *Haitayan* courts, the *Curry* court observed that Shell, which owned and leased gasoline stations, "was not in the business of operating fueling stations—it was in the business of owning real estate and fuel. … If [the lessee] supplied the employees and supervised the employees' work, then [the lessee] was in the business of operating the station, and Shell was in the business of owning the station." *Id*.[9]

---

[9]     Courts outside of California have reached the same conclusion. *See*, *e.g*., *Uninsured Employer's Fund v. Crowder*, No. 2015-SC-000362-WC, 2016 WL 2605624, at *3 (Ky. May 5, 2016) (franchisor in business of granting franchises; franchisee's business was making/selling sandwiches); *Wright v. Mountain View Lawn Care, LLC*, No. 7:15-cv-0224 2016 WL 1072506 (W.D. Vir. Mar. 11, 2016), Business Fran. Guide (CCH) ¶ 15,741 (W.D. Va. Mar. 11, 2016) (landscaper's claim that franchisor was her employer failed, in part, because her duties were landscaping while the franchisor's business was managing accounts and advising); *Saladworks, LLC v. Worker's Comp. Appeal Bd*., 124 A.3d 790, 799 (Pa. Commw. Ct. Oct. 6, 2015) (franchisor *was engaged* in business of selling franchises; franchisee *was engaged* in business of selling salads)*; see also* Rosin Decl., Ex. 1 (CUIAB affirms—in a proceeding in which Plaintiff Roman was involved—that CNI is not the employer of its franchisees: "It is difficult, if not impossible to identify any franchised business that is not an integral part of the franchisor's business. That is the

18

1

2

**b.** **Plaintiffs' Counter-Arguments Conflict With The Case-Law and Common Sense**

3

4

Relying on the Ninth Circuit's *dicta* as to how Prong B should be interpreted, Plaintiffs ask

5

this Court to ignore these realities. They argue, just as the franchisee did in *Depianti*, that there is

6

"simply no question that Jan-Pro is in the commercial cleaning business" because (i) the revenue

7

generated by the unit franchisees is a "major source" of JPI's revenue (Motion at 12:21-23); (ii)

8

JPI's websites "promote Jan-Pro as being in the business of cleaning" (*id*. at 11:17-12:12); and

9

(iii) franchisees "work continuously" for JPI because they sign contracts that have ten-year terms

(*id*. at 12:23-26). These arguments deserve no more credence than they received in *Depianti*.

10

*First*, to the extent the Ninth Circuit concluded (based on Massachusetts law) that earning

11

revenue (especially indirectly) was enough to transform an entity into an employer, that is no

12

longer good law. As noted above, in *Jinks*, the Massachusetts Supreme Judicial Court made clear

13

that simply because an "entity derives an economic benefit" from the service of an individual does

14

not make the entity an "employer." *See Jinks*, 177 N.E.3d at 515-16. This conclusion is particularly

15

apt in this case because *every* franchisor makes its revenue from the fees it charges its franchisees.

16

A review of Dunkin' Donuts Franchise Disclosure Document, for example, shows that it makes

17

100% of its revenue from the franchise fees and royalties, advertising fees, and training fees paid

18

by franchisees. (*See* Request for Judicial Notice.) Yet no one would contend that the owners of

19

Dunkin' Donuts franchises are employees.[10]

20

*Second*, the fact that JPI markets its franchise system by describing its system as a whole

21

as a commercial cleaning business is not a sufficient basis for concluding that JPI itself is in the

22

cleaning business—especially where, as here, the undisputed facts prove it is not. In *Sebago v.*

23

*Boston Cab Dispatch, Inc*., 28 N.E.3d 1139 (Mass. 2015), the Massachusetts Supreme Judicial

24

Court held that a putative employer was not in same usual course of business as the plaintiffs, even

25

26

very nature of a franchise …. [A]ny franchisor is foremost in the business of selling franchises.").

27

[10]     The Ninth Circuit invited this Court to decide if a further factual record was needed to

28

resolve this case. Should the Court determine that necessary, JPI is prepared to present evidence (including expert testimony) to further substantiate this point.

19

though its advertisements indicated otherwise, because the facts showed that the putative employer's actual business was entirely different from that in which the putative employees engaged. *See Sebago*, 471 Mass. at 335 (holding that radio associations were not in the same business as taxicab drivers, even though "the radio associations advertise themselves as providing taxicab services and ... arrange for the transportation of passengers"). The same reasoning should be applied here, particularly in light of Plaintiffs' admission that JPI's business is exactly what both the *Depianti* court and this Court described it as: selling the right to use its trademark and system to regional master franchisees. (Order at 1.)

*Finally*, it makes no sense to deem unit franchisees employees of JPI simply because the terms of their agreements with the regional master franchisees last for years. *See Sebago*, 471 Mass. at 329 (holding that courts must interpret the ICL "to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation"). As the Central District of California recently recognized, "it would not make economic sense for a franchisee to invest in a franchise with a term too short for the franchisee to recoup his or her investment." *Haitayan v. 7-Eleven, Inc.*, No. CV 17-7454 DSF (ASx), 2021 WL 4078727, at *16 (C.D. Cal. Sept. 8, 2021). That is precisely why the California Franchise Relations Act strictly limits the circumstances under which a franchisor can terminate a franchise agreement prior to the expiration of its term. *See 1-800-Got Junk? LLC v. Sup. Ct.*, 189 Cal. App. 4th 500, 511 (2010). As applied to the facts of this case, *Vazquez's* approach is unreasonable at best. Because that approach is not required by the language of *Dynamex* or AB5, it should be rejected.

**c.      Treating Unit Franchisees as Employees Would Be Inconsistent With The Regulatory Framework That Governs Franchised Relationships**

In contrast to franchised businesses in Massachusetts, franchise relationships in California are subject to a variety of laws. Those laws (the California Franchise Investment Law ["CFIL"] and the California Franchise Relations Act ["CFIL"]) are extensive, comprehensive, statutory regimes. The CFIL, for example, requires that franchisors register with the State to sell franchises and regulates, among other things, the application franchisors must fill out to sell franchises, the exact contents of the disclosure document franchisors must give prospective franchisees, what

20

practices are prohibited in connection with the sale of franchises, the powers of the Commissioner to enforce compliance with the law, and the penalties (both civil and criminal) for non-compliance with the statute's mandates.  Cal. Corp. Code §§31000 *et seq*.  Its counterpart (the CFRA) regulates the parties' rights and responsibilities once a franchise agreement has been executed, such as the grounds for the non-renewal and termination of franchise agreements, the venue and governing law in franchise disputes, and the remedies available to those harmed by violations of the statute. *See* Cal. Bus. & Prof. Code §§20000 *et seq*.

Like their federal counterpart (the FTC Franchise Rule), both statutes make clear that franchising creates a commercial relationship—*not* an employment relationship. *See*, *e.g.*, Cal. Corp. Code §31001 (noting that pre-sale disclosures are designed to "provide a better understanding of the relationship between the franchisor and franchisee with regard to their business relationship"); §31005(a)(2) (noting that "[t]he operation of the franchisee's business" must be substantially associated with the franchisor's trademark); §31011 (franchisee fee is the amount paid "for the right to enter into a business under a franchise agreement"); *accord* 16 C.F.R. § 436.1(h)(1)); *GTE Sylvania Inc. v. Cont'l T.V., Inc.*, 537 F.2d 980, 999 (9th Cir. 1976) ("The franchise system creates a class of independent businessmen; it provides the public with an opportunity to get a uniform product at numerous points of sale from small independent contractors, rather than from employees of a vast chain."). Both also make clear that franchising is a perfectly legal method of doing business in this State. Yet Plaintiffs proffer an approach to Prong B that would make these statutorily sanctioned relationships impermissible. As the California Supreme Court has emphasized, there is no basis for adopting such an approach. *See Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, 55 Cal. 4th 783, 805 (2012) ("A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. … Thus, when two codes are to be construed, they must be regarded as blending into each other and forming a single statute … [and] construed as to give effect, when possible, to all the provisions thereof.") (citations and internal quotations omitted).

In *Sebago v. Boston Cab Dispatch, Inc.*, 471 Mass. 321, 28 N.E.2d 1139 (2015), the

21

1    plaintiffs (taxi drivers who had leased medallions) asserted that they had been misclassified under

2    the Massachusetts Independent Contractor Law ("ICL"). Distinguishing as inapplicable the very

3    same cases Plaintiffs cite in this case (*i.e.*, those involving adult entertainers and package couriers),

4    the Court rejected this assertion.  In doing so, it emphasized the significance of the fact that the

5    method of doing business the plaintiffs were challenging (the leasing of medallions) "was created

6    in the context of a legislative mandate to regulate the taxicab industry." *Id*. at 331. While it noted

7    that the rules governing the operation of taxicabs did not preempt the ICL, the Court also noted

8    that "[n]othing the defendant ha[d] done [was] in violation of the statutorily conferred power"

9    under the applicable rules, and that the "[m]ere participation in that system [was] insufficient to

10   render medallion owners the presumptive employers of the drivers who lease their taxicabs." *Id*.

11   at 330-31; *see id*. at 335 ("It is true that the radio associations advertise themselves as providing

12   taxicab services and that they arrange for the transportation of passengers. Yet, these facts, helpful

13   as they are to the plaintiffs' cause ... do not override the realities of the radio associations' actual

14   business operations or the regulatory framework in which those operations occur.").

15        Here, there is no dispute that all the relationships at issue were entered into in compliance

16   with the comprehensive regulatory scheme the State of California enacted.  Yet Plaintiffs seek to

17   transform JPI into an employer merely for doing those things which that statutory scheme not only

18   permits, but in most cases requires. Plaintiffs complain, for example, about the fact that they were

19   required to pay franchise fees to acquire their businesses. But the payment of a franchise fee is part

20   of the definition of a franchise under both federal law (*see* 16 C.F.R. §436.1(h)(3)) and California

21   law. In fact, "[f]or the agreement to constitute a franchise, the agreement *must* call for the payment

22   of a franchise fee by the franchisee." *See* Commissioner's Release 3-F: When Does an Agreement

23   Constitute a "Franchise", at ¶4 (emphasis added). Likewise, while Plaintiffs complain about the

24   fact that JPI advertises, the disclosure rules established by the FTC (and adopted by California)

25   require that a franchisor disclose its "advertising program for the franchise system" (16 C.F.R.

26   §436.5(k)(4)). And, while Plaintiffs assert that JPI is an employer because it makes money off the

27   regional master franchisees' unit franchisees, that is a fundamental element of how *all* franchises

28   operates:  namely, "the franchisee pay royalties and fees for the right to sell products or services

1   under the franchisor's name and trademark." *Patterson*, 60 Cal. 4th at 489.

2       In sum, "[t]his is not a case of defendants concocting an artificial ... scheme to circumvent

3   the wage laws." *Sebago*, 471 Mass. at 330. This is, instead, a situation where JPI "merely complied

4   with a regulatory framework that separately defines different services as different businesses. In

5   other words, the distinctions in services within the [franchise] industry as a whole are not illusory,

6   but quite real." *Id.* at 340. Respectfully, they should be treated accordingly.

7       ### 3.    Prong C

8       Much like their arguments regarding Prong A, Plaintiffs' assertions regarding Prong C

9   ignore both this Court's prior ruling and the admissions they made in response to JPI's Statement

10  of Material Facts. Prong C asks whether "the individual is customarily engaged in an

11  independently established trade, occupation, profession or business." *Dynamex*, 4 Cal. 5th at 963.

12  "The question in Prong C is not whether [JPI] 'prohibited [Plaintiffs] from engaging in an

13  independently established business'; it is whether [Plaintiffs] 'fit[] the common conception of an

14  independent contractor—'an individual who independently has made the decision to go into

15  business for himself or herself' and 'generally takes the usual steps to establish and promote his

16  or her independent business—for example, through incorporation, licensure, advertisements,

17  routine offerings to provide services of the independent business to the public or to a number of

18  potential customers, and the like.'" *Sportsman v. A Place for Rover, Inc.*, 537 F. Supp. 3d 1081,

19  1098 (N.D. Cal. 2021) (quoting *Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558, 573

20  (2018)). "When a worker has not independently decided to engage in an independently established

21  business but instead is simply designated an independent contractor by the unilateral action of a

22  hiring entity, there is a substantial risk that the hiring business is attempting to evade the demands

23  of an applicable wage order through misclassification." *Dynamex*, 4 Cal. 5th at 962.

24      Here, it is undisputed that Plaintiff Roman operated her own commercial and residential

25  cleaning business separate and apart her Jan-Pro franchise (Doc. 248 ¶ 440), and that another

26  franchisee (Mr. Rodriguez) was a partner in a business that competed with his regional master

27  franchisee for accounts. (*See* JPI's Opposition to Plaintiffs' Motion for Class Certification at 8.)

28  In fact, Plaintiffs have conceded that "*Many* unit franchisees (including Roman) own and operate

other cleaning businesses that are separate and apart from their Jan-Pro franchise businesses." (Doc. 248 ¶ 21; emphasis added.) Considering that Plaintiffs set their own hours, control their own employment relations, can delegate all their franchise's work to employees, and choose which accounts they want and which they do not, Prong C is more than satisfied. Indeed, in *Kubinex v. Top Cab Dispatch, Inc*., 2014 WL 3817016 (Mass. Sup. Ct. June 25, 2014), the court granted summary judgment *for the putative employer* based on facts substantively indistinguishable from those at issue here:

> [The Plaintiff] owns the medallion and the taxi. He is free to set his own work schedule and to drive where he wishes. He can take advantage of referrals that [the defendant] sends him or reject them if he thinks that he can earn more picking up other fares that he finds himself. He is not accountable to [the defendant] and need not explain his choices to [the defendant]. He is also free to take his taxi and medallion and join another dispatch service if he is dissatisfied with [the defendant], as he did in this case.

*Id*., 2014 WL 3817016, at *13; *Comm'r of Div. of Unemployment Assistance v. Town Taxi of Cape Cod, Inc*, 862 N.E.2d 430, 436 (Mass. App. Ct. 2007) (putative employer satisfied Prong C where drivers were "free to find customers on their own and to reject prospective customers referred from the [putative employer]").

That should be the end of the inquiry—and certainly Plaintiffs' claim that JPI fails this Prong as a matter of law. The 13-years old Massachusetts case they rely on—*Coverall N. Am., Inc. v. Comm'r of the Div. of Unemployment Assist*., 857 N.E.2d 1083 (Mass. 2006)—does not counsel otherwise. Putting aside that the *Coverall* case involved a direct relationship between Coverall and the franchisee—whereas this case does not—Plaintiffs ignore the fact that the factors the Massachusetts court relied on in concluding that Coverall failed Prong C have not been elements of the regional master franchisees' franchise model *for over a decade*. In its 2006 decision, the Massachusetts court focused on two facts in holding that Prong C was not satisfied: (i) "each new 'client' [of the franchisee] became a Coverall client," and (ii) the franchisee's business ended when her relationship with Coverall ended. *Id*. at 1088. Neither fact is true in this case. In fact, it is undisputed that unit franchisees in California own their accounts (and have since at least 2011) and have the right to sell their accounts or their entire franchise. (Doc. 248 ¶ 22.) *See also Desimone v. Allstate Ins. Co.*, No. C 96–03606 CW, C 99-02074 CW, 2000 WL 1811385, at *16

1   (N.D. Cal. Nov. 7, 2000) (plaintiffs were independent contractors because, among other factors,

2   they "have a transferable economic interest in their Allstate books of business").[11]

3   **VI.   CONCLUSION**

4           For the foregoing reasons, JPI respectfully submits that Plaintiffs' Motion for Summary

5   Judgment (Doc. 298) be denied in its entirety and that summary judgment be entered in favor of

6   JPI on all claims in Plaintiffs' Second Amended Complaint.

7
8    Dated: March 3, 2022                          **DLA PIPER LLP (US)**

9                                                  By: */s/ Richard H. Rahm*_____
                                                       Richard H. Rahm
10                                                     DLA Piper LLP (US)
                                                       555 Mission Street, Suite 2400
11                                                     San Francisco, CA 94105-2933

12
                                                       Norman M. Leon (*pro hac vice* motion
13                                                     forthcoming)
                                                       DLA Piper LLP (US)
14                                                     444 W. Lake Street, Suite 900
                                                       Chicago, Illinois 60606
15
                                                       Jeffrey M. Rosin (admitted *pro hac vice*)
16                                                     O'HAGAN MEYER
                                                       111 Huntington Avenue, Suite 2860
17                                                     Boston, Massachusetts 02199

18                                                     *Attorneys for Defendant*
                                                       JAN-PRO FRANCHISING
19                                                     INTERNATIONAL, INC

20
21
_____
22   [11]   To the extent Plaintiffs argue that the limited non-compete provision that may have existed
     a decade ago constitutes indicia of an employment relationship, their argument ignores the fact
23   that unit franchisees did in fact operate competitive businesses and that this Court already ruled
     that the provisions in JPI's master franchise agreements were not included in the Plaintiffs'
24   agreements (Order at 4). In addition, this argument is contrary to the statutory framework that
     regulates franchise relationships in this State. In discussing what a "franchise" is under the CFIL,
25   the Commissioner of the California Department of Business Oversight specifically noted that the
     characteristics of the "marketing plan" all franchises must have can include, among other things,
26   provisions "prohibiting or limiting the sale of competitive or non-competitive goods ...." Release
     at ¶ 2(c) (emphasis added). It would be odd at best if a feature the State characterized as indicative
27   of a "marketing plan"—and therefore part of the legislature's definition of "franchise"—converted
     franchisees into employees.
28
                                                 25