Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Attorneys for Plaintiffs and the Putative Class

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA ROMAN, GERARDO VAZQUEZ, JUAN AGUILAR, and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.<br><br>                Defendant. | Case No.:   3:16-cv-05961-WHA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION**<br><br>Date:        April 28, 2022<br>Time:       8:00 am<br>Courtroom:  12, 19th Floor<br><br>Hon. William Alsup |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    A.    THE ARBITRATION PROVISION DOES NOT PRECLUDE CLASS
        CERTIFICATION ................................................................................................ 2

        1.    Jan-Pro Has Waived Its Right to Compel Its Cleaning Workers to
               Arbitrate ....................................................................................................... 2

        2.    Jan-Pro Cannot Invoke the Agreement as a Non-signatory ...................... 5

    B.    JAN-PRO CANNOT REFUTE THAT CLASS CERTIFICATION IS
        APPROPRIATE ..................................................................................................... 7

        1.    The ABC Test Applies to All of Plaintiffs' Claims ................................... 7

        2.    Individualized Issues Do Not Preclude Class Certification ....................... 7

               a)    Plaintiffs' Misclassification Claim Should Be Certified................ 7

               b)    Plaintiffs' Expense Reimbursement Claim Should Be Certified .. 10

                     (1)    The ABC Test Applies To Plaintiffs' Expense
                             Reimbursement  & Deductions Claims............................. 10

                     (2)    Common Questions Predominate With Respect to the
                             Expense  Reimbursement Claim ...................................... 10

               c)    Plaintiffs' Minimum Wage and Overtime Claims Should Be
                   Certified............................................................................................ 12

CONCLUSION................................................................................................................. 15

CERTIFICATE OF SERVICE ......................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Fed Ex Ground Package System Inc.*
    765 F.3d 981 (9th. Cir. 2014)...............................................................................10

*Alfred v. Pepperidge Farm, Inc.*
    322 F.R.D. 519 (C.D. Cal. 2017) .........................................................................9

*Alvarez v. XPO Logistics Cartage*
    2020 U.S. Dist. LEXIS 199326 (C.D. Cal. 2020) ...............................................9

*Am. Zurich Ins. Co. v. Dep't of Indus. Accidents*
    2006 WL 2205085 (Mass. Super. Ct. June 1, 2006) ...........................................8

*Ambrosio v. Cogent Commc'ns, Inc.*
    2016 WL 4436091 (N.D. Cal. Aug. 5, 2016)......................................................4

*Amero v. Townsend Oil Co.*
    No. 07-1080-C, 2009 WL 1574229 (Mass. Super. Apr. 15, 2009)......................8

*Anderson v. Mt. Clemens Pottery Co.*
    328 U.S. 680 (1946) ...........................................................................................14

*Aoki v. Gilbert*
    2015 WL 5734626 (E.D. Cal. Sept. 29, 2015)....................................................3

*Awuah v. Coverall North America, Inc.*, C.A.
    No. 07-10287 (D. Mass.) .............................................................................1, 10

*Beliz v. W.H. McLeod & Sons Packing Co.*
    765 F.2d 1317 (5th Cir. 1985)............................................................................10

*Bowerman v. Field Asset Servs.*
    2015 WL 1321883 (N.D. Cal. 2015) ...................................................................9

*Carey v. Gatehouse Media Massachusetts I, Inc.*
    92 Mass. App. Ct. 801 (2018)..............................................................................8

*Cassady v. Morgan, Lewis & Bockius LLP*
    145 Cal. App. 4th 220 (Cal. Ct. App. 2006) .....................................................11

*Castaneda v. F&R Cleaning Servs. Corp.*
    2019 WL 5694118 (E.D.N.Y. 2019)..................................................................12

*Castillo v. Bank of Am., NA*
    980 F.3d 723 (9th Cir. 2020).........................................................................7, 13

*Castillo v. Givens*
    704 F.2d 181 (5th Cir. 1983)..............................................................................10

*Conde v. Open Door Mktg. LLC*
  223 F. Supp. 3d 949 (N.D. Cal. 2017) ........................................................... 6

*Cope v. Let's Eat Out, Inc.*
  319 F.R.D. 544 (W.D. Mo. 2017) ................................................................ 13

*Costello v. BeavEx, Inc.*
  810 F.3d 1045 (7th Cir. 2016) ...................................................................... 1

*Cotter v. Lyft, Inc.*
  176 F. Supp. 3d 930 (N.D. Cal. 2016) ........................................................... 4

*Daugherty v. Encana Oil & Gas (USA), Inc.*
  838 F. Supp. 2d 1127 (D. Colo. 2011) ........................................................... 6

*De Giovanni v. Jani-King Int'l, Inc.*
  262 F.R.D. 71 (D. Mass. 2009) ............................................................... 1, 9

*Dilts v. Penske Logistics, LLC*
  267 F.R.D. 625 (S.D. Cal. 2010) ................................................................ 13

*Donovan v. Simmons Petroleum Corp.*
  725 F.2d 83 (10th Cir.1983) ........................................................................ 15

*Dynamex Operations W. v. Superior Court*
  4 Cal. 5th 903 (2018) ................................................................................... 8

*Edwards v. First Am. Corp.*
  289 F.R.D. 296 (C.D. Cal. 2012) .................................................................. 4

*Fanette v. Steven Davis Farms, LLC*
  2014 WL 2961239 (N.D. Fla. July 1, 2014) ............................................... 10

*Gammella v. P.F. Chang's China Bistro, Inc.*
  120 N.E.3d 690 (2019) ................................................................................ 13

*Goldman v. KPMG, LLP*
  173 Cal. App. 4th 209 (2009) ....................................................................... 6

*Gray Holdco, Inc. v. Cassady*
  654 F.3d 444 (3d Cir. 2011) .......................................................................... 3

*Grochowski v. Phoenix Const.*
  318 F.3d 80 (2d Cir.2003) ........................................................................... 14

*Guyenn-Neupane v. Magna Legal Services, LLC*
  2021 WL 4481661 (N.D. Cal. 2021) .............................................................. 8

*Hargrove v. Sleepy's LLC*
  974 F.3d 467 (3d Cir. 2020) ........................................................................ 14

*Hill v. Xerox Bus. Servs., LLC*

iii

2020 WL 5095453 (W.D. Wash. Aug. 28, 2020) ................................................. 4

*Hudgins v. Total Quality Logistics LLC*
2017 WL 514191 (E.D. Ill. 2017) ................................................................. 6

*In re Pac. Fertility Ctr. Litig.*
814 F. App'x 206 (9th Cir. 2020) .............................................................. 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
2011 WL 1753784 (N.D. Cal. May 9, 2011) ............................................... 3

*Joca-Roca Real Estate, LLC v. Brennan*
772 F.3d 945 (1st Cir. 2014) .................................................................. 3

*Kamar v. Radio Shack Corp.*
254 F.R.D. 387 (C.D. Cal. 2008) ............................................................ 13

*Kelly* v. Pub. Util. Dist. No. 2 of Grant Cnty.
552 Fed. Appx. 663 (9th Cir. 2014) ........................................................ 3

*Lee v. ABC Carpet & Home*
236 F.R.D. 193 (S.D.N.Y. 2006) ............................................................. 9

*Leyva v. Medline Indus. Inc.*
716 F.3d 510 (9th Cir. 2013) ................................................................ 14

*Marsu, B.V. v. Walt Disney Co.*
185 F.3d 932 (9th Cir. 1999) ................................................................. 12

*Martin v. Tony and Susan Alamo Foundation*
952 F.2d 1050 (8th Cir.1992) ................................................................ 15

*Martin v. Yasuda*
829 F.3d 1118 (9th Cir. 2016) ................................................................ 2

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*
501 F. Supp. 3d 965 (D. Or. 2020), *appeal dismissed,* No. 20-36082, 2021 WL 6197393 (9th
Cir. Sept. 16, 2021) ............................................................................. 3

*McLaughlin v. Ho Fat Seto*
850 F.2d 586 (9th Cir.1988) .................................................................. 15

*Meredith v. Honeywell Inter., Inc.*
245 Fed. App'x. 325 (4th Cir. 2007) ........................................................ 9

*Meritage Homes Corp. v. Hancock*
522 F. Supp. 2d 1203 (D. Ariz. 2007) ...................................................... 3

*Morgan v. Family Dollar Stores, Inc.*
551 F.3d 1233 (11th Cir. 2008) .............................................................. 14

*Mujo v. Jani-King Int'l, Inc.*

iv

No. 3:16-CV-1990 (VAB), 2019 WL 145524 (D. Conn. Jan. 9, 2019) ...................................... 1

*Murphy v. DirecTV, Inc.*
   724 F.3d 1218 (9th Cir. 2013) ......................................................................................... 6

*Myers v. Jani-King of Philadelphia, Inc. et al.*
   2015 WL 1055700 (E.D. Pa. Mar. 11, 2015) ................................................................. 1

*Narayan v. EGL, Inc.*
   616 F.3d 895 (9th Cir. 2010) ........................................................................................... 6

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*
   931 F.3d 935 (9th Cir. 2019) ...................................................................................... 2, 3

*Oregel v. PacPizza, LLC*
   237 Cal. App. 4th 342, 187 Cal. Rptr. 3d 436 (2015) .................................................... 4

*Padovano v. FedEx Ground Package Sys., Inc,*
   2016 WL 7056574 (W.D.N.Y. Dec. 5, 2016) ................................................................. 8

*Pulaski & Middleman, LLC v. Google, Inc.*
   802 F.3d 979 (9th Cir. 2015) ......................................................................................... 12

*Rajagopalan v. NoteWorld, LLC*
   718 F.3d 844 (9th Cir. 2013) ...................................................................................... 5, 6

*Reich v. Gateway Press, Inc.*
   13 F.3d 685 (3d Cir. 1994) ............................................................................................ 14

*Richie v. Blue Shield of California*
   2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ............................................................... 11

*Ruiz v. Affinity Logistics Corp.*
   754 F.3d 1093 (9th Cir. 2012) *cert. denied*, 135 S. Ct. 877 (2014) ............................ 9

*Sec'y of Labor v. DeSisto*
   929 F.2d 789 (1st Cir. 1991) ......................................................................................... 14

*Shaw v. AMN Healthcare, Inc.*
   326 F.R.D. 247 (N.D. Cal. 2018) .................................................................................. 13

*Sportsman v. A Place for Rover, Inc.*
   537 F. Supp. 3d 108 (N.D. Cal. 2021) ............................................................................ 8

*Sprunk v. Prisma LLC*
   14 Cal. App. 5th 785, 222 Cal. Rptr. 3d 339 (2017) ...................................................... 4

*Takacs v. A.G. Edwards & Sons, Inc.*
   444 F. Supp. 2d 1100 (S.D. Cal. 2006) ........................................................................ 12

*Tyson Foods, Inc. v. Bouphakeo*
   136 S. Ct. 1036 (2016) .................................................................................................. 13

*Vaquero v. Ashley Furniture Indus., Inc.*
    824 F.3d 1150 (9th Cir. 2016)...................................................................................... 13

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*
    986 F.3d 1106 (9t h Cir. 2021)...................................................................................... 8

*Williams v. Jani-King of Philadelphia, Inc. et al.*
    837 F.3d 314 (3d Cir. 2016)........................................................................................ 1

*Yokoyama v. Midland Nat'l Life Ins. Co.*
    594 F.3d 1087 (9th Cir.2010)...................................................................................... 14

## **INTRODUCTION**

As set forth in Plaintiffs' Motion for Class Certification, courts have repeatedly certified misclassification claims under an ABC test for employee-status, including claims against cleaning franchisors like Jan-Pro. *See, e.g., De Giovanni v. Jani-King*, 262 F.R.D. 71, 84-86 (D. Mass. 2009) (certifying Jani-King franchisees' misclassification claims under all three prongs of the "ABC" test); *Awuah v. Coverall North America, Inc.*, C.A. No. 07-10287, Dkt. No. 365 (D. Mass. Sept. 27, 2011) (certifying franchisees' misclassification claims against another cleaning franchise company under Massachusetts ABC test); *Mujo v. Jani-King Int'l, Inc.*, No. 3:16-CV-1990 (VAB), 2019 WL 145524, at *1 (D. Conn. Jan. 9, 2019) (certifying Jani-King franchisees' misclassification claims under Connecticut's ABC test); *see also Myers v. Jani-King of Philadelphia, Inc. et al.*, 2015 WL 1055700 (E.D. Pa. Mar. 11, 2015) (certifying Jani-King franchisees' misclassification claims under common law multi-factor "right to control" test), aff'd *sub nom*, *Williams v. Jani-King of Philadelphia, Inc. et al.*, 837 F.3d 314 (3d Cir. 2016). As set forth further below, Jan-Pro has not offered a compelling reason to depart from the weight of this precedent. Indeed, after the Ninth Circuit's ruling in this case, it should be abundantly clear that Prong B of the test is capable of determination on a class-wide basis, as it depends on common issues, and that it will be dispositive of Plaintiffs' central claim of misclassification.[1]

Jan-Pro's eleventh-hour attempt to invoke the arbitration clause in its master franchisees' contracts with the Plaintiff class, must be rejected. Indeed, for *more than a decade*, Jan-Pro has disclaimed any relationship with Plaintiffs and has argued that it is *not* a party to the contracts that it now attempts to enforce to compel Plaintiffs to arbitrate. Jan-Pro is estopped from making this argument. Moreover, Jan-Pro has been aware of the existence of the arbitration clause for years, but it has chosen to vigorously litigate this case in the courts for more than thirteen years -- on two coasts, and on appeal to the Ninth Circuit and the California Supreme Court -- without ever raising the arbitration provision. It is clear that Jan-Pro has long since waived any right it may have had to arbitrate.

For all these reasons, the Court should grant Plaintiffs' Motion and certify the class.

---

[1]    *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060-61 (7th Cir. 2016) (reversing denial of class certification when commonality existed on at least one prong of ABC test, which would be dispositive on liability).

1

## ARGUMENT

2

**A.      The Arbitration Provision Does Not Preclude Class Certification**

3

### 1.      Jan-Pro Has Waived Its Right to Compel Its Cleaning Workers to Arbitrate

4          More than thirteen years after Plaintiffs first filed claims under the California Labor Code on

5   behalf of a putative class of California cleaning franchisees, Jan-Pro now argues for the *first time* that the

6   majority of the putative class are bound to arbitrate their claims.[2] Jan-Pro's argument fails because it has

7   waived its right to compel arbitration. Indeed, if there was ever a case in which a court should find waiver,

8   this is it.

9          To determine whether a party waived its right to compel arbitration, courts "consider the totality of

10  the parties' actions." *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935,

11  941 (9th Cir. 2019) (finding waiver of defendant's right to arbitrate class action fraud claims). "Applying

12  this holistic approach, [courts] have generally asked whether a party's actions "indicate a conscious

13  decision to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent

14  with a right to arbitrate." *Id.* (internal quotation marks omitted); *see also Martin v. Yasuda*, 829 F.3d

15  1118, 1124 (9th Cir. 2016) ("[A] party seeking to prove waiver of a right to arbitration must demonstrate:

16  (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and

17  (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.").

18          Here, Jan-Pro well exceeds the standard for establishing waiver. Jan-Pro has known of the

19  existence of the arbitration clause in many of the workers' franchise agreements -- including those of the

20  three named plaintiffs -- from the outset of this case, and yet Jan-Pro has never raised arbitration as a

21  defense. On the contrary, Jan-Pro has vigorously litigated this case, including by repeatedly seeking

22  rulings on the merits. Jan-Pro filed motions to dismiss and *three* motions for summary judgment, and it

23  has engaged in extensive discovery, including taking multiple depositions. *See* Dkt. Nos. 4, 17, 42, 65,

24  246, 299. Courts have held that where, as here, a defendant seeks a ruling on the merits in court on the

25

26          [2]      Plaintiffs filed their California state law claims to their First Amended Complaint on December
    12, 2008. *See* Dkt. No. 29. Plaintiffs filed a Second Amended Complaint in 2016. *See* Dkt. No. 244. At no
27  point did Jan-Pro invoke its arbitration clause as an affirmative defense in its Answer(s). *See* Dkt. No. 31,
    245. The closest Jan-Pro came was by cryptically claiming that "[s]ome or all of Plaintiffs' claims are
28  barred by the terms of their respective franchise agreements." *Id.* In any case, "[a] statement by a party
    that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."
    *Martin*, 829 F.3d at 1125.

same claims that it contends are subject to arbitration, these inconsistent actions constitute waiver.[3] Furthermore, Jan-Pro's delay of *years* in waiting to raise its arbitration agreement also cuts in favor of finding waiver; courts have found that delays of a matter of months counsel in favor of finding waiver.[4] Indeed, a delay of just three years in raising the arbitration issue was characterized by one court as "egregious", such that the delay "*substantially prejudiced* Plaintiffs due to the additional time and expenses incurred in addressing multiple motions filed before Defendants sought arbitration." *Aoki*, 2015 WL 5734626, at *9 (emphasis added). Here, Jan-Pro waited **thirteen years**. It litigated this class action case before two different federal district courts and on appeal to the Ninth Circuit and the California Supreme Court, only to raise arbitration as a defense after more than a decade of litigation. Based on "the totality of [its] actions", *Newirth*, 931 F.3d at 941, it is clear that Jan-Pro waived its right to invoke arbitration at this late stage. It is likewise abundantly clear that Plaintiffs have been severely prejudiced by this delay, given the substantial time and resources that have been devoted to this putative class action for many years.[5]

Jan-Pro argues that it "could not have waived" its right to compel arbitration as to absent class members, citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011). *See* Dkt. 300 at n. 2. But *TFT-LCD* is not binding on this court; in fact, "[t]he Ninth Circuit has not addressed the issue, and at least three other circuit courts have reached the [opposite] conclusion that a failure to raise the right to arbitrate prior to or during class certification may result in waiver." *Hill v.*

---

[3] *See, e.g., Aoki v. Gilbert*, 2015 WL 5734626, at *8 (E.D. Cal. Sept. 29, 2015) the Court finds that Moving Defendants acted inconsistently with their belief in their existing right to arbitration by filing multiple dispositive motions to dismiss and motions for summary judgment before filing the instant action."); *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1212 (D. Ariz. 2007) ("Had Meritage intended to preserve its right to arbitrate the issue, it should not have sought summary judgment on the claim"); *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 501 F. Supp. 3d 965, 985 (D. Or. 2020), *appeal dismissed,* No. 20-36082, 2021 WL 6197393 (9th Cir. Sept. 16, 2021) (finding "Ruby's litigation activities are precisely the sort of conduct that the Ninth Circuit has held conflicts with a right to arbitrate" where defendant "filed two motions for summary judgment and a motion to decertify the class, none of which mentioned Ruby's arbitration clause.").

[4] *See, e.g., Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*, 552 Fed. Appx. 663, 664 (9th Cir. 2014) (finding prejudice when the defendants waited eleven months to compel arbitration); *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949, 951 n. 7 (1st Cir. 2014) (finding prejudice with a nine-month delay after the filing of the complaint); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 454-55 (3d Cir. 2011) (holding that a ten-month delay before moving to compel weighed in favor of waiver).

[5] Jan-Pro has been on notice that this case was filed as a class action from the outset. As described *infra*, Jan-Pro's claim that it could not raise arbitration earlier with respect to absent class members is erroneous and should be flatly rejected.

*Xerox Bus. Servs., LLC*, 2020 WL 5095453, at *4 (W.D. Wash. Aug. 28, 2020) (collecting cases). Other district courts in this Circuit have likewise "not f[ound] the reasoning of *TFT-LCD* to be persuasive" because the "[d]efendants could have asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding", and by seeking to extensively litigate the merits before even raising the arbitration issue, a finding of waiver is warranted. *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 307 (C.D. Cal. 2012). Moreover, the *TFT-LCD* court found that "the issue [wa]s extremely close" in that case. *Id.* at *4. Here, by contrast, the question is not a close one. This case has been litigated for *more than a decade*, and countless motions have been filed by both sides, seeking judgment on the merits. Only now that Jan-Pro has been dealt unfavorable rulings on appeal has it raised arbitration as a defense to this litigation. As the *Edwards* Court recognized, "[t]he Court cannot sanction such behavior; to do so would only encourage gamesmanship of this type in the future, resulting in further waste of judicial resources." *Id.* at 307; *see also Ambrosio v. Cogent Commc'ns, Inc.*, 2016 WL 4436091, at *6 (N.D. Cal. Aug. 5, 2016) ("Simply put, *TFT-LCD* is unpersuasive here. Foremost, [defendant] could have asserted its intent to compel arbitration much earlier in these proceedings, even if it could not have filed the corresponding motion as to absent class members until certification. Sanctioning Cogent's conduct at this late juncture would effectively undermine the purpose of proceeding to arbitration—to manage and quickly resolve disagreements at low cost and with as little adverse impact as possible on the parties."). Numerous courts have held that a defendant waives arbitration as to absent class members by delaying in raising the affirmative defense and acting inconsistently with the right to arbitrate, to the prejudice of the plaintiffs, and this Court should do the same here.[6] If ever there was a case when the totality of a defendant's

---

[6]     *See, e.g.*, *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 943 (N.D. Cal. 2016) (distinguishing *TFT-LCD*, noting that "Lyft could be held to have waived its right to compel arbitration as to the class. After all, Lyft explicitly waived its right to assert the arbitration provision against the named plaintiffs. And it did so in an attempt to get a favorable ruling on the merits from this Court before class certification. It would arguably be unfair for Lyft to pursue litigation in a federal class action in hope of obtaining a favorable district court ruling at summary judgment, only to keep an arbitration provision in its back pocket in case things didn't go as planned."); *Sprunk v. Prisma LLC*, 14 Cal. App. 5th 785, 799 (2017) ("[H]ere there is substantial evidence to support the conclusion that Plan B's delay in moving to compel arbitration until after a ruling on class certification was a strategic decision to attempt to win the case by defeating the class before seeking to arbitrate. Such a strategic use of the judicial forum is inconsistent with an arbitration right and supports a waiver finding."); *Oregel v. PacPizza, LLC*, 237 Cal. App. 4th 342, 358 (2015) ("PacPizza did not petition for arbitration before *any* briefing on class certification had been filed. Rather, it waited until after Oregel filed his moving papers, taking the opportunity to examine his motion and supporting evidence, only to then file the petition before its opposition was due….PacPizza also delayed for an astonishing *17 months* after Oregel filed his complaint …we easily conclude PacPizza (continued on next page)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

conduct served to waive its right to compel arbitration, this case is surely a prime example, and the Court need not even reach the issue of whether Jan-Pro can compel arbitration as a non-signatory to the franchise agreements.

### 2.      Jan-Pro Cannot Invoke the Agreement as a Non-signatory

In its Opposition, Jan-Pro insists that it is "an entity that had no relationship (contractual or otherwise) with Plaintiffs." Dkt. 300 at 1. And yet, ironically, Jan-Pro also argues that it is entitled to invoke the very contracts that it disclaims and which it was not a signatory to, as a means to compel the majority of the putative class to arbitrate their claims. The Court should find it is *not* a party to the arbitration provisions, and Jan-Pro should be estopped from making this argument and from compelling class members to arbitrate their claims under contracts it has repeatedly disclaimed.[7]

As an initial matter, "the liberal federal policy" in favor of arbitration does not apply when determining whether "a particular *party* is bound by the arbitration agreement." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). Here, Jan-Pro has not met its burden to show that it can invoke the arbitration provisions at issue pursuant to an equitable estoppel theory. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Id.* When "grant[ing] motions to compel arbitration on behalf of non-signatory defendants" like Jan-Pro "against signatory plaintiffs, [courts have found it] essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration." *Id.* Here, Jan-Pro cannot show that Plaintiffs' claims are "intimately founded in and intertwined with the underlying contract" containing the arbitration provision. *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020). "If the claims are fully viable without reference to the terms of the contract, equitable estoppel does not apply." *Id.* Here, Plaintiffs' central claim is that they are

---

(Footnote continued from previous page)
waived any claimed right to arbitrate.").

[7]      Jan-Pro also argues in passing that the named plaintiffs are not adequate or typical representatives insofar as they are not bound to arbitrate, but other class members are. Dkt. 300 at 16. But it is nonsensical for Jan-Pro to argue the Plaintiffs are atypical because of **actions Jan-Pro took** in waiving its right to compel them to arbitrate. The named plaintiffs have arbitration clauses in their franchise agreements, just like many other class members. Jan-Pro cannot affirmatively waive arbitration as to the named plaintiffs and then utilize that waiver to argue they are not typical of the class. The cases Jan-Pro cites are entirely inapposite because they involve named plaintiffs who were never bound to arbitrate in the first instance and who tried to make arguments regarding the unenforceability of agreements they did not sign.

misclassified as independent contractors and are actually Jan-Pro's employees. The franchise agreements at issue state otherwise and classify Plaintiffs as contractors; thus, Plaintiffs are alleging they are Jan-Pro's employees *notwithstanding* the contrary declaration in their contracts. This case is similar to *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010), where the Ninth Circuit held:

> [Plaintiffs'] claims involve entitlement to benefits under the California Labor Code. Whether the Drivers are entitled to those benefits depends on whether they are employees of EGL, which in turn depends on the definition that the otherwise governing law—not the parties—gives to the term "employee." While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract.

*Id.; see also Rajagopalan*, 718 F.3d at 847 ("[Plaintiff] does not contend that NoteWorld or any other party breached the terms of the contract. Instead, [Plaintiff] has statutory claims that are separate from the contract itself.") (internal quotation omitted); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) ("Even if Best Buy is correct that Plaintiffs' claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel. In California, equitable estoppel is inapplicable where a plaintiff's 'allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [customer] agreements.'") (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 230 (2009)).[8] As such, Jan-Pro cannot show that it is entitled to invoke the arbitration provision to compel Plaintiffs to arbitrate as a non-party and non-signatory to the master franchise agreement.[9]

---

[8]     Jan-Pro also cannot invoke the agreement as a third-party beneficiary. It does not make this argument (and therefore has waived it). Further, this Court previously found that "plaintiff unit franchisees' agreements with their respective regional master franchisees did *not* set out any rights for Jan-Pro or otherwise indicate that Jan-Pro would be a third-party beneficiary under those agreements." *See* Dkt. No. 265 at 6.

[9]     In any case, were the Court to conclude that Jan-Pro is permitted to invoke the arbitration agreement as a non-signatory and has not waived its ability to do so, it would still be eminently appropriate for the Court to certify a class of those cleaning franchisees who are not bound by arbitration clauses. Jan-Pro has conceded that multiple master franchises did not include arbitration agreements in their franchise agreements at the start of the class period. *See* Dkt. 302 at ¶ 4. But these few master franchises even in the early part of the class period account for scores of cleaning workers whose contracts do not contain an arbitration provision at all. It is entirely appropriate for the court to certify a class of those individuals not bound to arbitrate their claims, as other courts have done. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127 (D. Colo. 2011) (certifying a class of workers who did not sign an arbitration provision); *Hudgins v. Total Quality Logistics LLC*, 2017 WL 514191 (E.D. Ill. 2017) (limiting notice to potential class members who did not sign arbitration agreements); *Conde v. Open Door Mktg. LLC_,* 223 F. Supp. 3d 949 (N.D. Cal. 2017) (granting motion to expand collective action but providing separate notice to those who signed arbitration agreements warning that they may be separated from the class and have to arbitrate their claims). Thus, at a minimum, the Court should certify a class of cleaning workers not bound to arbitrate their claims with Jan-Pro.

**B.      Jan-Pro Cannot Refute That Class Certification Is Appropriate**

      **1.      The ABC Test Applies to All of Plaintiffs' Claims**

First, Jan-Pro argues that Plaintiffs' claims are not governed by the ABC test at all, but rather by a joint employer test. *See* Dkt. 300 at p. 16. As set forth in Plaintiffs' concurrently filed Opp. to Jan-Pro's Cross-Mot. for Summ. J. at pp. 2-7, this assertion is flatly incorrect. Indeed, the Ninth Circuit's decision *in this very case*, completely forecloses this line of argument, holding that the ABC test does indeed apply to Jan-Pro International Inc. For the reasons explained in Plaintiffs' concurrently filed Opposition, it is clear that the ABC test rather than the joint employer test applies here. Jan-Pro also argues that even under the ABC test, absent some showing that Plaintiffs' underlying Labor Code claims are also certifiable, that its uniform policy of misclassifying cleaning franchisees, standing alone, cannot warrant certification because no liability attaches to misclassification itself. *See* Dkt. 300 at 17. Jan Pro's citation to *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) is wholly unpersuasive. *Castillo* concerned a dispute over the proper method of calculating overtime wages for hourly employees, which is unrelated to the issue of whether liability can be found for misclassification of independent contractors. Moreover, the class in *Castillo* was not certified because of stark differences between the class regarding whether they worked overtime hours which is unrelated to the case at hand where all class members commonly were misclassified as independent contractors.

In any case all cleaning workers have in fact suffered a violation under the Labor Code. As set forth infra, *all* class members have been forced to bear the cost of expenses necessary to perform their jobs (cleaning supplies, insurance, and franchise fees), and *all* class members have attended mandatory training for which they were not paid *at all*, giving rise to a minimum wage claim that is common to every class member. *See* Dkt. 292-11 at § 5(A); Dkt. 292-12 at § 5(A); Dkt. 292-13 at § 5(A); Dkt. 292-8, ¶ 7. In sum, the Court should certify the class because the ABC applies to all of Plaintiffs' claims, and certification is appropriate -- both on the issue of misclassification itself and on the underlying Labor Code claims.

      **2.      Individualized Issues Do Not Preclude Class Certification**

        **a)      Plaintiffs' Misclassification Claim Should Be Certified**

Jan-Pro makes only a half-hearted and cursory attempt to refute the conclusion that is compelled by the case law: certification of Plaintiffs' misclassification claim is appropriate under all the ABC test.

Jan-Pro insists in the final pages of its Opposition that certification under Prong B of the test requires individualized inquiries into "(a) Plaintiffs' employment of others to perform work for them (*id*.); (b) Plaintiffs' filing of business tax returns (*id.*); (c) Plaintiffs' business dealings with parties other than JPI; and (d) whether Plaintiffs held themselves out as independent businessmen." Dkt. 300 at 24 (citing *Am. Zurich Ins. Co. v. Dep't of Indus. Accidents*, 2006 WL 2205085, at *5 (Mass. Super. Ct. June 1, 2006)). This argument is just plain wrong and is foreclosed by the Ninth Circuit's decision in this very case. The Ninth Circuit has already told this court exactly what factors to consider in assessing liability under Prong B, *see Vazquez*, 986 F.3d at 1125-1128; none of those factors include whether class members had helpers or filed business taxes. *Id.* Further, whether class members performed cleaning work for others or held themselves out as independent businesses are part of the Prong C inquiry -- not Prong B.[10] *See Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 962 (2018) ("incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like" go to whether individual is engaged in independent business under Prong C -- not Prong B); *Sportsman v. A Place for Rover, Inc.*, 537 F. Supp. 3d 108, 1097 (N.D. Cal. 2021); *Guyenn-Neupane v. Magna Legal Services, LLC.*, 2021 WL 4481661 at *91 (N.D. Cal. 2021).

Finally, Jan-Pro argues that whether class members incorporated is an individualized issue that precludes certification under the ABC test. Again, to the extent this issue is relevant at all, it is pertinent to the Prong C inquiry; however, more importantly, there is nearly universal support for the proposition that an employer may not circumvent the wage laws by requiring workers to incorporate. *See, e.g., Amero v. Townsend Oil Co.*, No. 07-1080-C, 2009 WL 1574229, at *3 n. 4 (Mass. Super. Apr. 15, 2009) (If such an argument "were to carry the day, an employer who wanted to avoid the requirements of the [wage laws] would simply require its employees to incorporate as a condition of employment."); *Padovano v. FedEx Ground Package Sys., Inc.*, 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) (explaining that "[i]f any business could avoid [wage and hour law] by simply classifying their workers as independent contractors and compensating them through corporations rather than paying

---

[10]     Jan-Pro's citation to a pair of outlier Massachusetts Superior Court cases decided years ago is patently unpersuasive. Courts in both Massachusetts and California have consistently made clear that Prong B looks to whether the work performed by plaintiffs is part of the defendant's usual course of business and that courts should consider whether the work is necessary or merely incidental to the employer's business and how the employer holds itself out to the public. *Carey v. Gatehouse Media Massachusetts I, Inc.*, 92 Mass. App. Ct. 801, 805-810 (2018); *Vazquez*, 986 F.3d at 1125 -27.

them directly, [wage and hour law] would be rendered useless").[11] Were the law otherwise, defendants could simply contract around state law wage requirements simply by requiring workers to contract through corporate entities. Courts have consistently certified classes that include workers who performed services in their own names as well as those who contracted through corporate entities under an ABC test. *See, e.g.*, *De Giovanni v. Jani-King Int'l, Inc.*, 262 F.R.D. 71, 86 (D. Mass. 2009) (certifying class of cleaning franchise workers to pursue employment claims even where named plaintiff formed a corporation and hired his own employees); *Alvarez v. XPO Logistics Cartage*, 2020 U.S. Dist. LEXIS 199326 (C.D. Cal. 2020) (certifying class for reimbursement for fuel and insurance, including class members who hired their own employees); *Alfred v. Pepperidge Farm, Inc.*, 322 F.R.D. 519 (C.D. Cal. 2017) (certifying class for multiple claims, including § 2802 that included workers who operated businesses through incorporated entities); *Bowerman v. Field Asset Servs.*, 2015 WL 1321883 at *35 (N.D. Cal. 2015) (certifying class for claims including §2802 including workers who hired own employees; "although the new class definition continues to encompass some vendors who hire, manage, and pay their own workers and some who do not, this variation does not defeat predominance...").

The other issues raised by Jan-Pro are likewise unpersuasive. That some franchisees have helpers and others do not, see Dkt. 300 at p. 6, does not undercut predominance. Numerous courts have found cleaning franchisees to be employees, even where they had other workers who helped them or worked under them. *See De Giovanni v. Jani-King*, Ex. A to Liss-Riordan Decl. ISO Class Cert (filed at Dkt. No. 292-18) at *93, 96 (in order granting summary judgment to Plaintiffs and holding Jani-King franchisees to be employees under Massachusetts law, court noted that franchisees could hire others to help them clean and observed that "people who clean and/or get others to clean are essential to this business" and that any "people who do cleaning would be employees rather than independent contractors"); *De Giovanni*, 262 F.R.D. at 86 (certifying class and finding class representative typical

---

[11]     *See also Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1103 (9th Cir. 2012) *cert. denied*, 135 S. Ct. 877 (2014) (Common law test) ("While 'purporting to relinquish' some control to the drivers by making the drivers form their own businesses and hire helpers, [defendant] 'retained absolute overall control' over the key parts of the business");*Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (employment status of mechanics who formed their own corporations must be determined under the applicable classification test); *Meredith v. Honeywell Inter., Inc.*, 245 Fed. App'x. 325, 328-29 (4th Cir. 2007) ("the fact that [the defendant] had a contract with [a trucking company] the terms of which provided that [the trucking company] was an independent contractor [and] that neither [the trucking company] nor its employees would be considered [the defendant's] employees…[does not] alter the legal obligations of the respective parties").

1   even though he [unlike some other franchisees] "hired his own employees to perform cleaning

2   services"); *see also Awuah v. Coverall*, C.A. No. 1:07-cv-10287-WGY, Dkt. 455 (March 15, 2012) at

3   *2 (in case where court held cleaning franchisees to be employees, court reaffirmed its decision and

4   denied defendant's motion for summary judgment with respect to "class members who had partners or

5   employees"). Moreover, there is nothing inherently incompatible about someone being misclassified as

6   an independent contractor even where they supervise other workers below them. For example, in

7   *Alexander v. Fed Ex Ground Package System Inc.*, the Ninth Circuit found multi-route drivers were

8   employees notwithstanding the fact that they had other drivers working under them. 765 F.3d 981, 984

9   (9th. Cir. 2014).[12] Similarly, that some cleaning workers worked more hours or were paid more than

10  others, as Jan-Pro alleges at pp. 7-8 of its Opposition, simply goes to damages, not to the propriety of

11  class certification.

12          In sum, Jan-Pro has provided no convincing reason to conclude that Plaintiffs' misclassification

13  claim under the ABC test is not capable of resolution on a class-wide basis. As described further below,

14  Claimant's underlying Labor Code should also be certified.

15                  **b)      Plaintiffs' Expense Reimbursement Claim Should Be Certified**

16                          **(1)      The ABC Test Applies To Plaintiffs' Expense Reimbursement**
                                   **& Deductions Claims**

17          In its Opposition, Jan-Pro erroneously argues that the ABC test does not apply to Plaintiffs'

18  expense reimbursement claim. *See* Dkt. 300 at pp. 20-22. Jan-Pro's argument is wrong on its face

19  because the Legislature has now codified the ABC test with respect to the *entire* Labor Code, including

20  expense reimbursement and deductions claims, and that statute applies retroactively to the entire class

21  period, and that statute is retroactive. *See* Plfs' Opp.to Jan-Pro's Cross-Mot. for Summ. J. at p. 8 (filed

22  concurrently herewith). In any case, even in the absence of AB5, it is clear that the ABC test applies to

23  Plaintiffs' expense reimbursement claims, for the reasons set forth at length in Plaintiffs' concurrently

24  filed Opposition at pp. 8-10.

25                          **(2)      Common Questions Predominate With Respect to the Expense**
                                   **Reimbursement Claim**

26          Jan-Pro also insists that the expense reimbursement claim is not subject to class certification

27  ---

[12]      *See also Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1328 (5th Cir. 1985) ("[I]f the
alleged contractor were held to be an employee of the farmer, it would necessarily follow that the
[contractor's] workers were in turn the farmer's employees."); *Castillo v. Givens*, 704 F.2d 181, 188 (5th
Cir. 1983) (same); *Fanette v. Steven Davis Farms, LLC*, 2014 WL 2961239, *7 (N.D. Fla. July 1, 2014)
(same).

because the court will need to determine whether a given franchisee's purchase of cleaning supplies is "reasonable and necessary" and whether or not the supplies were purchased entirely to service Jan-Pro's customers or in conjunction with other jobs. *See* Dkt. 300 at p. 22-23. As set forth below, Jan-Pro is grasping at straws.

As an initial matter, the main expense for which Plaintiffs are seeking reimbursement is Plaintiffs' payment of franchise fees and "sales and marketing fees" (i.e. finder's fees) in exchange for cleaning work as well as payments for insurance. There is no question that these payments are readily calculable as they were recorded in Jan-Pro's records; the down payments paid by Plaintiffs are set forth in their franchise agreements, and any fees they financed are reflected as deductions on Plaintiffs' monthly statements, as are payments for insurance (as "business protection plan" payments).[13] *See, e.g.,* Ex. B to Liss-Riordan Decl. (showing deductions for insurance as "business protection plan" and deductions for financed franchise fees and sales and marketing fees); Dkt. 292-11 at § 7(A) (describing "franchise fee of $950.00 payable in cash or certified check, upon the execution of this Agreement, and the balance of $1850.00 to be paid in equal monthly instalments…"). Likewise, the expenditures in question were clearly incurred in direct consequence of the Plaintiffs' work and were necessary. *Richie v. Blue Shield of California*, 2014 WL 6982943, *16 (N.D. Cal. Dec. 9, 2014) (*citing Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (Cal. Ct. App. 2006)). Jan-Pro *required* its cleaning workers to pay fees in exchange for cleaning work and likewise required them to have insurance in order to perform their cleaning work. *See, e.g.*, Dkt. 292-11, §§ 12; 7(A)-(B). Whether these are expenses that should have been borne by the employer and which were incurred as a direct consequence of Plaintiffs' work for Jan-Pro is a question capable of common determination for the entire class.[14]

Second, the question of how much each franchisee spent on cleaning supplies goes to the amount of damages owed to franchisees -- not the question of whether the expense reimbursement claim is capable of class-wide resolution. Indeed, Jan-Pro does not and cannot refute that cleaning supplies are

---

[13]     The vast majority of workers purchased their insurance directly from Jan-Pro and had those payments deducted from their pay (as "business protection plan" payments). *See, e.g.*, Ex. B to Liss-Riordan Decl., filed herewith.

[14]     Plaintiffs seek these same fees under an alternate legal theory pursuant to Cal. Lab. Code § 221 as unlawful deductions from their pay.

necessary to perform the cleaning services that class members are contractually obligated to provide, nor can it refute that its franchise agreements expressly require cleaning workers to purchase these supplies themselves. *See, e.g.*, Dkt. 292-11 at § 6(A) ("Franchisee will … provide all labor, other equipment, materials, tools and other supplies necessary to service Franchisee's customer account(s)."); *id.* at §5(C) ("Franchisee agrees to use only such equipment, supplies, products…that are prescribed or permitted by the Franchisor.").[15] Under these circumstances, whether cleaning supplies are a "necessary" business expense can be decided on a common basis, as a matter of law. Thus, this is plainly a common and necessary expense across the class, and questions regarding the calculation of damages do not preclude certification. *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1125 (S.D. Cal. 2006); *see also Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4245988, at *18 (N.D. Cal. Aug. 27, 2014) (reimbursement under § 2802 for expenses incurred in discharge of duties appropriate for resolution on summary judgment).[16] Furthermore, in many instances, the cost of cleaning supplies was deducted directly from cleaning workers' pay when the workers purchased supplies through Jan-Pro, *see* Ex. B to Liss-Riordan Decl, filed herewith. Utilizing the cost of supplies for those workers who purchased their supplies through Jan-Pro's preferred vendors can help determine the costs for those who purchased supplies themselves. Indeed, courts have noted that "[t]he law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938-39 (9th Cir. 1999); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015).

### c)   Plaintiffs' Minimum Wage and Overtime Claims Should Be Certified

Defendants contend that whether any individual class member has a minimum wage or overtime claim will depend on individualized factors such as how long it took to clean their particular accounts,

---

[15]   *See O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547, 567 (N.D. Cal. 2015), *rev'd on other grounds,* 904 F.3d 1087 (9th Cir. 2018) ("To even access the Uber app, a smart phone and data plan is required. Thus, like a vehicle, phone expenses are plainly required for every Uber driver, as it would be impossible to be an Uber driver without these items"); *Castaneda v. F&R Cleaning Servs. Corp.*, 2019 WL 5694118 (E.D.N.Y. 2019) (awarding reimbursement for cleaning supplies purchased by plaintiff employees in default judgment).

[16]   Whether certain class members took out loans or got help from family members to make these payments is irrelevant to the common legal question -- whether these expenses were necessary to do the job. Jan-Pro's franchise agreements make clear that they were.

how much they were paid for their work, and whether they performed all the work themselves or had help. Dkt. 300 at 18. But in fact, _all_ putative class members suffered minimum wage violations. First, all class members were uniformly required to attend mandatory training as a condition of employment, for which they were not paid any wages. _See_ Dkt. 292-11 at § 5(A); Dkt. 292-12 at § 5(A); Dkt. 292-13 at § 5(A); Dkt. 292-8, ¶ 7. Thus, Jan-Pro's uniform payment policy, in failing to compensate cleaners for mandatory training, is common to the class and should be certified. Second, Jan-Pro uniformly failed to ensure that class members were paid at least minimum wage for all hours worked; its deliberate choice to not have a pay policy that guarantees minimum wage and overtime pay applies to all cleaning workers, regardless of how much money they make. _Vaquero v. Ashley Furniture Indus., Inc._, 824 F.3d 1150, 1154–55 (9th Cir. 2016) ("Defendants' consciously chosen compensation policy deprived the class members of earnings in violation of California's minimum wage law."). "[T]he jury could determine on a class-wide basis that [Jan-Pro] violated California's minimum wage and overtime laws precisely by not having a pay policy or pay formula that guarantees [workers] are paid minimum wage for all hours [worked] and overtime for every hour above forty per week spent [working]." _Id._[17]; _see also Kamar v. Radio Shack Corp._, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("[A] consistent employer policy that could be the basis for consistent liability" establishes commonality).

Jan-Pro insists that under the Ninth Circuit's decision in _Castillo v. Bank of Am., NA_, 980 F.3d 723, 730 (9th Cir. 2020), the class cannot be certified on the minimum wage and overtime claim because some class members may not have suffered violations. Dkt. 300 at pp. 18-19. But _Castillo_ is distinguishable; there, the court found the proposed class was overbroad because it included individuals who had never been exposed to the defendant's relevant policies at all. Here, by contrast, all cleaners were necessarily subject to Jan-Pro's uniform policy of failing to ensure cleaners received at least minimum wage for all hours worked (or were paid overtime).[18]

---

[17]    The Court in _James_ ultimately declined to certify the minimum wage claim because of difficulties in determining whether certain time was compensable -- namely, time between rides when drivers were at least theoretically able to do whatever they wanted while awaiting their next ride request. By contrast, here, there is no question that the time class members spent cleaning accounts is compensable.

[18]    In any event, it is not necessary for all class members to have suffered an injury, and indeed, it is typical in class actions for minimum wage that not all class members will have routinely suffered minimum wage violations. _See, e.g., Gammella v. P.F. Chang's China Bistro, Inc._, 120 N.E.3d 690, 701 (2019); _Cope v. Let's Eat Out, Inc._, 319 F.R.D. 544, 555 (W.D. Mo. 2017); _see also Dilts v. Penske Logistics, LLC_, 267 F.R.D. 625, 635 (S.D. Cal. 2010); _Tyson Foods, Inc. v. Bouphakeo_, 136 S. Ct. 1036, (continued on next page)

Finally, Jan-Pro insists certification of this claim should be denied because difficulty in determining damages would allegedly overwhelm any common issues. *See* Dkt. 300 at 19-20. But the fact that damages would need to be calculated for each class member goes without saying, since that is true in almost all wage cases. The law is clear that individualized damages determinations do not preclude certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.2010). Likewise, a lack of records of cleaners' hours is not sufficient reason to deny class certification.[19] Indeed, the Third Circuit faced this very question recently and explained why Jan-Pro's lack of records cannot serve to thwart class certification:

> Sleepy's argues that it acted in good faith when it failed to keep complete records for the proposed class members because it believed they were independent contractors and not employees. If we accept this argument and allow Appellants' class action to be thwarted by Sleepy's lack of records, we would be creating an incentive for employers not to keep records and thus avoid potential lawsuits. This would be crafting a vast loophole to class certification; employers could simply argue that they believed the potential class members were not employees. This would lead to paradoxical outcomes....It cannot be the case that *Mt. Clemens* and *Tyson Foods* do not apply anytime an employer argues workers in good faith were not treated as employees but as independent contractors. If this were so, no court would be able to use those precedents to determine damages where a defendant misclassified its workers as independent contractors or otherwise misclassified employees.

*Hargrove v. Sleepy's LLC*, 974 F.3d 467, 483 (3d Cir. 2020). The same is equally true here; monthly pay records for each class member demonstrate which accounts they cleaned that month and their pay, and customer contracts establish how often those accounts were cleaned and the services performed. *See, e.g.*, Dkt. 251-18 (pay statements); Dkt. 251-9 (pricing agreements). Representative testimony from class members regarding the number of hours required to perform such work as well as Jan-Pro's own bids (which take into account hours needed to clean a given account, *see* Dkt. 251-11, Dkt. 292-14) can be utilized to establish hours worked by class members in the face of Jan-Pro's own lack of records.[20] There

---

(Footnote continued from previous page)
1044, 1049-50 (2016) (affirming class action trial verdict and rejecting defendant's argument that class should not have been certified in light of 212 of the class members did not appear to exceed forty-hours a week, and noting that bifurcating liability and damages solves this problem); *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 269 (N.D. Cal. 2018); *Dilts*, 2010 WL 1709807, at *8.

[19]   Jan-Pro does not dispute that class members' pay is well-documented in the form of monthly statements showing what was paid by customers and numerous deductions taken from that payment before the balance is remitted to the cleaning workers.

[20]   It is well-established that where, as here, an employer failed to keep adequate records, a class can "rely on testimony from representative employees" to establish a wage or overtime violation. *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)); *see also Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) ("Courts (continued on next page)

is nothing novel about this approach, which has been used by numerous courts since *Mt. Clemens* was decided more than seventy-five years ago. To rule otherwise would simply reward Jan-Pro for its own wrongdoing and create perverse incentives for employers not to keep required records, as the Third Circuit recognized in *Hargrove*. For all these reasons, the class should be certified.

## CONCLUSION

The Court should grant Plaintiffs' Motion for Class Certification.  The Court should certify a class of all individuals who signed franchise agreements with Jan-Pro master franchises in the state of California and performed cleaning services for Jan-Pro since December 12, 2004.

Date: March 25, 2022

                                        Respectfully submitted,

                                        LICHTEN & LISS-RIORDAN, P.C.

                                        */s/ Shannon Liss-Riordan*
                                        Shannon Liss-Riordan
                                        Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on March 25, 2022 on all counsel of record.

                                        */s/ Shannon Liss-Riordan*
                                        Shannon Liss-Riordan Esq.

---

(Footnote continued from previous page)
commonly allow representative employees to prove violations with respect to all employees." (collecting cases)); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1279 (11th Cir. 2008) ("If anything, the *Mt. Clemens* line of cases affirms the general rule that not all employees have to testify to prove overtime violations."); *Grochowski v. Phoenix Const.*, 318 F.3d 80, 88 (2d Cir.2003) ("the plaintiffs correctly point out that not all employees need testify in order to prove FLSA violations or recoup back-wages"); *Martin v. Tony and Susan Alamo Foundation*, 952 F.2d 1050, 1052 (8th Cir.1992) (back pay to be awarded "to the nontestifying employees based on the fairly representative testimony of the testifying employees"); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir.1988) (5 out of 28 employees testified); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir.1983) (testimony of 12 former employees supported award to all former employees).