RICHARD H. RAHM (SBN 130728)
richard.rahm@us.dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

NORMAN M. LEON (IL SBN 6239480)
norman.leon@us.dlapiper.con
DLA PIPER LLP (US)
444 W. Lake Street, Suite 900
Chicago, IL  60606

JEFFREY M. ROSIN (MA 629216)
jrosin@ohaganmeyer.com
O'HAGAN MEYER
111 Huntington Avenue, Suite 719
Boston, MA 02199
Telephone: 617.843.6800
Facsimile: 617.843.6810

Attorneys for Defendant
JAN-PRO FRANCHISING INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GLORIA ROMAN, GERARDO VASQUEZ, JUAN AGUILAR, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.<br><br>Defendant. | Case No. 3:16-cv-05961-WHA<br><br>**DEFENDANT JAN-PRO FRANCHISING, INTERNATIONAL, INC.'S POST-ARGUMENT BRIEF**<br><br>The Honorable William H. Alsup |

## I. The Class Certification Issues

- *Supplies*: The Ninth Circuit's decision in *Bowerman v. Field Asset Servs., Inc.*, __ F.4th __, 2022 WL 2433971 (9th Cir. July 5, 2022), counsels that certification is inappropriate where it would be "excessive[ly] difficult" to calculate damages, such as where documentation is scant and where the testimony of individual class members will be needed. *Id*. at *9. That is the case here, because: (i) some of the named Plaintiffs and their partners ran other businesses, including cleaning businesses, that could have used the supplies (if any) they purchased, *see* Tentative at 34:2-7 (noting that Roman operated a competitive business); (ii) supplies were often provided (in whole or in part) by the customers, *see* Doc. 247-3 at pp. 46, 59, 74, 77, 107, meaning that the necessity of purchases and the amount spent would need to be addressed for each franchisee; and (iii) Plaintiffs have no records substantiating the purchases they made, *see* Vazquez Dep. at 128-130.

Further, Wage Order 5-2001(9) states an employee may be required to provide his own tools and equipment if his wages "are at least two (2) times the minimum wage …." In 2009, when the minimum wage was $8.00, *see* https://www.dir.ca.gov/iwc/MinimumWageHistory.htm, the recommended bid range was $16-25/hr. *See* Tentative 20:18-20. But master franchisees had complete discretion over their bid rates, which varied over time and geography. *Id*. 20:21-22; Smith Decl., Doc. 303, ¶ 5. Because there is no way to determine class-wide how much each franchisee earned on an hourly basis, *see* Tentative 21, individualized issues also predominate as to whether there even was a Wage Order violation regarding supplies and equipment.

- *Insurance and "Charge-Backs"*: Plaintiffs' claims for insurance payments and "charge-backs" are not proper elements of damages in this case, let alone on a class-wide basis. First, even if franchisees were required to obtain insurance through their regional masters—and they were not, *see* Vazquez Franchise Agreement, Doc. 247-3, 260 ¶ 12—*Bowerman* confirmed that claims for insurance expenses are *not* based on the wage orders. 2022 WL 2433971, at *10. Accordingly, *Borello* governs, and certification is inappropriate. Second, even if Plaintiffs raised a claim for "charge-backs" in their certification papers—and they did not—they have presented no evidence that they (or any class member) were ever damaged by the imposition of a charge-back. *See* Docs. 292-8, 292-9, 292-10. Therefore, Plaintiffs cannot represent this putative class on this claim. *See*

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members").

- *Travel Time*: *Bowerman* held that even if individualized damage claims do not bar certification, the issue of damages is still subject to the predominance requirement. *Bowerman*, 2022 WL 2433971, at *8. Here, determining the time franchisees spent traveling between accounts will require, for each franchisee, a consideration of, *inter alia* (i) the distance between accounts, (ii) whether the days on which accounts were serviced changed (which is often not reflected in the records; *see* Doc. 274-4 at 124-25 and 144-45 (where both Roman and Vasquez testified they made scheduling changes directly with customers)), (iii) traffic conditions at the time, (iv) whether a franchisee (or his partner) was traveling to or from the customer, and (v) whether travel occurred separate from other business, even competitive work. *See* Doc. 247-4, at 52, 61-2, 75, 81, 86. Plaintiffs present no method for addressing these types of issues on a class-wide basis.

- *Training*: The Tentative states this Court could determine "a common time duration for the training program" based on the testimony of defendant and putative class members. Tentative at 23:24-5. The record shows otherwise. Only one of the three Plaintiffs (Vazquez) even claims he attended training (although he could not give an estimate of the time he spent), and the only Plaintiff who even mentioned training at deposition (Aguilar) claimed all he could remember of his training—which occurred before the limitations period, *see* Doc. 247-4, at 88—was watching a few safety videos. *Id.* at 29-30 and 87-88. Therefore, notwithstanding the language of Plaintiffs' particular franchise agreements, what (if anything) other regional masters did with respect to training (did it happen, what did it consist of, and how long did it last) remains very much in doubt.

- *Uniforms*: At argument, Plaintiffs' counsel acknowledged that every franchisee got his first uniform free. Doc. 247-3 at 96. That precludes both a finding of liability and certification because there is simply no evidence that *any* plaintiff ever purchased a second uniform. Plaintiffs' counsel acknowledged this fact but suggested a subsequent purchase could be assumed. Yet as this Court correctly noted, at the certification stage, facts cannot be assumed—they must be shown by "evidentiary proof." *See Comcast Corp. v. Behrand*, 569 U.S. 27, 33 (2013). Here they were not.

## II. The Business-To-Business Exception To The ABC Test Applies.

In *Bowerman*, the Ninth Circuit reversed Judge Orrick's grant of class certification and summary judgment because "California Labor Code § 2776 recently enacted a retroactive *business-to-business* exception to the ABC test." *Bowerman*, 2022 WL 243391, at \*\*14-15 (emphasis in original). This exception provides that "the holding in *Dynamex* do[es] not apply to a bona fide business-to-business contracting relationship … [i]f an individual acting as a sole proprietor [or any other business entity] contracts to provide services to another such business ("contracting business")." Cal. Labor Code § 2776(a). "[I]f the contracting business demonstrates that [all twelve] criteria [of Section 2776(a)] are satisfied," the determination of independent contractor status "shall be governed by *Borello*." *Bowerman*, 2022 WL 243391, at \*14.

There is, at minimum, an issue of fact as to whether those criteria are met here. Just like Prong A, Section 2776(a)(1) provides that the business service provider must be "free from the control and direction of the contracting business entity in the direction of the work." The Tentative already found this issue was unsuitable for resolution at summary judgment. *See* Tentative 33:17-19. The remaining factors—Sections 2776(a)(2)-(12)—basically track the considerations of Prong C of the ABC test. And on that issue, the Tentative concluded that *JPI* was entitled to summary judgment. *Id.* at 34:2-13. Because JPI will be able to show that the Section 2776 exception is applicable to many (if not most) of the class members, *see, e.g.,* Tentative 4:8-14; 34:2-13; Doc. 247-4:236-48, 305, 349, 351-52, 370, Plaintiffs' motion for summary judgment and certification on Prong B must be denied. *See Bowerman*, 2022 WL 2433971, at \*15.

Plaintiffs argued JPI cannot show (as required by Section 2776(a)(2)) that the business service provider provide services directly to the contracting business because the unit franchises work directly for the master franchisee's customers. This same argument was rejected in *People v. Superior Court*, 57 Cal. App. 5th 619, 634 (2020) ("*Cal Cartage*"). There, it was argued that truck owners-operators contracting with motor carriers could not satisfy the business-to-business exception because they were necessarily "providing services to the motor carrier's customers by moving the customer's goods at the customer's directions." *Id*. Finding such an interpretation "strained," *Cal Cartage* held that if motor carriers contracted with owner-operators, directed their

actions, and paid them, "[s]ervices would be provided by the owner-operators directly to the motor carriers, notwithstanding that those services would include moving freight belonging to the motor carrier's customers." *Id.* This same analysis applies here. In fact, Plaintiffs' entire employment argument is premised on their claim that unit franchisees directly provide services to the master franchisees and JPI. Summary judgment and class certification on Prong B should therefore be denied.

**III.    There Is A Dispute Of Fact On Subpart B If It Applies**

Just as reasonable judges have found (in this very case) that JPI satisfies Prong B, *see* Doc. 328 at 26-27 (citations omitted), a reasonable jury could as well. In addition to other record cites, *see* Doc. 332 at 11 and Doc. 345 at 6, JPI notes that the transcripts of JPI's executives are replete with evidence that JPI's day-to-day activities—*i.e.*, its "usual" activities—are not commercial cleaning, but rather supporting regional owners. *See* Doc 247-4: Doc 247-4:10-12, 15-16, 24, 26, 33, 35, 37-41 (Kissane); 82-85, 87, 89, 90, 92-3 (Claringbole); 142-150; 152-159, 162, 164 (Bentley); 111-119, 121, 123, 126 (Thompson). JPI's ability to satisfy Prong B should be resolved by a jury.

**IV.    Further Summary Judgment / Liability Issues**

During argument, Plaintiffs' counsel asserted that the amounts Plaintiffs paid for franchise fees, royalty fees and supplies were properly considered unlawful deductions even though the plain terms of the Franchise Agreements make clear that Plaintiffs' "wages" would be whatever remained after those very fees were subtracted from the gross amounts paid by customers. In putative support of this assertion, Plaintiffs cited two cases: *Hudgins v. Neiman Marcus Group., Inc.*, 34 Cal. App. 4th 1109 (1995) and *Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302 (2016). But neither supports (or even addresses) JPI's argument. In both cases, the courts were addressing the legality of an employer's attempt to deduct amounts from employee's' actual wages. *See Hudgins*, 34 Cal. App 4th at 1123-24 (rejecting an employer's attempt to deduct amounts from earned commissions); *Davis*, 245 Cal. App. 4th at 1335 (rejecting deductions for operational expenses and advances because there was no evidence the employee authorized them). **JPI's argument addresses an entirely different issue**—namely, what Plaintiffs' "wages" were in the

DEFENDANT'S POST-ARGUMENT SUBMISSION
4
EAST\194233891.2

first place, because if the fees at issue were paid out of gross revenue and not wages, then as a matter of law they cannot be deemed unlawful deductions. On **that** issue, Plaintiffs proffer nothing which in any way counters the California Supreme Court's repeated holding that "[t]he compensation owed employees is a matter determined primarily by contract." *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 782 (2020); *Prachasaisoradej v. Ralph's Grocery Co.*, 42 Cal. 4th 217, 228 (2007). Here, the parties' contract is clear: "Franchisor will collect these monies [those paid by the customers] and deduct royalties, management fees, any supplies, any advertising fees … that month's payment on any promissory note, or any other monies then owed, **then pay Franchisee each month (on the 30th) the net amount** …." *See* Doc. 247-3, 238, ¶ 3(3) (emphasis added). In short, because the parties' contracts unambiguously provided that Plaintiffs' "wages" would be whatever was left of the gross revenue **after** the fees at issue were paid, Plaintiffs never had any contractual entitlement to that portion of the gross revenue. They therefore cannot claim that the masters' collection of these fees (on which JPI earned 3%) were unlawful.

## V. The Arbitration Agreement Has Not Been Waived As To Absent Class Members.

At no point in either their papers or at argument did Plaintiffs contest the fact that, prior to class certification, JPI had no existing right to compel arbitration of the absent class members' claims. That alone compels the rejection of their waiver claim. The new argument they raised at hearing—that JPI did not raise arbitration as an affirmative defense—is unavailing, because Rule 8 of the Federal Rules only deems "arbitration and accord" (*i.e.*, where a claim has been resolved in arbitration) an affirmative defense. The right to compel arbitration, standing alone, is not an affirmative defense. *See*, *e.g.*, 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1270 at 562 (3d ed. 2004)); *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (4th Cir. 2010); *Mannick v. Kaiser Foundation Health Plan, Inc.*, 2005 WL 3454134, at *6 (N.D. Cal. 2005).

Dated: July 18, 2022

**DLA PIPER LLP (US)**

By: */s/ Richard H. Rahm*
    Richard H. Rahm / Norman M. Leon
    Jeffrey M. Rosin
    O'HAGAN MEYER
    *Attorneys for Defendant*
    JAN-PRO FRANCHISING
    INTERNATIONAL, INC