Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
Adelaide H. Pagano, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Adam Rose (SBN 210880)
(adam@frontierlawcenter.com )
FRONTIER LAW CENTER
23901 Calabasas Road, #2074
Calabasas, CA 91302
(818) 914-3433

Attorneys for Plaintiffs and the Putative Class

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA ROMAN, GERARDO VAZQUEZ, JUAN AGUILAR, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.<br><br>Defendant. | Case No.: 3:16-cv-05961-WHA<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING BUSINESS-TO-BUSINESS EXEMPTION AND OTHER ISSUES**<br><br>Date: July 14, 2022<br>Time: 8:00 am<br>Courtroom: 12, 19th Floor<br><br>Hon. William Alsup |

**TABLE OF CONTENTS**

I.   The Business-to-Business Exemption Does Not Apply. ........................................................1

II.  *Bowerman* Does Not Dictate Any Changes To the Court's Tentative Ruling. ....................2

III. The Court Should Make Only A Few Circumscribed Changes To Its Tentative Order.......4

# TABLE OF AUTHORITIES

**Cases**

Awuah v. Coverall N. Am., Inc.
  460 Mass. 484 (2011) ............................................................................................................5

Bowerman v. Field Asset Servs., Inc.
  No. 18-16303, 2022 WL 2433971 (9th Cir. July 5, 2022) ..............................................1, 3, 4

Davis v. Farmers Ins. Exchange
  245 Cal. App. 4th 1302 (2016) ..............................................................................................5

DiFiore v. American Airlines
  454 Mass. 486 (2009) ............................................................................................................5

Dynamex Operations West, Inc. v. Superior Court
  4 Cal. 5th 903 (2018) ............................................................................................................4

Garcia v. Border Transportation Grp., LLC
  28 Cal. App. 5th 558 (2018) ..................................................................................................4

Gonzales v. San Gabriel Transit, Inc.
  40 Cal. App. 5th 1131 (2019) ................................................................................................4

Goro v. Flowers Foods, Inc.
  No. 17-CV-2580 TWR (JLB), 2021 WL 4295294 (S.D. Cal. Sept. 21, 2021) .......................4

Hudgins v. Neiman Marcus Grp., Inc.
  34 Cal. App. 4th 1109 (1995) ................................................................................................5

In re Albert-Sheridan,
  960 F.3d 1188 (9th Cir. 2020) ...............................................................................................3

In re LexinFintech Holdings Ltd. Securities Litigation
  2021 WL 5530949 (D. Or. 2021) ..........................................................................................1

Leyva v. Medline Indus. Inc.,
  716 F.3d 510 (9th Cir. 2013) .................................................................................................3

O'Connor v. Uber Techs., Inc.
  311 F.R.D. 547 (N.D. Cal. 2015), rev'd on other grounds, 904 F.3d 1087 (9th Cir. 2018).........3

Pulaski & Middleman, LLC v. Google, Inc.,
  802 F.3d 979 (9th Cir. 2015) .................................................................................................3

Quillian v. Lion Oil Co.
  96 Cal. App. 3d 156 (Ct. App. 1979)......................................................................................5

ii

PLAINTIFFS' SUPPLEMENTAL BRIEF                                      CASE NO. CV 3:16-cv-05961-WHA

Sciborski v. Pac. Bell Directory
    205 Cal. App. 4th 1152 (2012) ..................................................................................5

U.S. v. Pizarro-Berrios
    448 F.3d 1 (1st Cir. 2006)..........................................................................................1

Vazquez v. Jan-Pro Franchising Int'l, Inc.
    986 F.3d 1106 (2021).................................................................................................1

**Statutes**

Cal. Lab. Code § 2776 ...........................................................................................1, 2

### I. The Business-to-Business Exemption Does Not Apply.

At oral argument, Defendant Jan-Pro raised for the first time the possibility that the so-called "business to business exemption", codified at Cal. Lab. Code § 2776, might apply to Plaintiffs' claims, such that the Borello standard rather than the ABC test would determine whether Plaintiffs were misclassified as independent contractors for purposes of all their claims. This argument must be rejected.

**First**, Jan-Pro waived this argument by not raising it in its (voluminous) briefing of the pending Motions. This argument has been available to it since these Motions were filed, as the statute in question was passed in 2020. That Jan-Pro only recently thought to make this argument because the defendant in another recent case, Bowerman v. Field Asset Servs., Inc., No. 18-16303, 2022 WL 2433971 (9th Cir. July 5, 2022), raised the argument, is not an excuse for Jan-Pro's utter failure to raise the issue before. As such, it is waived. See In re LexinFintech Holdings Ltd. Securities Litigation, 2021 WL 5530949, at *15 n.12 (D. Or. 2021) ("Plaintiffs raised these arguments for the first time at oral argument, and thus they are untimely and waived."); U.S. v. Pizarro-Berrios, 448 F.3d 1, 5-6 (1st Cir. 2006).

**Second**, the business-to-business exemption was *already* in existence at the time that the Ninth Circuit issued its final ruling on Plaintiffs' appeal in this case, holding that the ABC test would apply to Plaintiffs' claims. Vazquez v. Jan-Pro Franchising Int'l, Inc., 986 F.3d 1106 (2021). In other words, nothing "new" has occurred since the Ninth Circuit's decision that would justify departing from it.

**Third**, even if Jan-Pro had not waived the argument (which it has), the business-to-business exemption does little to help Jan-Pro's position. The exemption includes no fewer than *eleven* factors, all of which Jan-Pro bears the burden of satisfying in order for the exemption to apply. See Cal. Lab. Code § 2776(a). It cannot satisfy all eleven factors as a matter of law. For example, the second factor states:

> The business service provider is providing services directly to the contracting business rather than to customers of the contracting business. This subparagraph does not apply if the business service provider's employees are solely performing the services under the contract under the name of the business service provider and the business service provider regularly contracts with other businesses.

See Cal. Lab. Code § 2776(a)(2). Here, Jan-Pro cannot satisfy this factor, because Plaintiffs provided services to *Jan-Pro's customers*. Indeed, the record shows Jan-Pro bid on the right to clean so-called "national accounts" with locations across the country, and it was the Plaintiffs who serviced those cleaning accounts in California. See ECF No. 247-4 (Claringbole Dep.) at pp. 49-51. Thus, unlike a painter or plumber, which Jan-Pro might hire to paint its offices or fix its toilet, the Plaintiffs here did not

perform their commercial cleaning services *for Jan-Pro*, but rather, for its customers.

Jan-Pro also cannot satisfy the tenth or eleventh factors, which require that "[t]he business service provider can negotiate its own rates," see Cal. Lab. Code § 2776(a)(10), and that "[c]onsistent with the nature of the work, [the] service provider can set its own hours and location of work." See Cal. Lab. Code § 2776(a)(11). The rates charged for Plaintiffs' work were dictated by Jan-Pro and its master franchisees, who bid on the cleaning accounts, including national accounts, and entered into contracts with customers. See ECF No. 292-11, § 1 ("The contracts and the customer accounts are owned by and remain the property of the Franchisor"). Plaintiffs could only accept or reject accounts at the prices negotiated by Jan-Pro and the master franchisees; any accounts Plaintiffs rejected were counted toward Jan-Pro's obligation to provide cleaning work, regardless of whether the account was accepted. Id.; ECF No. 247-4 (Garcia Dep.) at 50:10-23, 68:19-69:21, 73:24-74:25. Likewise, how often Plaintiffs cleaned accounts was dictated by the contracts between Jan-Pro and the customers and subject to customer restrictions such as start times or cleaning only after-hours or at night. See, e.g., ECF No. 251-9 (describing days per week and services to be provided).

Jan-Pro cannot satisfy the seventh factor either – that Plaintiffs "can contract with other businesses to provide the same or similar services and maintain a clientele without restrictions from the hiring entity." See Cal. Lab. Code § 2776(a)(7). Until Jan-Pro eliminated the non-compete in its franchise agreements – which did not occur until many years into the class period – class members were contractually bound *not* to engage in cleaning work for others outside of their work for Jan-Pro.

Other parts of the business-to-business test track the language of Prongs A and C of the ABC test. See Cal. Lab. Code § 2776(a)(1), (a)(6). But Jan-Pro bears the burden of proving ***each*** of these factors, before the exemption will apply, which it cannot do. Indeed, the Court already correctly held that fact issues exist as to whether Plaintiffs were "free from the control and direction of [Jan-Pro]…both under the contract for the performance of the work and in fact." Cal. Lab. Code § 2776(a)(1). See ECF No. 338 at 31. Any one of these pitfalls renders the business-to-business exemption unavailable to Jan-Pro. It plainly does not apply *as a matter of law*.

**II.     Bowerman Does Not Dictate Any Changes To the Court's Tentative Ruling.**

Nothing in the Ninth Circuit's recent Bowerman decision requires this Court to depart from its sound Tentative Order. First, Bowerman affirmed that expenses that hew closely to the wage order's

"tools and equipment" language (such as cleaning supplies, equipment, and uniforms in this case), are covered by the ABC test, just as this Court previously found in its Tentative Order. See ECF No. 338 at 24-26; Bowerman, 2022 WL 2433971, at *10. Jan-Pro's common policy of not reimbursing for these materials, beyond what is provided in the initial package, is common across the class and should be certified. Jan-Pro's argument that damages will be exceedingly difficult to measure for supplies and uniforms is simply false. Jan-Pro provides a standard set of supplies and equipment to franchisees at the start of their employment (see ECF No. 359-1 at JPI002373-74) and franchisees have the option of purchasing their supplies directly through master franchisees and having the cost deducted from their pay. See, e.g., ECF No. 313-2 at Roman000154, Roman000308 (showing line item deductions for "Supply Sales" of $399.56 and $73.70 respectively). Thus, the reasonable cost of these supplies is easily established by what Jan-Pro itself charged for them and by how long Plaintiffs worked for Jan-Pro. O'Connor v. Uber Techs., Inc., 311 F.R.D. 547, 568 (N.D. Cal. 2015), rev'd on other grounds, 904 F.3d 1087 (9th Cir. 2018) ("Plaintiffs propose that the Court use Uber's records to estimate cell phone expenses based on the amount of time a given driver was online, or by simply using the amounts paid by other drivers who leased their phones directly from Uber as a reasonable estimate" and holding that "there may be a number of calculation methodologies that are reasonable" such that "individualized issues will not predominate with respect to determining liability and damages for phone expenses"). Indeed, "damages determinations are individual in nearly all wage-and-hour class actions", see Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9th Cir. 2013) (collecting cases), and "[t]he law requires only that some reasonable basis of computation of damages be used … even if the result reached is an approximation." Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 989 (9th Cir. 2015). Bowerman does not purport to overrule these precedents, nor could it do so. See In re Albert-Sheridan, 960 F.3d 1188, 1192-93 (9th Cir. 2020). In any case, the supplies deducted directly from Plaintiffs' pay are clearly recoverable.

Likewise, Bowerman also does not alter the Court's sound decision in the Tentative to certify the minimum wage claim for unpaid training time and travel time between accounts. See ECF No. 338 at 24-26. The unpaid mandatory training was a *common* policy that affected *every* class member, as it was required by contract, see ECF 292-11 at § 1(B), § 3(B), and establishing when Plaintiffs took the training (at the time they first signed the franchise agreement) and how long the standard training lasted are plainly ascertainable for the whole class. Bowerman does not hold to the contrary; there, the Court found

3

there was no way to determine whether any given class member had worked overtime or incurred a particular expense, absent individualized testimony based on class members' "unaided memories." Bowerman, 2022 WL 2433971, at *7-*9, n. 7. Here, it is plain *all* class members were subject to the mandatory unpaid training, and when it took place will be clear by the date they signed their agreements.

Bowerman also directed the district court in that case to consider whether class members who incorporated or formed LLCs would be covered by a joint employer analysis, see Bowerman, 2022 WL 2433971, at *11; however, the California Supreme Court has made clear that incorporation is part of the Prong C inquiry of the ABC test. Dynamex Operations West, Inc. v. Superior Court, 4 Cal. 5th 903, 962 (2018) (noting that "*incorporation*, licensure, [and] advertisements" are factors that indicate someone is engaged in an independent business under Prong C of the test); see also Garcia v. Border Transportation Grp., LLC, 28 Cal. App. 5th 558, 570, 537 (2018). This language in Dynamex would be superfluous if mere incorporation were enough, on its own, to defeat application of the ABC test and require application of a joint employer standard. Bowerman does not hold to the contrary; it merely directs the district court to consider this argument on remand. This Court should likewise consider it and should soundly reject it. The California Supreme Court is the last word on this issue, and it has spoken clearly in Dynamex: incorporation goes to Prong C, not Prong B, and as such, certification remains appropriate under Prong B.

In sum, Bowerman does not change this Court's Tentative Order – instead, it confirms the Court's initial instincts to certify only certain expenses that hew closely to the language of the wage orders and to certify the minimum wage claim only for mandatory unpaid training and travel time, but not all hours worked. Bowerman also confirms that the ABC test applies to misclassified workers like Plaintiffs who have no acknowledged employer, 2022 WL 2433971, at *11, and it does not undermine the Ninth Circuit's binding decision in this case. The Court should affirm its Tentative Order.

**III.   The Court Should Make Only A Few Circumscribed Changes To Its Tentative Order.**

Plaintiffs urge the Court to affirm its finding that the deductions claim is subject to the ABC test. See ECF No. 338 at 26-27. Other courts concur. Gonzales v. San Gabriel Transit, Inc., 40 Cal. App. 5th 1131, 1157 (2019); Goro v. Flowers Foods, Inc., No. 17-CV-2580 TWR (JLB), 2021 WL 4295294, at *11 (S.D. Cal. Sept. 21, 2021). Moreover, the broad remedial purposes of the Wage Orders enunciated by the California Supreme Court in Dynamex supports such an interpretation. The Plaintiffs in Bowerman did ***not*** bring a deductions claim, such that Bowerman does not speak to this issue, and Jan-Pro has provided

no compelling reason for the Court to depart from its Tentative Order on this point. Instead, the Court should consider *expanding* the deductions claim to include not only franchise fees and royalties – which serve to unlawfully charge Plaintiffs for a job, see <u>Awuah v. Coverall N. Am., Inc.</u>, 460 Mass. 484, 497 (2011) – but also deductions for insurance and chargebacks (which were also found to be unlawful in <u>Awuah</u>, 460 Mass. at 495, 493). These deductions are readily ascertainable from the monthly statements that the Plaintiffs received. <u>See</u> ECF No. 313-2, 251-18 at pp. 15-17.

Deductions for insurance were uniformly taken from franchisees' pay. <u>See</u> ECF No. 247-4 (Garcia Dep.) at p. 78; ECF No. 247-4 (Kissane Dep.) at pp. 94, 98-99. Similar deductions for insurance that primarily benefited the employer have been found unlawful by California courts before. <u>Davis v. Farmers Ins. Exchange</u>, 245 Cal. App. 4th 1302, 1337 (2016). That Jan-Pro's contract purports to permit the deductions does not relieve it from liability, <u>Hudgins v. Neiman Marcus Grp., Inc.</u>, 34 Cal. App. 4th 1109, 1124 (1995), and Jan-Pro's argument that Plaintiffs' wages are merely what is leftover after the unlawful deductions have come out, has been repeatedly rejected by California courts. <u>Id.</u> (holding Defendant "cannot avoid a finding that its [deductions are] unlawful simply by asserting that the deduction is just a step in its calculation of [wages]."); <u>Quillian v. Lion Oil Co.</u>, 96 Cal. App. 3d 156, 162–63 (Ct. App. 1979) ("Appellant herein describes the subject bonus as a calculated amount consisting of the computed sales component less the computed shortage component and argues that no deductions are made from the final computation. It appears to this court that this is merely a clever method of circumventing the statutory definition of wages"). Deductions for insurance and chargebacks should be certified.

The Court should also expand the class period to run through judgment because it is undisputed that the unlawful practice at the center of this case remains unchanged: Jan-Pro continues to utilize the same three-tiered system and to misclassify its franchisee cleaning workers to this day.

Finally, the Court should expand the measure of damages to encompass the full amount of the unlawful deductions at issue, not just the percentage retained by Jan-Pro. As Plaintiffs' employer, Jan-Pro must make its employees whole. An employer who takes an unlawful deduction and then splits the proceeds with a third-party or passes it on to its customers as a discount would still be liable to its workers for the entirety of the unlawful deduction. The proper measure of damages is Plaintiffs' loss, *not* the amount of the deductions that benefited Jan-Pro. <u>See</u> <u>DiFiore v. American Airlines</u>, 454 Mass. 486, 488 (2009).

Date: July 18, 2022

Respectfully submitted,

LICHTEN & LISS-RIORDAN, P.C.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan
Adelaide H. Pagano
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on July 18, 2022, on all counsel of record.

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan Esq.