UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GLORIA ROMAN, GERARDO
VAZQUEZ, and JUAN AGUILAR,

        Plaintiffs,

       v.

JAN-PRO FRANCHISING
INTERNATIONAL, INC.,

        Defendant.

No.  C 16-05961 WHA

**ORDER RE MOTIONS FOR
SUMMARY JUDGMENT ON
INDIVIDUAL CLAIMS**

## INTRODUCTION

In this wage-and-hour class action involving misclassification of janitorial workers, plaintiffs previously moved for class certification and summary judgment as to all claims. Defendant also moved for summary judgment as to all claims.  A prior order granted in part and denied in part plaintiffs' motion for class certification.  That order granted summary judgment in favor of plaintiffs as to all certified issues.  Namely, it found that all of defendant's janitorial workers were employees for purposes of the California wage orders. And, it found defendant liable for mandatory training pay, reimbursement for necessary expenses covered under the California wage orders, and pay for unlawful deductions covered under the California wage orders.  It denied plaintiffs' request to amend the complaint to include a claim regarding itemized wage statements.

The prior order, however, did not consider summary judgment as to the following uncertified, individual labor code issues that remain in this action:  minimum wages for cleaning work and travel time; overtime wages for cleaning work; reimbursement for necessary expenses not covered under the California wage orders; and pay for unlawful deductions not covered under the California wage orders.  Now, this order considers whether summary judgment is appropriate as to each remaining, uncertified labor code issue for each plaintiff.

Summary judgment in favor of plaintiff Vazquez as to his individual minimum wage claim for cleaning work is **GRANTED**.  Summary judgment in favor of defendant as to plaintiff Roman's individual minimum wage claim for cleaning work is **GRANTED**.  Both parties' motions for summary judgment as to plaintiff Aguilar's individual minimum wage claim for cleaning work are **DENIED**.  Summary judgment in favor of plaintiffs as to all their claims for travel time pay is **GRANTED**.  Both parties' motions for summary judgment as to all plaintiffs' individual overtime claims are **DENIED**.  Both parties' motions for summary judgment as to all of plaintiffs' individual claims for expense reimbursements and unlawful deductions are **DENIED**.

This order defers adjudicating individual damages until trial.

## STATEMENT

At all material times, defendant has been an international janitorial cleaning business. It uses a franchising model with three tiers.  The top tier consists of defendant, Jan-Pro International, Inc.  The middle tier consists of "master franchisees" or "master owners" — regional, third-party entities — to whom defendant sells exclusive rights to use the trademarked "Jan-Pro" logo.  As of 2009, there were at least 91 master franchisees in the United States.  The bottom tier consists of "unit franchisees" who contract with master franchisees to clean businesses.  Unit franchisees do not contract with defendant.  A given unit franchisee can be an individual or a few partners, and those persons can hire additional workers to help them clean.

Our plaintiffs were and are unit franchisees who purchased their unit franchises from two different master franchisees.  (The master franchisees in question are not parties herein.)

United States District Court
Northern District of California

1   Plaintiff Vazquez purchased a unit franchise from New Venture of San Bernardino, LLC,

2   for $2800.  Plaintiff Roman purchased a unit franchise from Connor-Nolan, Inc., for $2800.

3   Plaintiff Aguilar, with a business partner, also purchased a unit franchise from Connor-Nolan,

4   for which he and his partner paid $9000.

5       The diagram below shows the general structure of defendant's three-tier business.

6   Solid lines represent revenue from cleaning services.  Cleaning customers (CCs) pay master

7   franchisees (MFs) for cleaning services based on "pricing agreements" between them.

8   For some cleaning customers, master franchisees supplement the pricing agreements with

9   "bid worksheets," which show calculations of cleaning costs.  Master franchisees then pay

10  unit franchisees (UFs) from that revenue (because unit franchisees do the cleaning), with the

11  exception that master franchisees deduct and pay four percent of that revenue to defendant (D).

12  Dotted lines represent revenue from franchise fees.  Unit franchisees each pay master

13  franchisees a franchise fee.  Then, master franchisees pay ten percent of the franchise fee to

14  defendant.  Additionally, master franchisees profit by collecting other fees from unit

15  franchisees, such as "management fees" and "sales and marketing fees" (not depicted), which

16  defendant does not collect.



22      Here is the relevant legal framework.  The Industrial Welfare Commission of California

23  publishes wage orders that regulate the hours, wages, and working conditions of California

24  employees.  The wage orders encompass some, but not all, of the provisions in the labor code.

25      Whether a wage order encompasses a labor code claim dictates the applicable

26  misclassification test.  When a wage order encompasses a labor code claim (or a discrete issue

27  within a claim), courts determine employee classification under *Dynamex* for purposes of that

28  claim or issue.  When the wage orders do not cover a labor code claim (or a discrete issue

1    within a claim), such as expense reimbursements for gas and tolls, courts determine employee

2    classification under *Borello* for purposes of that claim or issue.  *See Dynamex Operations W.,*

3    *Inc. v. Super. Ct. of L.A. Cnty.*, 4 Cal. 5th 903, 915–16 n. 5 (2018); *S. G. Borello & Sons, Inc.*

4    *v. Dep't of Indus. Rels.*, 48 Cal. 3d 341, 350–51 (1989).

5         Here, a prior order found all unit franchisees, including plaintiffs, to be employees under

6    the *Dynamex* misclassification standard (Dkt. No. 369).  That order certified some labor code

7    issues relying on *Dynamex*; it denied certification for other such issues.  Because plaintiffs did

8    not brief predominance for misclassification under *Borello*, however, that order denied

9    certification of that issue and all labor code issues relying on *Borello*.  This order shall consider

10   the remaining, individual labor code issues relying on *Dynamex* and *Borello*.

11        This order follows full briefing and oral argument.

## ANALYSIS

13        Summary judgment is proper when the pleadings, discovery, and affidavits show that

14   there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

15   matter of law."  FRCP 56(a).  Material facts are those that "might affect the outcome of the

16   suit" under the governing, substantive law; a factual dispute is genuine "if the evidence is such

17   that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

18   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).

19        The record is viewed in the light most favorable to the nonmoving party, and "'all

20   reasonable inferences that may be drawn from the facts placed before the court must be

21   drawn'" in favor of the nonmoving party.  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065

22   (9th Cir. 2003) (citations omitted).  The judge does not make credibility determinations or

23   weigh the evidence.  *Anderson*, 477 U.S. at 255.  A trial court may consider only admissible

24   evidence.  FRCP 56(c).

25        Here, both parties have moved for summary judgment.  This order considers the claims

26   and issues in turn.

27

28

United States District Court
Northern District of California

4

1.   **MINIMUM WAGE FOR CLEANING WORK.**

Wage Order 5-2001(4) encompasses claims for minimum wage under Labor Code Section 1194. Thus, this order considers misclassification under *Dynamex* for purposes of minimum wage. Because a prior order found all unit franchisees, including plaintiffs, to have been employees under *Dynamex*, plaintiffs are entitled to minimum wage (Dkt. No. 369).

### A.   *PLAINTIFF GLORIA ROMAN.*

Plaintiff Roman declares she worked seven days per week and between 47 and 67 hours per week. The most she earned in any month was $4000, excluding deductions of roughly 20% of her pay for franchise fee royalties, cleaning revenue royalties, sales and marketing fees, and management fees. The most she earned in a week, therefore, was $909.09 (given 4.4 weeks per month). Thus, in her best months, her rate of pay was $19.34 per hour when she worked 47 hours in a week. Her rate of pay was $13.57 per hour when she worked 67 hours in a week (Roman Decl. ¶ 8). Yet all bid worksheets between plaintiff Roman's master franchisee, Connor-Nolan, and cleaning customers used a rate of $15 per hour to estimate the cost of cleaning (*see, e.g.*, Dkt. No. 247-3 at 131, 160).

When plaintiff Roman started working for defendant in 2004, the minimum wage was $6.75 per hour. By the time plaintiffs filed the second amended complaint in 2017, the minimum wage was $10.50 per hour. The evidence, therefore, shows plaintiff Roman's rate of pay was greater than the minimum wage in her heaviest workweeks, regardless of whether this order uses her declaration or the bid worksheets to estimate that rate. Lab. Code § 1182.12; Cal. Dep't Indus. Rels., *History of California Minimum Wage*, https://www.dir.ca.gov/iwc/minimumwagehistory.htm.

Summary judgment in favor of defendant on plaintiff Roman's claim for minimum wage for cleaning work is **GRANTED**.

### B.   *PLAINTIFF JUAN AGUILAR.*

Plaintiff Aguilar declares his agreement with his master franchisee guaranteed him $5000 per year, or $416.67 per month. He declares that "at times, I worked between five and seven days per week, over 40 hours." On those heavy workweeks, therefore, he would have earned

5

approximately $2.36 per hour (*see* Aguilar Decl. ¶¶ 4, 6).  Yet all bid worksheets between plaintiff Aguilar's master franchisee, Connor-Nolan, and cleaning customers used a rate of $15 per hour to estimate the cost of cleaning (*see, e.g.*, Dkt. No. 247-3 at 62, 111).  Moreover, Connor-Nolan billed some customers thousands per month (*see, e.g.*, *id.* at 51–52, 77).

Additionally, plaintiff Aguilar *and* a business partner of his contracted with Connor-Nolan together (Dkt. No. 247-3 at 222).  Both Aguilar and his partner, therefore, were employees of defendant entitled to minimum wage beginning in 2003 (*see* Dkt. No. 369). The two of them split all earnings (Aguilar Dep. 52–53).  For customer locations they cleaned together, therefore, each would have earned only half the amount billed for those locations. It is unclear, however, which customer locations the partners cleaned together.

Thus, there is a genuine dispute of material fact as to plaintiff Aguilar's rate of pay. Both parties' motions for summary judgment as to plaintiff Aguilar's individual minimum wage claim for cleaning work are **DENIED**.

### C.   PLAINTIFF GERARDO VAZQUEZ.

Plaintiff Vazquez declares he earned less than minimum wage.  One example is his work for cleaning customer Supercuts.  Based on earnings of $175 per month before deductions and 24 hours of work per month, Vazquez earned approximately $7.29 per hour.  Another example is his work for cleaning customer Kindercare.  Vazquez declares he earned $975 per month before deductions for 140 hours of work.  It is unclear from his calculations, however, how he estimated his work hours.  He declares he serviced Kindercare for up to 24 hours per week, which provides a total of 105.6 hours per month (given 4.4 weeks per month).  Thus, this order finds his pay rate for Kindercare was approximately $9.23 per hour (Vazquez Decl. ¶ 6).

Defendant's only evidence to the contrary is hearsay.  Defendant cites the declaration of Carmen Garcia, manager of master franchisee New Venture of San Bernardino, which contracted with plaintiff Vazquez.  Garcia declares that "new unit franchisees [who later] cleaned . . . Supercuts and Kindercare . . . *have informed me*" that it took less time to clean those customer locations than it did for plaintiff Vazquez (Dkt. No. 247-3 at 189, Garcia Decl.

United States District Court
Northern District of California

¶ 6) (emphasis added).  Defendant does not identify any applicable hearsay exception or exemption, and this order finds none.  Thus, defendant's evidence is inadmissible.

Plaintiff Vazquez started working for defendant in 2007, when the minimum wage was $7.50 per hour.  Since then, the minimum wage has only increased.  Thus, at all relevant times, plaintiff Vazquez earned less than minimum wage for cleaning Supercuts.  Defendant is liable to plaintiff Vazquez, therefore, for failure to pay minimum wage.  Plaintiff Vazquez may have earned less than minimum wage for work at other customer locations as well.  (For any work at Kindercare from 2007 through 2015, however, he earned more than minimum wage.) The extent to which defendant is liable, *i.e.*, damages, can be adjudicated in a later phase of this action.  Cal. Dep't Indus. Rels., *History of California Minimum Wage*, https://www.dir.ca.gov/iwc/minimumwagehistory.htm.

Summary judgment in favor of plaintiff Vazquez on his claim for minimum wage for cleaning work is **GRANTED**.

### 2.    MINIMUM WAGE FOR TRAVEL TIME.

A prior order found that travel time during the workday is governed by the wage orders.[*] Because that order also found all unit franchisees, including plaintiffs, to have been employees under *Dynamex*, plaintiffs are entitled to minimum wage for travel time (Dkt. No. 369).

As to liability for travel time, all three plaintiffs declare they did not receive compensation for travel time (Vazquez Decl. ¶ 9; Aguilar Decl. ¶ 8; Roman Decl. ¶ 9). Plaintiff Vazquez stated he cleaned two customer locations on each of Monday and Thursday, and he cleaned three customer locations on Fridays (Vazquez Dep. 107–08).  And, both plaintiff Aguilar and plaintiff Roman cleaned multiple customer locations on certain days of the week (Dkt. No. 247-3 at 39–40; *id.* at 167, 178).  None of the pricing agreements account for travel time (*see id.* at 34–187).  For unit franchisees to have been able to service multiple customers in a single day, unit franchisees must have taken some time to travel between

United States District Court
Northern District of California

---

[*]  That finding did not cover time unit franchisees spent commuting from their homes before the workday or to their homes after the workday.  Plaintiffs did not show such time is compensable.

1    customers.  Defendant does not dispute any of the above.  Defendant, therefore, is liable to all

2    of plaintiffs for minimum wage for travel time between customer locations.

3         Furthermore, this order finds *Oman v. Delta Air Lines, Inc.* is not analogous to this

4    action.  In *Oman*, the defendant airline would choose amongst four payment formulas to

5    calculate a given flight attendant's compensation.  One of those formulas (the at-issue formula)

6    did not account for work time before take-off and after landing, so the plaintiff argued that that

7    formula did not compensate flight attendants for all work time — in violation of minimum

8    wage law.  But, for a given flight attendant, the defendant had a uniform policy to choose the

9    formula (of the four formulas) that would compensate the flight attendant the most.  And, one

10   of the remaining formulas "guarantee[d] that flight attendants [were] always paid above the

11   minimum wage for the hours worked during each [shift] without borrowing from compensation

12   promised for other [shifts]."  Thus, *Oman* held the at-issue formula did not violate minimum

13   wage law because the defendant's payment scheme *guaranteed* minimum wage for all hours

14   worked during each shift, including work time before take-off and after landing.  9 Cal. 5th

15   762, 784–87 (2020).

16        Defendant here argues that its failure to account for travel time in its pay scheme is

17   analogous to the defendant's failure to account for pre-flight and post-flight work time in

18   *Oman*.  That analogy fails.  The defendant's pay scheme in *Oman* guaranteed that flight

19   attendants would receive minimum wage for each hour worked.  Thus, the defendant

20   necessarily paid for pre-flight and post-flight work time.  But, here, defendant has not shown

21   that its pay scheme *guaranteed* minimum wage for all work time.  Thus, this order cannot

22   accept that defendant necessarily paid plaintiffs minimum wage for travel time.

23        Thus, as to all of plaintiffs' individual motions for summary judgment, there is no

24   genuine dispute of material fact, and summary judgment in favor of plaintiffs as to minimum

25   wage for travel time is **GRANTED**.  Defendant's motion for summary judgment fails to meet its

26   burden and, as to the travel time issue, is **DENIED**.  To the extent that plaintiffs altered their

27   schedules or sent other persons to customer locations in their place, those issues can be dealt

28   with at the damages stage.

United States District Court
Northern District of California

8

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    OVERTIME.

Wage Order 5-2001(3) encompasses claims for overtime under Labor Code Section 510. Thus, this order considers misclassification under *Dynamex* for purposes of overtime.  Because a prior order found all unit franchisees, including plaintiffs, to have been employees under *Dynamex*, plaintiffs are entitled to overtime pay (Dkt. No. 369).

As to all plaintiffs, however, defendant argues it is not liable for overtime pay because it had no knowledge of unit franchisees' overtime work.  Defendant cites *Forrester v. Roth's I. G. A. Foodliner, Inc.* in support of its position, which stated that "an employer who knows or *should have known* that an employee is or was working overtime" must comply with overtime pay laws.  646 F.2d 413, 414 (9th Cir. 1981) (emphasis added).  California courts of appeal have reinforced this rule for purposes of the labor code.  *Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal. App. 4th 391, 396 (2014).  *Jong* elaborated that "[t]his is not to say that an employer may escape responsibility by negligently maintaining records . . . by deliberately turning its back on a situation."  *Id.* at 395.

There is a genuine dispute of material fact as to whether defendant should have known plaintiffs were working overtime.  Plaintiff Roman, for example, declares she cleaned for 47 to 67 hours per week (Roman Decl. ¶ 8).  Her records show she cleaned 14 different customer locations in October 2005, and she cleaned 11 locations in September 2005 (Dkt. No. 313-2 at 4).  This order finds those records sufficient to require overtime hours and to put defendant on constructive notice of overtime work.  There is no information, however, about whether master franchisees provided those records to defendant.  As another example, because master franchisees paid defendant four percent of revenue from cleaning services, defendant may have been on constructive notice that unit franchisees from which they collected large cleaning revenue royalties were working overtime.  But this depends on whether master franchisees paid defendant cleaning revenue royalties from each unit franchisee separately or in a lump sum, which is unclear from the evidence.

1    Defendant especially should not benefit from its failure to maintain adequate records of

2    work hours.  *Jong*, 226 Cal. App. 4th at 395.  Thus, as to all of plaintiffs' individual overtime

3    claims, plaintiffs and defendant's motions for summary judgment are **DENIED**.

4        **4.    EXPENSE REIMBURSEMENTS AND UNLAWFUL DEDUCTIONS.**

5        The California wage orders do not encompass any of the remaining, individual expense

6    reimbursement and unlawful deduction issues here — reimbursements for gas and insurance

7    premiums, and deductions of franchise fees, cleaning revenue fees, chargeback fees (*i.e.*,

8    service fees), and insurance fees.  *See Dynamex*, 4 Cal. 5th at 915–16 n. 5.  Plaintiffs'

9    classification status for those issues, therefore, relies on the *Borello* standard.

10       Under *Borello*, "[t]he determination of employee or independent contractor status is one

11   of fact if dependent upon the resolution of disputed evidence or inferences . . . .  If the evidence

12   is undisputed, the question becomes one of law."  The principal test of an employment

13   relationship is whether the hirer has the right to control the manner and means of

14   accomplishing the desired result.  In addition, there are several secondary considerations.

15   "'Strong evidence in support of an employment relationship is the right to discharge at will,

16   without cause.'"  Other secondary considerations include:

17           (a) whether the one performing services is engaged in a distinct
             occupation or business; (b) the kind of occupation, with reference
18           to whether, in the locality, the work is usually done under the
             direction of the principal or by a specialist without supervision;
19           (c) the skill required in the particular occupation; (d) whether the
             principal or the worker supplies the instrumentalities, tools, and the
20           place of work for the person doing the work; (e) the length of time
             for which the services are to be performed; (f) the method of
21           payment, whether by the time or by the job; (g) whether or not the
             work is a part of the regular business of the principal; and
22           (h) whether or not the parties believe they are creating the
             relationship of employer-employee.
23

24   "'Generally, the individual factors cannot be applied mechanically as separate tests;

25   they are intertwined, and their weight depends often on particular combinations.'"  48 Cal. 3d

26   at 349–51.

27       Here, a reasonable jury could find plaintiffs to have been employees or independent

28   contractors under *Borello*.  As to the right to control, defendant required plaintiffs to undergo

United States District Court
Northern District of California

standardized training on how to clean customer locations (Dkt. No. 359-1 at 145).  Moreover, defendant had the right to establish policies and procedures "pertaining to the operation of . . . any unit franchisee" (Dkt. No. 292-2 § 4.28).  In these ways, defendant had the right to control the manner and means of plaintiffs' work.  On the other hand, plaintiffs were free to decline work, and plaintiffs could hire their own workers to help with the cleaning (Kissane Dep. 24–25; Roman Dep. 39–40).  Thus, there is conflicting evidence on the right to control.  This weighs heavily in favor of submitting the classification question to a jury.

As to the secondary considerations, plaintiffs' master franchisees could terminate plaintiffs' agreements only for an action constituting a "default" (*e.g.*, Dkt. No. 292-12 § 15).  Thus, even if defendant could have assumed the rights of plaintiffs' master franchisees, defendant would not have been able to terminate unit franchisees at will, without cause.  This factor weighs in favor of independent contractor status.

Plaintiff Roman was engaged in a distinct cleaning business, which favors independent contractor status.  But there is no evidence that either plaintiff Aguilar or plaintiff Vazquez engaged in a distinct business.

There is no evidence establishing whether, in California, janitorial work is done under the direction of a principal or by a specialist without supervision.  But the skill required for janitorial work is minimal.  Thus, it is unlikely that janitorial work in California is done by specialists.  Both factors, therefore, support employee status.

The length of time of plaintiffs' agreements with their master franchisees was ten years (*see, e.g.*, Dkt. No. 292-13 § 18).  Such a long duration supports employee status.

Defendant did not supply the tools and instrumentalities of the work unless unit franchisees paid the franchise fee up front and in full.  The place of work was customers' locations — not defendant's premises.  This factor supports independent contractor status.

The method of payment here was hourly based on estimated time of completion.  But the time of completion and pay varied from job to job.  The payment method, therefore, resembled both employee and independent contractor pay schemes.

As established in a prior order, defendant's regular business was to provide cleaning services (Dkt. No. 369).  Plaintiffs' cleaning work, therefore, was part of defendant's regular business.  This factor supports employee status.

Finally, none of plaintiffs knew of defendant's existence when they signed their agreements (Vazquez Dep. 47; Roman Dep. 51; Aguilar Dep. 41).  In turn, none of plaintiffs believed they were establishing a relationship — let alone an employment relationship — with defendant.  This factor supports independent contractor status.  *See generally Angelotti v. The Walt Disney Co.*, 192 Cal. App. 4th 1394, 1405 (2011) (demonstrating how each of the foregoing factors affects the classification question).

In sum, the right to control test under *Borello* reveals conflicting evidence.  The secondary *Borello* factors, moreover, provide mixed answers on the classification question.  Thus, whether plaintiffs were misclassified under *Borello* is a question suitable for jury determination.

Both parties' motions for summary judgment as to all of plaintiffs' individual claims for expense reimbursements and unlawful deductions are **DENIED**.

## CONCLUSION

For the foregoing reasons, summary judgment in favor of plaintiff Vazquez as to his individual minimum wage claim for cleaning work is **GRANTED**.  Summary judgment in favor of defendant as to plaintiff Roman's individual minimum wage claim for cleaning work is **GRANTED**.  Both parties' motions for summary judgment as to plaintiff Aguilar's individual minimum wage claim for cleaning work are **DENIED**.  Summary judgment in favor of plaintiffs as to all their claims for travel time pay is **GRANTED**.  Both parties' motions for summary judgment as to all of plaintiffs' individual overtime claims are **DENIED**.  Both parties' motions for summary judgment as to all of plaintiffs' individual claims for expense reimbursements and unlawful deductions are **DENIED**.

A trial on class damages for the certified issues (not discussed herein) shall be set for early 2023.  Thus, the trial on remaining liability and damages issues for the individual claims and issues discussed herein **SHALL IMMEDIATELY FOLLOW** the class damages trial.  The final

pretrial conferences shall be held together.  To simplify matters, both sides are requested to

stipulate to a bench trial as to the remaining individual claims and issues (the class issues will

be by jury).  Please advise in the final pretrial statement whether both sides so agree.

        **IT IS SO ORDERED.**


Dated:  August 2, 2022.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE