Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
Adelaide H. Pagano, *pro hac vice*
(apagano@llrlaw.com)
Jane Farrell (SBN 333779)
(jfarrell@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Attorneys for Plaintiffs and the Certified Class

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA ROMAN, GERARDO VAZQUEZ, JUAN AGUILAR, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.<br><br>Defendant. | Case No.:   3:16-cv-05961-WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date:          September 14, 2023<br>Time:         8:00 am<br>Courtroom:  12, 19th Floor<br><br>Hon. William H. Alsup |

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................................1

II.   BACKGROUND ..................................................................................................................1

III.  ARGUMENT ........................................................................................................................5

    A.    THE LAW-OF-THE-CASE DOCTRINE APPLIES HERE ...................................5

        a.    Legal Standard .........................................................................................5

        b.    The Question of Arbitrability and Waiver through Litigation Conduct Has Been Decided by this Court and the Ninth Circuit ..............................5

        c.    No Exceptions to the Law-of-the-Case Doctrine Apply ............................13

    B.    THE PROCEEDINGS SHOULD *NOT* BE STAYED AS *COINBASE* DOES NOT APPLY TO FRIVOLOUS MOTIONS TO COMPEL ARBITRATION .....13

    C.    STAYING THE DISTRICT COURT PROCEEDINGS WHILE JAN-PRO APPEALS AN ORDER DENYING A MOTION TO COMPEL ARBITRATION WOULD ENCOURAGE ARBITRATION GAMESMANSHIP ...................................................................................................15

    D.    IF DEFENDANT APPEALS THE COURT'S ORDER DENYING THE MOTION TO COMPEL ARBITRATION, THE DISTRICT COURT SHOULD CERTIFY THAT AN INTERLOCUTORY APPEAL IS FRIVOLOUS ..............15

    E.    DEFENDANT'S ATTEMPT TO COMPEL ARBITRATION ON THE EVE OF TRIAL IS A SANCTIONABLE STALL TACTIC ............................................15

IV.   CONCLUSION ...................................................................................................................16

**TABLE OF AUTHORITIES**

**Cases**

*Alaimalo v. United States*
  645 F.3d 1042 (9th Cir. 2011) ...............................................................................5, 13

*Arizona v. California*
  460 U.S. 605 (1983)..................................................................................................5

*Armstrong v. Michaels Stores, Inc.*
  59 F.4th 1011 (9th Cir. 2023) .................................................................................13

*AT&T Mobility v. Concepcion*
  563 U.S. 333 (2011)................................................................................................12

*Brennan v. Opus Bank, Corp.*
  796 F.3d 1125 (9th Cir. 2015) ..................................................................................9

*Caremark, LLC v. Chickasaw Nation*
  43 F.4th 1021 (9th Cir. 2022) ...................................................................................9

*Coinbase, Inc. v. Bielski*
  143 S. Ct. 1915 (2023)..................................................................................5, 14, 15

*Cox v. Ocean View Hotel Corp.*
  533 F.3d 1114 (9th Cir. 2008) ................................................................................10

*Dekker v. Vivint Solar, Inc.*
  611 F. Supp. 3d 898 (N.D. Cal. 2020) ......................................................................9

*Depianti v. Jan-Pro Franchising Int'l, Inc.*
  39 F. Supp. 3d 112 (D. Mass. 2014), *aff'd,* 873 F.3d 21 (1st Cir. 2017) ....................2

*Depianti v. Jan-Pro Franchising Int'l, Inc.*
  465 Mass. 607, 990 N.E.2d 1054 (2013)...................................................................2

*Dynamex Ops. W. Inc. v. Superior Court*
  4 Cal.5th 903 (2018) .................................................................................................2

*Gary v. Sheahan*
  188 F.3d 891 (7th Cir. 1999) ..................................................................................13

*Gray Holdco Inc. v. Cassady*
  654 F.3d 444 (3d Cir. 2011) .....................................................................................8

*Griggs v. Provident Consumer Discount Co.*
  459 U.S. 56, 74 L.Ed.2d 225 (1982)......................................................................14

*Gutierrez v. Wells Fargo Bank, NA*
   704 F.3d 712 (9th Cir. 2012) ........................................................................................................12

*Hegler v. Borg*
   50 F.3d 1472 (9th Cir. 1995) ..........................................................................................................5

*Hill v. Xerox Bus. Servs., LLC*
   59 F.4th 457 (9th Cir. 2023) ....................................................................................................11, 12

*Howsam v. Dean Witter Reynolds, Inc.*
   537 U.S. 79 (2002)............................................................................................................................9

*In re Bankers Trust Co.*
   61 F.3d 465 (6th Cir. 1995), cert. dismissed, 517 U.S. 1205 (1996)............................................7

*In re Pac. Fertility Ctr. Litig.*
   814 F. App'x 206 (9th Cir. 2020)....................................................................................................8

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Pracs., & Prod. Liab. Litig.*
   838 F. Supp. 2d 967 (C.D. Cal. 2012) ............................................................................................8

*Joca-Roca Real Estate, LLC v. Brennan*
   772 F.3d 945 (1st Cir. 2004)............................................................................................................8

*Kelly v. Public Utility District No. 2 of Grant County*
   552 F. App'x 663 (9th Cir. 2014)....................................................................................................8

*Kimball v. Callahan*
   590 F.2d 768 (9th Cir. 1979) ..........................................................................................................5

*Lambert v. Nutraceutical Corp.*
   870 F.3d 1170 (9th Cir. 2017), *rev'd and remanded on other grounds,* 139 S. Ct. 710, 203 L. Ed. 2d
   43 (2019)........................................................................................................................................13

*Martin v. Yasuda*
   829 F.3d 1118 (9th Cir. 2016) ....................................................................................................9, 10

*McGinnis v. Ingram Equip. Co., Inc.*
   918 F.2d 1491 (11th Cir. 1990) ....................................................................................................12

*Messina v. N. Cent. Distrib. Inc.*
   832 F.3d 1047 (8th Cir. 2016) ........................................................................................................8

*Minidoka Irrigation Dist. v. U.S. Dep't of Interior*
   406 F.3d 567 (9th Cir.2005) ..........................................................................................................5

*Morgan v. Sundance, Inc.*
   142 S.Ct. 1708 (2022)....................................................................................................................13

*Murphy v. DirecTV, Inc.*
  724 F.3d 1218 (9th Cir. 2013) ...............................................................................9

*Narayan v. EGL*, Inc.
  616 F.3d 895 (9th Cir. 2010) .................................................................................9

*Rajagopalan v. NoteWorld, LLC*
  718 F.3d 844 (9th Cir. 2013) ...............................................................................8, 9

*Romero v. City of Los Angeles*
  2022 WL 2167452 (C.D. Cal. Mar. 17, 2022)..........................................................7

*Thomas v. Bible*
  983 F.2d 152 (9th Cir.) .........................................................................................5

*Truesdell v. S. California Permanente Med. Grp.*
  293 F.3d 1146 (9th Cir. 2002) ..............................................................................15

*United States v. Alexander*
  106 F.3d 874 (9th Cir. 1997) .................................................................................5

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*
  10 Cal. 5th 944, 478 P.3d 1207 (2021)....................................................................3

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*
  986 F.3d 1106 (9th Cir. 2021) ...............................................................................3

**Rules**

Federal Rule Civil Procedure 11............................................................................15, 16

Federal Rule of Civil Procedure 12 ..........................................................................4

Federal Rule of Civil Procedure 23 ................................................................. passim

## I.    INTRODUCTION

Defendant Jan-Pro International's (hereinafter "Defendant" or "Jan-Pro") Motion to Compel Arbitration—filed nearly a year after this Court granted class certification and the Ninth Circuit rejected its Appeal under Federal Rule of Civil Procedure 23(f), *see* ECF No. 383—is procedurally defective and substantively meritless, as it is redundant of its earlier failed attempt to compel arbitration and contravenes the law-of-the-case doctrine. *See* Def's Mot. to Compel Arbitration, ECF No. 454. Indeed, this Court and the Ninth Circuit have *already* addressed and ruled against Defendant on *all* of the arguments it raises in this hastily repackaged Motion to Compel Arbitration. This Motion is a clear last-ditch attempt to try to delay a long-overdue trial that is now just weeks away. Accordingly, this Court should deny Defendant's Motion to Compel Arbitration and sanction Defendant for this frivolous, untimely, and unconscionable attempt to deprive class members of tens of millions of dollars in damages they are owed, and are on the verge of at last obtaining a judgment for, dating back nearly *twenty* years. For the reasons outlined herein, this Court should also deny Defendant's Request to Stay the case pending appeal. Justice delayed is justice denied, and this class has been waiting long enough; the October 16, 2023, trial must go forward as scheduled. As this Court has reiterated over the past year, "We need to get this case ready for trial . . . It's going to go to trial. H'rg Tr., ECF No. 398.

## II.    BACKGROUND

As the Court knows, this case was filed more than 15 years ago, in April 2008 in the District of Massachusetts, as a nationwide class action on behalf of cleaning franchisees for Defendant Jan-Pro. ECF No. 1. Jan-Pro moved to dismiss the Complaint, not raising arbitration as a defense, even though the plaintiffs had arbitration clauses in their contracts. ECF No. 4. In December 2008, a number of additional plaintiffs and state law claims were added to the case, including the three named plaintiffs at issue here – Gloria Roman, Gerardo Vazquez, and Juan Aguilar – who brought California state law claims on behalf of a putative class of California franchisees. ECF No. 29. All of these Plaintiffs had arbitration provisions in their contracts, and Jan-Pro was well-aware of this fact.[1] Jan-Pro filed another answer, never raising arbitration. ECF No. 31.

---

[1]    Copies of the named Plaintiffs' franchise agreements, containing arbitration provisions, were produced in discovery in 2009.

The parties engaged in extensive discovery, including discovery aimed at Jan-Pro's systemic policies and practices towards the class. ECF No. 326, ¶ 5. For instance, Plaintiffs deposed four high-ranking officers of Jan-Pro and questioned them regarding Jan-Pro's policies and practices, as applied to the class at large. ECF No. 326. Jan-Pro then moved for summary judgment on the claims of all named plaintiffs. ECF No. 65. Plaintiffs cross-moved for summary judgment on the claims of Massachusetts Plaintiff Giovanni Depianti. ECF No. 68. The case was vigorously litigated, with each side submitting numerous supplemental briefs and post-argument briefing as well as supplemental authorities. The federal court certified questions of Massachusetts law to the Massachusetts Supreme Judicial Court, which subsequently answered those questions. ECF No. 152; *see also Depianti v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 990 N.E.2d 1054 (2013). The federal court issued rulings, including on various common law claims that had been pled on behalf of the nationwide class. *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 39 F. Supp. 3d 112 (D. Mass. 2014), *aff'd,* 873 F.3d 21 (1st Cir. 2017).

Following that decision, in September 2016, the claims of the three California Plaintiffs were severed and transferred to this Court. ECF No. 210. In the Parties' Joint Case Management Statement to the Court in early 2017, Jan-Pro noted that "all discovery" including "merits and ***class discovery***" had already taken place, and it took the position "that discovery is closed and no further discovery should be allowed." ECF No. 229 at p. 9, ¶ 8. Thereafter, Plaintiffs filed a Second Amended Complaint, pleading only the remaining California state law claims on behalf of the California class. ECF No. 244. Again, Jan-Pro answered the Complaint and did not raise arbitration. ECF No. 245.

Eager to press its claims in court, Jan-Pro promptly filed a Motion for Summary Judgment on the merits of Plaintiffs' claims, which Plaintiffs opposed. ECF No. 246, ECF No. 250. The Court granted Jan-Pro's Motion, but Plaintiffs appealed.

During the pendency of Plaintiffs' appeal, the California Supreme Court decided *Dynamex Ops. W. Inc. v. Superior Court*, 4 Cal.5th 903 (2018), holding that an "ABC" test for employee-status would apply to claims under the Wage Orders. Following the *Dynamex* decision, this Court solicited supplemental briefing from the parties and eventually certified the question of *Dynamex's* retroactivity to the California Supreme Court, where the parties vigorously briefed and contested the issue. The California Supreme Court ultimately sided with Plaintiffs, concluding that the ABC test applied

retroactively to Plaintiffs' claims. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 478 P.3d 1207 (2021). The Ninth Circuit then reversed summary judgment in Jan-Pro's favor and remanded the case with clear instructions to the District Court to apply the ABC test. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106 (9th Cir. 2021). Jan-Pro moved twice for rehearing and was twice denied.

In this Court once more, Plaintiffs moved for class certification and summary judgment. ECF Nos. 290, 298. Jan-Pro cross-moved for summary judgment. ECF No. 299. However, in opposing Plaintiffs' Class Certification Motion, Jan-Pro argued for the first time, and after litigating before two different federal district courts, the Ninth Circuit, and the California Supreme Court, that the class could not be certified because of the presence of an arbitration clause. ECF No. 300.

In May 2022, this Court issued a 40-page Tentative Order in which it found that Jan-Pro had waived its right to compel arbitration through litigation conduct with respect to absent class members. ECF No. 338. The parties filed three more rounds of supplemental briefing, including post-argument briefing, in which Jan-Pro vigorously contested the Court's finding that it had waived arbitration as to class members. *See, e.g.,* ECF Nos. 345, 346, 351, 356, 357, 358, 359, 360, 361, 367, 368. Only after this *exhaustive* briefing and oral argument, and after careful consideration, did this Court issue its final ruling in August 2022, reaffirming that Jan-Pro had waived its right to compel arbitration through its litigation conduct. Order Re Mot. for Class Cert. and Mots. For Summ. J., ECF No. 369. Defendant filed a Motion for Leave to file a Motion for Reconsideration, ECF No. 371, which Plaintiffs opposed, ECF No. 374, and which this Court denied, ECF No. 376. Defendant then filed a Rule 23(f) Petition in the Ninth Circuit, which was denied last year. ECF No. 383. Plaintiffs also opposed that petition. See Declaration of Jane Farrell ("Farrell Decl."), Exh. A (Plaintiff-Respondents' Opp'n to Pet. to Appeal Pursuant to Rule 23(f)).

Plaintiffs have since issued notice to the class. Specifically, the parties submitted a joint stipulation and proposed order regarding class notice on October 7, 2022, that stated, in part:

> As for a class list of persons/entities to receive the Notice, Defendant does not have a class list, as Defendant did not have dealings or data regarding unit franchisees. However, the California Regional Master Franchise owners (i.e., entities such as Connor Nolan, Inc. and/or New Venture of San Bernardino, LLC) publish their lists of unit franchisees in filings associated with their Franchise Disclosure Documents ("FDDs"), formerly known as Uniform Franchise Offering

3

Circulars ("UFOCs"). The Parties are currently working to assemble a class list utilizing those public filings.

*See* Joint Stip. Regarding Class Notice, ECF No. 379 at 2.[2]  Plaintiffs painstakingly assembled the class list and addresses based on these *publicly available* documents.[3]

Since the Ninth Circuit rejected Defendant's Rule 23(f) petition, the parties have also engaged in *extensive* damages discovery and motion practice before this Court. *See generally* ECF Nos. 385–453. Defendant re-deposed a named Plaintiff in the case, defended against Plaintiffs' multiple motions to compel, produced an expert report to Plaintiffs in preparation for trial, and even participated in a second private mediation. *Id.* While all this litigation was occurring, Defendant did not make a peep about arbitration in the ten months after the Ninth Circuit denied its Rule 23(f) petition in November 2022. The parties are now preparing to mediate for a third time, with the magistrate judge, on Monday, August 21, 2023. Plaintiffs have been preparing for trial and are ready for the damages trial set to begin on October 16, 2023.

On August 10, 2023—15 years after this litigation commenced, 15 months after this Court's tentative order on class certification and summary judgment, a year after its final order granting these motions for Plaintiffs, nearly a year after the Ninth Circuit denied Jan-Pro's Rule 12(f) petition, and *ten months* after class notice was issued—Defendant has now filed a Motion to Compel Arbitration. To be sure, Defendant's motion is nothing but a stall tactic and desperate attempt to avoid the damages trial set

---

[2]  Unbeknownst to Plaintiffs until this year, Defendant *did* have information regarding the class members in its possession. Indeed, the names of unit franchisees (i.e., class members) are listed on the Royalty Reports that Master Franchisees submitted to Jan-Pro on a monthly basis. Of course, it was incumbent upon Defendant to produce this readily available information following class certification.

[3]  Defendant has asserted that Plaintiffs did not provide them the class list when requested.  That is not correct.  The earliest record Plaintiffs have of Defendant's request for the class list is an email from March 2023.  Farrell Decl., Exh. B (Emails Re: Class List). Plaintiffs promptly responded, simply asking why Defendant was requesting the list and expressing concern that Defendant might try to communicate with class members.  Plaintiffs asked: "What do you need the list for? Neither you nor anyone else (Jan-Pro or the masters) can try to communicate with the class members about this case. To the extent you need it to try to put together any evidence about damages in the case, you would need to provide us with any such evidence you obtain."  Defendant did not reply to this question. *Id.*  Instead, Defendant waited two months and asked again for the class list on May 17, 2023, and then Plaintiffs promptly provided it. *Id*. at Exh. C (Email Requesting Class List). Plaintiffs do not have any record of Defendant asking for the publicly available documents they assembled via searches on a California government website (https://docqnet.dfpi.ca.gov/search/) and subsequent public records requests until just this week.  Upon request, Plaintiffs promptly compiled and provided those publicly available documents to Defendant. *Id*. at Exh. D (Email Providing Publicly Available Records).

to start *eight weeks* from today, where tens, and potentially hundreds, of millions of dollars in damages are at stake. For the reasons outlined below, this Court must deny Jan-Pro's Motion and deny its alternative Request for a Stay.

Per the Supreme Court's guidance in *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023), the Court should also sanction Defendant for this frivolous motion. Plaintiffs will file a motion for sanctions should Defendant not withdraw the motion to compel.

## III.    ARGUMENT

### A.    The Law-of-the-Case Doctrine Applies Here

#### a.    Legal Standard

The law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Thus, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir.) (*cert. denied* 508 U.S. 951 (1993)). The doctrine "is grounded upon the sound public policy that litigation must come to an end." *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir. 1979). The doctrine is subject to three limited exceptions. A court may revisit a prior decision if (a) circumstances demonstrate that the earlier ruling was "clearly erroneous and would work a manifest injustice," *id*. at 618 n. 8; (b) substantially different evidence was adduced at a subsequent trial, *Minidoka Irrigation Dist. v. U.S. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir.2005); or (c) an intervening controlling change in the law makes reexamination of the prior ruling appropriate, *id*.; *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (citing *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995)).  "Failure to apply the doctrine of the law of the case absent one of the [exceptions] constitutes an abuse of discretion." *Alexander*, 106 F.3d at 876.

#### b.    The Question of Arbitrability and Waiver through Litigation Conduct Has Been Decided by this Court and the Ninth Circuit

This Court rejected Defendant's Motion for Reconsideration of its decision to certify the class following *extensive* briefing on the question of whether it could move to compel arbitration.  Order Denying Leave for Reconsideration, ECF No. 376; *see also generally* ECF Nos. 338–368.  Likewise, the

Ninth Circuit denied Defendant's Rule 23(f) petition, where Defendant argued at *length* – unsuccessfully – that its right to compel arbitration precluded class certification.  *See Roman v. Jan-Pro Franchising International*, No. 22-80081, Dkt. 1-2 (Def.'s Pet. for Permission to Appeal Under Rule 23(f)) at 7-10; 13-4.[4] Lest there be any doubt, Defendant has already raised *all* the arguments it includes in its Motion to Compel Arbitration in this Court, *and* with the Ninth Circuit, via its Rule 23(f) petition. Accordingly, both this Court and the Ninth Circuit have spoken, definitively, on these topics, and the law of the case is that Defendant has waived its right to arbitration. Defendant makes five arguments in its Motion to Compel Arbitration, none of which impact this Court or the Ninth Circuit's previous conclusions regarding disputed issues or, crucially, waiver. Plaintiffs address these arguments below in turn.

The first argument Defendant offers may be better characterized as revisionist history and an excuse, and it is the fatally flawed scaffolding on which the remainder of Defendant's arguments rest. Defendant states that a valid agreement to arbitrate exists. Mot. to Compel Arbitration at 13. Plaintiffs have not and do not dispute that most class members signed Franchise Agreements containing arbitration clauses; however, Plaintiffs do dispute whether Defendant Jan-Pro has the right to move to compel arbitration as a non-signatory to these agreements.[5]  In any case, even if one accepts Jan-Pro's view that it can move to compel arbitration subject to these arbitration provisions, Plaintiffs strongly object to Defendant's recounting of the circumstances surrounding Defendant's previous attempt to compel Plaintiffs to arbitration, as well as what relevant information Defendant had access to at that time. Defendant argues that because it "was not even clear whether Plaintiffs would seek to certify this case as a class action at all" after 2018, "JPI's first opportunity to assert its rights to compel class members to arbitration occurred when Plaintiffs moved for class certification in January 2022 . . . ." *Id.* at 8. Defendant further claims that it previously asserted its right to compel class members to arbitration "without the benefit of a more fulsome record, which JPI has now gathered." *Id.* at 8. Specifically, Defendant was "at a disadvantage" in asserting its right to arbitration because "the [Franchise]

---

[4]    When citing to page numbers in documents filed electronically with the Court, Plaintiffs reference the page numbers generated by the court's ECF system.

[5]    Plaintiffs incorporate by reference their arguments to this effect in their prior briefing. *See* ECF No. 312 at 12; *see also infra* at 8 (addressing defendant's equitable estoppel arguments).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. CV 3:16-cv-05961-WHA

Agreements were never in JPI's possession" and it "never had copies" of the template Franchise Agreements contained in the Franchise Disclosure Documents the Master Franchisees filed annually with the state. *Id.* at 14. It states it has now "gathered sample copies . . . for purposes of this motion, and except where otherwise noted, they all contain arbitration clauses." *Id.*

To recap, Defendant is arguing that because it was not "clear" the named Plaintiffs would move to certify a class, it was unprepared—and thus disadvantaged—to move to compel arbitration when Plaintiffs filed a motion for class certification. This argument would be laughable if it were not also putting this trial date at risk. From the get-go, Plaintiffs left *no* doubt that they planned to pursue a class action, not only from the initial filing of this case in 2008, but also after the California claims were severed and transferred to this Court, including in a Joint Case Management Statement to the Court in early 2017, in which Jan-Pro itself stated that "class discovery" had taken place. Joint Case Management Statement at p. 9, ⁋ 8. For Defendant to claim otherwise is disingenuous. And for Defendant to try and use this to excuse its failure to gather *publicly available information* in support of its Motion to Compel Arbitration is dangerous.[6] Moreover, Defendant has known about the publicly available Franchise Agreements for nearly a year, and likely longer; Defendant submitted a stipulation to the court acknowledging they were publicly available documents that Plaintiffs would use to generate a class list.[7] Joint Stip. Regarding Class Notice at 2. Defendant could have, but did not, request these materials from

---

[6]     Crediting Defendant's argument here would create a perverse incentive for future defendants trying to enforce an arbitration agreement to (1) attempt to remain ignorant of what the arbitration agreements it *knows* exist say, so that it could (2) later pull a motion to compel arbitration out of its back pocket whenever it decides it wants to stay the case. This Court should not encourage defendants to engage in such ostrich-like behavior.

[7]     Plaintiffs also maintain these documents have *always* been in Jan-Pro's possession, as they had a "legal right to obtain" them from the Master Franchisees. *Romero v. City of Los Angeles*, 2022 WL 2167452, at *3 (C.D. Cal. Mar. 17, 2022) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995), cert. dismissed, 517 U.S. 1205 (1996)). Indeed, Defendant states that "upon further discovery *from regional master franchise owners* provided herewith," it has come to possess franchise agreements. Mot. to Compel Arbitration at 22 (emphasis added). This and the declarations Defendant submit from Master Franchisees (e.g., ECF Nos. 455-1, 455-8, etc.) confirm what Plaintiffs have argued all along: Jan-Pro has the legal right and ability to obtain documents it claimed it could not. **Defendant misled Plaintiffs and the Court by arguing it did not have access to this data, and this is also sanctionable conduct**. *See* Fed. R. Civ. Pro. 11(b). **Furthermore, Defendant <u>provided</u> a standard franchise agreement to master franchisees** (ECF No. 359-1 at 143; Kissane Dep. 56–59), and master franchisees had a common practice of using that agreement as a template for their agreements with unit franchisees (see ECF Nos. 292-11, 292-12, 292-13). **Accordingly, Defendant knew, at least approximately, what was in these documents, including the arbitration clause.**

Plaintiffs until August 16, 2023. Making matters worse, Defendant does not even attempt to explain why it then waited *ten* months after its Rule 23(f) petition was denied to "gather[] sample copies" of signed Arbitration Agreements from Master Franchisees. Mot. to Compel Arbitration at 14. Regardless, any "new" information Defendant might have decided to ask for in the past few weeks regarding the contents of the arbitration agreements (as it is facing a damages trial in two months) does *nothing* to alter this Court's previous analysis or the issues the Ninth Circuit considered in Defendant's Rule 23(f) petition, including the finding that Defendant already waived its right to arbitration through litigation conduct.[8]

Second, Defendant argues that it may move to compel arbitration under the doctrine of equitable estoppel. *Id.* at 15. Defendant already raised this issue, including in its Rule 23(f) Petition. *See* Def.'s Pet. for Permission to Appeal Under Rule 23(f) at 14. Plaintiffs also addressed this argument in opposition to Defendant's petition. Plaintiff-Respondents' Opp'n to Pet. to Appeal Pursuant to Rule 23(f) at 14 n. 5.[9]

---

[8] By making these arguments, Defendant only provides *additional* support for Plaintiffs' argument that Defendant has waived its right to arbitration, **even just through its active litigation and failure to raise arbitration in the 11 months since this Court granted class certification**. Courts have found waiver through litigation in much less time. *See, e.g.,Kelly v. Public Utility District No. 2 of Grant County*, 552 F. App'x 663 (9th Cir. 2014) (defendants waived their right to arbitrate where they waited 11 months to file a motion to compel arbitration and litigated case); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 838 F. Supp. 2d 967, 978 (C.D. Cal. 2012) (finding waiver through litigation where defendant filed motion to compel arbitration seven months after controlling case indicated it could do so); *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949 (1st Cir. 2004) (waiting eight months after having engaged in discovery and a conference with the magistrate judge and opposing party may establish waiver), *abrogated by Morgan*, 142 S. Ct. 1708; *Gray Holdco Inc. v. Cassady*, 654 F.3d 444, 455 (3d Cir. 2011) (providing no explanation for waiting ten months after filing suit before seeking enforcement of the arbitration provision constitutes waiver); *Messina v. N. Cent. Distrib. Inc.*, 832 F.3d 1047, 1050 (8th Cir. 2016) (finding waiver where the parties had substantially invoked the litigation machinery within eight months); *Carollo v. United Cap. Corp.*, 2022 WL 9987380, at *4 (N.D.N.Y. Oct. 17, 2022) (finding waiver through litigation where approximately eight months elapsed before defendants sought to arbitrate the absent class members' claims); *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (finding waiver partly because "approximately five months passed between the time defendants asserted arbitrable claims and [the plaintiff] filed its petition to compel"); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver partly because defendant allowed seven months to elapse before seeking to enforce arbitration clause).

[9] Specifically, Plaintiffs argued:

Jan-Pro asserts that although it is 'not a party to those agreements, it may assert its right to arbitrate Plaintiffs' claims on various grounds, including equitable estoppel.' Pet. at 8. But when 'grant[ing] motions to compel arbitration on behalf of non-signatory defendants' like Jan-Pro 'against signatory plaintiffs, [courts have found it] essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration.' *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). Here, Jan-Pro cannot show that Plaintiffs' claims are 'intimately founded in and intertwined with the underlying contract' containing the arbitration provision. *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020). 'If the

---

8

Accordingly, the Ninth Circuit has considered and rejected this argument, and even if this doctrine applied, it would not overcome the fact that Defendant has waived its right to arbitration through litigation conduct.

Third, Defendant argues that the Court should defer to an arbitrator on the issue of arbitrability. Mot. to Compel Arbitration at 15–17. However, this Court previously considered "whether a court or an arbitrator should decide" the issue of waiver through litigation conduct. Order Re Mot. for Class Cert. and Mots. For Summ. J. at 9 (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1122–23 (9th Cir. 2016)). This Court correctly rejected the argument that Defendant's incorporation of the American Arbitration Association's Rules "could constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," distinguishing these facts from the limited holding in *Brennan v. Opus Bank, Corp.*, 796 F.3d 1125 (9th Cir. 2015). *Id.* ("*Brennan* expressly limited its holding to commercial contracts between sophisticated parties."). Yet, seemingly oblivious to the Court's previous order (or simply ignoring it), Defendant again raises this argument and *again* cites *Brennan*. Mot. to Compel Arbitration at 16.[10]

Defendant's attempt to rely on *Dekker v. Vivint Solar, Inc.*, 611 F. Supp. 3d 898 (N.D. Cal. 2020), *vacated on other grounds*, 479 F. Supp. 3d 834 (N.D. Cal. 2020), is also unavailing. In *Dekker*, the plaintiff argued that an arbitration clause was invalid insofar as it purported to relinquish plaintiffs' rights to seek public injunctive relief. *Id.* at 903. The district court held that Defendant's arbitration agreements delegated questions of arbitrability, specifically "the interpretation, validity, or enforceability . . . including the determination of the scope or applicability" of the agreement, to the arbitrator. *Id.*

---

claims are fully viable without reference to the terms of the contract, equitable estoppel does not apply.' *Id*. Plaintiffs' central claim is that they are misclassified as independent contractors and are actually Jan-Pro's employees. The franchise agreements at issue state otherwise and classify Plaintiffs as contractors; thus, Plaintiffs are alleging they are Jan-Pro's employees notwithstanding the contrary declaration in their contracts. *See Narayan v. EGL*, Inc., 616 F.3d 895, 899 (9th Cir. 2010); *Rajagopalan*, 718 F.3d at 847; *Murphy v. DirecTV, Inc*., 724 F.3d 1218, 1230 (9th Cir. 2013).

*Id.*

[10]    Defendant's citations to *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002), *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986), and *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022), are also unpersuasive, as none of these cases involved the question of whether an arbitrator or a court should decided the issue of waiver through litigation conduct.

Defendant goes on to argue "certain delegation clauses [in the Franchise Agreements] stand on their own," since they provide that "Arbitrators will decide questions relating to the parties' agreement to arbitrate such as applicable law, subject matter, timeliness, scope, remedies and enforceability." Mot. to Compel Arbitration at 16. This argument falls flat for at least two reasons. First, *Dekker* did not involve a question of whether *waiver through litigation conduct* was properly before the court or arbitrator; it addressed whether the agreement itself was valid. Here, the question before this Court was whether it could decide the issue of *waiver*, and the Franchise Agreement Defendant cites does not expressly delegate the issue of waiver to an arbitrator. Second, *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016), expressly rejected arguments nearly identical to the one Defendant makes now. The Ninth Circuit found that even language stating "[a]ll determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court" (i.e., language much broader than that cited by Defendant) was "insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and to overcome the presumption to the contrary." *Id.* (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120–21 (9th Cir. 2008) (finding that language in arbitration agreement providing that "[a]ny controversy ... involving the construction or application of the terms, provisions, or conditions of this Agreement or otherwise arising out of or related to this Agreement shall likewise be settled by arbitration" was insufficient to show issue of waiver through litigation conduct was for arbitrator).

Fourth, Defendant argues "it did not waive its right to compel the class members to arbitrate because they were not previously before the court."[11] Mot. to Compel Arbitration at 17. As all of Section III.B.1 of Defendant's Motion to Compel Arbitration is copied, verbatim, from its Rule 23(f) Petition, there is no doubt that the Ninth Circuit has already considered and rejected these arguments.[12] Moreover, since Defendant submitted its Rule 23(f) Petition, **the Ninth Circuit has decided, conclusively, that**

---

[11]    Even assuming, arguendo, this is the case, Defendant has undoubtedly waived its right to arbitration even through its active litigation and failure to move to compel arbitration—or even mention arbitration—in the *eleven months* since this Court granted class certification. Myriad courts have found waiver through litigation conduct for much less litigation over the same or many fewer months. *See, e.g.,* cases cited *supra* at n. 8.

[12]    Likewise, Plaintiffs have already addressed them and point the Court to Plaintiff-Respondents' Opp'n to Pet. to Appeal Pursuant to Rule 23(f) at II.A.

**"waiver does not require a court to have jurisdiction over the beneficiaries of the waiver; it does not even require a lawsuit to have been filed,"** meaning a **Defendant's failure to raise the right to arbitrate** *prior to or during* **class certification may result in waiver**.  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 480 (9th Cir. 2023) (emphasis added).[13]  Nevertheless, Defendant attempts to distinguish the facts here from those in *Hill*, arguing it "did not act inconsistently such as to waive it's [sic] right to compel class members to arbitration" because it did not act in *exactly* the same way the defendant acted in *Hill*. Mot. to Compel Arbitration at 19–21. Defendant's argument strains credulity. Fortunately, Plaintiffs need not address each of those sub-arguments here because, as the Ninth Circuit reiterated in *Hill*: "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." *Id.* at 471.  This Court has already done just that, considered the totality of Defendant's actions, and the facts and record this Court considered have remained unchanged.  In short, *Hill* only *strengthens* Plaintiffs' waiver arguments and makes clear that Defendant has long since waived its right to compel class members to arbitrate.[14]

Fifth, Defendant argues that, in the alternative, "it did not waive its right to compel arbitration of the pre-2010 or the post-2010 class."  Mot. to Compel Arbitration at 21. This tortured argument is difficult to follow, in part because the only support it finds is in Defendant's revisionist history. Specifically, Defendant appears to be arguing that because it did not know the status of arbitration agreements before or after 2010, it did not waive its right to arbitration through litigation conduct,[15] but

---

[13]    This decision affirmed the district court case Plaintiffs cited in their opposition to Defendant's Rule 23(f) motion to counter and correct Defendant's assertion that "virtually every district court in this Circuit has held that a litigant cannot waive the right to compel arbitration against absent class members because such entities are not before the court prior to class certification." Plaintiff-Respondents' Opp'n to Pet. to Appeal Pursuant to Rule 23(f), at 17 n. 2.

[14]    The *only* support Defendant finds from *Hill* is in Judge VanDyke's *dissent*, which Defendant should realize will not do it much good. (Mot. to Compel Arb. at 7, 21) (quoting VanDyke's dissent).

[15]    Defendant concludes this section with this paragraph:
At the present time, upon further discovery from regional master franchise owners provided herewith, it is now confirmed that all post-2010 class members have express class action waivers in their franchise agreements. Given that RFD's never provided JPI with copies of these agreements along the way each year (*see* RFD Declarations herewith), JPI properly makes this motion armed with this knowledge at this time.
Mot. to Compel at 22.

11

(and as outlined *supra* at pp. 6–8) Defendants have *always* had access to information about arbitration clauses in the Franchise Agreements. And as noted above, *supra* at n. 7, Defendant itself *provided* standard franchise agreements to master franchisees, and the master franchisees had a common practice of using that agreement as a template for their agreements with unit. **Accordingly, Defendant knew, at least approximately, what was in these documents, including the arbitration clause.** Jan-Pro also knew that this was a class action case from its initial filing 15 years ago in 2008, and that this information was ostensibly relevant to the litigation. Yet, Jan-Pro chose to ignore this information. The notion that Jan-Pro somehow remained ignorant of the contents of these franchise agreements strains credulity, but even if that were the case, its gross incompetence cannot excuse its failure to move to compel arbitration before the very eve of the post-class certification, post-summary judgment damages trial. Alternatively, Defendant appears to be arguing that earlier case law made it questionable whether Defendant could move to compel arbitration, citing *AT&T Mobility v. Concepcion*, 563 U.S. 333, 348 (2011) and *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), and so it could not waive its right through litigation conduct. For one, the Ninth Circuit rejected a similar futility argument in *Hill*, 59 F.4th 457 at 480.  Moreover, this argument is also unavailing because the hotly-contested issue of class action waivers in arbitration agreements should not have prevented Defendant even referencing this defense—including invoking it as to named Plaintiffs[16]—and preserving it long before Plaintiffs filed their motion to certify the class.  *See also McGinnis v. Ingram Equip. Co., Inc.*, 918 F.2d 1491, 1495–97 (11th Cir. 1990) (rejecting argument that party did not waive argument because it could not have predicted Supreme Court's conclusions); *see also Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012). Instead, and as this Court properly concluded, Defendant always sought to resolve this issue on a class-wide basis through its conduct taking advantage of litigation.

Finally, Plaintiffs note that while the Ninth Circuit has not considered Defendant's Motion to Compel Arbitration via interlocutory appeal following an order denying a motion to compel arbitration, it expressly considered and rejected the arguments Defendant raises in its new motion filed last week when

---

[16] To reiterate, Defendant *concedes* it waived its right to compel arbitration as to named Plaintiffs through litigation conduct.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. CV 3:16-cv-05961-WHA

it denied Defendant's Rule 23(f) petition.  Indeed, "Rule 23(f) permits the court of appeals to accelerate appellate review; but to ensure that there is only one window of potential disruption, and to permit the parties to proceed in confidence about the scope and stakes of the case thereafter, the window of review is deliberately small." *Gary v. Sheahan*, 188 F.3d 891, 893 (7th Cir. 1999) (cited approvingly in *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1179 (9th Cir. 2017), *rev'd and remanded on other grounds,* 139 S. Ct. 710, 203 L. Ed. 2d 43 (2019)). The Ninth Circuit's Order denying Defendant's Rule 23(f) petition made it abundantly clear that the "scope and stakes" of this litigation did not involve the possibility of future motions to compel arbitration. Jan-Pro cannot manufacture a second bite at the apple through this frivolous and entirely duplicative (and previously unsuccessful) motion to compel arbitration.

### c.    No Exceptions to the Law-of-the-Case Doctrine Apply

There are just three exceptions to the law-of-the-case doctrine: (a) the earlier ruling was a clearly erroneous and its "enforcement would work manifest injustice"; (b) different evidence was adduced at a subsequent trial; and (c) an intervening controlling change in the law indicates that it is appropriate for the court to reexamine the prior ruling. *Alaimalo*, 645 F.3d at 1049. None of these exceptions apply here.  The Court's order granting plaintiffs' Motion for Class Certification and the Ninth Circuit's Rule 23(f) Petition were not clearly erroneous rulings that would result in an injustice.  Likewise, there has been no trial at which substantially different evidence was adduced.  Finally, the *only* intervening controlling change in the law, *Hill*, has provided further *support for* Plaintiffs' argument regarding waiver through litigation conduct.[17] As such, the law of the case remains that Jan-Pro has waived its right to compel class members to arbitrate through litigation conduct.

### B.    The Proceedings Should *Not* Be Stayed as *Coinbase* Does Not Apply to Frivolous Motions to Compel Arbitration

---

[17]    Arguably, *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023), is also an intervening controlling change in law, though that case also just strengthened Plaintiffs' argument that Defendant waived arbitration through litigation conduct. Specifically, *Armstrong* confirmed the Supreme Court's 2022 decision in *Morgan v. Sundance, Inc*. 142 S.Ct. 1708 (2022)

, which reduced the burden on the party asserting waiver, finding it is no longer "heavy".

The Supreme Court recently held that a district court must stay its proceedings while an interlocutory appeal on the issue of arbitrability is ongoing. *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023). However, the Court expressly made an exception for frivolous arguments.

In *Coinbase*, the defendant appealed from the denial of its motion to compel arbitration and argued its case in the district court should be stayed on appeal. This Court and the Ninth Circuit denied the defendant's request for a stay pending appeal. The Supreme Court reversed, finding that "the *Griggs* rule requires that a district court stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing." *Id.* at 1922.[18] The majority further concluded that the plaintiff could not overcome the *Griggs* principle because he had not established that "frivolous" appeals "frequently occur," nor did he argue that defendant's appeal in *Coinbase* was frivolous.

Thus, the Supreme Court recognized an exception for frivolous motions to compel arbitration. This case is easily distinguished from *Coinbase*, and here, proceedings in the district court should continue apace. First, the Ninth Circuit has *already ruled* on the issue raised by Defendant's motion in denying Jan-Pro's Rule 23(f) petition (and in its decision in *Hill*), and it is the law of the case that Defendant waived arbitration here. The *Griggs* principle does not stay cases in district court while an appellate court considers an issue it has *already decided*. Indeed, to find the *Griggs* principle applicable to these facts would undermine its viability and encourage frivolous, redundant appeals at every turn. Likewise, Plaintiffs here have established and argued that Defendant's Motion to Compel Arbitration is frivolous as Defendant seeks to re-litigate issues that have already been correctly decided against it. Finally, the Supreme Court observed that the "sole issue" in *Coinbase* was "whether the district court's authority to consider a case is 'involved in the appeal' when an appellate court considers *the threshold question* of arbitrability." *Coinbase, Inc.*, 143 S. Ct. at 1923 (emphasis added). The Supreme Court did not contemplate two or more attempts to compel arbitration; it considered the facts of a case involving one, singular appeal involving the (singular) threshold question of arbitration.

For all of these reasons, this Court should deny Defendant's Alternative Request to Stay.

---

[18]    The *Griggs* principle provides that an appeal, including an interlocutory appeal, "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 74 L.Ed.2d 225 (1982).

**C.      Staying the District Court Proceedings While Jan-Pro Appeals an Order Denying a Motion to Compel Arbitration Would Encourage Arbitration Gamesmanship**

Staying this case while it is on appeal would allow defendants like Jan-Pro to raise arbitration in opposition to class certification motions, litigate the case (assuming the class was certified), and *then* move to compel arbitration at any time—even on the *day before* trial—with the express goal of staying the case and delaying proceedings. The Supreme Court's reasoning in *Coinbase, Inc.* makes it clear that motions to compel arbitration cannot be used frivolously to throw wrenches in the gears of litigation. Accordingly, it would certainly disapprove of Jan-Pro's Motion to Compel Arbitration on the eve of trial in a case that has been litigated for 15 years, and it would approve of this Court's denial of a stay.

**D.      If Defendant Appeals the Court's Order Denying the Motion to Compel Arbitration, the District Court Should Certify that an Interlocutory Appeal is Frivolous**

In *Coinbase*, the Supreme Court noted that: "the courts of appeals possess robust tools to prevent unwarranted delay and deter frivolous interlocutory appeals." *Id.* at 1922. It continued: "For example, a party can ask the court of appeals to summarily affirm, to expedite an interlocutory appeal, or to dismiss the interlocutory appeal as frivolous. In addition, nearly every circuit has developed a process by which a district court itself may certify that an interlocutory appeal is frivolous." *Id.* If Defendant appeals this Court's order denying Defendant's Motion to Compel Arbitration, Plaintiffs request the Court certify that the interlocutory appeal is frivolous, which would also prevent a stay of the case. *See* Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3901 (2d ed.) ("trial-court proceedings are not stayed if the trial judge certifies that the appeal is frivolous").

**E.      Defendant's Attempt to Compel Arbitration on the Eve of Trial is a Sanctionable Stall Tactic**

Rule 11(c) allows sanctions if a filing is submitted to "cause unnecessary delay," Fed.R.Civ.P. 11(b) (1), if it is "legally frivolous," or if it is "factually misleading," among other reasons. *Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002). In *Coinbase, Inc.*, the Supreme Court expressly approved the use of "sanctions where appropriate" to "help[] deter frivolous appeals" from denials of motions to compel arbitration. *Id.* at 1922.

For all the reasons discussed above, there is no question that Defendant's eleventh-hour Motion to Compel Arbitration is: (1) a desperate attempt to avoid a trial fifteen years in the making; (2) legally frivolous; and (3) factually misleading. Should Defendant not withdraw this motion to compel arbitration promptly, Plaintiffs will move the Court to sanction Defendant for its filing, pursuant to its authority under Rule 11(c)(3), and per the Supreme Court's guidance in *Coinbase, Inc.*[19]

## IV.    CONCLUSION

For all the reasons set forth herein, Plaintiffs respectfully and urgently request the Court: (1) deny Defendant's Motion to Compel Arbitration immediately and without a hearing, or grant Plaintiffs' accompanying motion for an emergency hearing and rule on the motion post-haste; and (2) deny Defendant's Request to Stay the case pending any appeal, so that the parties can continue to prepare for trial in October. The Court should not permit further delay or prejudice to the certified class in this case and should summarily dispose of Defendant's motion, which is plainly intended as a tactic to further delay this case.

Date: August 18, 2023

                                        Respectfully submitted,

                                        GLORIA ROMAN, GERARDO VAZQUEZ, JUAN
                                        AGUILAR, and all others similarly situated,

                                        By their attorneys,

                                        /s/ Shannon Liss-Riordan
                                        Shannon Liss-Riordan (SBN 310719)
                                        (sliss@llrlaw.com)
                                        Adelaide H. Pagano, *pro hac vice*
                                        (apagano@llrlaw.com)
                                        Jane Farrell (SBN 333779)
                                        (jfarrell@llrlaw.com)
                                        LICHTEN & LISS-RIORDAN, P.C.
                                        729 Boylston Street, Suite 2000
                                        Boston, MA 02116
                                        (617) 994-5800

---

[19]    Pursuant to Rule 11, Plaintiffs intend to file a Motion for Sanctions if Defendant does not withdraw this Motion to Compel Arbitration by Monday, August 21, 2023.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on August 18, 2023 on all counsel of record.

_/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan Esq.

17
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. CV 3:16-cv-05961-WHA