Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
Adelaide H. Pagano, *pro hac vice*
(apagano@llrlaw.com)
Jane Farrell (SBN 333779)
(jfarrell@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Attorneys for Plaintiffs and the Certified Class

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA ROMAN, GERARDO VAZQUEZ, JUAN AGUILAR, and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.<br><br>                Defendant. | Case No.:   3:16-cv-05961-WHA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:          November 30, 2023<br>Time:          10:00 am<br>Courtroom:  12, 19th Floor<br><br>Hon. William Alsup |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 30, 2023, at 10:00 a.m., in Courtroom 12 of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Gerardo Vazquez, Gloria Roman, and Juan Aguilar, individually and on behalf of all others similarly situated, will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for an order:

(1) Preliminarily approving the Settlement Agreement between Defendant Jan-Pro Franchising International Inc. and Plaintiffs (attached as Exhibit 1 to the Declaration of Shannon Liss-Riordan, filed concurrently herewith), on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the settlement class;

(2) Certifying the proposed settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

(3) Approving the form and content of the proposed class notice and notice plan;

(4) Appointing Lichten & Liss-Riordan, P.C. to represent the settlement class as class counsel;

(5) Appointing Simpluris as Settlement Administrator;

(6) Scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and enhancement payments to the Named Plaintiffs; and

(7) Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Shannon Liss-Riordan filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at or prior to the hearing in this matter.

Date: November 1, 2023

Respectfully submitted,

*/s/ Shannon Liss-Riordan*

Shannon Liss-Riordan

Attorney for Plaintiffs

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................1

II.    BACKGROUND .................................................................................1

       A.     LITIGATION HISTORY .......................................................1

       B.     THE PROPOSED SETTLEMENT ......................................6

              1.     Class Definition ...............................................6

              2.     Gross Settlement Fund ....................................7

              3.     Non-Monetary Settlement Terms ...................8

              4.     Settlement Administration and Dissemination of Notice to the Class.........9

              5.     Released Claims................................................11

III.   THE LEGAL STANDARD..................................................................11

IV.    DISCUSSION .....................................................................................12

       A.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE..........12

              1.     Requirements of Fed. R. Civ. P. 23(a)....................13

                     a)     Numerosity.................................................14

                     b)     Commonality..............................................14

                     c)     Typicality...................................................14

                     d)     Adequacy....................................................15

              2.     Requirements of Fed. R. Civ. P. 23(b)....................15

       B.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .16

              1.     The Settlement is the Product of Informed, Non-Collusive Negotiation...17

              2.     The Relief Provided for the Settlement Class Is Fair and Adequate .........18

                     a)     Risks of Further Litigation.........................19

                     b)     Benefit to Class Members...........................20

              3.     The Settlement Has No Obvious Deficiencies..........................20

              4.     The Settlement Does Not Unfairly Grant Preferential Treatment to
                     Any Settlement Class Members..............................23

V.     CONCLUSION....................................................................................25

1

2

## TABLE OF AUTHORITIES

**Cases**

Acosta v. Trans Union, LLC
    243 F.R.D. 377 (C.D. Cal. 2007)..................................................................................17

Adderley v. Nat'l Football League Players Ass'n,
    2009 WL 4250792 (N.D. Cal. Nov. 23, 2009) ..........................................................24

Alberto v. GMRI, Inc.
    252 F.R.D. 652 (E.D. Cal. 2008) ..........................................................................13, 15

Barbosa v. Cargill Meat Sols. Corp.
    297 F.R.D. 431 (E.D. Cal. 2013)...........................................................................14, 22

Barnes v. The Equinox Grp., Inc.
    2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ............................................................22

Bellinghausen v. Tractor Supply Co.
    306 F.R.D. 245 (N.D. Cal. 2015)...............................................................................24

Benitez v. W. Milling, LLC
    2020 WL 3412725  (E.D. Cal. June 22, 2020) ..........................................................22

Bowerman v. Field Asset Servs., Inc.,
    60 F.4th 459 (9th Cir. 2023) ......................................................................................19

Briggs v. United States
    2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) ..........................................................24

Brooks v. Lines,
    No. C 10-01404 WHA (N.D. Cal.) ...........................................................................24

Chavez v. Jani-King of California, Inc., et al.
    Civ. A. No. RG19043517 (Alameda Sup. Ct. July 7, 2022).....................................21

Class Plaintiffs v. City of Seattle
    955 F.2d 1268 (9th Cir. 1992) ...................................................................................12

Cotter v. Lyft
    3:13-cv-04065-VC (N.D. Cal.) ..................................................................................10

Dalton v. Lee Publications, Inc.
    270 F.R.D. 555 (S.D. Cal. 2010) ...............................................................................14

De Giovanni v. Jani- King Inc., et al.
    Civ. A. No. 07-10066 (D. Mass.)...............................................................................21

ii

Deaver v. Compass Bank
2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ......................................................12, 16, 17, 19

Depianti v. Jan-Pro Franchising Int'l, Inc.
39 F. Supp. 3d 112 (D. Mass. 2014), aff'd, 873 F.3d 21 (1st Cir. 2017) ..............................2, 22

Depianti v. Jan-Pro Franchising Int'l, Inc.
873 F.3d 21 (1st Cir. 2017)..............................................................................................22

Dynamex Operations W. v. Superior Court
4 Cal. 5th 903, 416 P.3d 1 (2018) ....................................................................................2

Estrella v. Freedom Fin'l Network
2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ..................................................................14

Fuller v. Jani-King Inc., et al.
Civ. A. No. 15-00438 (D. R.I.) ..........................................................................................21

Groves v. Maplebear Inc. dba Instacart
BC695401 (L.A. Sup. Ct.) ................................................................................................10

Hale v. Manna Pro Prod., LLC
No. 2:18-CV-00209-KJM-DB, 2020 WL 3642490 (E.D. Cal. July 6, 2020)...........................18

Hanlon v. Chrysler Corp.
150 F.3d 1011 (9th Cir.1998) ..............................................................................12, 14, 15

Harris v. Vector Marketing Corp.
2011 WL 1627973 (N.D. Cal. April 29, 2011) ....................................................................12

Hefler v. Wells Fargo & Co.
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)..........................................................16, 17, 18, 23

Hendricks v. StarKist Co.
2015 WL 4498083 (N.D. Cal. July 23, 2015)......................................................................23

Hernandez v. Dutton Ranch Corp.
2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ...................................................................22

Hofstetter v. Chase Home Fin., LLC
2011 WL 5545912 (N.D. Cal. Nov. 14, 2011) ....................................................................24

In re Activision Sec. Litig.
723 F. Supp. 1373 (N.D. Cal.1989) ..................................................................................22

In re Heritage Bond Litig.
2005 WL 1594403  (C.D. Cal. June 10, 2005) ...................................................................12

In re LDK Solar Sec. Litig.

iii

2010 WL 3001384 (N.D. Cal. July 29, 2010)..........................................24

In re Tableware Antitrust Litig.
    484 F.Supp.2d 1078 (N.D. Cal. 2007) ...........................................12, 23

Lusby v. GameStop Inc.
    2015 WL 1501095 (N.D. Cal. Mar. 31, 2015)..................................22

Marciano v. DoorDash
    Case No. CGC-15-548101 (Cal. Sup. Ct. July 12, 2018)........................10

Martinez v. Combs
    49 Cal. 4th 35, 231 P.3d 259 (2010) ..............................................2

McLaughlin v. Wells Fargo Bank, N.A.
    2017 WL 994969 (N.D. Cal. Mar. 15, 2017)..................................24

Myers v. Jani-King
    Civ A. No. 2:09-cv-01738-RBS (E.D. Pa.) ..................................10, 21

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.
    221 F.R.D. 523 (C.D. Cal. 2004)..................................................11

Oppenlander v. Standard Oil Co. (Ind.),
    64 F.R.D. 597 (D.Colo.1974) ......................................................19

Richardson v. Interstate Hotels & Resorts, Inc.
    2019 WL 803746 (N.D. Cal. Feb. 21, 2019) ..................................24

Roe v. SFBSC Mgmt., LLC
    No. 14-CV-03616-LB, 2022 WL 17330847 (N.D. Cal. Nov. 29, 2022)...................24

Roman v. Jan-Pro Franchising Int'l, Inc.
    342 F.R.D. 274 (N.D. Cal. 2022)..............................................13, 14, 15, 16

Satchell v. Fed. Express Corp.
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................17, 18

Singer v. Postmates
    4:15-cv-01284-JSW (N.D. Cal.) ..................................................10

Smith v. Cardinal Logistics Mgmt. Corp.
    2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ..................................14

Spann v. J.C. Penney Corp.
    2016 WL 297399  (C.D. Cal. Jan. 25, 2016) ..................................15

Staton v. Boeing Co.
    327 F.3d 938 (9th Cir. 2003) ....................................................25

iv

Vasquez v. Coast Valley Roofing, Inc.
  266 F.R.D. 482 (E.D. Cal. 2010) ..............................................................15, 17, 19, 22

Vazquez v. Jan-Pro Franchising Int'l, Inc.
  923 F.3d 575 (9th Cir. 2019) .........................................................................................3, 4

Villalpando v. Exel Direct, Inc.
  303 F.R.D. 588 (N.D. Ca. 2014).........................................................................................14

Villegas v. J.P. Morgan Chase & Co.
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ..........................................................17

Vinh Nguyen v. Radient Pharm. Corp.
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ..............................................................23

**Statutes**
29 U.S.C. § 216...................................................................................................................2

**Rules**
Fed. R. Civ. P. 23 ....................................................................................... passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Pursuant to Federal Rule of Procedure Rule 23, Plaintiffs Gerardo Vazquez, Gloria Roman, and Juan Aguilar ("Plaintiffs") move this Court for an order preliminarily approving a proposed class action settlement agreement entered into by Plaintiffs and Defendant Jan-Pro Franchising International, Inc. ("Defendant" or "Jan-Pro"). The Settlement follows nearly *fifteen years* of extremely active and highly contested litigation and was achieved with the assistance of Magistrate Judge Cisneros, who oversaw a mediation session and facilitated continued ongoing discussions after the court-ordered mediation session.  The Settlement Agreement is attached as Exhibit 1 to the Declaration of Shannon Liss-Riordan (filed herewith) ("Liss-Riordan Decl.").

As set forth further below, under the terms of the proposed settlement, Jan-Pro has committed to pay $30 million (which is non-reversionary) to benefit a class of approximately 2,650 Jan-Pro unit franchisees in California and has likewise agreed to some forward-looking changes to Jan-Pro's business practices that will benefit California franchisees. The proposed settlement satisfies all the criteria for class certification and for settlement approval under Fed. R. Civ. P. 23(e). Accordingly, Plaintiffs request that the Court preliminarily approve the settlement and order distribution of the Class Notice to ensure prompt payments to class members.

## II.    BACKGROUND

### A.    Litigation History

Plaintiffs are three cleaning unit franchisees in the Jan-Pro system, who alleged they were employees of Jan-Pro, which has developed and promotes a commercial cleaning franchise brand. Jan-Pro claims it does not hire employees to provide cleaning services and instead sells cleaning franchises to regional master franchisees, who in turn sell unit franchises to individuals and entities responsible for performing the cleaning work on Jan-Pro cleaning accounts. Plaintiffs first filed this lawsuit in the District of Massachusetts in 2008 as a putative class action covering franchisees in a number of states who alleged that they were misclassified as independent contractor "franchisees" when in fact they were

1    Jan-Pro's employees under state law.

2            After taking some discovery, including discovery into the three California named plaintiffs,

3    Gloria Roman, Gerardo Vazquez, and Juan Aguilar, the Massachusetts Court informed the parties it

4    would take up the claims of the Massachusetts plaintiff, Giovanni Depianti, first. That process took

5    several years, but in August 2014, the District Court ultimately ruled for Jan-Pro and found that Depianti

6    was not an employee of Jan-Pro. Depianti v. Jan-Pro Franchising Int'l, Inc., 39 F. Supp. 3d 112 (D.

7    Mass. 2014), aff'd, 873 F.3d 21 (1st Cir. 2017).

8            Thereafter, the three California plaintiffs moved to sever and transfer their claims to the Northern

9    District of California, which motion was granted on September 13, 2016.  See Dkt. No. 210. Following

10   the transfer, the case was assigned to this Court.  A new complaint was filed, see Dkt. No. 244 (Second

11   Amended Cmplt), and shortly thereafter, Defendant Jan-Pro filed a Motion for Summary Judgment,

12   arguing that the Plaintiffs were properly classified as contractors under California law. Following

13   briefing and a hearing, the Court granted Defendant's Motion.

14           This Court initially applied the California Supreme Court's test for employee-status articulated in

15   Martinez v. Combs, 49 Cal. 4th 35, 64, 231 P.3d 259, 278 (2010), as modified (June 9, 2010), but "with

16   the gloss of Patterson when considering the common-law definition of employment." Plaintiffs believed

17   that the District Court erred in relying on Patterson v. Domino's Pizza, LLC, 60 Cal. 4th 474 (2014),

18   which was a case arising in the context of a franchisor's vicarious liability for torts committed by an

19   employee of the franchisee, and Plaintiffs filed an appeal to the Ninth Circuit.

20           While the appeal was pending, the California Supreme Court issued its landmark decision in

21   Dynamex Operations W. v. Superior Court, 4 Cal. 5th 903, 416 P.3d 1 (2018), reh'g denied (June 20,

22   2018), which expounded on the "suffer or permit" prong of the Martinez test for employee-status and

23   adopted a so-called "ABC" test. In response to this extremely important decision, the Ninth Circuit

24   ordered supplemental briefing regarding the impact of Dynamex on this case.  In that briefing, Plaintiffs

25   explained that Dynamex had adopted an "ABC" test identical to the test used in Massachusetts where

26   numerous courts have consistently found cleaning franchisors just like Jan-Pro liable for

27   misclassification. This strict, three-part test places the burden on the employer to prove all three prongs

28

1  of the test. If it cannot do so, the worker is an employee. Plaintiffs argued that <u>Dynamex</u> applied

2  retroactively and that it applied in the franchise context and to the claims Plaintiffs were bringing in this

3  litigation. By contrast, Jan-Pro argued, among other things, that because the <u>Dynamex</u> test was the same

4  test at issue in <u>Depianti</u>, the court should simply follow the reasoning of the Massachusetts federal court

5  that found Giovanni Depianti was not an employee and affirm summary judgment for Jan-Pro on that

6  basis.

7        The Ninth Circuit panel agreed with Plaintiffs, issuing a powerfully-worded decision that held

8  that <u>Dynamex</u> applied retroactively to Plaintiffs' claims and that the decision applied equally in the

9  franchise context as to any other employer. <u>See</u> <u>Vazquez v. Jan-Pro Franchising Int'l, Inc.</u>, 923 F.3d 575

10  (9th Cir. 2019). The panel rejected any notion that this case is dictated by the outcome in <u>Depianti</u> under

11  the law of the case doctrine or res judicata. <u>Id.</u> at 584-86. The Court considered the retroactivity of

12  <u>Dynamex</u> and noted that by denying a petition to have the case apply prospectively only -- "even

13  without comment" -- "the court strongly suggested that the usual retroactive application, rather than the

14  exception, should apply to its newly announced rule." <u>Id.</u> at 587.

15        The panel then moved on to consider "the merits" of the appeal. The court noted that "the

16  franchise agreements between Jan-Pro and the regional master franchisees give Jan-Pro authority to

17  enforce any agreement between the regional master franchisee and its respective unit franchisees",

18  undercutting Jan-Pro's argument that it does not have any right to control the plaintiffs and is removed

19  from their operations due to its three-tiered system.  <u>Id.</u> at 590; <u>see also</u> <u>id.</u> at 595-96 (noting that other

20  courts have considered three-tiered cleaning franchisors and found them liable for misclassification

21  under an "ABC" test). The Ninth Circuit panel rejected the District Court's decision to apply "the gloss

22  of <u>Patterson</u>", finding instead that "there is no <u>Patterson</u> gloss to the ABC test" because "<u>Patterson</u>,

23  unlike <u>Dynamex</u>, was not a wage and hour case; therefore, it has no application to the ABC test

24  applicable to wage and hour cases." <u>Id.</u> at 594. Thus, the "ABC" test should apply to Jan-Pro just as it

25  would to any other employer.  The Court went on to walk through the Prong B factor under the "ABC"

26  test and explore how it has been applied by other courts. <u>Id.</u> at 596-99.  The Ninth Circuit's analysis

27  strongly suggested that Plaintiffs should be considered Jan-Pro's employees under the "ABC" test.

28

1    Jan-Pro filed a Petition for Re-hearing En Banc. In response to Jan-Pro's Petition, the panel

2    subsequently withdrew its opinion, opting to certify the question of <u>Dynamex's</u> retroactivity to the

3    California Supreme Court and to reserve the other issues presented by the appeal until after it received

4    the California Supreme Court's ruling. <u>See Vazquez v. Jan-Pro Franchising Int'l, Inc.</u>, No. 17-16096,

5    2019 WL 3271969 (9th Cir. July 22, 2019). After receiving the California Supreme Court's answer that

6    <u>Dynamex</u> was indeed retroactive, <u>see</u> <u>Vazquez v. Jan-Pro Franchising Int'l, Inc.</u>, 10 Cal. 5th 944, 478

7    P.3d 1207 (2021), the panel vacated the District Court's granting of summary judgment for Jan-Pro,

8    rejecting Jan-Pro's argument that <u>Dynamex</u> should not apply retroactively. <u>Vazquez v. Jan-Pro</u>

9    <u>Franchising Int'l, Inc.</u>, 986 F.3d 1106 (9th Cir. 2021). The Court reinstated its earlier analysis of the

10   ABC test and "remanded to the district court for further proceedings consistent with this opinion." <u>Id.</u> at

11   1128.

12    In early 2022, Plaintiffs moved to certify the class and for summary judgment. <u>See</u> Dkt. Nos. 290

13   and 291 (<u>see also</u> Dkt. 298). Defendant also cross-moved for summary judgment in March of 2022. Dkt.

14   No. 328.  In Opposition to Plaintiffs' Motion for Class Certification, Defendant argued at length that the

15   class members were all bound by arbitration agreements. Dkt. No. 300 at 19–23. Plaintiffs addressed all

16   of Defendant's arguments regarding arbitration, arguing that Defendant had waived its right to arbitrate

17   with absent class members through its litigation conduct. Dkt. Nos. 312 and 325. The Court issued a

18   tentative ruling, <u>see</u> Dkt. No. 338, and the parties submitted additional rounds of supplemental briefing.

19   Dkt. No. 345, 346.  Following oral argument in July 2022, the parties submitted additional post-

20   argument briefing as well. <u>See</u> Dkt. No. 356, 357.

21    Finally, in early August 2022, the Court granted Plaintiffs' Motion for Class Certification and

22   Motion for Summary Judgment as to (1) failure to pay minimum wage for mandatory training, (2)

23   failure to reimburse for expenses incurred for (a) required uniforms and (b) necessary cleaning supplies

24   and equipment, and (3) unlawful deductions of (a) management fees and (b) sales and marketing fees for

25   the following group: all unit franchisees who signed a franchise agreement with a master franchisee in

26   the state of California and who performed cleaning services for defendant from December 12, 2004, to

27   the latest date on which a named plaintiff terminated employment, January 2017. <u>See</u> Dkt. No. 369. The

28

1    Court declined to certify claims for minimum wage for travel time between accounts and time spent

2    cleaning or for overtime, recognizing that some class members would not have such claims and that

3    issues of proof precluded certification. Id. at 21-25. However, in a separate order, the Court granted

4    summary judgment in favor of the three named plaintiffs on their claims for minimum wage for travel

5    time between accounts, as well as in favor of Plaintiffs Roman and Vazquez on their claims for

6    minimum wage for time spent cleaning. See Dkt. No. 370 at 2. The Court ordered that, immediately

7    following the class-wide damages trial, the named plaintiffs could present evidence to support their

8    damages on these minimum wage claims and could also present evidence as to overtime, as to which

9    factual disputes precluded summary judgment. Id. at 2, 12.

10       Jan-Pro filed a Motion for Leave to File a Motion for Reconsideration from the Court's rulings

11   on summary judgment and class certification, see Dkt. No. 371, which the Court denied, see Dkt. No.

12   376.  Among the arguments Jan-Pro advanced was that the Court was incorrect that Jan-Pro had waived

13   the right to compel arbitration as to the class. Jan-Pro then filed an appeal pursuant to Rule 23(f), which

14   raised all of its previous arguments regarding arbitration, including that it had not waived its right to

15   arbitrate with class members. The Ninth Circuit denied Jan-Pro's Rule 23(f) petition in November 2022.

16   See Ninth Cir. Appeal No. 22-80081.

17       In December 2022, Plaintiffs compiled a class list and sent class notice to the certified class,

18   including publication notice in the Spanish-language newspaper, La Opinion. See Dkt. No. 382, 384.

19   Thereafter, the Parties engaged in extensive additional damages discovery. This discovery included

20   subpoenas issued to Defendant's master franchisees as well as new damages discovery requests served

21   on Defendant. The Parties litigated their disputes about the scope of damages discovery, and the Court

22   ultimately ordered the master franchisees and Defendant to respond. Dkt. No. 395, 424. Thousands of

23   pages were produced by third-party master franchisees alongside comprehensive Business Analysis

24   Reports (BAR) reports produced by Defendant for the entire class period. Dkt. Nos. 385, 399, 410.

25   Defendant also subsequently produced Royalty Reports for the period 2009 through 2017. Dkt. Nos.

26   423, 440. Defendant was permitted to re-depose named plaintiff Gloria Roman, and Plaintiffs reopened

27   the Rule 30(b)(6) deposition of Defendant. Dkt. Nos. 398, 428. Plaintiffs also produced a report on

28

damages, and Defendant's expert responded to that report. Dkt. Nos. 485, 486.

The court set a jury trial on the class damages, which was due to begin on October 16, 2023. Against the backdrop of trial preparation, the parties returned to mediation. Dkt. No. 395 at 4. The parties engaged in private mediation on May 25, 2023, with professional mediator Arthur Pressman. When that mediation proved unsuccessful, the Court ordered the parties to participate in mediation with Magistrate Judge Cisneros, which they did on August 21, 2023. See Dkt. No. 432, Dkt. No. 468.

Meanwhile, Defendant filed additional motions.  Defendant filed a Motion to Compel arbitration on August 10, 2023, see Dkt. No. 454, which the Court denied. Dkt. No. 464. Jan-Pro appealed, and this Court certified the appeal as frivolous. Dkt. No. 477. However, the Court stayed the upcoming damages trial as to the 125 class members for whom Jan-Pro had provided arbitration agreements in support of its Motion to Compel while the appeal was pending. Id.; Dkt. No. 478. That appeal was scheduled to be heard on an emergency basis. Likewise, Jan-Pro filed a Motion to Decertify the class and for summary judgment as to certain of named plaintiff Gloria Roman's individual claims, which Plaintiffs opposed. See Dkt. No. 480, 489.

Thus, were the case to go to trial on damages, there remains uncertainty regarding the scope of the trial and the outcome of Jan-Pro's pending appeal and pending Motion to Decertify. Likewise, it is all but certain that there would have been post-judgment appeals filed by Jan-Pro from any favorable verdict that Plaintiffs might have won at trial. Thus, against this backdrop of uncertainty and likely delay, the parties finally reached a proposed settlement of this action that would ensure robust payments to settlement class members within the next few months.

### B.     The Proposed Settlement

#### 1.     Class Definition

The Settlement Class is defined as all unit franchisees who are members of the Class Action certified by the Court on August 2, 2022, and all other unit franchisees who have signed franchise agreements with master franchises in the State of California and performed cleaning services as a Jan-Pro unit franchisee since December 12, 2004, to the time of Preliminary Approval of the Settlement. See Liss-Riordan Decl., Ex. 1, (Class Action Settlement Agreement), § 1.5. Thus, the settlement class

---

expands the class previously certified by this Court.  The class period previously ended on January 31, 2017, when named plaintiff Gloria Roman stopped operating her unit franchise and, under the allegations in this case, stopped working for Jan-Pro. The settlement extends the class period through the date of the Preliminary Approval Order, thereby adding 348 additional class members who are identically situated to the named plaintiffs and the rest of the settlement class in all material respects. See Liss-Riordan Decl. at ¶ 5. In particular, Jan-Pro's practices that form the basis of the certified claims in this case have not changed; franchisees have continued to pay for their own cleaning supplies and uniforms, have deductions for management fees and sales & marketing fees taken from their pay, and have continued to undergo unpaid training for the entire period since 2017. Id. Thus, all 348 members of the expanded settlement class have the ***same claims*** that the Court previously certified in this case, and expanding the settlement class to include these individuals does not pose any concerns regarding fairness or require discounting of their settlement shares. Id. The Class excludes all persons who timely opt out of the Class under the terms of the Preliminary Approval Order as well as any class member who does not successfully receive the mailed notice, despite diligent attempts by the Settlement Administrator. Id.  The Class currently includes approximately 2,650 members.[1]

### 2.  Gross Settlement Fund

The Settlement provides for a non-reversionary Settlement Fund in the amount of $30 million. See Ex. 1 (Settlement Agreement) § 1.39. This Settlement Fund, less costs of claims administration (currently estimated at $43,000), requested attorneys' fees and costs (for which Class Counsel may seek up to one-third of the fund or $10,000,000), individual settlements for the three lead plaintiffs (totaling $75,000, or $25,000 for each of the three named plaintiffs)[2] and class representative enhancements

---

[1]     There are some class members that may be duplicate entries in the class list (because they appeared more than once but with different contact information, so it is unclear if they are the same person or two different class members).  When accounting for these duplicates, the actual number of class members may be as low as 2,380 class members, including the newly added 348 class members that resulted from expanding the class period.  To err on the side of caution, the parties are treating these duplicates as separate individuals for purposes of calculating the average settlement share, but once claim forms and W-9 forms are submitted, it should become clearer how many unique class members there are. See Liss-Riordan Decl. at ¶ 4, n.1.

[2]     These payments to the three named plaintiffs are in recognition of the fact that they have ***already prevailed*** on their minimum wage claims for cleaning time and travel time – claims which the balance of (continued on next page)

(totaling $15,000, or $5,000 for each of the three named plaintiffs), will be distributed to class members pursuant to a plan of allocation summarized here. Id. at §§ 1.2, 1.28, 1.29, 1.35; Liss-Riordan Decl. at ¶ 14.[3] After these deductions are taken into account, the average settlement class member share is estimated to be approximately $7,500, assuming a 100% claim rate. Id. at ¶ 26. Assuming a 50% claim rate (which is far more likely), class members may be receiving approximately $15,000 each on average. Id.

Plaintiffs will file a separate motion for an award of attorneys' fees and for reimbursement of reasonable expenses, to be paid out of the Settlement Fund. The named plaintiffs will also file supporting declarations alongside that motion, attesting to their time spent on this litigation. As described further below and in the forthcoming Motion and declarations, the amounts for attorneys' fees and costs are reasonable in light of the excellent result achieved after nearly *fifteen years* of litigation, including appeals to the Ninth Circuit and the California Supreme Court and the exhaustive work required to bring this matter to resolution. See Liss-Riordan Decl. ¶ 14, 36.

### 3.   Non-Monetary Settlement Terms

Jan-Pro has agreed that, starting with its 2024 template Franchise Disclosure Document, which it recommends to California regional master franchise owners, Jan-Pro will endeavor to make it clearer to

---

the settlement class may or may not have and may or may not prevail on, were they to bring them individually. Indeed, in its prior orders in this case, the Court ruled that certain claims such as minimum wage for cleaning work and for travel time between accounts were not certifiable on a classwide basis because some class members may have such claims and other may not. See ECF No. 369 at 21-25. The Court did, however, grant summary judgment in favor of Plaintiffs Vazquez and Roman on their minimum wage claims for cleaning work and to all three named plaintiffs on their minimum wage claims for travel time. See ECF 370 at 2. As such, there is no unfairness in the three named plaintiffs receiving $25,000 each for the settlement of their individual minimum wage claims for cleaning time and travel time, for which they have already been granted summary judgment.  Indeed, it would be unfair not to provide some additional compensation to the named plaintiffs for the settlement of these claims, which they already proved and won, and which place them in a materially better position that the rest of the settlement class. Liss-Riordan Decl. at ¶ 15.

[3]      The parties will also hold back up to $1 million from the initial distribution of settlement funds for the purposes of resolving any bona fide disputes that may arise regarding the settlement allocation and distribution, as well as to pay late-filed claims. Any leftover funds from this held-back portion will be redistributed to the class members who submitted claim forms pursuant to the plan of allocation in the Settlement Agreement, such that all funds (less the deductions set forth above for attorneys' fees and & costs, administration costs, and service awards and individual settlement payments to the named plaintiffs) will ultimately be paid out to Class Members who submit claim forms. See Ex. 1 (Settlement Agreement) §§ 3.4.8, 3.4.9.

franchisees what amount they will actually net in monthly income from their franchise, **after** various deductions and expenses, thereby ensuring future franchisees do not misunderstand and have a clear idea of the possible net revenue they will receive after expected deductions from gross revenue. Id. at § 3.2.1. Likewise, starting in 2024, Jan-Pro will recommend the creation of an Advisory Council, made up of representatives from each California master franchise and at least one unit franchisee representative from each region, whom franchisees will help select.  The Council will discuss and develop fairer pricing of cleaning accounts and will take up issues of concern to unit franchisees.[4] Id. at § 3.2.2. This change will provide unit franchisees, including settlement class members who are current Jan-Pro franchises, with a voice on issues that affect them on a daily basis and a means to address these grievances short of full-fledged litigation or arbitration.

### 4.    Settlement Administration and Dissemination of Notice to the Class

The parties have selected Simpluris to administer the settlement. Liss-Riordan Decl. at ¶¶ 9-10. Plaintiffs' counsel have also worked with Simpluris in many cases over the last several years, where Simpluris has managed the class notice process with diligence and care. Id. Likewise, Simpluris provided the most competitive quote of the three administrators from whom quotes were requested. Id.[5]

The settlement provides that notice will be distributed to settlement class members via First Class U.S. Mail, with an enclosed return envelope to each Class Member, as well as by electronic mail and text for class members for whom email addresses and phone numbers are available. See Ex. 1 to Liss-Riordan Decl. ("Settlement Agreement") at § 3.4.2.2. Simpluris will update mailing addresses through the National Change of Address database before mailing (with all returned mail skip-traced and promptly re-mailed within ten (10) days of the Notice Date). Id. at § 3.4.2.2, 3.4.2.4. Simpluris also shall establish and maintain a website for information about the Settlement, which will include an online means of filing claims as an alternative to paper claim forms. See Liss-Riordan Decl. at ¶ 12. Settlement class members will receive reminders via postcard (as well as by email and text message where email

---

[4]    Likewise, Jan-Pro will work with its California master franchisees to provide free uniform shirts and certain supplies such as microfiber cloths for a period of at least three years and will work to have its training modules made available in Spanish. Id. at §§ 3.2.3 through 3.2.5.

[5]    Plaintiffs obtained proposals from two other prospective administrators (using the same methods of notice and claims payment). Liss-Riordan Decl. at ¶ 9.

9

1    addresses and phone numbers are available). Id.; see also Ex. 1 at § 3.4.4. Settlement payments will be

2    mailed by check to settlement class members who submit claims to participate in the settlement (or will

3    be made by digital means such as Zelle, Paypal, or Venmo, for those class members who elect to receive

4    payment in this manner). Id. at ¶ 12, n. 3. Settlement class members will have sixty-three (63) days from

5    the Notice Date in which to submit a claim or to opt out or object to the settlement. See Ex. 1 to Liss-

6    Riordan Decl. ("Settlement Agreement") at § 3.4.3.1; 3.4.3.2. Any notices that are returned as

7    undeliverable will be remailed no later than ten (10) days after the original notice date, such that all class

8    members will have, at a minimum, fifty (50) days to submit a claim or to opt out or object to the

9    settlement. Id. at § 3.4.2.4. Any individual whose notice is returned as undeliverable after multiple

10   attempts will be noted by the Settlement Administrator and will be excluded from the settlement as if

11   they had opted out. Id.

12           Plaintiffs' counsel anticipates a claim rate of somewhere between 40 and 50% for this settlement,

13   based on counsel's experience in other similar settlements. These settlements include other cases which

14   used a similar notice and distribution process, including other cleaning franchise settlements: Myers v.

15   Jani-King, Civ A. No. 2:09-cv-01738-RBS (E.D. Pa.) (claim rate of approximately 50% of the fund);

16   O'Connor, No. 13-CV-03826-EMC, 2019 WL 4394401, at *3 (claim rate of 67.3% of the fund claimed);

17   Groves v. Maplebear Inc. dba Instacart, BC695401 (L.A. Sup. Ct.) (final settlement approval granted on

18   September 2, 2020) (claim rate of 59% of the fund); Marciano v. DoorDash, Case No. CGC-15-548101

19   (Cal. Sup. Ct. July 12, 2018) (claim rate of 46% of the fund claimed); Cotter v. Lyft, 3:13-cv-04065-VC

20   (N.D. Cal.) (claim rate of 64%); Singer v. Postmates, 4:15-cv-01284-JSW (N.D. Cal.) (claim rate of

21   48%). See Liss-Riordan Decl. at ¶ 7. These cases utilized a similar notice and claims process. Id.

22   Plaintiffs will work closely with the Settlement Administrator to ensure appropriate and repeated

23   reminders are sent to ensure that as many settlement class members as possible may be located and

24   encouraged to submit claims.

25           Following the initial distribution of funds, the Settlement Administrator will make reasonable,

26   good faith efforts to remind settlement class members who have not cashed their checks to do so within

27   120 days, and it will work with settlement class members to reissue checks as needed. Ex. 1 (Settlement

28

Agreement) at § 3.4.9. After 180 days, any uncashed checks remaining as well as remaining funds from the held-back portion utilized for resolving disputes and paying late-filed claims, shall be redistributed to Participating Class Members in proportion to their settlement share, provided their residual distribution would be at least $100. Id. at § 3.4.8. After another 180 days, any uncashed checks from the residual distribution will be distributed to *cy pres* beneficiary, Legal Aid at Work. Id. This settlement is non-reversionary, meaning that no funds from the settlement, including unclaimed funds, will revert to Jan-Pro; the full amount of the net settlement fund, other than a small portion that may go to *cy pres*, will be paid to settlement class members. Id.

### 5.    Released Claims

If the Court grants final approval of the settlement, the Settlement Class will be deemed to have released Jan-Pro from all claims that were asserted in the Action regarding independent contractor misclassification, or that relate in any way to those claims that could have been asserted in the Action, including Labor Code, UCL, and common law claims stemming from Class Members' misclassification. See id. § 1.31. Except for the named plaintiffs, the release does not provide for release of claims unrelated to the core misclassification and misrepresentation allegations, *e.g.* claims for discrimination, wrongful termination, personal injury, etc. Id. Thus, although the scope of the release is broader than the three claims that were certified, it is still narrowly limited to the type of wage-and-hour claims that stem from the misclassification allegation that this Court certified and on which it granted summary judgment in favor of the Plaintiffs.

### III.    THE LEGAL STANDARD

Federal Rule of Civil Procedure 23 (e) provides that any compromise of a class action must receive Court approval. "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) citing Manual for Complex Litig., Third, § 30.41 (1995). Pursuant to Rule 23, preliminary approval of proposed class action settlement is appropriate where the parties make a "showing that the court will likely be able to: (i) approve the proposal under

Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23 (e)(1). As set forth <u>infra</u>, Part IV(A), the settlement class should be certified. Moreover, as set forth further <u>infra</u>, Part IV(B), all of the requirements of Rule 23(e)(2) have been met as well. Specifically, the class representatives and class counsel have adequately represented the class, the proposed settlement was negotiated at arm's length, the relief is more than adequate given the costs, risks, and delay of further litigation and the contours of the proposed settlement, and the proposal treats all members of the Settlement Class equitably relative to one another. Fed. R. Civ. P. 23 (e)(2); <u>see also</u> <u>In re Tableware Antitrust Litig.</u>, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (a court should grant preliminary approval if the parties' settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."); <u>Deaver v. Compass Bank</u>, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015). "Moreover, "a presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently." <u>In re Heritage Bond Litig.</u>, 2005 WL 1594403, *2 (C.D. Cal. June 10, 2005).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" <u>Id.</u> at *2 (citing <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Generally, the district court's review of a class action settlement is 'extremely limited.'" <u>Harris v. Vector Marketing Corp.</u>, 2011 WL 1627973, at *7 (N.D. Cal. April 29, 2011) (<u>citing</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir.1998)). "The Court considers the settlement as a whole, rather than its components, and lacks the authority to delete, modify or substitute certain provision." <u>Id.</u> (internal citation omitted).

## IV.   DISCUSSION

### A.   Certification of the Settlement Class is Appropriate

The Court must confirm the propriety of the settlement class by determining "if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23 (b)." <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652,

1    659 (E.D. Cal. 2008). Here, this Court has already found that the requirements for class certification

2    have been met and has already certified Plaintiffs' claims under the California Labor Code for: (1)

3    minimum wage for unpaid training, (2) expense reimbursement for cleaning supplies and uniforms, and

4    (3) unlawful deductions for management fees and sales and marketing fees, as well as the predicate issue

5    of independent contractor misclassification. Roman v. Jan-Pro Franchising Int'l, Inc., 342 F.R.D. 274

6    (N.D. Cal. 2022), Dkt. No. 269. The proposed settlement class includes those individuals who are

7    already part of the certified class in this case as well as 348 additional cleaning franchisees who have

8    purchased franchises during the period February 1, 2017 through the present.

9         The Court's prior conclusion that a class was appropriate supports class certification here for

10   purposes of this settlement. Indeed, the same practices that this Court certified with respect to the earlier

11   time period have remained unchanged after January 2017 (when Plaintiff Gloria Roman stopped

12   working for Jan-Pro), and thus, class certification remains equally appropriate for the extended class

13   period. In particular, all 348 members of the expanded settlement class have the **_same claims_** that the

14   Court previously certified in this case for: (1) deductions for management and sales and marketing fees;

15   (2) minimum wage for hours spent undergoing mandatory training; and (3) expense reimbursement for

16   cleaning supplies and equipment. As such, expanding the settlement class to include these individuals

17   does not pose any concerns regarding fairness or require discounting of their settlement shares. See Liss-

18   Riordan Decl. at ¶ 5, n. 2.

19        Thus, Plaintiffs now ask that the Court certify, for settlement purposes, a class consisting of all

20   unit franchisees who signed a franchise agreement with a master franchisee in the state of California and

21   who performed cleaning services for defendant from December 12, 2004, to the date of Preliminary

22   Approval. See Ex. 1 (Settlement Agreement) at § 1.5.

         **1.    Requirements of Fed. R. Civ. P. 23(a)**

24        Rule 23 (a) requires that the Plaintiffs demonstrate: "(1) numerosity of plaintiffs; (2) common

25   questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4)

26   the named plaintiff can adequately protect the interests of the class." Barbosa v. Cargill Meat Sols.

27

28
                                                     13

Corp., 297 F.R.D. 431, 441 (E.D. Cal. 2013). Here, as this Court already determined in its Class

Certification Order, all criteria are met.

### a)   Numerosity

A plaintiff will satisfy the numerosity requirement if "the class is so large that joinder of all

members is impracticable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir.1998). "Although

the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity

requirement satisfied when the class comprises 40 or more members." Villalpando v. Exel Direct, Inc.,

303 F.R.D. 588, 605-06 (N.D. Ca. 2014). Here, the total settlement class consists of approximately

2,650 cleaning franchisees. See Liss-Riordan Decl. at ¶ 4. Thus, the numerosity requirement is easily

satisfied.

### b)   Commonality

Courts have found that "[t]he existence of shared legal issues with divergent factual predicates is

sufficient, [to satisfy commonality under Rule 23] as is a common core of salient facts coupled with

disparate legal remedies within the class." Smith v. Cardinal Logistics Mgmt. Corp., 2008 WL 4156364,

*5 (N.D. Cal. Sept. 5, 2008). The "commonality requirement has been 'construed permissively,' and its

requirements deemed minimal." Estrella v. Freedom Fin'l Network, 2010 U.S. Dist. LEXIS 61236 (N.D.

Cal. 2010) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-1020 (9th Cir. 1998)). Here, all

settlement class members share the key question of whether they have been improperly classified as

independent contractors and also share common questions of law with respect to their substantive claims

for unlawful deductions, minimum wage for unpaid training time, and expense reimbursement for

cleaning supplies and uniforms. This Court has already recognized as much in certifying a class in this

case.  Roman, 342 F.R.D. at 295.

### c)   Typicality

"Typicality is a permissive standard, and only requires that the named plaintiffs' claims are

'reasonably coextensive' with those of the class." Dalton v. Lee Publications, Inc., 270 F.R.D. 555, 560

(S.D. Cal. 2010). Thus, "[i]n examining this condition, courts consider whether the injury allegedly

suffered by the named plaintiffs and the rest of the class resulted from the same alleged common

1  practice." Id. (internal quotation omitted). Here, as the Court recognized in its prior class certification

2  order, there are no factual differences between Plaintiffs' claims and those of the settlement class

3  members. Roman, 342 F.R.D. at 290.

4                              **d)      Adequacy**

5      "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their

6  counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and

7  their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. Here,

8  the Court has already determined that class counsel will adequately represent the certified class and that

9  named plaintiffs would adequately represent the interests of the class in certifying them as lead plaintiffs

10 for the certified class. Roman, 342 F.R.D. at 290.

11            **2.      Requirements of Fed. R. Civ. P. 23(b)**

12     Rule 23 (b)(3) requires the Court to find that: (1) "the questions of law or fact common to class

13 members predominate over any questions affecting only individual members," and (2) "a class action is

14 superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

15 P. 23(b)(3). Some of the factors that are part of the Rule 23(b)(3) analysis are rendered irrelevant in the

16 settlement context, such as "the likely difficulties in managing a class action." Vasquez v. Coast Valley

17 Roofing, Inc., 266 F.R.D. 482, 488 (E.D. Cal. 2010) (noting that this factor is "essentially irrelevant" in

18 "the context of settlement"); see also Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008);

19 Spann v. J.C. Penney Corp., 2016 WL 297399, *3 (C.D. Cal. Jan. 25, 2016) ("[C]ourts need not consider

20 the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement obviates the

21 need for a manageable trial.").

22     Here, this Court has already determined that common questions predominate, both with respect

23 to franchisees' status under the ABC test and the underlying Labor Code claims. Specifically, the Court

24 found that both Prong B of the conjunctive "ABC" test for employee status was capable of

25 determination on a class-wide basis for all franchisees and because any prong could prove dispositive

26 here, class certification was appropriate. Roman, 342 F.R.D. at 295.  The Ninth Circuit denied Jan-Pro's

27 Rule 23(f) Petition, seeking review of this conclusion. See Roman v. Jan-Pro, Ninth Cir. No. 22-80081,

28

1   Dkt. No. 6 (9th Cir. Nov. 10, 2022).

2       As this Court already recognized in its class certification order, these misclassification claims

3   predominate, and a class action to resolve them is superior to individual actions.  Further, it has been

4   well-recognized that "[w]here recovery on an individual basis would be dwarfed by the cost of litigating

5   on an individual basis, this factor weighs in favor of class certification." Noll v. eBay, Inc., 309 F.R.D.

6   593, 604 (N.D. Cal. 2015).

7       **B.**    **The Court Should Preliminarily Approve the Settlement**

8   Under Fed. R. Civ. P. 23 (e)(2), the Court must consider whether:

9   (A) the class representatives and class counsel have adequately represented the class;

10   (B) the proposal was negotiated at arm's length;

11   (C) the relief provided for the class is adequate, taking into account:

12       (i) the costs, risks, and delay of trial and appeal;

13       (ii) the effectiveness of any proposed method of distributing relief to the class, including

14       the method of processing class-member claims;

15       (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

16       (iv) any agreement required to be identified under Rule 23(e)(3); and

17   (D) the proposal treats class members equitably relative to each other.

18   See Fed. R. Civ. P. 23 (e)(2). "In the notes accompanying these amendments, the Advisory Committee

19   acknowledged that '[c]ourts have generated lists of factors' to determine the fairness, reasonableness,

20   and adequacy of a settlement" such that "adding these specific factors to Rule 23(e)(2) was not designed

21   'to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure

22   and substance that should guide the decision whether to approve the proposal.'" Hefler v. Wells Fargo &

23   Co., 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018). Courts in the Ninth Circuit have typically

24   found preliminary approval of a settlement and notice to the class is appropriate if it: (1) falls within the

25   range of possible approval; (2) is the product of serious, informed, non-collusive negotiations, (3) has no

26   obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or

27   segments of the class. Deaver v. Compass Bank, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015).

28

Here, both under the factors enumerated in Rule 23(e)(2) and the factors traditionally considered by the Ninth Circuit, the proposed settlement clearly warrants preliminary approval.

### 1.    The Settlement is the Product of Informed, Non-Collusive Negotiation

Under Fed. R. Civ. P. 23 (e)(2)(A)-(B), "[t]he Court must consider whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length', [which] [] the Advisory Committee notes suggest, [] are 'matters that might be described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" Hefler, 2018 WL 6619983, at *6. Courts in this Circuit have likewise found that for the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Thus, adequate discovery and the use of an experienced mediator support a finding that settlement negotiations were both informed and non-collusive. See Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012); Deaver, 2015 WL 4999953, *7; Satchell v. Fed. Express Corp., 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

Here, "[b]y the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal citations omitted). The parties exchanged extensive discovery prior to conducting a mediation, and they received data that allowed them to value the claims at issue in this case. See, e.g., Dkt. Nos. 385, 399, 410, 423, 428, 440, 485, 486. Indeed, both parties were heatedly preparing for a damages trial, which meant they had an in-depth understanding of both the amount of potential damages and the potential pitfalls of proving those damages at trial. Likewise, the parties have litigated the merits of their claims very extensively; Plaintiffs and Defendant filed multiple rounds of supplemental briefing in connection with summary judgment and class certification and Plaintiffs filed their Opposition to Defendant's Motion to Decertify the class as recently as a few days before they reached a settlement. See Dkt. Nos. 290, 291, 300, 312,

325, 328, 338, 345, 346, 356, 357, 489. The parties also litigated class certification, both before this Court and in briefing Jan-Pro's Motion for Reconsideration, its Rule 23(f) petition to the Ninth Circuit Court of Appeals, and its recent Motion to Compel arbitration. See Dkt. No. 371, 374, 376, 454, 459, 464; see also Ninth Cir. Appeal No. 22-800816. The parties met in May with professional mediator Arthur Pressman and again in August with Magistrate Judge Cisneros and continued these discussions well beyond that mediation session. Id. at ¶ 23, n. 7. In these negotiations, Class counsel was informed by her prior experience negotiating similar settlements on behalf of cleaning franchisees, including class-wide settlements against Jan-Pro competitors Coverall and Jani-King. See Liss-Riordan Decl. at ¶ 23, see also id. at ¶¶ 33-35. The settlement the parties have reached was the result of thorough and passionate negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. See Satchell v. Fed. Express Corp. 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); Hale v. Manna Pro Prod., LLC, No. 2:18-CV-00209-KJM-DB, 2020 WL 3642490, at *11 (E.D. Cal. July 6, 2020) ("The completion of extensive discovery and arms-length, mediator-guided negotiations all suggest the settlement agreement is not the product of collusion."). Thus, the parties had ample information, expert guidance from an experienced mediator, and intimate familiarity with the strengths and weaknesses of the case.

### 2.    The Relief Provided for the Settlement Class Is Fair and Adequate

"Rule 23 (e)(2)(C) and (D) set forth factors for conducting a 'substantive' review of the terms of the proposed settlement." Hefler, 2018 WL 6619983 , at *7 (citing Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment). "In determining whether 'the relief provided for the class is adequate,' the Court must consider '(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).'" Id. (citing Rule 23(e)(2)). Similarly, courts in the Ninth Circuit have evaluated "the range of possible approval criterion, which focuses on substantive fairness and adequacy, [] primarily [by] consider[ing] plaintiff's

expected recovery balanced against the value of the settlement offer." <u>Deaver v. Compass Bank</u>, 2015 WL 4999953, *9 (N.D. Cal. Aug. 21, 2015).

a)      **Risks of Further Litigation**

A "relevant factor" that courts must consider in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." <u>Vasquez</u>, 266 F.R.D. at 489. Thus, courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." <u>Id.</u> (<u>citing</u> <u>Oppenlander v. Standard Oil Co. (Ind.)</u>, 64 F.R.D. 597, 624 (D.Colo.1974)). Here, Plaintiffs recognized the delay that was sure to transpire in going forward. Even if Plaintiffs were to win a total victory at the upcoming trial, Jan-Pro would certainly appeal any decision against it, resulting in lengthy delays for the class. <u>See</u> Liss-Riordan Decl. at ¶ 19. Furthermore, there was the risk the trial itself would be delayed pending a decision by the Ninth Circuit on Jan-Pro's pending interlocutory appeal. <u>Id.</u> Furthermore, the Court has already stayed the claims of 125 members of the settlement class, for whom relief was likely to be further delayed. <u>Id.</u>

Even putting aside the further delay, there remains significant uncertainty regarding Plaintiffs' odds of success at trial. Proving classwide damages on several of the claims at issue, including the claim for mandatory training time presented some difficulties, insofar as some master franchisees have presented sworn testimony that they did not actually require their franchisees to undergo mandatory training on a consistent basis. <u>See</u> Dkt. Nos. 481-1, Ex. H (Connor Decl.) at ¶ 4; Ex. I (Poyle Decl.) at ¶ 2. Furthermore, there was the risk that the Court's prior decisions on summary judgment and class certification could eventually be overturned on appeal. Indeed, Jan-Pro would likely appeal the certification of the claim for cleaning supplies on the ground that claims under Cal. Lab. Code § 2802 are not subject to the "ABC" test for employee-status, <u>see</u> <u>Bowerman v. Field Asset Servs., Inc.</u>, 60 F.4th 459, 472 (9th Cir. 2023), and it would likewise argue that deductions for management fees and sales and marketing fees are not subject to the "ABC" test either because they are not the type of deductions contemplated by the Wage Orders. Were <u>Dynamex</u> not to apply to the expense reimbursement claim or the deductions claim, Plaintiffs recognized that, under the multi-factor <u>Borello</u>

19

test, these claims could not be certified and the class would be left with greatly diminished damages.

In sum, after carefully considering these risks and the potential benefits of proceeding further with this case, Plaintiffs concluded that the significant monetary relief obtained here for franchisees is in the best interests of the settlement class.

### b)   Benefit to Class Members

Plaintiffs have analyzed the potential monetary value of their claims if they were to succeed in proving their misclassification and reimbursement claims. As described above, the settlement awards Plaintiffs significant monetary benefit. See Liss-Riordan Declaration at ¶ 26. The settlement also confer non-monetary benefits on franchisees going forward. Id. at ¶ 27. In view of the ongoing legal issues and uncertainties that Plaintiffs continued to face, discussed above and in the Liss-Riordan Declaration at ¶¶ 19-21, 25, there can be no doubt that this is an excellent result for the class.

### 3.   The Settlement Has No Obvious Deficiencies

A court should also consider possible deficiencies in a settlement including an overly broad release of claims, an insufficient timeframe for notice, an inadequate form of payment, an unrelated *cy pres* designee, or an unreasonable request for attorneys' fees, among other things. See Custom LED, LLC v. eBay, Inc, 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013); Deaver, 2015 WL 4999953, *7. Here, settlement class members will release only claims that could arise from their alleged misclassification as independent contractors, and will not release claims for discrimination, wrongful termination, personal injury, or other issues not related to misclassification. See Ex. 1 (Settlement Agreement) at § 5(a). The timeframe for notice is adequate, and settlement class members will be given an ample sixty-four (63) day window in which to submit claims, with no class member receiving fewer than fifty (50) days in which to make a decision with respect to the settlement, even if their mailed notices are returned as undeliverable and must be remailed. Id. at ¶¶ 35, 88.

Likewise, the distribution will compensate franchisees fairly. Specifically, the Claim Form will ask class members what year they bought their franchise and when they last cleaned for Jan-Pro (which information will be cross-referenced against data gathered from Jan-Pro's records to determine their number of years of service), as well as what size franchise package they purchased and their annual

gross revenue from their first full year operating their franchise (which information will likewise be cross-checked against documents produced in discovery where possible). See Ex. 3 to Liss-Riordan Decl. (Claim Form); Ex. 1 (Settlement Agreement) at § 3.1.3.1.1. A class member's years of service and franchise package and associated annual revenue[6] will be utilized to determine each class member's relative settlement share. Id. Specifically, (1) the number of years spent working for Jan-Pro will be multiplied by $2,400 to approximate damages for cleaning supplies and uniforms; (2) five percent (5%) of the projected annual gross revenue of the franchise package (capped at $50,000), multiplied by years of service will approximate damages from deductions for management fees; and (3) three and a half percent (3.5%) of the projected annual gross revenue of the franchise package multiplied by years of service will approximate damages from deductions for sales and marketing fees. Id. These calculations cover the categories of damages that this Court certified and so will fairly allocate funds to class members.[7] No unclaimed funds will revert to Jan-Pro; rather they will be distributed amongst settlement class members who submit claims, and, if necessary, given to the *cy pres* designee, whose work on behalf of low-wage workers is plainly related to the subject of this lawsuit – namely, the alleged misclassification of immigrant cleaning workers under the guise of a franchise relationship.

Further, the attorneys' fee provision is fair and does not give rise to any deficiency. Plaintiffs' counsel may apply for fees not to exceed one-third of the gross settlement fund (totaling $10 million). See Liss-Riordan Decl. at ¶ 14. The settlement is not contingent upon the Court approving counsel's

---

[6]     The formula provides for a cap on annual revenue that is counted at $50,000 for purposes of the management fee calculation, so that those franchisees with especially large franchise packages do not receive a windfall for damages that may not be attributable to their own work. This cap is based on the understanding class that members with annual revenues above this amount were likely to have employees or helpers performing some of the cleaning work, and so their damages would not be attributable entirely to their own work. Plaintiffs' counsel's firm has used a similar formula (including this cap) in distributing settlement shares in other cleaning franchise misclassification cases that have been approved by courts, including in Chavez v. Jani-King of California, Inc., et al., Civ. A. No. RG19043517 (Alameda Sup. Ct. July 7, 2022); Myers v. Jani-King of Philadelphia, Inc., No. CV 09-1738, 2019 WL 4034736, at *2 (E.D. Pa. Aug. 26, 2019) (same); De Giovanni v. Jani- King Inc., et al., Civ. A. No. 07-10066 (D. Mass.) (same); Fuller v. Jani-King Inc., et al., Civ. A. No. 15-00438 (D. R.I.) (same).

[7]     The one other category of damages that the Court certified - minimum wage for mandatory training time - would be minimal compared to the other categories of damages, and it would be a similar amount for class members and thus would not affect a fair distribution of the settlement. See Liss-Riordan Decl. at ¶ 23 (chart showing value of the certified class claims).

application, nor does the settlement include any clear-sailing provision. Courts in this district have routinely awarded one-third of the common fund as attorneys' fees in class action settlements. See, e.g., Hernandez v. Dutton Ranch Corp., 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund."); Benitez v. W. Milling, LLC, 2020 WL 3412725, at *9 (E.D. Cal. June 22, 2020) (approving one-third fee award) (collecting cases); Vasquez, 266 F.R.D. at 492 (E.D. Cal. 2010) (collecting recent wage and hour cases in which counsel received fee awards in the range of 30% to 33.3% of the common fund); Lusby v. GameStop Inc., 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (finding a one-third fee award appropriate because to the results achieved, the risk of litigation, the skill required and the quality of work, and the contingent nature of the fee and the financial burden carried by the plaintiffs); Barnes v. The Equinox Grp., Inc., 2013 WL 3988804, *4 (N.D. Cal. Aug. 2, 2013) (awarding one-third of gross settlement in fees and costs because counsel assumed substantial risk and litigated on a contingency fee-basis).[8]

Here, this case has required an exceptional amount of hard work and tenacity on the part of Plaintiffs' counsel who has litigated this case for *fifteen years* on a complete contingent fee basis. Plaintiffs' counsel have successfully litigated an appeal at the Ninth Circuit (including supplemental briefing and responses to multiple petitions for rehearing), as well as an appeal at the California Supreme Court which led to an extremely important precedent statewide regarding the retroactivity of the landmark Dynamex test -- and aggressive motion practice and discovery at the district court level. Plaintiffs' counsel risked never receiving any fees for this case, and indeed, the case seemed to be dead when this Court granted summary judgment for Jan-Pro in 2017 (as well as years earlier, when the federal court in the District of Massachusetts granted summary judgment for Jan-Pro, see Depianti v. Jan-Pro Franchising Int'l, Inc., 39 F. Supp. 3d 112 (D. Mass. 2014), which was affirmed by the First Circuit, see Depianti v. Jan-Pro Franchising Int'l, Inc., 873 F.3d 21 (1st Cir. 2017)). But Plaintiffs'

---

[8]     While a number of courts in this district have referred to 25 percent as a "benchmark percentage", see, e.g., Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013), other courts have recognized that  "in most common fund cases, the award exceeds that benchmark percentage." Id.; In re Activision Sec. Litig., 723 F. Supp. 1373, 1377 (N.D. Cal.1989) ("nearly all common fund awards range around 30%").

counsel continued to fight the case at every step and has now succeeded in negotiating this landmark settlement for this class in California.[9]

For all of these reasons, the settlement has no obvious deficiencies and should be preliminarily approved.

### 4.   The Settlement Does Not Unfairly Grant Preferential Treatment to Any Settlement Class Members

"Consistent with Rule 23's instruction to consider whether 'the proposal treats class members equitably relative to each other,' Fed. R. Civ. P. 23 (e)(2)(C)(i), the Court considers whether the Settlement 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" Hefler, 2018 WL 6619983, at *8 (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." Hendricks v. StarKist Co., 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015) (citing cases). However, "courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." Id. citing Vinh Nguyen v. Radient Pharm. Corp., 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014).

Here, as described above, the settlement will result in payment of a fair and reasonable award to settlement class members, particularly in light of the litigation risks. Here, settlement class members will receive settlement shares based on the amount of time they worked for Jan-Pro (which correlates with their damages for cleaning supplies) as well as the size of their franchise package (which, combined with their years of service, correlates with the amount of their damages for deductions of management fees).

Likewise, the individual settlement shares for the named plaintiffs of $25,000 each are eminently reasonable. These amounts are reasonable settlements for these plaintiffs' individual claims, for which the Court granted them summary judgment. Thus, they are in a materially better position than class members with respect to these claims. However, the settlement is not contingent on the Court's approval

---

[9]   At final approval, Plaintiffs' counsel will ask the Court to consider allowing this amount for attorneys' fees in this unusual case. By including this proposal in the class notice now, the Court can at that time determine whether any class members have objected to the request.

1   of these payments.[10]

2       Likewise, the proposed enhancements of $5,000 for each of the three named plaintiffs are

3   reasonable and should be approved.  "In this district, a $5,000 incentive award is presumptively

4   reasonable", see Roe v. SFBSC Mgmt., LLC, No. 14-CV-03616-LB, 2022 WL 17330847, at *18 (N.D.

5   Cal. Nov. 29, 2022) (citing Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 266 (N.D. Cal. 2015)

6   (collecting cases)). While Plaintiffs recognize that the Court does not generally approve of service

7   payments[11], Plaintiffs urge the Court to consider the extraordinary devotion these three named plaintiffs

8   contributed to this case over the course of *fifteen years* as well as the remarkable outcome they have

9   achieved for this class.  The Ninth Circuit has listed factors district courts "must evaluate . . .

10  individually" when considering incentive payments, including, "actions the plaintiff has taken to protect

11  the interests of the class, the degree to which the class has benefitted from those actions, ... the amount

12  ────────────
13  [10]    Because these are payments for individual claims, they do not require court approval.  Plaintiffs have included discussion of them in this motion in the interests of transparency and so that the Court is aware of them when considering the request for class settlement approval.

14  [11]    Indeed, notwithstanding this Court's general concerns about service awards, as expressed at the
15  last hearing on September 27, 2023, the Court has occasionally approved service payments to class representatives of similar or much greater amounts for cases that have resolved in a fraction of the years that this case has taken, where the class representatives had less on the line, and where plaintiffs
16  recovered less for the class. See, e.g., Brooks v. Lines, No. C 10-01404 WHA, ECF Nos. 57 at 17; 87 ¶ 12 (N.D. Cal.) (approving $25,000 service award to class representative for case lasting two years,
17  where class representative faced retaliation, faced where total settlement was $1.5 million with potential recovery was over $11 million); In re LDK Solar Sec. Litig., 2010 WL 3001384, at *2–5 (N.D. Cal. July
18  29, 2010) (approving $10,000 award to class representative for case lasting three years, where class representative did not risk retaliation, and where average recovery per class member would be between
19  $500 and $1,000); Adderley v. Nat'l Football League Players Ass'n, 2009 WL 4250792, at *8 (N.D. Cal. Nov. 23, 2009) (approving class representative award of $10,000 for case lasting two years, where
20  class representative did not risk retaliation because he was retired when he brought the lawsuit, and where plaintiffs settled for $26.2 million on appeal); Briggs v. United States, 2010 WL 1759457, at *1
21  (N.D. Cal. Apr. 30, 2010) (approving $3,300 award to class representative for case lasting three years, where class representative did not risk retaliation, and where total recovery was approximately $8
22  million); McLaughlin v. Wells Fargo Bank, N.A., 2017 WL 994969, at *4–5 (N.D. Cal. Mar. 15, 2017) (approving $3,000 incentive award for case lasting one year, where named representative did not risk
23  retaliation, and where case settled for less than $1 million); Hofstetter v. Chase Home Fin., LLC, 2011 WL 5545912, at *2 (N.D. Cal. Nov. 14, 2011) (approving $2,500 award to class representatives for case
24  lasting one year, where class representatives did not risk retaliation, and where total recovery was approximately $10 million); Richardson v. Interstate Hotels & Resorts, Inc., 2019 WL 803746, at *4
25  (N.D. Cal. Feb. 21, 2019) (awarding $2,000 incentive award for case lasting three years and where plaintiffs settled case for $800,000, an average of between $800 and $2,000 per class member,
26  depending on position). Here, the Court should exercise its discretion to recognize and reward the efforts of the named plaintiffs, which have resulted in this settlement that will put thousands of dollars
27  each in the pockets of several thousand low-wage cleaning workers.

28
                                        24

1    of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of]

2    workplace retaliation." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 976–77 (9th Cir. 2003) (internal quotes and

3    cites omitted).

4            Although the Plaintiffs could well have resolved their individual claims years ago (as other

5    named plaintiffs did from other states, earlier in this litigation), they did not, and instead they pressed on

6    and ultimately secured this victory that will benefit thousands of their colleagues.  Had it not been for

7    this years-long devotion to this case—and their willingness to risk retaliation by their employer—other

8    class members would have recovered *nothing*.  Further, as the Plaintiffs will attest to at final approval,

9    they were each deposed (with Ms. Roman being deposed twice), and all three named plaintiffs

10   responded to extensive written discovery. Plaintiffs' service award request is less than <u>half</u> of the

11   average amount that Plaintiffs estimate each class member will recover (based on an anticipated claim

12   rate of roughly 50%). As such, the request for a $5,000 service award for each Plaintiff is eminently

13   reasonable and should be preliminarily approved.

14   **V.    CONCLUSION**

15           For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval should be granted.

16   Plaintiffs request that the Court allow the Settlement Administrator to proceed to issue class notice and

17   schedule the case for a final settlement approval hearing.

18

19

20

21

22

23

24

25

26

27

28

Date:  November 1, 2023

Respectfully submitted,

GLORIA ROMAN, GERARDO VAZQUEZ,
JUAN AGUILAR, and all others similarly situated,

By their attorneys,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
Adelaide H. Pagano, *pro hac vice*
(apagano@llrlaw.com)
Jane Farrell (SBN 333779)
(jfarrell@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on November 1, 2023, on all counsel of record.

_/s/ Shannon Liss-Riordan_____

Shannon Liss-Riordan Esq.