Shannon Liss-Riordan (SBN 310719)
(sliss@llrlaw.com)
Adelaide H. Pagano, *pro hac vice*
(apagano@llrlaw.com)
Jane Farrell (SBN 333779)
(jfarrell@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800


Attorneys for Plaintiffs and the Certified Class

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA ROMAN, GERARDO VAZQUEZ, JUAN AGUILAR, and all others similarly situated, | Case No.:   3:16-cv-05961-WHA |
| Plaintiffs, | **DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| v. | |
| JAN-PRO FRANCHISING INTERNATIONAL, INC. | |
| Defendant. | Hearing:    March 14, 2024<br>Time:       1:30 p.m.<br>Courtroom:  12, 19th Floor<br><br>Hon. William Alsup |

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

1

## <u>DECLARATION OF SHANNON LISS-RIORDAN</u>

I, Shannon Liss-Riordan, declare as follows:

1. I am a partner at the law firm of Lichten & Liss-Riordan, P.C., and I represent Plaintiffs Gerardo Vazquez, Gloria Roman, and Juan Aguilar and the certified class in this action. I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs and Service Awards. The facts contained in this declaration are within my personal knowledge, and I could and would testify truthfully to these facts if called to do so under oath

2. As set forth at greater length herein, I believe this settlement has produced an excellent result for the class, providing substantial monetary relief of $30 million to cover wage-and-hour related claims of roughly 2,650 California cleaning franchisees. To date, not a single class member has requested exclusion from or objected to the settlement, though the deadline to do so is not until February 21, 2024.

## PROFESSIONAL BACKGROUND

3. I am a member of the bar in California, Massachusetts, and New York. I am a partner in the law firm of Lichten & Liss-Riordan, P.C. I have practiced exclusively in the field of employment law on the side of employees for my entire twenty-five year legal career. My specialty for most of my legal career has been wage and hour class actions, with a particular focus on class actions regarding independent contractor misclassification and arbitration issues.

4. I am an honors graduate of Harvard College (A.B., 1990) and Harvard Law School (J.D., 1996). Following law school, I served as a law clerk for two years for U.S. District Court Judge Nancy F. Atlas in the Southern District of Texas. After my clerkship, I practiced for more than ten years at the employee-side labor firm of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C. In 2009, I co-founded my current firm, Lichten & Liss-

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

2

Riordan, P.C., which has regularly been recognized as one of the top and most cutting edge employment firms in the nation.

5.    I am a frequent invited speaker at seminars sponsored by such organizations as the National Employment Lawyers Association, the American Bar Association, various Continuing Legal Education programs, and other organizations on various topics regarding employment law, class actions, and wage and hour litigation. A particular focus that I have frequently been invited to speak on has been issues concerning arbitration and class actions.

6.    I have been featured by many major publications for my accomplishments representing low wage workers in a variety of industries. These publications include San Francisco Magazine (**Exhibit A**), the Los Angeles Times (**Exhibit B**), the Wall Street Journal (**Exhibit C**), the ABA Journal (**Exhibit D**), the Recorder (**Exhibit E**), Mother Jones (**Exhibit F**), Politico (**Exhibit G**), the Boston Globe (**Exhibits H** and **I**), and Law360 (**Exhibit J**). Politico included me on its list of the *"Top 50 thinkers, doers and visionaries transforming American politics"* in 2016. Exhibit G. San Francisco Magazine stated in its profile of me that "Liss-Riordan has achieved a kind of celebrity unseen in the legal world since Ralph Nader sued General Motors." Exhibit A.

7.    I was recognized by Benchmark Litigation in 2020 as the national Labor & Employment Employee-Side Attorney of the Year. Each year since 2008, I have been selected for inclusion in Best Lawyers in America (Chambers). Our firm, and my law partner and I have consistently been ranked in recent years in the top tier for our practice area. The 2013 edition referred to me as "*the reigning plaintiffs' champion*", and the 2015 edition said I am "*probably the best known wage class action lawyer on the plaintiff side in this area, if not the entire country*".

8.    Since 2004, I have been litigating cases like this one, on behalf of cleaning workers who have purchased franchises, have been classified as independent contractors, and

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

3

have challenged this classification under the wage laws of various states. I have been a pioneer in litigating and developing this area of the law and have obtained successful decisions and resolutions in cases against such companies as Coverall, Jani-King, CleanNet, Vanguard, System4, and All-Pro. I have successfully litigated these cases in Massachusetts, California, Pennsylvania, Connecticut, and Rhode Island.

9. In the case that my firm litigated against Coverall in Massachusetts, we achieved class certification and summary judgment under an "ABC" test identical to the one utilized in California. Awuah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80 (D. Mass. 2010). The California Supreme Court cited this decision in its landmark Dynamex decision. Dynamex Operations W. v. Superior Ct., 4 Cal. 5th 903, 963, 416 P.3d 1, 40 (2018). I also obtained a landmark decision from the Massachusetts Supreme Judicial Court in the Awuah case declaring that paying for a job is illegal under Massachusetts law, thus allowing cleaning workers to recover franchise fees and insurance they paid to a cleaning franchisor. See Awuah v. Coverall North America, Inc., 460 Mass. 484 (2011). Likewise, I won summary judgment on behalf of cleaning franchisees for Vanguard Cleaning Systems under both Massachusetts and Connecticut law. Da Costa v. Vanguard Cleaning Sys., Inc., 2017 WL 4817349, at *1 (Mass. Super. Sept. 29, 2017).

10. In the case that my firm litigated against Jani-King in Pennsylvania, we succeeded in certifying a class and got that ruling affirmed by the Third Circuit. See Williams v. Jani-King of Philadelphia Inc., 837 F.3d 314 (3d Cir. 2016). In the case against Jani-King I litigated in Massachusetts, De Giovanni v. Jani-King International, Inc., we similarly obtained class certification and summary judgment. See De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 84 (D. Mass. 2009); De Giovanni, C.A. No. 07-10066 (D. Mass. Aug. 8, 2014) (summary judgment awarded to plaintiff class). In the case against Jani-King in California, Plaintiffs obtained reversal at the Ninth Circuit of summary judgment entered on behalf of Jani-King, and we subsequently reached a favorable settlement on behalf of

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

4

Jani-King franchisees in California.  See Juarez v. Jani-King of California, Inc., 728 F. App'x 755 (9th Cir. 2018).

11.    In this very case, I have obtained multiple important appellate victories. The Ninth Circuit reversed a grant of summary judgment for the defendant and held that an ABC test for misclassification applies to the top-tier company in a multi-tier franchise structure. Vazquez v. Jan-Pro Franchising Int'l, Inc., 986 F.3d 1106 (9th Cir. 2021).  In an important precedent-setting ruling that affected litigation across California, I also obtained a ruling in this case from the California Supreme Court that the ABC test in Dynamex applies retroactively. Vazquez v. Jan-Pro Franchising Int'l, Inc., 10 Cal. 5th 944, 478 P.3d 1207 (2021) (holding the ABC test for employee-status announced in the California Supreme Court's landmark Dynamex decision applies retroactively). In an earlier portion of this case (when it was in Massachusetts), the Massachusetts Supreme Judicial Court held that the use of a multi-tier system (and thus a lack of a direct contract between a cleaning franchisee and the defendant franchisor) does not immunize the defendant franchisor for liability for misclassification.  See Depianti v. Jan-Pro Franchising International, Inc., 465 Mass. 607 (2013).

12.    Other significant appeals I have won include: Patel v. 7-Eleven, Inc., 489 Mass. 356 (2022) (Massachusetts Supreme Judicial Court held that franchisees may be employees for purposes of the Wage Act, overturning district court decision that held federal law to preempt Massachusetts law); Lawson v. GrubHub, 13 F.4th 908 (9th Cir. 2021) (reinstating case challenging GrubHub's misclassification of drivers in first and only case to date to go to trial against "gig economy" company); Medina v. Equilon Enterprises, Inc., 68 Cal.App.5th 868 (Cal. Ct. App. 2021) (Court of Appeal reversed summary judgment for Shell, holding that it could be liable for wage violations committed by intermediary entity); Rittmann v. Amazon.com, Inc., 971 F.3d 904 (9th Cir. 2020) (holding AmazonFlex delivery drivers exempt from the Federal Arbitration Act, 9 U.S.C. § 1 under the transportation

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

5

worker exemption); Waithaka v. Amazon.com, 966 F.3d 10 (1st Cir. 2020) (same); Haitayan v. 7-Eleven, Inc., 762 Fed.Appx. 393 (9th Cir. 2019) (reinstating wage claims against 7-Eleven and reversing district court's denial of injunction for plaintiffs and potential class members facing choice of pursuing wage claims or keeping their jobs); Roes, 1-2 v. SFBSC Management, LLC, 2019 WL 6721190 (9th Cir., Dec. 11, 2019) (agreeing with our objection to a class settlement, reversing approval where the settlement included a reversion, an inadequate notice process, and provided less than 4% recovery of potential classwide damages on primary claims); O'Grady v. Merchant Exchange Productions, Inc., 41 Cal.App.5th 771 (Cal. Ct. App. 2019) (holding that mandatory service charges may be gratuities under Calforrnia Labor Code); Maplebear, Inc. d/b/a Instacart v. Donna Busick, 26 Cal.App.5th 394, 237 Cal.Rptr.3d 98 (2018) (affirming California Superior Court's decision declining to vacate class arbitration clause construction award); Khanal v. San Francisco Hilton, Inc., No. 15-15493(9th Cir. 2017)  (reversing order holding wage claims brought by union employees preempted by LMRA); Marzuq v. Cadete Enterprises, Inc., 2015 U.S. App. LEXIS 21301 (1st Cir. 2015) (Dunkin Donuts general managers could be eligible for overtime pay by proving management was not their primary duty, distinguishing 1982 First Circuit Burger King precedent, which had held fast food managers to be overtime-exempt); Travers v. Flight Systems & Services 2015 U.S. App. LEXIS 21671 (1st Cir. 2015) (affirming jury verdict in favor of skycap who was terminated in retaliation for leading class action wage complaint challenging policy affecting skycaps' tips and reinstating claim for front pay); Villon v. Marriott., Hawaii Supreme Court No. 11-747 (July 15, 2013) (establishing that wait staff employees could recover under Hawaii wage law for service charges not remitted to them); Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191 (2013) (SJC held Massachusetts independent contractor law applicable to work performed in New York for Massachusetts company); Matamoros v. Starbucks Corp., 699 F.3d 129 (1st Cir. 2012) (holding that Starbucks violated Massachusetts Tips Law by allowing shift

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

6

supervisors to share in tip pool); Awuah v. Coverall North America, Inc., 460 Mass. 484 (2011) (SJC established the damages awardable for independent contractor misclassification under Massachusetts law, finding it to violate Massachusetts wage law and public policy to charge employees for a job); DiFiore v. American Airlines, Inc., 454 Mass. 486 (2009) (SJC held airline liable for Tips Law violation despite fact that skycap employees were directly employed by an intermediary company), rev'd on federal preemption grounds, 646 F.3d 81 (1st Cir. 2011), cert. denied (2011) 132 S. Ct. 761; Skirchak v. Dynamics Research Corporation 508 F.3d 49 (1st Cir. 2007) (First Circuit struck down class arbitration waiver in employer's arbitration policy); Gasior v. Massachusetts General Hospital, 446 Mass. 645 (2006) (SJC determined that discrimination claims, including claims for punitive damages, survive the plaintiff's death); Smith v. Winter Place LLC d/b/a Locke-Ober Co., Inc., 447 Mass. 363 (2006) (SJC held employees engaged in protected activity by making internal complaints of wage violations); Dahill v. Boston Police Department, 434 Mass. 233 (2001) (SJC decided that Massachusetts law would diverge from federal law in prohibiting discrimination against individuals with correctable disabilities, resulting in hiring of hearing-impaired police officer candidate and favorable jury verdict); Cooney v. Compass Group Foodservice, et al. 69 Mass. App. Ct. 632 (2007) (Appeals Court held that servers were entitled as a matter of law to receive proceeds of service charges added to function bills); King v. City of Boston 71 Mass. App. Ct. 460 (2008) (Appeals Court reversed grant of summary judgment in sex discrimination suit, finding that plaintiffs could show that Boston Police Department discriminated against female superior officers by not providing them with separate locker rooms).

13. Cases that I have won at trial include: Nnebe v. Daus, No. 06-cv-4991-RJS (S.D. N.Y. Nov. 16, 2023) (test case trial for 10 plaintiff New York taxi drivers in certified class action who suffered due process violations based on not being able to challenge their license suspension due to an arrest); Ordono v. Marriott Int'l Inc., CGC-16-550454 (S.F.

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

7

Super. Ct. June 9, 2023) (class action verdict in favor of plaintiff banquet workers following bench trial on their claim that Defendant illegally retained service charges under Cal. Lab. Code. § 351); Lawson v. GrubHub, No. 15-cv-05128-JSC (N.D. Cal. Mar. 2023) (in the first trial ever addressing whether a gig worker was misclassified as an independent contractor, court ultimately held that GrubHub driver should have been classified as an employee); Norrell v. Spring Valley Country Club (class action jury verdict for waitstaff) (Mass. Super. 2017); Travers v. Flight Services & Systems, C.A. No. 11-10175 (D. Mass. 2014) (skycap terminated in retaliation for leading class action); DiFiore et al. v. American Airlines, Inc., C.A. No. 07-10070 (D. Mass. 2008) (verdict for plaintiff skycaps challenging $2 per bag charge for curbside check-in); Benoit, et al. v. The Federalist, Inc., C.A. No. 04-3516 (Mass. Super. 2007) (verdict for plaintiff class for violation of Massachusetts Tips Law); Calcagno, et al. v. High Country Investor, Inc., d/b/a Hilltop Steak House, C.A. No. 03-0707 (Mass. Super. 2006) (verdict for plaintiff class for violation of Massachusetts Tips Law); Bradley et al. v. City of Lynn et al., 443 F.Supp.2d 145 (D. Mass. 2006) (verdict for plaintiff class where federal court held following bench trial that Commonwealth's entry level firefighter hiring examination has disparate impact on minorities and violated Title VII); Collins v. Commonwealth (Mass. Super. Court 2007) (jury verdict in favor of state police trooper who had been disqualified from employment because of his kidney transplant); Bingham v. Lynn Sand & Stone, 93-BEM-1491 (MCAD 2003) (finding of discrimination by MCAD after public hearing that company failed to hire African American truck driver applicant because of his race); Sprague v. United Airlines, Inc., 2002 WL 1803733 (D. Mass 2002) (judgment of $1.1 million in a discrimination case brought by deaf airline mechanic who had been denied employment based on disability); Dahill v. Boston Police Department, 434 Mass. 233 (2001) (Supreme Judicial Court decided that Massachusetts law would diverge from federal law in prohibiting discrimination against individuals with correctable disabilities, resulting in hiring of hearing-impaired police officer candidate and favorable jury verdict).

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

8

14.     In addition to the cases described above, I have also participated in numerous arbitration hearings (and have filed many mass arbitrations). I have also litigated and obtained favorable court rulings in many dozens of cases on summary judgment, class certification, and numerous other issues related to wage and hour law, class actions, and arbitration clauses. Through many of these cases, my firm and I have pioneered groundbreaking precedents in a variety of industries, establishing that workers have been misclassified as independent contractors. These industries include not just the cleaning industry, but also the adult entertainment industry, trucking industry, call center industry, gig economy, and others. For more information about these cases and others I have litigated, see the profiles cited in paragraph 6 and our firm's website, www.llrlaw.com.

15.     In addition to class action cases that I have won, or resolved successfully, I and my firm have also worked on many such cases for which we received no compensation at all because the cases were ultimately not successful. Examples of such cases include:

■     In my firm's original Uber misclassification litigation, my firm invested thousands of hours and hundreds of thousands of dollars only to see many of our gains erased by the Ninth Circuit Court of Appeals with the stroke of a pen.  In O'Connor v. Uber Techs. Inc., Civ. A. No. 13-3826-ECM (N.D. Cal.), we litigated a class action on behalf of hundreds of thousands of Uber drivers for misclassification and related Labor Code violations. On the eve of trial, I negotiated a $100 million settlement.  After a number of competing counsel filed objections to the settlement, the court did not approve it.  Shortly thereafter, the Ninth Circuit decertified the class, leaving all but a small fraction of the proposed settlement class bound by individual arbitration agreements.  I eventually settled on behalf of a much smaller class of drivers, but the firm's lodestar in that settlement exceeded the fee award (and hundreds of thousands of Uber drivers missed out on a chance at recovery) because of the Ninth Circuit's decision, underscoring the incredible risk under which our contingency practice operates.

■     In addition, our firm has litigated many other cases against "gig economy" companies for misclassifying workers as independent contractors for which we received no or very little compensation.  For example, in two such cases we litigated Taranto, et al. v. Washio, Inc., No. CGC-15-546584 (SF. Sup.), and Iglesias v. Homejoy, Inc., No. 15-cv-

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

9

01286-EMC (N.D. Cal.), the companies shut down during the litigation, leaving the workers with no or little payment for their claims and our firm with no or little reimbursement for our fees and expenses.

■     I spent a number of years litigating on behalf of Boston and Chicago cab drivers, alleging that they have been misclassified as independent contractors under state law. In the litigation on behalf of the Boston cab drivers, the trial court ruled that the plaintiffs were likely to succeed on the merits of their claims and entered an injunction against the transfer of assets by the owner of Boston Cab Dispatch, an order that was worth more than $200 million, and which was affirmed on appeal. See Sebago v. Tutunjian, 85 Mass. App. Ct. 1119 (2014).  That result was, however, unexpectedly reversed on appeal by the Supreme Judicial Court, Sebago v. Boston Cab Dispatch, Inc. 471 Mass. 321 (2015), and that entire litigation, including many hundreds of hours of attorney time, went uncompensated. Similarly, the litigation on behalf of Chicago cab drivers was unsuccessful, and the firm was not compensated for that work either. See Enger v. Chicago Carriage Cab Co., 77 F. Supp. 3d 712 (N.D. Ill. 2014), aff'd 812 F.3d 565 (7th Cir. 2016).

■     I spent 9 years (2006-15) litigating on behalf of skycaps challenging all the major airlines' practice of imposing a $2 fee for curbside check-in, which appeared to customers to be a tip for the skycaps.  As part of this litigation, Plaintiffs' counsel won a trial against American Airlines in federal court, and the verdict was effectively affirmed by the Supreme Judicial Court in DiFiore v. American Airlines, Inc., 454 Mass. 486 (2009).  In a follow-up case, the federal court certified a national class action of all American Airlines skycaps across the country. See Overka v. American Airlines, Inc. 265 F.R.D. 14 (D. Mass. 2010).  However, the verdict was then reversed by the First Circuit on the ground that the claims were preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1). See DiFiore v. American Airlines, Inc., 646 F.3d at 81 (1st Cir. 2011).[1] With that reversal, hundreds of thousands of dollars of fees were lost, and thousands of hours of attorney work went unpaid.

■     Likewise, our firm advanced many hundreds of thousands of dollars in expert expenses and incurred thousands of hours of unpaid attorney time for cases challenging

---

[1]     Plaintiffs' counsel made multiple attempts to vindicate the rights of the skycaps, through several different theories, and attempted to pursue these cases to the U.S. Supreme Court three times.  See DiFiore v. American Airlines, Inc., 646 F.3d 81 (1st Cir. 2011), cert. denied, 132 S. Ct. 761 (2011); Brown v. United Airlines, Inc., 720 F.3d 60 (1st Cir. 2013) cert. denied, 134 S. Ct. 1787 (2014); Overka v. American Airlines, Inc., 790 F.3d 36 (1st Cir. 2015), cert. denied, 136 S. Ct. 372 (2015).

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

10

discrimination in promotional exams for police officers in Massachusetts.  Although we were successful at trial in an earlier case challenging entry level exams for firefighters and police officers, see Bradley v. City of Lynn, 443 F. Supp. 2d 145 (D. Mass. 2006), we lost a follow-up case after 9 years of litigation, Lopez v. City of Lawrence, Massachusetts 2010 WL 2429708 (D. Mass. June 11, 2010), aff'd 2016 WL 2897639 (1st Cir. May 18, 2016).

16.    In short, a plaintiffs-side contingency practice like ours, in which we are able to steadfastly fight legal battles that extend for years, attempting to advance the rights of low wage workers who could not afford to pay out-of-pocket for counsel -- and fighting until we have achieved victory or what we believe to be a fair and adequate resolution -- is only made possible by the nature of contingency fee work. These examples of cases cited above that we have litigated tenaciously, including those we have fought unsuccessfully, never would have been possible—nor would many other cases for which we have taken tremendous risks over the years, many of which we have succeeded in, and some of which we have disappointingly not—were it not for contingency fees we have been able to recover for our successful litigation.

17.    Our firm charges a standard one-third contingency fee in virtually all of our cases, but many plaintiffs' attorneys are charging even more than one-third in their fee agreements for wage and hour clients; a number have been charging 40% in recent years. Thus, in my experience, an attorneys fee award of 33% to 40% or even more reflects the fair market value of what is typically negotiated ex ante by workers in wage-and-hour cases like this one.

**DESCRIPTION OF MY TIME SPENT ON THIS LITIGATION**

18.    I originally filed this case in 2008 in Massachusetts on behalf of Jan-Pro franchisees from various states around the country.  While the initial focus of the case in its early years was on the Massachusetts claims, much of the litigation was applicable to claims of plaintiffs and class members from other states, including California.  That litigation included depositions and discovery into Jan-Pro's general systems and processes nationally.

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

11

19.     Given how many years it was taking to resolve the Massachusetts claims (which included various appeals and side litigation in Georgia), in 2016 I made the decision to file a motion to sever and transfer the claims of the three California plaintiffs and move them to this Court.  That motion was granted, and since that time nearly eight years ago, I conservatively estimate that I have spent to date at least 1,000 hours working on this case, focused on the California plaintiffs and class.

20.     I have reviewed the time records of the other attorneys at my firm in order to estimate the hours I have worked on these cases. I believe I have spent well more time on this case than all of these other attorneys combined, in part because this case has been going on for so long and due to turnover at my firm, in many instances I have been the only person who has the continuity and familiarity with the details such as the procedural history and factual record, to effectively deal with various matters. I have also personally reviewed and revised every filing in this case, which is among the first I ever worked on after founding Lichten & Liss-Riordan P.C., and I have personally argued almost all motions, as well as the Ninth Circuit appeal and the appeal to the California Supreme Court, both of which required extensive preparation and mooting. My time on the case was primarily spent as follows[2]:

---

[2]     I have not kept contemporaneous records of my time in many years, but courts have consistently awarded fees based on my reasonable estimates of my time spent litigating cases; many courts have awarded fees based upon reasonable estimates of time spent, even without contemporaneous records. See Brinskele v. United States,  2014 WL 4832263, at *2 (N.D. Cal., May 22, 2014) ("Based upon the court's familiarity with this litigation and counsel's work, the court is able to assess the reasonableness of the hours claimed by counsel without the need to inspect contemporaneous time records."); see also Kilopass Tech., Inc. v. Sidense Corp., 82 F. Supp. 3d 1154, 1169 (N.D. Cal. 2015); Rodgers v. Claim Jumper Rest., LLC, 2015 WL 1886708, *10 (N.D. Cal. Apr. 24, 2015); In re Rossco Holdings, Inc., 2014 WL 2611385, *8 (C.D. Cal. May 30, 2014)  ("In California, an attorney need not submit contemporaneous time records in order to recover attorney fees"); Cotton v. City of Eureka, Cal., 889 F. Supp. 2d 1154, 1177 (N.D. Cal. 2012); Ackerman v. W. Elec. Co. 643 F. Supp. 836, 863-64 (N.D. Cal. 1986), aff'd, 860 F.2d 1514 (9th Cir. 1988) (noting that "the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award …California law is in accord with the Ninth Circuit view."); Slimfold Mfg. Co. v. Kinkead Indus., Inc., 932 F.2d 1453, 1459 (Fed.Cir.1991).

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

- I spent a substantial amount of time reviewing and editing court filings.  These included substantial briefing on Defendant's Motion for Summary Judgment in 2017 and our later Cross-Motions for Summary Judgment and Plaintiffs' Motion for Class Certification in 2022, as well as numerous supplemental briefs associated with these motions. This work also included motions to compel discovery and other discovery-related filings, Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration, Plaintiffs' Opposition to Defendant's Motion for Reconsideration, Plaintiffs' Motion to Certify Defendant's Appeal as Frivolous, and Plaintiffs' Opposition to Defendant's Motion to Decertify the Class.  I have prepared for and argued all motions in this case with the exception of the class certification and summary judgment motion in the summer of 2022 due to scheduling conflicts;

- I spent a substantial amount of time reviewing and editing our briefing at the Ninth Circuit Court of Appeals (including supplemental briefing) and our briefing at the California Supreme Court. I argued both of these appeals, which required significant preparation, as they implicated issues of paramount importance not just for this case but for numerous other cases on behalf of California workers;

- I have also spent time reviewing discovery requests and responses, both from the Defendant and from the various third-party master franchisees;

- I spent significant time attending several mediation sessions with private mediator Arthur Pressman and with Magistrate Judge Lisa Cisneros, including substantial time reviewing data and drafting and reviewing mediation statements;

- I have spent extensive time throughout the case communicating with the Plaintiffs, communicating with defense counsel, and communicating with the mediator and Magistrate Judge, and engaging in further settlement negotiations over the course of several months with defense counsel;

- I have spent extensive time preparing for the trial in this matter, including strategizing about the trial, reviewing and preparing exhibit and witness lists, and beginning to prepare witnesses for trial;

- Finally, I have spent time drafting and revising settlement papers and settlement approval briefing, including the Motion for Preliminary Approval and this Motion for Attorneys' Fees.

21.    The 1,000 hours I estimate I have spent already on this litigation does not account for earlier work performed, before this case was transferred to California, nor does it account for future work that will be spent preparing the final approval motion and overseeing

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

the remainder of the settlement including the notice process, any challenges from settlement class members, distribution of settlement funds, and communicating with class members about the settlement.  I conservatively estimate the remaining work will require at least an additional 25 hours of time from myself, reviewing and revising briefing, preparing for and attending the final approval hearing, and addressing logistics of the settlement. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (noting that "[i]n wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund…[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.") (internal citations and quotations omitted).

## MY HOURLY RATE

22.     In the last several cases for which I have submitted a fee petition, courts have awarded me $950 per hour for my services.  Last year, in Ordono v. Marriott Int'l Inc., CGC-16-550454 (S.F. Sup. Ct. June 9, 2023), the court awarded me this rate in a lodestar petition following a successful bench trial (not as a settlement lodestar cross-check). In 2022, several courts approved settlement fee petitions using $950 per hour as my lodestar for the cross-check, including in this District. See Marko v. DoorDash Inc., BC659841(L.A. Sup. Ct. Jan. 13, 2022); Contreras v. Zūm Services, Inc., 19STCV43062 (L.A. Super. Ct. Mar. 25, 2022); James v. Uber Techs. Inc., Civ. A. No. 3:19-cv-06462 (N.D. Cal. Aug. 9, 2022). Given that I was recently (in 2020) named the top employment lawyer in the country by Benchmark Litigation, I believe I merit the top rate that courts have recognized for top-tier litigators,

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

14

which has exceeded $1,000 per hour in recent years. See, e.g., MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding reasonable the rate of $1,048.47 charged by partners at Gibson Dunn); S. Bank N.A. v. Dexia Real Estate Capital Mkts., 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (approving rates of up to $1,055 per hour).[3]

23. This rate is also reasonable based on my knowledge of fees awarded in other cases to top plaintiffs' attorneys in California. See, e.g., Independent Living Center of S. Cal. v. Kent, 2020 U.S.Dist. LEXIS 13019 (C.D. Cal. 2020) (approving rates for senior partners between $965 and $1,025); Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, 2018 WL 6726963, *1 (N.D. Cal. Dec. 22, 2018) (three years ago, approving the hourly rate of $900 for partner in ERISA case); Civil Rights Educ. & Enf't Ctr. V. Ashford Hosp. Tr., Inc., 2016 WL 1177950, *5 (N.D. Cal. Mar. 22, 2016) (five years ago, approving an hourly rate of $900 for experienced partner); Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc., No. 14–cv–4086–NC (N.D. Cal. Dec. 6, 2016) Order Granting Final Approval and Attorneys' Fees (Dkt. No. 139) (five years ago, approving hourly rates of $900 and $895 for senior partners).

### HOURS AND RATES FOR OTHER ATTORNEYS AND STAFF WHO HAVE WORKED ON THIS CASE

24. My law partner, Adelaide Pagano, has also spent significant time working on this litigation. She has worked at our firm for ten years and became a partner in 2019. Ms. Pagano is a summa cum laude graduate of Macalester College (B.A., 2009) and a cum laude graduate of Harvard Law School (J.D., 2014). Ms. Pagano has been named a Rising Star by SuperLawyers since 2018. Ms. Pagano has significant experience working on cleaning

---

[3]     Three and four years ago, courts approved my lodestar rate at $850/hour.  See O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *11 (N.D. Cal. Sept. 13, 2019); Groves v. Maplebear Inc. dba Instacart, BC695401 (L.A. Sup. Ct.); Cole v. Square Inc. dba Caviar BC719079 (L.A. Sup. Ct. Nov. 4, 2020).

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

15

franchise cases such as this one. She was the primary associate on Da Costa v. Vanguard Cleaning Sys., Inc., 2017 WL 4817349, at *1 (Mass. Super. Sept. 29, 2017), where we won summary judgment, and she has worked on numerous other cleaning franchise cases, including Myers v. Jani-King, Civ A. No. 2:09-cv-01738-RBS (E.D. Pa.), where she drafted our summary judgment opposition and settlement briefing, and Juarez v. Jani-King, Civ. A. No. 3:09-cv-03495 (N.D. Cal.), where she took depositions and assisted with renewed discovery following remand of the case and drafted other substantive briefing.

25.    Ms. Pagano has been involved in this case in various capacities since she joined the firm. Most recently, she was primarily responsible for drafting our Class Certification and Summary Judgment briefing and the numerous supplemental briefs filed in connection with that briefing, and she argued those motions in July 2022. She also drafted our mediation statements and attended the first of several mediations alongside me. She was primarily responsible for seeking damages discovery from Defendant and the various master franchisees and for preparing for the damages trial in this case, where she was planning to try the case with me. An hourly rate of $600 for Ms. Pagano's services rendered in class action litigation is a reasonable rate and has been approved by other courts. See, e.g., Ordono v. Marriott Int'l Inc., CGC-16-550454 (S.F. Sup. Ct. June 9, 2023) (approving a rate of $600 per hour for Attorney Pagano following bench trial); Marko v. DoorDash Inc., BC659841 (Jan. 13, 2022) (approving hourly rate of $600 for Attorney Pagano for purposes of lodestar cross-check); Contreras v. Zūm Services, Inc., 19STCV43062 (L.A. Super. Ct. Mar. 25, 2022) (same). This rate is also reasonable based on my knowledge of fees awarded in other cases to attorneys of approximately her experience and position within a law firm. See, e.g., Jean-Pierre v. J&L Cable TV Svcs. Inc., Civ. A. No. 1:18-cv-11499-MLW (D. Mass. Aug. 31, 2021) (Dkt. No. 148) (approving hourly rate of $600 for Lichten & Liss-Riordan partner Matthew Thomson with commensurate experience); AdTrader, Inc. v. Google LLC, 2020 WL 1921774, at *8 (N.D. Cal., Mar. 24, 2020), appeal dismissed 7 F.4th 803 (9th Cir. 2021)

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

16

(approving "hourly rate of $855 per hour for junior partners and of counsel attorneys" in class action for breach of contract); Superior Consulting Servs., Inc. v. Steeves-Kiss, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475 to $975 per hour for partners... are reasonable."); Perfect 10, Inc. v. Giganews, Inc., 2015 WL 1746484, at *15-*20 (C.D. Cal. Mar. 24, 2015) (approving billing rates of $610-$750 for junior partner as reasonable), aff'd, (9th Cir. 2017) 847 F.3d 657; Independent Living Center of S. Cal. V. Kent, 2020 U.S.Dist. LEXIS 13019 (C.D. Cal. 2020) (approving rates of $640 per hour for 2015 graduate).

26.    Michael Freedman is a cum laude graduate of Claremont McKenna College (B.A., 2003) and a graduate of Stanford Law School (J.D., 2008), where he served as the Editor-in-Chief and Managing Editor of the *Stanford Journal of Civil Liberties and Civil Rights*. He clerked for Judge Marilyn H. Patel of this Court and for Judge Reginald Lindsay of the District Court for the District of Massachusetts. He worked on this case in 2017, drafting our Opposition to Jan-Pro's Motion for Summary Judgment and other legal filings in the case at that time, such as the Second Amended Complaint. I believe an hourly rate of $600 for Mr. Freedman's services rendered in class action litigation is a reasonable rate given his experience in the field of wage and hour law and workers' rights and his extensive experience with class action litigation. See, e.g., AdTrader, Inc. v. Google LLC, 2020 WL 1921774, at *8 (N.D. Cal., Mar. 24, 2020), appeal dismissed, 7 F.4th 803 (9th Cir. 2021) (approving "hourly rate of $855 per hour for junior partners and of counsel attorneys" in class action for breach of contract); Superior Consulting Servs., Inc. v. Steeves-Kiss, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475 to $975 per hour for partners... are reasonable."); Perfect 10, Inc. v. Giganews, Inc., 2015 WL 1746484, at *15-*20 (C.D. Cal. Mar. 24, 2015) (approving billing rates of $610-$750 for junior partner as reasonable), aff'd, 847 F.3d 657 (9th Cir. 2017);

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

17

Independent Living Center of S. Cal. v. Kent, 2020 U.S.Dist. LEXIS 13019 (C.D. Cal. 2020) (approving rates of $640 per hour for 2015 graduate).

27.    Michael Turi, a graduate of Tufts University (B.A., 2011) and Harvard Law School (J.D., 2015), also assisted on this case as an associate drafting various papers and performing legal research. In particular, Mr. Turi assisted with the briefing at the Ninth Circuit Court of Appeals. I believe the requested hourly rate of $425 is eminently reasonable for his excellent work and for an attorney of his caliber and experience. See, e.g., Campbell v. Best Buy Stores, L.P., 2015 U.S. Dist. LEXIS 186976, at *27 (C.D. Cal. June 23, 2015) (assigning hourly rates from $450-$475 to attorneys with 5.5-6.5 years of experience in its lodestar analysis for a class action); Retta v. Millennium Products, Inc., 2017 WL 5479637, at *12 (C.D. Cal., Aug. 22, 2017) (assigning hourly rates from $400-$425 to attorneys with 5-7 years of experience in its lodestar analysis for a class action); Kries v. City of San Diego, 2021 U.S. Dist. LEXIS 6826, at *27 (S.D. Cal. Jan. 13, 2021) (assigning a $400 hourly rate to an attorney with 6 years of experience in its lodestar analysis for a Fair Labor Standard Act case).

28.    Anastasia Doherty, a graduate of Northeastern University School of Law (J.D., 2019), also assisted on this case as an associate drafting various papers and performing legal research. In particular, she assisted extensively with the briefing before the California Supreme Court. I believe the requested hourly rate of $375 is eminently reasonable for her excellent work on the case. See, e.g., WB Music Corp. v. Royce Int'l Broad. Corp., 2018 WL 6177237, at *5 (C.D. Cal. July 9, 2018) (finding reasonable hourly rates of $400-$495 for an associate "right out of law school"); 700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC, 2018 WL 783930, at *3 (N.D. Cal. Feb. 8, 2018) (finding reasonable a $420 hourly rate for a first-year associate); Campbell v. Best Buy Stores, L.P., 2015 U.S. Dist. LEXIS 186976, at *27  (C.D. Cal. June 23, 2015) (assigning a $375 hourly rate for an associate with 1.5 years of experience); Dixon v. City of Oakland, 2014 WL 6951260, *7

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

18

(N.D. Cal. Dec. 8, 2014) (approving hourly rate of $325 for associate with two years' experience); Cuviello v. Feld Entm't, Inc., 2015 WL 154197, *2 (N.D. Cal. Jan. 12, 2015) (awarding fees of $325 per hour to an associate with 2 years' experience).

29.    Tara Boghosian, a graduate of McGill University and a cum laude graduate of Harvard Law School (J.D., 2020), also assisted on this case as an associate drafting various papers and performing legal research. In particular, she assisted in drafting Plaintiffs' Motion for Class Certification and Motion for Summary Judgment and the clients' supporting declarations. I believe the requested hourly rate of $350 is reasonable for her work on the case. See, e.g., WB Music Corp. v. Royce Int'l Broad. Corp., 2018 WL 6177237, at *5 (C.D. Cal. July 9, 2018) (finding reasonable hourly rates of $400-$495 for an associate "right out of law school"); 700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC, 2018 WL 783930, at *3 (N.D. Cal. Feb. 8, 2018) (finding reasonable a $420 hourly rate for a first-year associate); Campbell v. Best Buy Stores, L.P., 2015 U.S. Dist. LEXIS 186976, at *27  (C.D. Cal. June 23, 2015) (assigning a $375 hourly rate for an associate with 1.5 years of experience); Dixon v. City of Oakland, 2014 WL 6951260, *7 (N.D. Cal. Dec. 8, 2014) (approving hourly rate of $325 for associate with two years' experience); Cuviello v. Feld Entm't, Inc., 2015 WL 154197, *2 (N.D. Cal. Jan. 12, 2015) (awarding fees of $325 per hour to an associate with 2 years' experience)

30.    Jane Farrell, a graduate of UCLA School of Law (J.D., 2020), and former law clerk for the Honorable Kimberly J. Mueller, Chief Judge of the United States District Court for the Eastern District of California, also worked extensively on this case since joining the firm. She performed legal research and drafted briefing in connection with Plaintiffs' efforts to compel additional discovery. She defended the second deposition of Gloria Roman and took a Rule 30(b)(6) deposition of the Defendant related to damages issues and took over primary responsibility for discovery and trial preparation from late April through early September during Attorney Pagano's maternity leave. She worked extensively on the

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

19

opposition to and appellate briefing stemming from Defendant's August 2023 motion to compel arbitration, which this Court agreed was meritless and frivolous. She also worked on the opposition to Defendant's September 2023 motion to decertify the class and strike Plaintiff Roman. Attorney Farrell was preparing to try this case in October alongside myself and Attorney Pagano. I believe the requested hourly rate of $350 is eminently reasonable for her excellent work. See, e.g., WB Music Corp. v. Royce Int'l Broad. Corp., 2018 WL 6177237, at *5 (C.D. Cal. July 9, 2018) (finding reasonable hourly rates of $400-$495 for an associate "right out of law school"); 700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC, 2018 WL 783930, at *3 (N.D. Cal. Feb. 8, 2018) (finding reasonable a $420 hourly rate for a first-year associate); Campbell v. Best Buy Stores, L.P., 2015 U.S. Dist. LEXIS 186976, at *27  (C.D. Cal. June 23, 2015) (assigning a $375 hourly rate for an associate with 1.5 years of experience); Dixon v. City of Oakland, 2014 WL 6951260, *7 (N.D. Cal. Dec. 8, 2014) (approving hourly rate of $325 for associate with two years' experience); Cuviello v. Feld Entm't, Inc., 2015 WL 154197, *2 (N.D. Cal. Jan. 12, 2015) (awarding fees of $325 per hour to an associate with 2 years' experience).[4]

31.    Additionally, several law clerks have performed work on this case, performing legal research and drafting legal documents under the supervision of myself and other attorneys on the case. I believe an appropriate rate for these individuals is $275/hour. See, e.g., Contreras v. Zūm Services, Inc., 19STCV43062 (Mar. 25, 2022) (approving hourly rate of $275 for student law clerks and $225 for paralegal staff); McKibben, 2019 WL 1109683, at *14 (approving rate of $225/hour for law clerks in 2019).

32.    A number of paralegals and staff members at our firm also worked extensively on this litigation, including Maria Cedeno, Samantha Cedeno, Mary Franco, Sarah Mason, and Rebecca Shuford. Their duties included translation and communication with the clients

---

[4]    Several other attorneys performed smaller amounts of work on the case, but I am not including them in our lodestar calculations.

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

20

and class members, preparing filings and other materials, and a number of very labor-intensive projects. In particular, Rebecca Shuford, our firm's damages analyst, spent a significant amount of time compiling and analyzing data from various Excel spreadsheets to calculate damages and was preparing to testify to her calculations at trial. Likewise, our staff worked on a number of extremely time-consuming and painstaking projects, such as compiling a class list from dozens of different Franchise Disclosure Documents, which had to be gathered and collated and then had to have data regarding class member names, addresses, and contact information manually added to the class list. Based on my conversations with these staff members and my own personal knowledge of their work on the case, I estimate they spent as many as 750 hours on the case, since it was transferred to this Court.

33. I believe an hourly rate of $225 for these paralegals' services rendered in class action litigation is a reasonable rate. These rates are based on my knowledge of fees awarded in other cases to paralegals of approximately their experience and position within a law firm. See McKibben v. McMahon, 2019 WL 1109683, at *14 (C.D. Cal., Feb. 28, 2019) (approving rates ranging from $335 for senior paralegals to $175 for junior paralegals); Broomfield v. Craft Brew All., Inc., 2020 WL 1972505, at *12 (N.D. Cal. Feb. 5, 2020) (assigning a $250 hourly rate to paralegals in its lodestar analysis for a class action); Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *14 (N.D. Cal. Dec. 17, 2018) (finding reasonable $245-$350 hourly rates for paralegals in its lodestar analysis for a class action); WB Music Corp. v. Royce Int'l Broad. Corp., 2018 WL 6177237, at *5 (C.D. Cal. July 9, 2018) (assigning a $250 hourly rate to paralegals in its lodestar analysis for a copyright infringement case); 700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC, 2018 WL 783930, at *4 (N.D. Cal. Feb. 8, 2018) (finding reasonable $335-$355 hourly rates for paralegals in its lodestar analysis for an unlawful detainer case); Nitsch v. DreamWorks

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

21

Animation SKG Inc., 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding reasonable hourly rates up to $290 for paralegals in its lodestar analysis for a class action).

34.     My firm's costs in this litigation, since the transfer to this Court, total $73,324. An itemized list of our costs is attached as **Exhibit K**. These costs include filing fees, charges associated with providing courtesy copies and mailings to the court, costs associated with obtaining filings from related cases and performing legal research, IT services related to the litigation, ordering hearing and deposition transcripts, mediation fees, and costs associated with travel.

35.     Based on the above figures, I calculate our firm's total lodestar in this litigation – since the case was transferred to California -- to be approximately $1,682,621 including expenses of litigation. This amount does not include estimated additional hours to be spent on the case, preparing for and attending the final approval hearing, and working with the Settlement Administrator to effectuate the terms of the settlement, nor does it includes hundreds of hours of time spent on the litigation before the District of Massachusetts (including taking various depositions of Jan-Pro personnel and defending the depositions of the three named plaintiffs). A chart itemizing time entries for the firm's staff who worked on the case is attached here as **Exhibit L**. The chart below summarizes their fees:

| Attorney | Hours | Rate | Fees |
|---|---|---|---|
| Shannon Liss-Riordan | 1,000 | $950 | $950,000 |
| Adelaide Pagano | 332.5 | $600 | $196,500 |
| Michael Freedman | 117 | $600 | $70,020 |
| Michael Turi | 127.5 | $425 | $54,187 |
| Tara Boghosian | 38.3 | $350 | $13,405 |
| Anastasia Doherty | 67.1 | $375 | $25,163 |
| Jane Farrell | 301 | $350 | $105,350 |
| Law Clerks | 82.7 | $275 | $22,743 |
| Paralegal Staff | 750 | $225 | $168,750 |

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

22

| Costs | | | $73,324 |
|---|---|---|---|
| **TOTAL:** | | | **$1,682,621** |

36.    Based on this this total lodestar, Plaintiffs' fee request of one third of the settlement fund -- $10 million -- thus results in an overall multiplier of 5.94.  I believe this multiplier is warranted, based on the excellent results obtained for the class and the efforts of Plaintiffs' counsel in this case.  Courts in the Ninth Circuit have "routinely awarded" multipliers in "the 1x to 4x range", Perks v. Activehours, Inc., 2021 WL 1146038, at *8 (N.D. Cal., Mar. 25, 2021), and courts will often award higher multipliers where the circumstances warrant it because of the excellent results obtained, complexity of the case, and risks involved. See, e.g., Farrell v. Bank of America 327 F.R.D. 422 (S.D. Cal. 2018) (approving a fee award in consumer class action case with an effective multiplier of 8.8); In re Facebook Biometric Information Privacy Litigation, 2021 WL 757025 (N.D. Cal.) (approving fee award with an effective multiplier of 4.71 in data breach class action); Gutierrez v. Wells Fargo Bank, N.A., 2015 WL 2438274, *7 (N.D. Cal. May 21, 2015) (allowing a multiplier of 5.5 "on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment); Craft v. County of San Bernardino, 624 F.Supp.2d 1113, 1123 (C.D. Cal. 2008) (awarding 25% of common fund, equivalent to a 5.2 multiplier) (collecting cases).

37.    Here, I believe the multiplier of 5.94 is eminently reasonable and justified in light of several facts.  First, this case was prosecuted on a complete contingent basis for fifteen years, without any promise of payment, and in fact, Class Counsel was very nearly paid nothing at all when Defendant's Motion for Summary Judgment was granted in 2017. The fact that payment was so long delayed and the tremendous risk assumed by Class Counsel warrants a robust multiplier. Second, the lodestar calculation is very underestimated because it does not include any hours spent prosecuting this case in the District of

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

Massachusetts. Significant discovery took place during that time period, including taking a half-dozen depositions of Jan-Pro's witnesses and defending the three named plaintiffs' depositions, taking and responding to written discovery, and briefing various motions, some of which had major consequences for the California Plaintiffs' claims. Thus, the actual multiplier is necessarily much lower. Third, the exceptional results achieved here warrant a high multiplier. Here, the gross settlement amount covers 53% of the certified claims in this case that were due to go to trial on damages in October and 81% of the most certain and most valuable deductions claim. Settlement Class Members will receive a minimum of $3,000 each, with the average class member receiving $7,500 (assuming a 100% claim rate; in reality, average shares will be much higher because we will not be able to locate many class members, given the age of this case). Many class members will receive tens of thousands of dollars. The settlement provides an excellent result to the Settlement Class. Fourth, this case presented difficult and novel issues, particularly regarding the application of the wage-and-hour laws in the franchise context and to a multi-tiered structure like Jan-Pro's, as well as novel issues of interpretation regarding California's ABC test, announced in <u>Dynamex</u>. Class Counsel had to litigate brand new and complex issues in this case, and they made good law, not just for these Settlement Class Members, but also for all California workers.

38.    These excellent results were the result of the efforts of Plaintiffs' counsel in this case over a period of many years, without any promise of payment. Our hard work resulted in a certified class, a favorable decision on liability, and excellent precedents from the Ninth Circuit and the California Supreme Court on issues of paramount importance to workers across California. This hard work was instrumental in extracting such an excellent result for the settlement class and should be rewarded with a substantial multiplier (should the Court elect to use the lodestar method at all rather than simply using the percentage of the fund).

## CLASS REPRESENTATIVES SERVICE AWARDS

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA

39.     Under the terms of the settlement, Plaintiffs are also requesting service awards of $5,000 each for the three named plaintiffs involved in the consolidated cases in this settlement. I have personal knowledge of the contributions of Gerardo Vazquez, Juan Aguilar, and Gloria Roman, each of whom have worked with our firm as a class representative, seeking to bring claims on behalf of similarly situated Jan-Pro cleaners.  Each of them have sent us voluminous documents, had their depositions taken, and worked closely with us over the course of fifteen long years.

40.     I have reviewed the Declarations submitted by Plaintiffs Gerardo Vazquez, Juan Aguilar, and Gloria Roman, and I agree with the substance of their declarations. Their involvement in the case was instrumental in obtaining the settlement. In my practice, I am well aware of the risks that workers face in putting their names on high profile cases, which can impact future job opportunities. It is only because some workers are willing to step forward on behalf of others, in the face of these risks, that this type of litigation can be pursued at all. Here, this litigation has gone on for many years, and these named plaintiffs have remained committed and steadfast in fulfilling their roles as representatives of the class, even though could have (like other plaintiffs from locations around the country) settled their claims individually earlier, leaving the class with nothing.  Such commitment should be incentivized. Without incentive payments, this type of litigation would be extremely difficult to achieve and unlikely to occur.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 5, 2024, in Boston, Massachusetts.

By: __/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

CASE NO. CV 3:16-CV-05961-WHA