UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORA ROMAN, GERARDO VASQUEZ, JUAN AGUILAR, and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAN-PRO FRANCHISING INTERNATIONAL, INC.,<br><br>Defendant. | No. 3:16-cv-05961-WHA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEY'S FEES, COSTS, AND EXPENSES** |

**INTRODUCTION**

In this wage-and-hour misclassification class action, plaintiffs move for final approval of a class settlement. This order finds that the settlement is fair, reasonable, and adequate. Therefore, final approval is **GRANTED**.

Plaintiffs separately move for an award of attorney's fees in the amount of one-third of the common fund, and a class representative service award in the amount of $5,000 for named plaintiffs Gerardo Vazquez, Gloria Roman., and Juan Aguilar. To the extent stated herein, the motion for attorney's fees and class representative service awards is **GRANTED IN PART AND DENIED IN PART**. This order finds that counsel is entitled to 30% of the class settlement fund. Plaintiff Vazquez is to be awarded $2000, plaintiff Roman is to be awarded $1500, and plaintiff Aguilar is to be awarded $1000.

**STATEMENT**

Defendant is an international janitorial cleaning business which developed a three-tier franchise model to avoid classifying its janitors as employees and misclassifying them as independent contractors. This model allowed defendant to escape paying minimum wage or overtime. An action was filed against defendant in 2008 in a Massachusetts district court. That case was eventually heard by the First Circuit Court of Appeals, which affirmed the district court's dismissal of the complaint. The California plaintiffs' claims, however, were severed from the case, and transferred to this Court in 2016, forming the instant action.

In this action, plaintiffs alleged that defendant had misclassified them as independent contractors instead of employees and violated California minimum wage, overtime, expense reimbursement, and unlawful deduction laws, and sought compensation on behalf of the class. A previous order granted summary judgment in favor of defendant (Dkt. No. 265) which disposed of the case given the state of then-existing law. Plaintiffs appealed the order. Around that time, California Supreme Court adopted the "ABC test" for determining employee classification. *Dynamex Operations W., Inc. v. Super. Ct*., 4 Cal. 5th 903, 232 Cal.Rptr.3d 1, 416 P.3d 1 (2018). The adoption of the "ABC Test" was the turning point in this action.

Our court of appeals then directed parties to brief the effect of *Dynamex* on the merits of this case. Our court of appeals certified the issue of whether *Dynamex* applied retroactively to the California Supreme Court. The high court answered yes. Based on that answer and the parties' briefing, our court of appeals vacated the previous summary judgment order and remanded for this order to consider the merits in light of *Dynamex. Vazquez v. Jan-Pro Franchising Int'l, Inc*., 986 F.3d 1106, 1110 (9th Cir. 2021). Specifically, our court of appeals stated that this order "should consider all three prongs of the ABC test . . . ." *Id*. at 1122. An order then granted plaintiffs' motion for class certification as to the failure to pay minimum wage for mandatory training, failure to reimburse for expenses incurred for uniforms and cleaning supplies, and unlawful deductions of management fees and marketing fees (Dkt. No. 369).

As parties were preparing for trial, defendant filed a notice of settlement in September 2023. Preliminary approval of the settlement was granted in December 2023 (Dkt. No. 511). Counsel now move for final approval of the settlement and attorney's fees and costs.

The length of this action is in large part due to a shift in caselaw pertaining to the relevant test to determine whether someone is an employee or independent contractor. This development in caselaw caused this action to move through this Court, our court of appeals, the California Supreme Court, and back to this Court. Each stage of this action's complex procedural history took a considerable amount of time to resolve. The undersigned judge is satisfied that class counsel have persisted in each stage of this action until its conclusion.

This order follows full briefing and oral argument.

**ANALYSIS**

This order addresses the outstanding motions for class settlement and attorney's fees in order.

1. **MOTION FOR FINAL APPROVAL.**

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982). A district court may grant approval of a settlement that will bind class members only after a hearing and only upon a finding that it is fair, reasonable, and adequate. FRCP 23(e).

Analyzing Rule 23(e) is guided by the eight *Churchill* factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). That list is not exhaustive, as "[t]he factors in a court's fairness assessment will naturally vary from case to case." *Ibid*.

Additionally, Rule 23(e)(2) requires a district court to examine four additional factors to determine that the settlement is fair, reasonable, and adequate: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other.  FRCP 23(e)(2)(A)-(D).

### A.  EIGHT CHURCHILL FACTORS.

*First*, this order finds that the strength of plaintiff's case supports settlement.  Initially, plaintiffs did not present a strong case.  For example, a prior order granted defendant summary judgment as to the misclassification claim.  However, after appealing the order, the California Supreme Court adopted the "ABC test" which determines employment classification for claims governed by California wage orders.  *Dynamex Operations W., Inc., v. Super. Ct. of L.A. Cnty.*, 4 Cal.4th 903 (2018).  Our court of appeals then reversed the previous summary judgment order and clarified that *Dynamex* indeed applies retroactively to the California Supreme Court.  With this development in caselaw, a tentative order would have granted plaintiffs summary judgment on the misclassification claim (Dkt. No. 338).  However, as plaintiffs also concede, had *Dynamex* not applied, it is possible plaintiffs would not have succeeded on several claims.  The fact remains however, that plaintiffs had a much stronger case after the case was remanded back to this court.  For this reason, this order finds that the first *Churchill* factor weighs in favor of settlement.

*Second,* this order finds that the risk, expense, complexity, and likely duration of continued litigation weigh in favor of settlement.  This class action has been ongoing for over fifteen years and has been litigated in this Court for eight of those years.  Further, it has made it to our court of appeals, was on the brink of a class-wide damages trial, and likely would have been appealed by defendant in the event of an unfavorable outcome; it becomes clear that this action could have potentially dragged on for a considerable amount of time.  Given the complex procedural history, the second factor favors settlement.

4

*Third,* this order finds that the risk of maintaining class action status throughout trial would have been difficult, if not unlikely. Plaintiffs acknowledge the risk of maintaining status through trial given that defendant would have likely appealed the class certification order.

*Fourth,* the amount offered weighs in favor of settlement. The $30 million non-reversionary amount represents roughly half of the total class-wide damages on the certified claims that would have been tried (Dkt. No. 524-1 ¶ 7) and is comparable to a recent settlement involving one of defendant's competitors (Dkt. No. 507 ¶ 37).

*Fifth,* the amount of discovery and the stage of the proceedings warrants settlement. As previously stated, this action had already survived appeal, two rounds of summary judgment, and was on the brink of a damages trial. Counsel had also engaged in extensive discovery and depositions.

*Sixth,* the experience and views of counsel support settlement. Plaintiffs' counsel have extensive experience in wage-and-hour litigation (Dkt. No. 507 ¶¶ 28-36) and have provided more than competent representation throughout the duration of this action.

*Seventh,* there were no governmental participants, so this factor does not apply.

*Eighth,* this order finds that the overall positive reaction of the class members to the proposed class settlement warrants approval of the settlement. Here, no class members have objected or elected to opt out of the settlement. Overall, the *Churchill* factors weigh in favor of settlement.

### B. FRCP 23(E)(2)

This order now turns to four additional factors: adequacy of representation; proposed negotiations conducted in an arm's length deal; relief is adequate; and treating class members equally. FRCP 23(e)(2)(A)-(D).

*First*, class counsel and class representatives have represented that the class adequately. Counsel have persisted in this action for several years and have demonstrated committed and competent representation.

*Second*, this settlement was reached through arm's length negotiations conducted through Magistrate Judge Lisa Cisneros.

5

*Third,* the relief of this settlement is adequate taking into account, as required: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, as modified by this order; and (iv) any agreement required to be identified under Rule 23(e)(3).

*Fourth,* the settlement treats class members equitably. The formula used to calculate individual payments ensures that class members are paid according to the number of years that the class member owned a JPI unit franchise while taking into account the projected annual gross revenue of the unit franchise package.

Given the shift of caselaw from when this action was first transferred to this Court to the adoption of the "ABC test" during this action, the undersigned judge is satisfied with class counsel's persistence throughout the various procedural stages of this action and the results they have achieved for the class. Final approval of the class settlement is hereby **GRANTED**.

## 2.   ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

### A.   ATTORNEY'S FEES AND COSTS

This order now turns to the fees, costs, and service awards.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). This order follows the majority of courts in applying the percentage-of-recovery method. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("Although statutory awards of attorney's fees are subject to the 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is calculated as percentage of the recovery."). In our circuit, courts "calculate 25% of the fund as the 'benchmark' for a reasonable fee award," and consider upward or downward departures in light of any "special circumstances." *In re Bluetooth*, 654 F.3d at 942.

The percentage figure, like the lodestar calculation, "must be supported by findings that take into account all circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Our court of

appeals has provided a number of factors relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id*. at 1048-1050.

Here, counsel seek one-third of the common fund in fees and costs and also request $5,000 in service awards for the named plaintiffs Vazquez, Roman, and Aguilar. In its motion for fees, counsel argue that awarding more than the 25% benchmark is warranted given the duration of the case, the risks involved, and the results achieved. This order will examine the five factors to assess whether counsel's request is reasonable.

*First*, counsel have achieved an excellent result for the class, given its history and trips to our court of appeals and the California Supreme Court. The $30,000,000 common fund achieved in this settlement amounts to just over half of what would have been achieved in a damages trial (Dkt. No. 524 at 16).

*Second*, there were several risks in this case. It was unclear if the class could have maintained class status during trial. Moreover, counsel pursued this action to the Ninth Circuit court where it reversed a previous order granting summary judgment and even achieved a favorable decision in the California Supreme Court. With this in mind, counsel successfully argued this case successfully despite many pitfalls which could have resulted in a loss for the class.

*Third*, this case required skill and grit.

*Fourth*, class counsel took on the risk of litigating this case on a contingency basis. To be clear, the 25% benchmark rate already considers the contingent nature of representation. Litigation has been ongoing for eight years and counsel expended 2,149 hours in this case (Dkt. No. 512-12 at 2), averaging about five hours per week spent on this case. This indicates that class counsel were able to take on other cases while litigating the instant class action. However, given the many pitfalls that could have resulted in the class losing, and class counsel's success in securing a strong settlement, an upward departure from the 25% benchmark is warranted.

*Fifth*, awards tend to adhere to our court of appeals' benchmark. Various empirical studies by authorities in the field have documented the mean percentage award in common fund cases over the span of two decades, and found that in our circuit, the mean award has fluctuated between 23.9% and 26%. *See* 5 Newberg and Rubenstein on Class Actions § 15:83 (6th ed.). A district court, however, is permitted to consider an upward or downward departure in light of any special circumstances. *In re Bluetooth*, 654 F.3d at 942. As stated above, this order finds that the quality of representation and strength of the settlement warrants an upward departure from the benchmark of 25%.

Lastly, this order conducts a lodestar cross-check. Courts calculate a lodestar "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer," and then adjusting upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors. *Id.* at 941. Where, as here, the lodestar is employed to cross-check a percentage-of-fund determination, courts may do a rough calculation. *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) (Judge Margaret Morrow) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

The lodestar presented by counsel amounted to $1,609,297 for 2,149 hours (Dkt. No. 515 at 34). This number covers hourly billing rates range from $225 for paralegals to $950 for attorneys (*ibid.*). More specifically, lead counsel Shannon Liss-Riordan charged an hourly rate of $950 for 1,000 hours. Attorney Adelaine Pagano (who drafted class certification and summary judgment briefing) charged an hourly rate of $600 for 332.5 hours. Attorney Michael Freedman charged $600 for 117 hours. Attorney Michael Turi charged an hourly rate of $425 for 127.5 hours. Attorney Tara Boghosian charged an hourly rate of $350 for 38.3 hours. Attorney Anastasia Doherty charged an hourly rate of $375 for 67.1 hours. Attorney Jane Farrell charged an hourly rate of $350 for 301 hours. Additionally, several law clerks

1  worked on this case at an hourly rate of $275 for 87.7 hours.  Lastly, paralegals charged an
2  hourly rate of $225 for 750 hours.
3      For the purposes of calculating class counsel's fees, the total fund for the settlement is
4  $30,000,000.  Counsel request one-third in fees, which amounts to a multiplier of 6.21.  This is
5  a drastic upwards departure from the 25% benchmark and the average multiplier in court of
6  appeals.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (upholding a
7  lodestar multiplier cross-check showing a multiplier of 3.65).  However, in light of the strong
8  result achieved for the class, this order finds that an upward deviation from the 25%
9  benchmark is appropriate such that class counsel should be awarded 30% of the common fund
10 settlement which would result in a lodestar multiplier of 5.59.  Therefore, class counsel's
11 request for fees is **GRANTED IN PART AND DENIED IN PART**.  This order awards **$9,000,000** in
12 fees, half to be paid now and half to be paid when all of the work is done.

### B.    COSTS

14 Counsel request $73,324 in costs. "There is no doubt that an attorney who has created a
15 common fund for the benefit of the class is entitled to reimbursement of reasonable litigation
16 expenses from that fund.  To that end, courts throughout the Ninth Circuit regularly award
17 litigation costs and expenses – including reasonable travel expenses – in wage-and-hour class
18 actions." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (Judge
19 Jacqueline Scott Corley) (internal quotations and citations omitted).
20     Counsel has submitted a list of itemized costs, including costs for travel, notice
21 processing and mailing, transcripts, postage, and court filing fees.  These are reasonable
22 litigation expenses incurred for the benefit of the class, and reasonably proportionate to the
23 nature of the litigation, benefits obtained, and attorney's fees granted.  Counsel's request for
24 reimbursement of litigation costs of **$73,324** is **GRANTED**.

### C.    SERVICE AWARDS

26 Counsel request service awards of $5,000 each for plaintiffs Roman, Vazquez, and
27 Aguilar (Dkt. No. 515 at 41).  At this stage of a class action settlement, it falls onto the court to
28 "guard against an unreasonable result." *Lowery v. Rhapsody Int'l, Inc*. 75 F.4th 985, 988 (9th

9

1    Cir. 2023). Class actions proceeded with adequate success for decades before the recent

2    advent of "service awards." When it comes to settlement, an important consideration is the

3    judgment of the class representative who has a fiduciary duty to the class to approve or not

4    approve the settlement. A service award threatens the integrity of this fiduciary responsibility

5    by introducing a variable not common to the class. Put differently, it raises the question as to

6    whether the approval by the fiduciary is based on receipt of the extra benefit. Why isn't the

7    settlement good enough without the bonus? Therefore, the service awards should be

8    scrutinized carefully to eliminate the risk of skewing the judgment of the fiduciary.

9    Nevertheless, the following awards will not skew the named plaintiffs and are justified by the

10   record.

11   Here, all three named plaintiffs have submitted declarations to document their

12   contributions to this case over the last fifteen years. Plaintiff Vazquez contributed roughly 100

13   hours (Vazquez Decl. ¶ 10), plaintiff Roman contributed roughly 75 hours (Roman Decl. ¶ 8),

14   and plaintiff Aguilar contributed roughly 50 hours (Aguilar Decl, ¶ 8). They participated in

15   depositions, answered interrogatories, and provided declarations in various motions for this

16   case. Some of these contributions required missing work. In light of the countervailing

17   concerns surrounding service awards, this order declines to award the requested amount.

18   Instead, this order awards service awards in the amount of $2000 for Vazquez, $1500 for

19   Roman, and $1000 for Aguilar.

**CONCLUSION**

21   The settlement is fair, reasonable, and adequate as to the class, plaintiffs, and defendants,

22   that it is the product of good faith, arms-length negotiations between the parties, and that the

23   settlement is consistent with public policy and fully complies with all applicable provisions of

24   law. Final approval of the class settlement is therefore **GRANTED.**

25   This order hereby awards plaintiffs' counsel attorney's fees of $9,000,000 and $73,324 in

26   litigation costs and expenses, to be paid from the settlement fund. Plaintiffs' counsel shall be

27   awarded the $73,324 as well as 50 percent of the attorney's fees now; the remaining 50 percent

28   may be recovered only after counsel certifies that the fund is completely wound up. If

problems do arise, and if management of this fund so necessitates, any shortfall in funds to pay class members may be deducted from the unpaid attorney's fees.

Lastly, named plaintiff Gerardo Vazquez is to be awarded $2000, named plaintiff Gloria Roman is to be awarded $1500, and named plaintiff Juan Aguilar is to be awarded $1000. These service awards are to be paid from the settlement fund.

**IT IS SO ORDERED.**

Dated: May 23, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE